PETITION FOR WRIT OF HABEAS CORPUS: 28 USC §2254 (Rev. 10/99)

United States District Court
Southern District of Texas
FILED

## IN THE UNITED STATES DISTRICT COURT

DEC 1 5 2003

FOR THE ___SOUTHERN___ DISTRICT OF TEXAS

Michael N. Milby
Clerk of Court

___BROWNSVILLE___ Division

## PETITION FOR A WRIT OF HABEAS CORPUS BY A
## PERSON IN STATE CUSTODY

___SANTOS MONTOYA___
**PETITIONER**
(Full name of Petitioner)

___EASTHAM UNIT TDCJ-ID___
**CURRENT PLACE OF CONFINEMENT**

VS.

___544493___
**PRISONER ID NUMBER**

DIRECTOR,TDCJ-ID
___JANIE COCKRELL___
**RESPONDENT**
(Name of TDCJ Director, Warden, Jailor, or
authorized person having custody of petitioner)

**B-03-229**

**CASE NUMBER**
(Supplied by the Clerk of the District Court)

---

### INSTRUCTIONS - READ CAREFULLY

1. The petition must be legibly handwritten or typewritten, and signed by the petitioner, under penalty of perjury. Any false statement of an important fact may lead to prosecution for perjury. Answer all questions in the proper space on the form.

2. Additional pages are not allowed except in answer to questions 11 and 20. Do not cite legal authorities. Any additional arguments or facts you want to present must be in a separate memorandum.

3. When the Clerk of Court receives the $5.00 filing fee, the Clerk will file your petition if it is in proper order.

4. If you do not have the necessary filing fee, you may ask permission to proceed *in forma pauperis*. To proceed *in forma pauperis*, (1) you must sign the declaration provided with this petition to show that you cannot prepay the fees and costs, and (2) if you are confined in TDCJ-ID, you must send in a certified *In Forma Pauperis* Data Sheet from the institution in which you are confined. If you are in an institution other than TDCJ-ID, you must send in a certificate completed by an authorized officer at your institution certifying the amount of money you have on deposit at that institution. If you have access or have had access to enough funds to pay the filing fee, then you must pay the filing fee.

5.     Only judgments entered by one court may be challenged in a single petition. If you want to challenge judgments entered by different courts, either in the same state or in different states, you must file separate petitions as to each court.

6.     Include all your grounds for relief and all the facts that support each ground for relief in this petition.

7.     When you have finished filling out the petition, mail <u>the original and two copies</u> to the Clerk of the United States District Court for the federal district within which the State court was held which convicted and sentenced you, or to the federal district in which you are in custody. A "VENUE LIST," which lists U.S. District Courts in Texas, their divisions, and the addresses for the clerk's office for each division, is posted in your unit law library. You may use this list to decide where to mail your petition.

8.     Petitions that do not meet these instructions may be returned to you.

---

# PETITION

**What are you challenging?** (Check <u>only</u> one)

| | | |
|---|---|---|
| ☒ | A judgment of conviction or sentence, probation or deferred-adjudication probation | (Answer Questions 1-4, 5-12 & 20-23) |
| ☐ | A parole revocation proceeding. | (Answer Questions 1-4, 13-14, & 20-23) |
| ☐ | A disciplinary proceeding. | (Answer Questions 1-4, 15-19 & 20-23) |

## All petitioners must answer questions 1-4:

1.     Name and location of the court (district and county) which entered the conviction and sentence that you are presently serving or that is under attack:
    138th District Court,Cameron County, Brownsville, Tx

2.     Date of judgment of conviction:   March 26, 1990

3.     Length of sentence:    85 years

4.     Nature of offense and docket number (if known):  murder  90-cr-68-B

---

## Judgment of Conviction or Sentence, Probation or Deferred-Adjudication Probation:

5.     What was your plea? (Check one)

| | | | | | |
|---|---|---|---|---|---|
| ☒ | Not Guilty | ☐ | Guilty | ☐ | Nolo contendere |

6.     Kind of trial: (Check one)   ☒  Jury   ☐  Judge Only

        **CONTINUED ON NEXT PAGE**

7. Did you testify at the trial? ☐ Yes ☑ No

8. Did you appeal the judgment of conviction? ☑ Yes ☐ No

9. If you did appeal, in what appellate court did you file your direct appeal?

   __13th court of appeals__ Cause Number (if known) __13-90-00165-cr__

   What was the result of your direct appeal (affirmed, modified or reversed): __AFFIRMED__

   What was the date of that decision? __June 6, 1991__

   If you filed a petition for discretionary review after the decision of the court of appeals, answer the following:

   Result: _____

   Date of result: _____ Cause Number (if known):_____

   If you filed a petition for *writ of certiorari* with the United States Supreme Court, answer the following:

   Result: _____

   Date of result: _____

10. Other than a direct appeal, have you filed any petitions, applications or motions from this judgment in any court, state or federal? This includes any state application for writ of habeas corpus that you may have filed.

    ☑ Yes ☐ No

11. If your answer to 10 is "Yes," give the following information:

    Name of court: __138th Judicial District Court__

    Nature of proceeding: __11.07 HABEAS CORPUS__

    Cause number (if known): __90-CR-68-B-1__

    Date (month, day and year) you <u>filed</u> the petition, application or motion as shown by a file-stamped date from the particular court.
    __Nov. 30, 1992__

    Grounds raised: __INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION__

    __FOR MURDER__

**CONTINUED ON NEXT PAGE**

Date of final decision: _____Jan. 20,1993_____

Name of court that issued the final decision: ~~COURT OF CRIMINAL APPEALS~~

As to any *second* petition, application or motion, give the same information:

Name of court: _138th Judicial District Court_____

Nature of proceeding: _11.07 HABEAS CORPUS_____

Date (month, day and year) you <u>filed</u> the petition, application or motion as shown by a file-stamped date from the particular court.
_Jan 19th 1994_____

Grounds raised: _DEFECTIVE INDICTMENT IMPOSSIBLE DATE ON INDICTMENT

_INEFFECTIVE ASSISTANCE OF COUNSEL_____

_INSUFFICIENT EVIDENCE AND DENIAL OF FAIR AND IMPARTIAL TRIAL

Date of final decision: _June 24,1994_____

Name of court that issued the final decision: _COURT OF CRIMINAL APPEALS_____

*If you have filed more than two petitions, applications, or motions, please attach an additional sheet of paper and give the same information about each petition, application, or motion.*

12.   Do you have any future sentence to serve after you finish serving the sentence you are attacking in this petition?
                              ☐     Yes          ☒     No
      (a)   If your answer is "yes," give the name and location of the court that imposed the sentence to be served in the future:

      _____

      _____

      (b)   Give the date and length of the sentence to be served in the future: _____

      _____

      (c)   Have you filed, or do you intend to file, any petition attacking the judgment for the sentence you must serve in the future?

              ☐     Yes          ☐     No

CONTINUED ON NEXT PAGE

ATTACHEMENT TO QUESTION  # 11

NAME OF COURT- 138th Judicial district court,Cameron County

NATURE OF PROCEDURE- 11.07 HABEAS CORPUS

FILED- MAY 16,2000

DENIED- June 5,2000

FINAL DECISION- DENIED COURT OF CRIMINAL APPEALS

August 16,2000 WRIT # 24,306-03

GROUNDS FOR RELIEF

Trial and Appellate counsel rendered ineffective assistance of counsel for
failing to argue the sufficiency of the evidence at trial and on appeal
when the state failed to prove what it alleged in the indictment,i.e., the
defendant (montoya) did intentionally and knowingly commit an act clearly
dangerous to human life that caused the death of Maria De Lourdes Teran ,
said act being shooting a firearm in the direction of Maria De Lourdes Teran.
2
Trial counsel rendered ineffective assistance of counsel by failing to
object to the insertion of the "law of parties" in the charge to the jury,
where the state had not provided any evidence to support such charge.
3
Trial counsel rendered ineffective assistance of counsel by failing to object
to the judge not recusing himself,when the judge advised defense counsel
that he is a "cousin" to the states key witness,Daniel Mora Garza,who also
played a major role in the death of Maria De Lourdes Teran
4
Trial counsel rendered ineffective assistance of counsel by failing to advise
the applicant of the dangers of a joint trial.
5
Appellate counsel rendered ineffective assistance of counsel by only arguing
frivolous issues on appeal,where clearly,non- frivolous issues existed that
should have been raised.
6
Trial counsel rendered ineffective assistance of counsel by failing to
develop a cogent defensive theory.

**Parole Revocation:**

13. Date and location of your parole revocation: _____

14. Have you filed any petitions, applications, or motions in any state or federal court challenging your parole revocation?

    ☐ Yes    ☐ No

    If your answer is "yes," complete Question 11 above regarding your parole revocation.

**Disciplinary Proceedings:**

15. For your original conviction, was there a finding that you used or exhibited a deadly weapon?    ☐ Yes    ☐ No

16. Are you eligible for mandatory supervised release?    ☐ Yes    ☐ No

17. Name and location of prison or TDCJ Unit that found you guilty of the disciplinary violation:

    _____

    Disciplinary case number: _____

18. Date you were found guilty of the disciplinary violation: _____

    Did you lose previously earned good-time credits?    ☐ Yes    ☐ No

    Identify all punishment imposed, including the length of any punishment if applicable, any changes in custody status, and the number of earned good-time credits lost: _____

    _____

19. Did you appeal the finding of guilty through the prison or TDCJ grievance procedure?

    ☐ Yes    ☐ No

    If your answer to Question 19 is "yes," answer the following:

    Step 1 Result: _____

    _____

    Date of Result: _____

    Step 2 Result: _____

    _____

- 5 -

CONTINUED ON NEXT PAGE

Date of Result: _____N A_____

**All applicants must answer the remaining questions:**

20. State clearly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting them.

    **CAUTION:**
    Exhaustion of State Remedies: You must ordinarily present your arguments to the highest state court as to each ground before you can proceed in federal court.
    Subsequent Petitions: If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

Following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement is a separate ground for possible relief. You may raise any grounds, even if not listed below, if you have exhausted your state court remedies. However, you should raise in this petition all available grounds (relating to this conviction) on which you base your belief that you are being held unlawfully.

DO NOT JUST CHECK ONE OR MORE OF THE LISTED GROUNDS. Instead, you must also STATE the SUPPORTING FACTS for ANY ground you rely upon as the basis for your petition.

(a) Conviction obtained by a plea of guilty which was unlawfully induced, or not made voluntarily, or made without an understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by the use of a coerced confession.

(c) Conviction obtained by the use of evidence gained from an unconstitutional search and seizure.

(d) Conviction obtained by the use of evidence obtained from an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the prosecution's failure to tell the defendant about evidence favorable to the defendant.

(g) Conviction obtained by the action of a grand or petit jury which was unconstitutionally selected and impaneled.

(h) Conviction obtained by a violation of the protection against double jeopardy.

(i) Denial of effective assistance of counsel.

(j) Denial of the right to appeal.

(k) Violation of my right to due process in a disciplinary action taken by prison officials.

(l) Denial of Due Process - Judges failure to recuse

(m) Actual Innocence

-6-

CONTINUED ON NEXT PAGE

A. **GROUND ONE:** _SEE ATTACHMET_

INEFFECTIVE ASSISTANCE OF COUNSEL_ 12 POINTS OF ERROR

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

CONVICTION OBTAINED BY THE USE OF A COERCED CONFESSION

B. **GROUND TWO:** _SEE ATTACHMENT_

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

C. **GROUND THREE:** _SEE ATTACHMENT_

CONVICTION OBTAINED BY THE USE OF EVIDENCE GAINED FROM AN UNCONSTITUTIONAL
SEARCH AND SEIZURE

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

- 7 -

CONTINUED ON NEXT PAGE

ATTACHMENT TO QUESTION # 20

GROUND # 1 INEFFECTIVE ASSISTANCE OF COUNSEL

Counsel failed to file a motion to suppress evidence that was obtained by an illegal search and seizure.

The defendant was arrested at his cousins house without a warrant of arrest, on the word of a convicted felon with a past criminal history,Daniel Garza who was the plaintiff and the states key witness.After a knock on the door by the Brownsville police department of defendants cousin's house,defendant was asked to step outside to answer some questions,upon stepping outside guns were placed at defendants head and he was hand-cuffed and taken to jail.Officers entered the house and removed a 16 ga.shotgun and some marijuana from the home,this evidence was used against the defendant at his trial,and this evidence had nothing to do with the reason for the defendants arrest.

This evidence was used by the state at the guilt innocence phase of the trial which the defendant never testified, to show the jury that the defendant was a drug traffiker that could kill anyone of them at the blink of an eye.

#2 Conviction obtained by the use of a coerced confession.

Counsel failed to file a motion to suppress the confession whuch was obtained through coercion and the fruit of an illegal arrest.

The defendant was taken into custody and told that he was there for questioning about a shooting that had taken place the night before. The defendant made a statement that he would rather be alive then dead , and that Daniel Garza had pointed a 12 ga. shotgun at him and that he had drawn his weapon and fired in self defense. The record shows that the defendant was never told that he was there for a murder investigation.

(1)

The plaintiff never testified, but the confession that he
was coerced into making was used against him by the state in
his trial,which counsel Mr. Barnard made no objection.

#3 Counsel failed to file a motion for the violation of miranda
rights. DENIAL OF DUE PROCESS

The record shows that the investigating officer stated that
they never read the defendant his Miranda Rights.

#4 Counsel failed to file a motion to quash the indictment for
insufficient evidence to support a murder charge.

The defendant was charged with the offense of murder by an in-
dictment , but the evidence showed that the defendant might
have been guilty of involuntary manslaughter, if he was guilty
of anything    at all. The actions of the defendant in this
case amounted to reckless conduct and an indictment for murder
should never have been returned. Testimony by a ballistics
expert showed the victim was killed by a 22 caliber bullet,
and the record shows that the defendant had a 38 caliber pistol
and no bullet holes from a 38 caliber were even found anywhere
on the car body,and only one bullet hole made by a 22 caliber
bullet. The indictment did not charge as to the law of parties,
but charged felony murder by shooting a gun in the direction
of the victim. One who fires a pistol while pointing it at
someone and kills another person cannot be guilty of negligent
homicide, since the act causing the death was not intentional.

The defendant was entitled to instruction on every defensive
issue raised by the evidence.The defendant,and co-defendant
stated that they only fired when Daniel Garza pointed a shotgun

(2)

AT THEM. This evidence of first agressor on the part of the plaintiff taken with the words the defendant stated in his confession that he had with Daniel Garza,considered together may foster apprehension of danger would support the use of deadly force in self defense.It does not matter who may be telling the truth,the plaintiff or the defendant; if any testimony or evidence showed the possibility of self defense,then an instruction on a lesser included offense was warranted by the court and should have been given,even if counsel failed to ask for such an instruction as he did in this case.

# 5 COUNSELFAILED TO OBJECT TO THE AMENDMENT OF THE INDICTMENT

On the day of the trial and in judges chambers, judge Garza told prosecutors Mr. Sullivan and Mr. Ponce that they needed to amend the indictment and cross out the word recklessly, or else the defendant could be sentenced to as little as ten years for manslaughter. This took place a half hour before trial, and also present were defendant with his attorney Mr.Barnard and co-defendant Castillo with his attorney Mr.Noe Garza. The amendment at this stage violated the defendants rights because when the grand jury convened to decide whether to indict defendant or not,they looked at the evidence presented by the state and felt that the indictment warranted the culpable mental state of recklessly, and thus included recklessly in the indictment. Not only could the indictment not be amended at this late stage,but the removal of the culpable mental state of recklessly took away the defendants right to

(3)

be charged with a lesser included offense of manslaughter, or
accidental homicide, thus this was not a matter of form, but
one of substance which also added a much more severe punishment.
The amendment of the indictment prejudiced substantial rights
of the defendant.The evidence showed that the defendant may have
been guilty of reckless conduct,conduct that placed another in
iminent danger of serious bodily harm. Reckless conduct is a
lesser included offense of involuntary manslaughter, and was an
element of the offense and as such should not have been removed.
# 6 COUNSEL FAILED TO ASK FOR AN INSTRUCTION ON A LESSER INCLUDED
OFFENSE
Defendants confession showed that defendant reasonably believed
himself to be in danger of death or serious bodily injury. Co-
defendant also testified to the fact that they were in fear for
their life. An accused is entitled to every defensive issue that
is raised by the evidence. A person is under no obligation to
retreat to avoid the necessity of repelling or defending,with
force less then deadly force against an attack or attempted attack.
The defendant made this claim in his confession which he thought
he was making in referrence to a shooting, he had not been told
at this point that anyone had been killed. The defendant stated
that he only fired in self defense after Daniel Garza pointed a
shotgun at him, and that he would rather be alive than dead.
This was evidence that he feared for his life,or was afraid of
incurring serious bodily injury. An instruction on a lesser
included offense should have been made by the trial court.

(4)

The trial judge denied the jury the fact questions for the jury
to decide by having the words recklessly removed from the indict-
ment,and by not giving the jury an instruction charge on the
lesser included offense of involuntary manslaughter as the
evidence showed. This error was not preserved,but is "egregious"
and the harm to the defendant is such that he was denied a fair
and impartial trial.

# 7 COUNSEL FAILED TO OBJECT TO A WRONG DATE ON THE INDICTMENT.
The indictment states that on Nov.8th the defendant committed
the crime. The evidence shows that the shooting occurred on the
6th day of Nov. before midnite,and that the defendant was arrested
the next day on the 7th of Nov.

# 8  COUNSEL FAILED TO OBJECT WHEN JUDGE REFUSED TO DISQUALIFY
HIMSELF
On the third day of trial it was discovered that the plaintiff
Daniel Garza was related to the trial judge. Defendant's wife
learned of this from a friend at work, on the third day of
the trial. The defendant brought this to the attention of his
attorney,Mr. Barnard, but Mr. Barnard did not want to bring it
to the attention of the trial court,so the defendant stood up
himself and made it clear to the judge that he did not feel
he could get a fair trial in that court because the plaintiff
and the trial judge were related.The attorney finally made the
argument himself that his client felt that he could not get
a fair trial and wanted the judge to disqualify himself. Judge
Garza stated that he was a first or second cousin of the plaintiff
but that they had not had any contact for sometime and that
this relatinoship would not influence his judgement in the case.

(5)

Judge Garza said that he would not recuse himself and that he was going to hear this case until the end of the trial. Judge Garza never told anyone that he was related to the plaintiff, and only made the admission when it had been discovered by the defendant's wife. A few months later the defendant discovered through the record that judge Garza had pulled this case from the docket of judge Darrel Hester in the 197th district court to his own docket in the 138th district court for the sole purpose of presiding over his cousin's case. Regardless of procedural sufficiency of a motion, a trial judge must disqualify himself and then refer the case to an administrative judge for further proceedings. The requirement that a motion for recusal be brought at least 10 days before the date set for trial or other hearing does not contemplate or apply in a situation in which a party cannot know the basis of recusal until after a motion for recusal is no longer timely. At this stage of the trial the verbal objection should have sent the matter to an administrative judge for a ruling. Defendant's attorney accepted the judge's word that the relationship with the plaintiff would not interfere with his judgement in the case.

#9  CONVICTION OBTAINED BY A VIOLATION OF THE PREVILEGE AGAINST SELF INCRIMINATION. COUNSEL FAILED TO OBJECT TO PROSECUTOR's SUMMATION TO THE JURY.

During the guilt innocence phase of the trial,the prosecution introduced into evidence a 16 ga. shotgun and some marijuana which were the fruit of an illegal search and seizure.

(6)

The prosecution told the jury that the defendant had a criminal history, and that his own cousin had refused to testify for fear that he would have her killed., and that the defendant could have anyone of the juror's killed without blinking an eye. The defendant chose not to testify which was his right under the 5th Amendment of the U.S. Constitution, and as such any evidence of extraneous offenses or pastcriminal history could not be brought out at this stage of the trial. Therewas   no   evidence   in   the record that the defendant had ever caused any harm to anyone,And the prosecutor's suggestion's that defendant    was    capable    of thiswas improper and should have been objected to by his attorney.

(10) COUNSEL FAILED TO REQUEST Brady material -DUE PROCESS
The plaintiff,Daniel  Garza  was  apprehended  in  the sally-port area of the Brownsville County  jail.  He  drove  his car through the sally-port area with a wounded victim inside, and      started firing a 12 ga.shotgun. As it turns out,this 12 ga.riot shotgun was stolen from the Brownsville police dept. and it had the serial numbers erased. At trial, testimony from officer Rossa was deve- loped that Daniel Garza was well known to the police dept.,and in his possition he also had a 22 caliber pistol,a nine milimeter pistol,and another weapon. This testimony was stricken from the record by the trial judge after an objection by the prosecutor. Evidence was also introduced that Daniel Garza was a convicted felon with a prison record,and three indictment's for shooting people. The  prosecutor  knew that Daniel Garza had several wea- pons  in  his  possition  when  he was detained in the sally-port area of the jail, and  that  one  of  the weapons was a stolen 12 ga. riot shotgun belonging to that police dept. and a nine milimeter pistol along with a 22 caliber pistol

(7)

The prosecutor also knew that the riot shotgun had the serial numbers erased, and that the 22 caliber was of the same caliber that the deceased had been killed with. The facts are that Daniel Garza was never charged with any weapon's violations even though he was a convicted felon in possition of a stolen riot shotgun belonging to the police dept. Instead Daniel Garza was made the states key witness. The above should have been material evidence for a claim under Brady material, only if reasonable probability exist that had evidence been disclosed , the result of the proceedings would have been different. This evidence would have given the defense another theory as to who may have killed the victim because the ballistics expert could not say for sure that the 22 caliber bullet recovered from the victims body was fired from the co=defendants pistol. It was not the duty of the court,or the state to cover up evidence of an exculpatory nature. It was also the duty of the prosecutor to disclose any information or evidence that may be used to impeach a witness's credibility. The duty to disclose has also been extended to the situation where no request is made by the defense "if the evidence" is clearly supported or supportive of a claim of innocence that it gives the prosecution notice of a duty to produce. The defendant claims that if the prosecution had made disclosure of the weapons that Daniel Garza had in his possession when he was detained, he would have had evidence that pointed to the possibility of a different theory of how the victim may have been killed, because when the plaintiff was detained he also had in his possession a 22 caliber pistol, and the bullet recovered from the body of the deceased was a 22 caliber, but the ballistics expert

(8)

was not able to determine whether it was fired from the co-

defendant's pistol or another 22 caliber pistol. If the defendant

had been given this information before trial the    trial    judge

would not have had it stricken from the record when it came out

in testimony. Daniel Garza was a convicted felon with a record

of shooting people,this was material evidence and if allowed may

have changed the outcome of the trial. The defendant also dis-

covered months after trial that the trial judge Robert Garza was
able to have this case removed from the 197th district court
of judge Darrell Hester,so that judge Garza could hear his own
cousin's case in his court room.   This violated the defendant's
Due Process rights to a fair and impartial trial.
A prosecutor's duty to disclose under Brady includes evidence
that may be used to impeach the credibility of a witness. The
duty to disclose has also been extended to the situation where
no request is made by the defense" if the evidence is clearly
supportive of a claim of innocence that it gives the prosecution
notice of a duty to produce.

(11) COUNSEL FAILED TO OBJECT TO THE CHARGE ON PAROLE LAW TO THE
     JURY

An instruction on the law of parole in the charge of the court

to the jury given pursuant to the mandate in Art. 37.07,§4(a)

V.A.C.C.P. is unconstitutional and should not have been given

in this case. The court instructed the jury at the punishment phase

of the trial on the full possibility of parole, and the time one

may have to serve, Based on the laws and constitution of the

state of Texas,such an instruction was unconstitutional, and a

violation of Art.II,Sec.1 of the Texas Constitution,and defendant

was thus denied a fair trial.

(12) COUNSEL FAILED TO PRESERVE ANY ERRORS FOR APPEAL,AND COUNSEL
FILED A FRIVOLUS ANDERS BRIEF ON APPEAL

Numerous errors were made through out the trial by defendant's attorney
Mr. Barnard, and he failed to object to most of them in order to
preserve for appeal. Mr.Barnard was also the attorney on appeal
so he was not about to file ineffective assistance of counsel on
himself. The actions of this attorney denied defendant his right
to an effective attorney on appeal. The actions of this attorney
also prejudiced defendant's case on appeal and defendant should be
allowed to file ineffective assistance of counsel and not be time
barred.

All of the errors taken as a whole, show that counsel's deficient
performance fell below the objective standard of reasonableness,
and counsel was not functioning as "counsel" guaranteed to the
defendant by the 6th amendment of the U.S.Constitution. The
defendant's states that the evidence meets the two prong standard
or test;the deficient performance test and the prejudice prong; and
that but for counsel's deficient performance,the outcome of his
trial would have been different.

GROUND OF ERROR NUMBER (13)
DENIAL OF DUE PROCESS-JUDGE FAILED TO DISQUALIFY HIMSELF

The trial judge who presided over this case was related to the
plaintiff by being a first or second cousin as the record shows
and by law he should not have heard this case. His refusal to
disqualify himself when the defendant complained that he felt
he could not get a fair trial, denied the defendant his right
to due process under the constitution,   This   same   judge   also
presided over the defendant's (3) state 11.07 writ of habeas
corpus,and was denied a fair and impartial hearing at that stage.
(10)

GROUND OF ERROR #14- JUDICIAL MISCONDUCT

During the trial while the defendant's attorney was questioning one of the states witnesses Sgt.Flores about contradictory statements he had made under oath, and in his report, a shouting match broke out between defendant's attorney and Sgt.Flores as to the truthfulness of his statements. The trial judge Robert Garza slammed his gavel for order and when the argument continued the judge left the courtroom without saying a single word to anyone. Prior to this incident no bailiff approached the bench and the judge got no message or phone call. After about fifteen minutes another judge approached the bench and announced that the judge had gotten a phone call about his daughter being ill and he had to leave.The trial was recessed until the afternoon of the next day. A motion for a mistrial was filed the next day by the defendant's lawyer, but was denied by the judge and he stated that he would continue to hear the case. The actions of judge Robert Garza denied the defendant his right to have a fair and impartial hearing, this judge should never have moved the case from the court of one judge to his own court to hear the case of his cousin.

GROUND OF ERROR # 15--STATE FAILED TO PROVE THAT DEFENDANT WAS A PARTY TO THE OFFENSE

The evidence developed at trial only showed that the defendant acted in self defense,and not that he acted in any way with co-defendant Castillo to become a party to the offense.The evidence did not show that he acted together in any way ,or had planned any crime what-so-ever,and should have known that the conduct of one or the other would make him a party to an offense.

(11)

Testimony by the plaintiff who was the states key witness should have been inpeached due to the many inconsistencies in his story. The plaintiff Daniel Garza stated that he had picked up Maria De Lourdes Teran to take her to buy diapers for her baby because she did not have a car. The record also shows that plaintiff stated under oath that for no reason the defendant's started shooting at him,so he took off in the car and the defendant's gave chase. Next the plaintiff states that during this high speed chase the victim tells him that she has a shotgun in the trunk of her car. So it's now the victims car instead of his and he pulls over during this supposedly high speed chase and stops,opens the trunk,pulls out the shotgun and loads it, yet no one ever caught up to him, and he continues to drive to the sally-port area of the sheriff's dept. to get help. If the 12 ga. shotgun was in the trunk of the car as the states key witness has stated, and this was in the middle of the night that he pulled over to retrieve it from the trunk,then how was the defendant able to confess that a 12 ga. shotgun had been pointed at him and that was the only reason he drew his pistol and fired in self defense? How was it that the defendant was found guilty as a primary actor when the evidence showed that the bullet that killed the victim came from co-defendant's pistol,and then after being found guilty as the primary actor he is found to be a party to the offense ? Looking at the entire trial record,the evidence shows that the defendant was innocent of the crime.

(12)

D.   **GROUND FOUR:**   _S E E   A T T A C H M E N T_

CONVICTION OBTAINED BY THE USE OF EVIDENCE OBTAINED FROM AN UNLAWFUL ARREST

Supporting FACTS (tell your story <u>briefly</u> without citing cases or law):

_____

_____

_____

_____

_____

21.   Have you previously filed a federal habeas petition attacking the same conviction, parole revocation, or disciplinary proceeding that you are attacking in this petition?

☐   Yes            ☒   No

If your answer is "yes," give the date on which <u>each</u> petition was filed, the federal court in which it was filed, and whether the petition was (a) dismissed without prejudice or (b) denied.

_____

_____

_____

22.   Are any of the grounds listed in paragraph 20 above presented for the first time in this petition?

☐   Yes            ☒   No

If your answer is "yes," state <u>briefly</u> what grounds are presented for the first time and give your reasons for not presenting them to any other court, either state or federal.

_____

_____

_____

- 8 -                                        CONTINUED ON NEXT PAGE

23.    Do you have any habeas corpus proceedings or appeals now pending in any court, either state or federal, relating to the judgment or proceeding under attack?

☐    Yes        ☒    No

If "yes," identify each type of proceeding that is pending (i.e., direct appeal, art. 11.07 application, or federal habeas petition), the court in which each proceeding is pending, and the date each proceeding was filed.

_____

_____

Wherefore, petitioner prays that the Court grant him the relief to which he may be entitled.

_____

Signature of Attorney (if any)

_____

_____

_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *December 10, 2003* (month, date, year).

Executed on *December 10, 2003* (date).

*Jontor Montoya* #544493
Signature of Petitioner (underline required)

**Petitioner's current address:**    EASTHAM UNIT
_____

P.O.BOX 16

_____

LOVELADY, TX  75851-0016

_____

- 9 -

## MOTION TO ALLOW EQUITABLE TOLLING

This case should be tolled for two very important reasons which
are as follows: Not only were the trial errors by trial counsel
Mr. Barnard so numerous that they   do  meet   the  standards set
out  in  Strickland  V  Washington  on  an ineffective assistance
of  counsel  claim, but the record shows that the defendant dili-
gently  has  pursued  this  case  since  he was sentenced some 15
years ago,but was denied at each of the (3) State 11.07 Writs'
that  he  filed  by  the same trial judge Robert Garza who should
have  disqualified  himself  at  the first.  trial because he was
a first or second cousin to the plaintiff Daniel Garza as the
record shows, so actually the  defendant  has  never  had  a fair
or  impartial  trial as is guaranteed by his constitutional rights
and this judgement should be void for the trial judges' failure
to disqualify himself. After a direct appeal and two 11.07 State
Writs', the defendant Santos Montoya hired Mr. Walter Pink in
1996, and made his first payment on Dec.13,1996 , Mr.Pink was
hired  to  file  a  federal  writ  of habeas corpus ( see exhibit
marked #1 page 2) and he charged 15,000  dollars  which  was paid
in  full  (see  exhibit  #4).  Mr.  Pink sent numerous letters to
his  client  telling  him  what  the status of the case was after
the  defendant  requested  to  know  what  was happening with the
case. The  defendant  was  first told that the federal writ would
be filed at the end of 1997, (see exhibit # 3) then the dates
started to change and the attorney kept coming up with reasons
why the federal writ had not yet been filed. Next the attorney
Mr. Pink requested money to buy another set of trial records
that  he  claimed  his  para-legal  had  lost, and more money was
supplied only to learn from the district clerk that no records
were ever purchased, (see  exhibit  #  1  page  3). The defendant
knew nothing about the law and could speak very little English
(defendant had an interpreter at trial) and this attorney took
advantage of him and never filed a federal writ. At   the   time
the defendant knew nothing about any time limitations and relied
on his attorney..

(1)

The defendant filed a grievance with the State Bar Of Texas against his attorney Mr. Walter Pink on March 28,2002 when he finally got tired of the stories his attorney was giving him and the attorney was found guilty of professional misconduct or lawyer misconduct on or about Sept.2002,(see exhibit # 2). The defendant believes that this case does meet the 5 prong test set out in Andrews V Orr (851 F 2d.146 6th cir)and that this case is one of extraordinary circumstances,and equitable tolling should be granted by this court in order that a fundamental miscarriage of justice does not occur.

The defendant in this case through due diligence has tried every step of the way to take his case to the federal courts', but has yet to file a federal habeas corpus. The defendant claims that this is one of those rare and exceptional cir-cumstances (177 F 3d.390) where through no fault of his own his attorney deliberately lied to him and was found guilty of lawyer misconduct by the State Bar Of Texas(see exhibit #2) page 2) around Sept.23,2002, and on or about July 22,2003 the defendant did receive some of his money back through the client security fund,(see exhibit #2 page #10 #11 #12). But, the defendant only discovered through prison gossip last year that a law had been passed in 1996 that gave him until April of 1997 to have a federal habeas corpus filed, and this is when he chose to file the grievance against his attorney on March 18.2002 (see exhibit #1). The defendant realized then that for the past years' his attorney had just been telling him one lie after another.

In Lonchar V Thomas (116 S Ct.1293) (1996) the court disapproved of dismissal of a first federal habeas corpus petition on equitable grounds outside of the statutory rule concerning delayed petitions. The court stated that dismissal of a first federal habeas corpus petition is a serious matter, for that dismissal denies the petitioner the protections of "The Great Writ" entirely,risking injury to an important interest in human liberty.

(2)

The state in this particular case would not be prejudiced
in it's ability to respond by this delay in filing ,because
the state as recently as the year 2000 replied to the defendant's
third 11.07 Habeas Corpus, and it indicated that it had looked
at the trial record,the direct appeal,and the (2) prior 11.07
state writ's,before denial of the third 11.07(see writ #3 page51).

The defendant claims that this case falls within the narrow
class of cases implicating a fundamental miscarriage of justice
as (Schlup V Delo 115 S Ct. 851 (1995)outlined. The  defendant's
trial was not free of non-harmless constitutional    error'  and
this first federal petition should be heard so that a fundamental
miscarriage of justice does not result from failure to entertain
this claim.
In  Massaro  V  U.S.   123  S  Ct.1690(2003),it was stated that a
trial lawyer who was ineffective and then was the same lawyer
on direct appeal was not going to claim ineffective assistance
on  himself,and  the  defendant  was  prejudiced  by the actions
of  trial  lawyer,and  should  have  a right to file ineffective
assistance at 11.07 stage and not be time barred. Equitable
tolling based on attorney abandonment of   client   who  pursued
his claim as diligently as possible (664 F Supp.232). In
Calderon V U.S.Dist.Court For Cent.Dist.163 F.3d 530(9th cir.1995)
his mental incompetency warranted the appointment of counsel,
should it be any different for this defendant in a non-capitol
case ,who barely speaks English to have counsel at a federal
habeas  corpus  stage?  The  defendant  through his family hired
Mr.Walter Pink to file a federal habeas corpus in   1996,   and
steadily  made  payments  for  (4)  years  until  the full amount
was paid. The  defendant  relied  on  his  attorney  to know the
law  and  to  know  what  needed  to be filed and when it needed
to be filed. He never expected his attorney to misrepresent
his case to him or to beat him out of his money. (see exhibit
#4), this was beyond defendant's control. Any resort to equity
must be reserved for those rare instances where,due to no
fault of the defendant, and do to circumstances external to
the party's own conduct, it would be unconscionable to enforce

(3)

the limitation period against the party and gross injustice would result (209 F.3d 325 4th cir.2000) Lawyer        misconduct justified equitable tolling in the case of (Seitzinger V Reading Hospital 165 F3d 236 where defendant persistently questioned her lawyer about what he had filed with the court.

The defendant submits the enclosed exhibits for the purpose of showing that he has diligently stayed on his case and made numerous inquiries as to when his attorney would file the federal writ. On May 16,2000 his attorney did file a proper State 11.07 Writ which was dismissed on aug.16,2000, but his attorney failed to file a federal habeas corpus after this and  let  the  one year limitation period elapse. The  defendant  claims  that  his attorney could  have  filed  before  April  1997,and could have filed again after the 11.07 was dismissed in Aug.16,2000, but his attorney never had any intention to file any federal writ and only filed the third writ to pacify his client.

The  defendant  claims  that  it would be a violation of his due process  rights  to  file  a  federal  writ ,if he is denied the o pportunity  to  do  so,because  his  attorney was found guilty of lawyer misconduct,something that the defendant had no control over. The defendant thus ask that this court not systematically deny his request before studying the issue presented. Attorney Pink passed away in August of 2002,the  defendant  did  not  know whether the State Bar would appoint an attorney for him or find a lawyer for him. When the State Bar ruled in his favor he was able to obtain assistance from an inmate to prepare his 2254,and after numerous hours of research the enclosed is being mailed.

*Jontos Montoya* #544493

Dec. 10, 2003

(4)

## CLAIM OF ACTUAL INNOCENCE

The defendant in this case is making the above claim because
he is innocent. The record in this case will show that the defendant
was arrested without a warrant of arrest, his property seized
without a search warrant, that he was never read his Miranda rights,
and was told that he was being questioned about a shooting that
had taken place the night before. He was never told that he
was being held for a murder, and the confession he thought
he was making in reference to the shooting was used as evidence
against him at his murder trial.

The record also shows that the plaintiff, Daniel Garza stated
that he picked up Maria De Lourdes Teran in his car to take
her to buy diapers because she did not have a car and needed a
ride to the store. The plaintiff who was the states key witness
also stated that Ms. Teran told him that she had a shotgun in
the trunk of her car so he pulled over to the side of the road
while supposedly being chased and pulled the 12 ga. shotgun
from the trunk and loaded it then proceeded on his way, to the
sally-port area of the Bronwsville Sheriffs' Dept. The above
is contradictory to what the plaintiff first stated in the record.
It was his car, but the only way that he could show that he had
not threatened the defendant earlier as the defendant has stated
was to tell this story that it was now the young victim's car
and that it was her shotgun. Still, this incident took place
in the middle of the night, how did the defendant know that Daniel
Garza had a 12 ga. shotgun, unless it was pulled out and pointed
at the defendant in front of the night club where there was
plenty of light to see it and identify it as a 12 ga shotgun, as
the defendant stated in the record. If the plaintiff was being
pursued by the defendant as he has stated under oath, then how
did he have time to pull over, open the trunk, load the shotgun, and
then proceed to the sally-port area without the defendant ever
catching up with him ?

This trial was heard by a judge who was a first or second cousin
to the plaintiff as the record shows, yet when asked to disqualify
himself as is the law, this judge refused to do so, violating
the defendant's right to a fair and impartial trial as guaranteed

(1)

by the U.S.Constitution. This judgement should also have been
void because this judge should not have heard this case. The
indictment charged the defendant as the primary actor even
though it was known that the victim had been killed with
a 22 caliber bullet,and the defendant had a 38 caliber pistol,
and as such should have been indicted as a party to the offense
but not as the primary actor. The defendant also was not
committing any felony to warrant a charge of first degree felony
murder. The trial judge excluded evidence of a testimony
by one of the states police witnesses,officer Rosas. He started
to say that Daniel Garza had in his possession when he was detained
in the sally-port area various weapons including a 22 caliber
pistol,this was material evidence under Brady V Maryland
because it pointed to another theory of how Ms. Teran may
have been killed, and the state had a duty to present this
evidence along with the plaintiff's prison record which would
have shown that the plaintiff had a criminal history of shooting
people ,and had already done prison time for shooting someone
in the past.
This actual innocence claim should be allowed to stand by
this court because the record shows that the defendant did
not shoot anyone. The defendant fired in self defense and
his bullet did not strike anyone or anything. The defendant's
lawyer by being ineffective procedurally defaulted by not
raising the issue of actual innocence on appeal.In Hinton V
Snyder 128 F.Supp.1165(N.D.Ill.2000) For the purpose of procedural
default rule in the federal habeas corpus setting a fundamental
miscarriage of justice occurs when a constitutional violation
has probably resulted in the conviction of one who is actually
innocent. It was never presented at trial that Daniel Garza
was a convicted felon who had served time for shootingsomeone
and that his prison record showed that he had been accused of
shooting people before. The waiver of a claim by not raising
it on appeal will be forgiven if the petitioner can show that
he is "actually" and not merely "legally " innocent of the
criminal charge against him Britz V Cowan 192 F 3d.1101 (7th
cir.1999).

It is clear that for habeas purposes the federal "fundamental
miscarriage of justice" standard means that petitioner must
establish actual innocence. Accordingly, a petitioner asserting
both innocence and constitutional error "need   carry   less   of
a burden" with respect to innocence then a petitioner who claimed
only innocence.

The state withheld Daniel Garza's department   of   corrections
file  which  would have revealed Garza"s long history of shooting
people. The defendant argues that the state was obligated under
Brady V Maryland 83 S Ct. 1194,to disclose to the defense this
critical information bearing on the   plaintiff's   long   history
of  criminal activity and credibility. The   prosecution   is
obligated  by  the  requirements  of    due process to disclose
material exculpatory evidence on it's own motion without request.
(see Kyles V Whitley 115 S Ct.1555)  Evidence  is  material  and
must be disclosed,if there  is  a  reasonable  probability  that
had the evidence been disclosed to the defense,the   result   of
the proceeding would have been different. Bagley 105 S Ct.3383)
Material  evidence  required  to  be  disclosed includes evidence
bearing on the credibility of a government witness.Bagley 105
S CT. 3380,Giglio 92 S Ct. at 766.

In  this  case  Daniel  Garza  was  the prosecutions star witness
and was known by the police and   prosecutors,his   nickname   was
"El Diablo",  which  they  also  knew  him  by because of his many
arrest.When  the  state  decides to rely on the testimony of such
a witness, it is the states obligation to turn over all infor-
mation bearing on the witnesses' credibility.  This must include
the witnesses criminal record,including prison records,and any
information that bears on credibility. The state had an obligation
before putting Garza on the stand to obtain and review the plaint
iffs corrections record, and to treat it's contents in accordance
with the requirements of Brady and Giglio. In this case when
the  defendant's  attorney  tried  to  elicit  testimony from the
plaintiff on the stand as to his criminal indictments for shooting
people ,the states objection was sustained and the defendant's
attorney admonished by the court, that the plaintiff was not
the accused.

The files contents were material because there is a reasonable probability that with the other evidence taken at trial, the disclosure of the file would have led to a different result in the outcome of the trial. The plaintiff's credibility was critical for a guilty verdict to be reached, the states case was balanced on who was to be believed, the plaintiff or the defendant. The defense never received, and the jury never heard any of the above information on the states key witness because it was sustained by a trial judge who was also a first or second cousin to the plaintiff., and as such had a duty to disqualify himself when the defendant complained; instead judge Robert Garza chose to violate the defendant's constitutional right's to due process by remaining on the case, thus also denying a fair and impartial trial. Had this evidence of the plaintiff's prolificacy in his profession been known, the defense could have used it question the thouroughness or good faith of an investigation that did not include Daniel Garza ,the states witness as a suspect. (see <u>Kyles at 444-48 115 S Ct. at 1571</u>

The fundamental miscarriage of justice exception is available "only where the prisoner supplements his constitutional claims with a colorful showing of factual innocence, <u>113 S Ct. 853(1993) Herrera V Collins</u> Chief justice William Rhenquist speaking for the majority said: When the defendant seeks to challenge the determination of guilt after he has been <u>validly</u> convicted and sentenced, it is fair to place on him the burden of proving his innocence ,not just raising doubt about his guilt <u>885 S.W.2d. 387 (Tex.Cri.App.1994)</u>. Some district courts have noted that the U.S.Constitution may require that when a claim of actual innocence is involved habeas review should remain open until a habeas petitioner has had at least one "meaningful opportunity for review". The court reasoned that to foreclose habeas review where a claim of actual innocence was made might violate the eighth amendment ban on cruel and unusual punishment or the suspension clause of the U.S.Constitution. <u>Holloway V Jones 166 F.Supp.2d.1185(E.D.Mich.2001)</u>.

The due process clause of the 14th amendment to the U.S.C
Constitution prohibits a criminal prodess that "offends"    some
principal of justice so rooted in  the  traditions and conscience
of our people as to be ranked as fundamentally unfair. That
in  light  of  all  the evidence it is more likely than not, that
no  reasonable  juror  would  have found petitioner guilty beyond
a reasonable doubt. Carriger V Stewart 132 F.3d.463 .

A  petitioner  making  a  miscarriage  of justice claim need only
present evidence of innocence strong enough "that a court cannot
have  confidence  in  the  outcome  of the trial unless the court
is also satisfied that the trial was free of non harmless consti-
tutional error. This defendant believes that he has shown suffici
ent doubt about the validity of his conviction to satisfy the
Schlup  V  Delo   115S.Ct.   851,and   permit  consideration of his
constitutional claims.
The defendant contends that too many constitutional errors'
in this case were the result of his being convicted,   and    that
this case needs to be reviewed by this court.

_Santa Verboga_ 544493
Dec. 10, 2003

(5)

AFFIDAVIT

I,Santos Montoya, being of sound mind over 21 years of age do
make the following statements in support of my 2254 federal writ.
Every allegation that I have made in the enclosed 2254 motion
I have made from recollections of my trial and I know them to
be true and most of the allegations are supported by the record.
On the third day of my trial I discovered that the trial judge
was related to the plaintiff Daniel Garza, they were cousins.
The judge never bothered to bring this to the attention of the
court and when I learned of this relationship through my wife
and brought it to the judges attention and asked that he recuse
himself because I felt that I could not get a fair trial,the
judge stated that he was related to the plaintiff by first
or second cousins, but that he had a distant relationship with
the plaintiff and that he was not going to recuse himself and
was going to hear the case.
After I was convicted I discovered that my trial judge had
pulled the case from the 197th district court of judge Darrell
Hester,to his own courtroom so that he could preside over his cou-
sins trial ( this is in the record ).
Also during trial my attorney got into a shouting match with
one of the officers on the witness stand because the officer
had told three different stories, and when my attorney asked
him to just tell the true version the judge asked my attorney
to be quiet,and when my attorney would not be quiet the judge
pounded his gavel and stormed out of the court room in the
middle of the trial, No bailiffever approached the bench,or
did the judge get any phone calls. When the judge did not return

1

after about fifteen minutes or so another judge showed up and said that court would be recessed for five minutes so I was escorted back to the holding area. Court did not resume until the next afternoon, and at that time we were told that the judge had gotten a phone call and had to leave because his daughter was ill. No bailiff ever approached the bench to talk to the judge, and the judge did not get any message or phone call. After the argument between the trial judge, the prosecutor, the witness and my attorney the judge just stormed out of the courtroom mad in the middle of the trial. The next day my attorney asked for a mistrial,but the judge denied it.

This same trial judge asked the prosecutor a half hour before trial to amend the indictment by removing the word "recklessly" or else the defendant could get just a ten year sentence.

I,Santos Montoya being of sound mind and capable of making the above statement,and a resident of Houston County,Texas do declare under the penalty of perjury that the foregoing is a true and correct statement.

Signed _Santos Montoya_ #544493

Nov.24,2003

APPLICANT    **SANTOS MONTOYA**                APPLICATION NO. **24.306/03**

# APPLICATION FOR 11.07 WRIT OF HABEAS CORPUS

## ACTION TAKEN

**DISMISS.  SEE ART 11.07 § 4, V.A.C.C.P.**

_____                          8-16-2000
JUDGE                                                          DATE

**COURT OF CRIMINAL APPEALS NO. <u>24,306-03</u>**

**CAUSE NO. <u>90-CR-68-B</u>**

**WRIT III**

**CLERK'S RECORD**

**THE STATE OF TEXAS**

**VS**

**<u>SANTOS MONTOYA</u>**

*24,306-03*

**MAILED TO THE COURT OF CRIMINAL APPEALS ON**

**<u>JUNE  8,  2000</u>**

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 12 2000

Troy C. Bennett, Jr., Clerk

**AURORA DE LA GARZA
CAMERON COUNTY DISTRICT CLERK**

BY _Jessica Cruz_ **DEPUTY**
     JESSICA CRUZ

**FILED IN COURT OF CRIMINAL APPEALS, AT AUSTIN, TEXAS**

**THE _____ DAY OF _____ 2000.**

**TROY C. BENNETT, JR., CLERK OF COURT OF CRIMINAL APPEALS**

**BY _____ DEPUTY**

EX PARTE: **SANTOS MONTOYA**          APPLICATION FOR WRIT OF HABEAS CORPUS

                                      FROM   CAMERON   COUNTY,   TEXAS

                                      IN THE **138TH** JUDICIAL DISTRICT COURT


TRIAL COURT NO. **90-CR-68-B**

APPLICANT'S NAME: **SANTOS MONTOYA**

OFFENSE: **MURDER**

CAUSE NO. **90-CR-68-B**

SENTENCE: **EIGHTY-FIVE (85) YEARS TDCJ-ID**

SENTENCE IMPOSED: **03/27/90**

JUDGE PRESIDING AT TRIAL: **HON. ROBERT GARZA**

COURT OF APPEALS NO. **13-90-165-CR**

CITATION TO OPINION: **210** S.W. 2d **574**     **210** S.W.2d **579**
                     **210** S.W. 2d **580**     **586** S.W.2d **553**


HEARING HELD ON APPLICATION: ___ YES  **X** NO

FINDINGS OF FACTS FILED: ___ YES  **X** NO

RECOMMENDATION: ___ GRANT  **X** DENY  ___ NONE

JUDGE PRESIDING OVER APPLICATION: **HON. ROBERT GARZA**

CAUSE NO.  **90-CR-68-B**

**WRIT III**

PETITIONER: **SANTOS MONTOYA**

FROM: **AURORA DE LA GARZA**, District Clerk
974 E. HARRISON
BROWNSVILLE, TEXAS 78520

**ATTORNEY FOR DEFENDANT:**
HON. WALTER J. PINK
STATE BAR NO. <u>16016500</u>
WALTER J. PINK & ASSOCIATES
2646 SOUTH LOOP WEST # 195
HOUSTON, TEXAS 77054
PHONE NO. <u>(713) 664-6651</u>
FAX NO.   <u>(713) 664-3242</u>

**ATTORNEY FOR STATE:**
HON. YOLANDA DE LEON
STATE BAR NO. <u>05652420</u>
974 E. HARRISON STREET
BROWNSVILLE, TEXAS 78520
PHONE NO. <u>(956) 544-0849</u>
FAX NO.   <u>(956) 544-0869</u>

## I N D E X

| INSTRUMENT | PAGE |
|---|---|
| APPLICATION FOR WRIT OF HABEAS CORPUS FILED 05/16/00 | <u>1</u> |
| LETTER TO JUDGE HON. ROBERT GARZA DATED 05/18/00 | <u>48</u> |
| LETTER TO HON. YOLANDA DE LEON DATED 05/18/00 | <u>49</u> |
| ACKNOWLEDGMENT LETTER TO HON. WALTER J. PINK DATED 05/18/00 | <u>50</u> |
| ORDER ON APPLICANT'S THIRD APPLICATION FOR WRIT OF HABEAS CORPUS (SIGNED 06/05/00) | <u>51</u> |
| BILL OF COSTS | <u>53</u> |
| CERTIFIED BILL OF COSTS | <u>54</u> |
| CLERK'S CERTIFICATE | <u>55</u> |

No. _____

FILED 8.40 O'CLOCK A M
AURORA DE LA GARZA DIST. CLERK

MAY 1 6 2000

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

In the District Court of

Cameron County, Texas

138th Judicial District

Trial Cause No. 90-CR-0068-B

Ex Parte Santos Montoya,

Applicant,

Vs.

The State of Texas,

Respondent.

## APPLICATION FOR WRIT OF HABEAS CORPUS

Walter J. Pink & Associates
Walter J. Pink (Counsel)
TBA #16016500
2646 South Loop West, Suite #195
Houston, Texas 77055
Telephone (713) 664-6651 or 6652
Facsimile (713) 664-3242
Attorney for Mr. Montoya (Applicant)

i

1

# Table of Contents

|  |  | Page |
|---|---|---|
| Table of Authorities . . . . . . . . . . . . . . . . . . . . . | | iv |
| Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . | | 1 |
| Confinement and Restraint . . . . . . . . . . . . . . . . . | | 2 |
| Entitlement to Relief . . . . . . . . . . . . . . . . . . . | | 2 |
| Statement of the Nature of the Case . . . . . . . . . . . . | | 3 |
| Grounds for Relief . . . . . . . . . . . . . . . . . . . . | | 3 |
| Grounds . . . . . . . . . . . . . . . . . . . . . . . . . . | | 7 |

1.   Trial and Appellate Counsel rendered
     ineffective assistance of counsel for failing
     to argue the sufficiency of the evidence at
     trial and on appeal when the State failed to
     prove what it alleged in the indictment, i.e.,
     the defendant (Montoya) did intentionally and
     knowingly commit an act clearly dangerous to
     human life that caused the death of Maria De
     Lourdes Teran, said act being shooting a
     firearm in the direction of Maria De Lourdes
     Teran. . . . . . . . . . . . . . . . . . . . . . . . 8

2.   Trial counsel rendered ineffective assistance
     of counsel by failing to object to the
     insertion of the "law of parties" in the
     charge to the Jury, where the State had not
     provided any evidence to support such charge . . . 22

3.   Trial counsel rendered ineffective assistance
     of counsel by failing to object to the Judge
     not recusing himself, when the Judge advised
     defense counsel that he is a "cousin" to the
     State's key witness, Daniel Mora Garza, who
     also played a major role in the death of Maria
     de Lourdes Teran . . . . . . . . . . . . . . . . . 28

4.   Trial counsel rendered ineffective assistance of
     counsel by failing to advise the Applicant of the
     dangers of a joint trial . . . . . . . . . . . . . 31

ii

5.  Appellate counsel rendered ineffective assistance
    of counsel by only arguing frivolous issues on
    appeal, where clearly, non-frivolous issues existed
    that should have been raised . . . . . . . . . . .  35

6.  Trial counsel rendered ineffective assistance of
    counsel by failing to develop a cogent defensive
    theory . . . . . . . . . . . . . . . . . . . . . . .  36

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . .  39

Certificate of Service . . . . . . . . . . . . . . . . . . .  40

## Table of Authorities

**State Cases**                                     **Page**

*Acy v. State,*
618 S.W.2d 362 (Tex. Crim. App. 1981) . . . . . . . . 9, 24

*Adelman v. State,*
828 S.W.2d 418 (Tex. Crim. App. 1992, pet. ref'd) . . . 23

*Baldwin v. state,* 668 S.W.2d 762
(Tex. App. –Houston [14th Dist.] 1984, no pet.) . . . . . 5

*Beardsley v. State,*
738 S.W.2d 631 (Tex. Crim. App. 1987, pet. granted) 25, 26

*Beier v. State,*
687 S.W.2d 2 (Tex. Crim. App. 1985, pet. granted) . 12, 24

*Bridge v. State,*
726 S.W.2d 558 (Tex. Crim. App. 1986, no pet.) . . . . . . 7

*Brooks v. State,*
580 S.W.2d 825 (Tex. Crim. App. 1979) . . . . . . . . . 18

*Bush v. State,*
506 S.W.2d 603 (Tex. Crim. App. 1974) . . . . . . . . . 25

*Butler v. State,*
716 S.W.2d 48 (Tex. Crim. App. 1986, no pet.) . . . . . . 7

*Cordova v. State,*
698 S.W.2d 107 (Tex. Crim. App. 1985) *cert. denied,*
106 S.Ct. 1942 (1986) . . . . . . . . . . . . . . . . . 26

*Craig v. State,*
847 S.W.2d 434 (Tex. App. –El Paso 1993, pet. granted) . 36

*Clewis v. State,*
922 S.W.2d 126 (Tex. Crim. App. 1996, pet. granted) 13, 23

*Buitureida v. State,* 684 S.W.2d 133
(Tex. App. –Corpus Christi 1984, pet. ref'd). . . . . . 26

*Elam v. State,*
841 S.W.2d 937 (Tex. App. –Austin 1992, no pet.) . . . . 28

*Ex parte Daigle*,
    848 S.W.2d 691 (Tex. Crim. App. 1993, no pet.) . . . . . 35

*Ex parte Guzmon*,
    730 S.W.2d 724 (Tex. Crim. App. 1987, no pet.) . . . . . . 7

*Ex parte Shields*,
    550 S.W.2d 670 (Tex. Crim. App. 1976, no pet.) . . . . . . 1

*Gamez v. State*,
    737 S.W.2d 315 (Tex. Crim. App. 1987, pet. ref'd) . . . 28

*Jones v. State,*
    944 S.W.2d 642 (Tex. Crim. App. 1996), *cert. denied*,
    118 S.Ct. 100 (1997) . . . . . . . . . . . . . . . . . 13

*Lugo-Lugo v. State*,
    650 S.W.2d 72 (Tex. Crim. App. 1983, no pet.). . . . . . . 8

*Madden v. State*,
    911 S.W.2d 236 (Tex. App. -Waco 1995, pet. ref'd) . . . 28

*Medellin v. State,*
    617 S.W.2d 229 (Tex. Crim. App. 1981) . . . . . . . 12, 24

*Meraz v. State,*
    785 S.W.2d 146 (Tex. Crim. App. 1990, pet. ref'd) . . . 23

*Moore v. State*,
    694 S.W.2d 528 (Tex. Crim. App. 1985, no pet.) . . . . 8, 26

*Navarro v. State*, 776 S.W.2d 710
    (Tex. App. -Corpus Christi 1989, pet. ref'd). . . . . . 24

*Randle v. State*, 760 S.w.2d 30
    (Tex. App. -Houston [1st Dist.] 1988, no pet.) . . . . . 35

*Scott v. State*,
    934 S.W.2d 396 (Tex. App. -Dallas 1996, no pet.) . . . . 13

*Stone v. State*,
    823 S.W.2d 375 (Tex. App. -Austin 1992,
    pet. ref'd) . . . . . . . . . . . . . . . . . . . . . 23

*Thomas v. State*,
    645 S.W.2d 798 (Tex. Crim. App. 1983) . . . . . . . . 25

5

*Urtado v. State,*
        605 S.W.2d 907 (Tex. Crim. App. 1980) . . . . . . . . .   24


Federal Cases

*Bruton v. United States,*
        88 S.Ct. 1620 (1968) . . . . . . . . . . . . . . . . .   31

*Cuyler v. Sullivan,*
        100 S.Ct. 1708 (1980) . . . . . . . . . . . . . . . .   34

*Goodwin v. Johnson,*
        132 F.3d 162 (5th Cir. 1997) . . . . . . . . . . . . .   35

*In re Winship,*
        90 S.Ct. 1068 (1970) . . . . . . . . . . . . . . . . .   23

*Luna v. United States,*
        308 F.2d 140 (5th Cir. 1962) . . . . . . . . . . . . .   31

*Mullaney v. Wilbur,*
        95 S.Ct. 1881 (1975) . . . . . . . . . . . . . . . . .   23

*Porter v. United States,*
        298 F.2d 461 (5th Cir. 1962) . . . . . . . . . . . . .   35

*Ricalday v. Procunier,*
        736 F.2d 203 (5th Cir. 1984) . . . . . . . . . . . . .   35

*Strickland v. Washington,*
        104 S.Ct. 2052 (1984) . . . . . . . . . . . . . . . 7, 37

Statutes
TEX. CODE CRIM. PROC. ANN art. 11.07 (Vernon 1993-94) . . . . . . . . . 1
TEX. CODE CRIM. PROC. ANN art. 1.04 (Vernon 1993-94) . . . . . . . . . 4
TEX. CODE CRIM. PROC. ANN art. 1.05 (Vernon 1993-94) . . . . . . . . . 4
TEX. CODE CRIM. PROC. ANN art. 1.051 (Vernon 1993-94) . . . . . . . . . 4
TEX. CODE CRIM. PROC. ANN art. 44.25 (Vernon 1993-94) . . . . . . . . 23
TEX. CODE CRIM. PROC. ANN art. 7.02 (Vernon 1993-94) . . . . . . . . 25

TEX. PENAL CODE § 19.02 . . . . . . . . . . . . . . . . . . . . . 3
TEX. PENAL CODE § 2.01 . . . . . . . . . . . . . . . . . . . . . 23

U.S. CONST. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . .35
U.S. CONST. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . 6

vi

6

TEX. CONST. art. 1, §§ 13, 19, & 29  . . . . . . . . . . . . . . . 6
TEX. CONST. art. 1, § 15 . . . . . . . . . . . . . . . . . 3, 6
TEX. CONST. art. 1, § 10 . . . . . . . . . . . . . . . . . . 6
TEX. CONST. art. V, §6(c)  . . . . . . . . . . . . . . . . 23
TEX. CONST. art. V, §11  . . . . . . . . . . . . . . . . . 28

7

No. _____



EX PARTE
SANTOS MONTOYA,                              In the District Court of

Vs.                                          Cameron County, Texas

ALFRED D. HUGHES UNIT of the
Texas Department of Criminal                 138th Judicial District
Justice, Institutional Division
in Coryell County, Texas,
Respondent.

**Santos Montoya,** applicant in the above-entitled and numbered

cause, files this post-trial application for Writ of Habeas Corpus

pursuant to article 11.07 of the Texas Code of Criminal Procedure,

and respectfully urges this Honorable Court to issue this writ for

the following grounds and reasons:


I.
(Jurisdiction)

This Honorable Court has jurisdiction to issue a writ of

habeas corpus under article 11.07 of the Texas Code of Criminal

Procedure, TEX. CODE CRIM. PROC. ANN art. 11.07 (Vernon 1993-94),

following Judge Onion's holding in *Ex Parte Shields*, 550 S.W.2d 670

(Tex. Crim. App. 1976, no pet.) that stated in part: "Habeas corpus

lies only to review jurisdictional defects and denials of

fundamental or constitutional rights." Mr. Montoya submits that

this Court has jurisdiction under Article 11.07 of the Texas Code

of Criminal Procedure, *supra*, to challenge the constitutionality of

his confinement. A review of the evidence will clearly show that

1

8

Applicant is innocent of the crime for which he was convicted.

## II.
### (Confinement and Restraint)

Santos Montoya ("Applicant") is being confined because of a lack of due process and equal protection under the law. Due to ineffective representation of counsel and perjured testimonies at the trial and appellate levels, Applicant received an unfair and partial trial and appeal. Respondent (Alfred D. Hughes Unit of the Texas Department of Criminal Justice, Institutional Division, hereinafter "TDCJ-ID") is holding Applicant in custody based upon judgments and convictions in Cause No. 90-CR-0068-B (Murder). Applicant was charged, convicted, and sentenced to 85 years in the 138th Judicial District Court of Cameron County, Texas. The following is a chronological account of the judicial proceedings that took place in the above-enumerated cause:

1. Applicant was convicted by a jury on March 26, 1990;

2. Notice of Appeal was filed on April 17, 1990;

## III.
### (Entitlement to relief)

Applicant is entitled to habeas corpus relief because his conviction and it's affirmation on appeal was obtained in violation of his state and federal constitutional rights.

Applicant brings forth, this, his post-trial application for Writ of Habeas Corpus, to assure the constitutional protection of

his rights and to reduce the risk of remaining indefinitely confined on a constitutionally infirm conviction.

IV.
(Statement of the nature of the case)

Applicant was charged by indictment with the felonious offense of murder, a violation of Section 19.02 of the Texas Penal Code. Applicant has attached a copy of those indictments hereto, to be incorporated, herein, for all purposes. (Marked as Exhibit 'B')

Applicant was represented by Glen A. Barnard, Esquire, through the trial attorney's case-in-chief, including the sentencing phase in the case at bar; and thus, Mr. Barnard was recorded as the Attorney of Record or *trial counsel*. The trial court appointed Mr. Barnard to represent Applicant during his appeal as well.

V.
(Grounds for Relief)

Applicant contends that Respondent is violating his constitutionally protected rights by keeping him imprisoned. Due to ineffective assistance of counsel, at both the trial and appellate levels, the conviction does not comport with due process of law and the accused's right to enjoy the Sixth, and Fourteenth Amendments of the United States Constitution. Further, this conviction violates article 1, Sections 10 and 15 of the Texas Constitution, as well as the Texas Code of Criminal Procedure,

3

*10*

articles 1.04 (Due Course of Law), article 1.05 (Rights of Accused) and article 1.051 (Right to Representation by Counsel).

Trial counsel rendered ineffective assistance of counsel by not arguing the sufficiency of the evidence at the close of the State's case-in-chief. The State failed to prove that Applicant did, knowingly and intentionally, kill Maria De Lourdes Teran. Further, the State failed to show that Applicant and his co-defendant acted together in furtherance of the offense. The State included in the jury charge the "law on parties," although it had not supported that charge in it's case-in-chief, and Trial counsel failed to object to such charge. Trial counsel allowed the jury to consider the "law of parties," even though the State has not provided any evidence to support it's claim.

Furthermore, trial counsel discovered at the beginning of the trial that the Judge is related to the State's key witness and major participant. Applicant was shocked when he discovered this and immediately requested that trial counsel make a motion to recuse, however, trial counsel persuaded Applicant to trust Counsel's judgment concerning this matter. Trial counsel advised Applicant that he had nothing to worry about, and thus, trial counsel took a chance in allowing the Judge to hear the case over Applicant's strong objections.

The State may take the position that trial counsel's acts and/or omissions were that of trial strategy; however, Applicant

4

**11**

would disagree with that proposition. Even if Applicant's trial counsel's manner of conducting trial was trial strategy, it was so ill-chosen as to render the trial fundamentally unfair. *Baldwin v. State*, 668 S.W.2d 762 (Tex. App. -Houston [14th Dist.] 1984, no pet.). The symbol of justice and fairness is as important as justice itself.

Similarly, at the appellate level, the Appellate Counsel failed to advance any meaningful representation of the Applicant. Even though the appellate counsel reviewed the record and observed that there were many errors during the trial which appellate counsel should have seen, the issues were not brought up as points of error in the brief counsel prepared and filed on behalf of Applicant. The only issue that was brought up on appeal was a frivolous issue, although the record, clearly, indicated several errors that needed to be reviewed on appeal. This is not surprising since the court appointed the same counsel, Mr. Barnard, during trial and on appeal. To ask Mr. Barnard to argue any substantive issues on appeal, is equivalent to asking him to take a hi-liter and hi-lite all his mistakes. The Applicant was entitled to effective representation during this critical stage of his defense. Failure to present the proper issues on appeal prevented Applicant's preservation of his fundamental right to counsel.

Applicant is entitled to habeas corpus relief because he was

12

denied effective assistance of counsel at trial and on direct appeal as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and the Texas Constitution, Article 1, §§ 13[1], 15[2], 19[3] and 29[4]. The acts and/or omissions of the trial counsel, which will be enumerated infra, were such that Applicant did not receive a fair trial. These acts and/or omissions were not part of a reasoned trial strategy. Trial counsel's representation, gauged from the totality of the record, was such that his performance fell below the minimum standards acceptable by the Federal and State constitutions. But for counsel's errors, there is a reasonable probability that Applicant's trial would have

---

[1]TEX. CONST., art. 1, §13. EXCESSIVE BAIL OR FINES; CRUEL AND UNUSUAL PUNISHMENT; REMEDY BY DUE COURSE OF LAW. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

[2]TEX. CONST., art. 1, §15. RIGHT OF TRIAL BY JURY. The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency. Provided, that the Legislature may provide for the temporary commitment, for observation and/or treatment, of mentally ill persons not charged with a criminal offense, for a period of time not to exceed ninety (90) days, by order of the County Court without the necessity of a trial by jury. (Amended Aug. 24, 1935.)

[3] TEX. CONST., art. 1, §19. DEPRIVATION OF LIFE, LIBERTY, ETC.; DUE COURSE OF LAW. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

[4]TEX. CONST., art. 1, §29. PROVISIONS OF BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT; TO FOREVER REMAIN INVIOLATE. To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

13

reached a different result and Applicant would have been acquitted of all charges.

## VI.
### (Grounds)

The test to be applied in determining ineffective assistance of counsel is found in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). No mechanistic formula is provided by *Strickland*: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Butler v. State*, 716 S.W.2d 48 (Tex. Crim. App. 1986, no pet.) quoting *Strickland*, 104 S.Ct. at 2064. A defendant seeking relief under *Strickland* must show that counsel's performance was deficient and the defendant must show that the deficient performance prejudiced the defense. *Butler*, 716 S.W.2d at 54. When clarifying the "prejudice" prong of this two part test, the *Strickland* Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Ex parte Guzmon*, 730 S.W.2d 724, 733 (Tex. Crim. App. 1987, no pet.) quoting *Strickland*, 104 S.Ct. at 2068.

The standard has never been interpreted to mean that the accused is entitled to errorless or perfect counsel. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986, no pet.). When

7

**14**

reviewing a claim of ineffective assistance of counsel, judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 104 S.Ct. at 2065. Whether the *Strickland* standard has been met is to be judged by "the totality of the representation." *Id.* The standard of review used in determining ineffective assistance of counsel is the "preponderance of the evidence". *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985, no pet.).

Applicant's trial counsel failed to act as a reasonably competent counsel would have acted under the same or similar circumstances in each of the following respects:

**1. TRIAL AND APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO ARGUE THE 'SUFFICIENCY OF THE EVIDENCE' ISSUE AT TRIAL AND ON APPEAL WHEN THE STATE FAILED TO PROVE WHAT IT ALLEGED IN THE INDICTMENT, I.E., THE DEFENDANT (MONTOYA) DID INTENTIONALLY AND KNOWINGLY COMMIT AN ACT CLEARLY DANGEROUS TO HUMAN LIFE THAT CAUSED THE DEATH OF MARIA DE LOURDES TERAN, SAID ACT BEING SHOOTING A FIREARM IN THE DIRECTION OF MARIA DE LOURDES TERAN.**

In order for the State to properly convict for the offense of murder in the State of Texas, the prosecutor must allege and prove, beyond a reasonable doubt, that (1) the individual intends to cause serious bodily injury, (2) commits an act clearly dangerous to human life that (3) causes the death of an individual." *Lugo-Lugo v. State,* 650 S.W.2d 72, 81 (Tex. Crim. App. 1983, no pet.).

The indictment in the present case provided, in pertinent

8

**15**

part, that:

> The defendants did then and there unlawfully attempt to commit a felony, namely murder, and in the course of and in furtherance of the attempt to commit said felony, the defendants did intentionally and knowingly commit an act clearly dangerous to human life that caused the death of Maria De Lourdes Teran, said act being shooting a firearm in the direction of Maria De Lourdes Teran.

Shooting a firearm in the direction of Maria De Lourdes Teran, alone, does not support a conviction of murder. The State called 17 witnesses to testify in[1] its case-in-chief, none of whom testified that Applicant's gun was the actual cause of death. In fact, the State introduced into evidence a ballistics report showing that the bullet retrieved from the body of Maria De Lourdes Teran was fired from a .22 caliber gun, not a .38 which Applicant owned. (R. Vol. II, Page 6) Shooting a hand gun, in and of itself, does not make one guilty of murder, unless, all of the elements of murder are proven beyond a reasonable doubt. In the present case, the State did not prove that Applicant killed anyone, intentionally or knowingly.

The co-defendant, Jose Hernandez Castillo, had confessed and testified that he was the one who shot at the car, not Montoya. Montoya only shot in the air. (R. Vol. II, Pages 225-226, 229) Montoya never planned to kill anyone, he had no knowledge of Jose Castillo carrying a weapon until he heard gun shots. The fact that Jose Castillo may have killed Maria De Lourdes Teran, does not make Applicant guilty of murder. The mere presence at the scene of an

**16**

offense alone, without evidence of intentional participation is insufficient to support a conviction. *Acy v. State*, 618 S.W.2d 362 (Tex. Crim. App. 1981).

Statement of Hernandez Castillo (R. Vol. II, Pages 231-232):
7:       "I saw that man backed up and then stopped on
8:    East 14th Street.  I next saw the man with a shotgun
9:    (decortada) sawed off. He chambered (la corto) the
10:   shotgun and pointed the shotgun at Montoya.  Montoya had
11:   walked up to the man's car by now.
12:      "When I saw that the man was going to shoot Montoya,
13:   I pulled out my .22 caliber handgun (black in color) from
14:   my crotch area.  I shot once at the car. The guy took
15:   off and I shot again at the back window when the man took
16:   off.  Montoya also had a gun with him.  He had a .38
17:   chrome (cromiada) gun.
18:      "Montoya shot twice in the air.  He did not shoot at
19:   the car.  The man in the Chevrolet took off (hecho
20:   madre).  We got into Montoya's car.  The woman drove.  We
21:   got onto East 14th Street and turned onto Arthur.  We
22:   headed to Montoya's house in La Posada Subdivision.
(Page 233):
18:      "I feel that I only acted in self-defense when I
19:   shot at the man in the Chevrolet.  Even though he did not
20:   shoot, I though that he was, and if he had Montoya, the
21:   woman (Montoya was with) and I would have been killed.

When the co-defendant noticed that a man pulled out his shotgun and pointed it at Applicant, he felt compelled to pull out his gun and defend Applicant.  Not realizing what's going on, however, seeing a shotgun pointed at him, Applicant had no choice but to defend himself.  Applicant only intended to scare this man (Diablo), to get him to put down his shotgun; he didn't intend to kill anyone.

Statement of Santos Montoya (R. Vol. II, Pages 264-265):
23:      "And then I heard he cocked a shotgun.  I have
24:   heard what it sounds like when a shotgun is cocked, so I
25:   knew when he had a shotgun.  I knew that he had a shotgun
1:    because he picked it up from the driver's side and I saw

```
 2:  it.
 3:       "I did not see if anybody was with him because I was
 4:  just looking at him.  I remember that I shot at him five
 5:  times as he drove off by me.  Maybe he was trying to run
 6:  me off with his car also.  I used my .38 caliber handgun
 7:  to shoot at him.  As soon as he took off, I left in my
 8:  car.  I got in my car and went down on East 14th Street
 9:  and turned left when I got to the expressway.  I kept on
10:  driving straight.
```

Had Applicant in fact intended to kill someone he could have

shot at the car, and the bullets or bullet holes would have been

found.  However, only one bullet hole was found on the car, and it

was from the co-defendant's gun, not Applicant's.

```
     Direct examination of Officer Abraham Delgado, by Mr. Sullivan
(R. Vol. II, Page 252):
13:  Q.   BY MR. SULLIVAN: Officer, after viewing the vehicle and
14:       these pictures, how many bullet holes did you see or find
15:       in the vehicle and at what places in the vehicle did you
16:       find these bullet holes?
17:  A.   Okay, just found one bullet hole on the rear windshield
18:       of this vehicle.  That same bullet hole struck the front
19:       windshield and didn't make a hole.  It just made an
20:       impact on the front windshield on the inside.
22:  Q.   And were you able to locate it?
23:  A.   No, that bullet went down into the air conditioner vent
24:       and I went and got a mechanic to take apart the vehicle,
25:       but he said we couldn't get it out of the air conditioner
26:       vent unless we took the whole front end apart.
```

The focus of the criminal investigation, from the beginning,

was on the Applicant since Applicant's vehicle was spotted at the

scene of the incident. Since Applicant owned the vehicle, he was

the prime suspect.

```
     Direct examination of Officer Alfonso Garcia, by Mr. Ponce (R.
Vol. II, Page 75):
27:  A.   There was a lookout put out.
28:  Q.   For a person or what?
29:  A.   Persons and vehicle, I believe.
30:  Q.   And do you remember who the lookouts were put for?
```

**18**

31:  A.    It was for a Montoya and a gray vehicle.

Furthermore, in other to convict Applicant for a murder committed by a co-defendant, the State must prove, that the defendants acted together, each contributing some part toward the execution of a common purpose. *Medellin v. State*, 617 S.W.2d 229, 231 (Tex. Crim. App. 1981). The State must show that Applicant was physically present at the commission of the offense, and encouraged the commission of the offense by words or agreement. *Id.* In other words, where the evidence shows that the accused was not the primary actor, but at most responsible for the actions of another, the State is required under the law of parties to prove or the record must show conduct constituting the offense charged, plus an act done by the accused, with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985, pet. granted).

The evidence adduced by the State at trial determining whether the accused was a party to the offense was the testimony of Daniel Mora Garza:

```
(R. Vol. V, Page 478):
32:  Q.   Once you walked out, what, if anything, happened?
33:  A.   well, the lady –
34:       When you were stepping outside the Monkey Lounge, what
35:       happened?
36:  A.   A lady said (Spanish).  I went straight to her again
37:       and this is what she said.  "It's not him."
22:  Q.   Okay, let me stop you there.  Who was she telling this
23:       to?
24:  A.   To the two people that are here.
25:  Q.   What, if anything, did they then do?
```

```
1:  A.  Well, I turned my face around, I looked at them and they
2:      kind of started scattering, and I kept walking a little
3:      farther distance and I heard one of the men, I heard one
4:      of the men say a few words.
5:  Q.  What did he say? And tell us exactly what he said.  If
6:    · he said it in Spanish, say it in Spanish and then we'll
7:      have the translator translate it in English.
8:  A.  (Through the interpreter) "Anyway, he's going to get
9:      screwed up."
```

This testimony, alone, is insufficient, as a matter of fact,

to support the conviction under the law of parties.  The evidence

in this case is insufficient to support the conviction because it

is so contrary to the overwhelming weight of the evidence as to be

clearly wrong and unjust.  *Clewis v. State*, 922 S.W.2d 126 (Tex.

Crim. App. 1996, pet. granted); *Jones v. State*, 944 S.W.2d 642

(Tex. Crim. App. 1996), *cert. denied*, 118 S.Ct. 100 (1997); *Scott*

*v. State*, 934 S.W.2d 396 (Tex. Crim. App. –Dallas 1996, no pet.).

The above testimony by the State's key witness, Daniel Mora

Garza, alone, does not prove that the defendants acted together, or

that they had a plan, agreement, or a common scheme.  It doesn't

prove that Applicant participated or encouraged his co-defendant in

the killing of Maria De Lourdes Teran.  The evidence is basically,

Daniel Mora Garza's word over the·defendants. Who does the jury

believe?  The persons accused or a friend of the deceased, who was

also involved in the shoot-out? Of the 17 witnesses the State

introduced at trial, none gave testimony to aid the charge on the

law of parties, except Daniel Mora Garza.  Mr. Garza is not only

the deceased's friend, but also the Trial Judge's cousin.

Throughout the trial, Mr. Daniel Garza contradicted himself, and he

20

also had a record, which included murder.

Cross-examination of Officer Joe V. Garza, by Mr. Garza (R. Vol. II, Pages 18-19):
10:   Q.   Okay, did you serve a subpoena on Mr. Daniel Mora Garza?
11:   A.   Yes, sir, I did.
1:    Q.   Are you familiar with this individual?
2:    A.   Am I familiar with him?
3:    Q.   Yes.
4:    A.   I know the man.
5:    Q.   Have you dealt with him in the past?
12:   A.   I arrested him many years ago.

Direct examination of Officer Henry Ethridge, by Mr. Sullivan (R. Vol. II, Page 30):
16:   Q.   No, I'm sorry, who was it that you determined that
17:        rammed that gate?
18:   A.   A/K/A, his alias name is El Diablo.

Daniel Mora Garza is known, by the police and the general public, by the alias, "El Diablo", meaning "The Devil". This man has been in trouble with the law so many times that everyone refers to him as "the devil". This is also the man who claims that the defendants shot at him for no reason. He didn't know them or what they wanted, but they just pulled out their guns and shot at him.

Cross examination of Officer Henry Ethridge, by Mr. Barnard (R. Vol. II, Pages 31-32):
7:    Q.   Officer Ethridge, you determined that this individual was
8:         named El Diablo?
9:    A.   That was what was mentioned at the scene.
10:   Q.   You call that an alias?
11:   A.   Yes, it was mentioned as an alias, an a/k/a, the officers
12:        know him as.
13:   Q.   What does El Diablo mean?
14:   A.   It's a nickname. It means the devil.

Cross examination by Mr. Garza (R. Vol. II, Page 35):
2:    Q.   And this individual, El Diablo, he's also known as Daniel
3:         Mora Garza; is that correct?

14

**21**

4:   A.   If I recall correctly, that is correct.

Another key witness that the State presented is Guadalupe Hernandez, a drunk patron, who was urinating outside against the wall of the Monkey Lounge. Mr. Hernandez supposedly saw the whole occurrence, however, he contradicted himself over and over again during trial.

Cross examination of Officer Alfonso Garcia, by Mr. Garza (R. Vol. II, Page 88):

| | | |
|---|---|---|
| 7: | Q. | Mr. Garcia, you did interview several witnesses, you |
| 8: | | testified earlier; is that correct? |
| 17: | Q. | Can you tell the jury what state or condition they were |
| 18: | | under? |
| 19: | A. | The only one that I smelled alcohol on, okay, was |
| 20: | | Guadalupe Hernandez. |
| 23: | Q. | And this is one of the attendants outside the Monkey |
| 24: | | Lounge? |
| 25: | A. | Yes, sir. |
| 1: | Q. | Was he intoxicated, in your opinion? |
| 2: | A. | He had been drinking. |
| 3: | Q. | Was perhaps his mental faculties impaired to a certain |
| 4: | | extent? |
| 5: | A. | Yes, sir. |
| 6: | Q. | They were? Okay.  And this is one of the witnesses |
| 7: | | you-all also took? |
| 8: | A. | (Nodded head up and down). |

He claimed on numerous occasions that he couldn't see very well, that his eyesight is weak.  He owns glasses but doesn't wear them, and he was not wearing them at the night of the incident. When asked, during trial, whether he can identify the defendants, he said that he couldn't, that he didn't see them in the courtroom.

Direct examination of Guadalupe Hernandez, by Mr. Sullivan (R. Vol. II, Page 335):

| | | |
|---|---|---|
| 3: | Q. | Okay. Mr. Hernandez, I'd like you to look around the |
| 4: | | courtroom for a moment and tell me if you can identify |
| 5: | | any of the people that you saw that were involved with |
| 6: | | this dispute. |

15

**22**

```
7:   A.   At this moment?
8:   Q.   Yes, sir.
9:   A.   No, sir.
13:  Q.   Do you know a Santos Montoya?
14:  A.   Yes, sir.
15:  Q.   Do you see him here in the courtroom today?
16:  A.   No, sir.
```

He could barely see, he could not see the attorneys or defendants from where he was testifying. However, he claims that he saw the whole incident, which was approximate 50-60 feet from him. Not to mention the fact that, it was also night time, hardly any lights on, and that he was very intoxicated.

Cross examination of Guadalupe Hernandez, by Mr. Garza (R. Vol. II, Page 370):

```
17:  Q.   Now, I see you are having problems distinguishing between
18:       Mr. Ponce and Mr. Sullivan from that distance?
19:  A.   Yes, sir.
20:  Q.   What's your vision, sir?
21:  A.   I don't know.  I don't wear - I wear glasses, but I
22:       don't use them.
23:  Q.   And were you wearing glasses that night?
24:  A.   No, sir.
```

Daniel Garza provided the police with a statement two weeks after the incident, not the same night. Daniel Garza and Hernandez were the two key eyewitnesses in this case.

Cross examination of Guadalupe Hernandez, by Mr. Garza (R. Vol. II, Page 364):

```
14:  Q.   Okay.  And do you remember when you made this statement?
15:  A.   That same night.
16:  Q.   That same night?
17:  A.   Yes, sir.
18:  Q.   This statement states that it was taken on December
19:       14th, 1989. That would not be a true statement, then?
3:   Q.   Like two, two and a half weeks after the incident?
4:   A.   Yes, sir.
```

During his testimony, Mr. Hernandez admitted to speaking with

Daniel Garza, the person who claims that the defendants shot at him and killed his friend, Maria De Lourdes Teran, the day before he had to testify.

Cross examination of Guadalupe Hernandez, by Mr. Garza (R. Vol. II, Page 372):

```
9:   A.   El Diablo's car was parked right here.  He just went in,
10:       parked the car, went in, bought two beers and then left.
11:  Q.   How do you know it was two beers? Did you ask him? Did
12:       you see him?
13:  A.   I was talking to him.
14:  Q.   Oh, you talked to El Diablo?
15:       (Nodded head up and down).
16:  Q.   Where, sir?
17:  A.   Yesterday.
18:  Q.   You talked to El Diablo yesterday?
19:  A.   (Nodded head up and down)
20:  Q.   Where did you talk to him at?
21:  A.   On the court.  Drinking water over there downstairs.
22:  Q.   So you've discussed this case with him already before?
23:  A.   No, he just asked me.
24:  Q.   What else did you discuss with El Diablo?
25:  A.   Nothing else.
```

When Mr. Hernandez continued to contradict himself on the stand, he was asked if he read and signed his statement when he supposedly gave it to the police.  He stated that he did, however, when defense counsel asked him to read a portion of his statement, he admitted that he could not read.

Cross examination of Guadalupe Hernandez, by Mr. Garza (R. Vol. II, Pages 373-374):

```
21:  Q.   Can you read this to the jury, please?
22:  A.   I can't read, okay?
23:  Q.   You cannot read?
1:   A.   No.
```

Mr. Hernandez's testimony clearly shows that Mr. Hernandez did not witness the incident, that he only lied so that he would not get arrested for being drunk in public and for urinating in the

17

24

street.  Whatever story was fed to him by the police or Daniel Mora

Garza, he testified to.  This is shown by his loss of eyesight and

the many contradictions in his testimony.

Cross examination of Guadalupe Hernandez, by Mr. Garza (R.
Vol. II, Page 377):
3:    Q.    Did you see Mr. Montoya actually shoot the gun?
4:    A.    I saw the street they were shooting at the front car.
5:    Q.    you saw him do that?
6:    A.    I wasn't sure it was him, but I know that it was his car
7:          and he was inside the car.  But there were two of them.
8:          I think the two of them were using the same gun –
9:          different guns.

Cross examination of Guadalupe Hernandez, by Mr. Barnard (R.
Vol. II, Page 387):
4:    Q.    Now, you've made several inconsistent statements since
5:          you've been sitting there this morning.
11:   Q.    –When I was cross-examining you the first time, I
12:         asked you several occasions, did I not, did you see Mr.
13:         Montoya in or at the Monkey Lounge that night, and you
14:         responded no.  Isn't that correct?
15:   A.    Yes, sir.
16:   Q.    Okay.  I asked you where did you first see him? Where
17:         was he? And you told me he was in the car, in his car
18:         in front of Apartment No. 2.
19:   A.    Yes, sir.
20:   Q.    He was inside the car.
21:   A.    (Nodded head up and down).
22:   Q.    Right?
23:   A.    Yes, sir.
24:   Q.    Okay, now, just a moment ago you started telling us that
25:         you saw him coming across the parking lot from the
1:    Q.    Monkey Lounge.  Now, which are we supposed to believe?
2:          Which story is true?
3:    A.    The –
8:    A.    They had to be chasing him because how come he was
9:          running outside? He was running outside because they
10:         were chasing him.  He got in his car and then they
11:         like I said, I can't see that well but I could see.
12:   Q.    BY MR. BARNARD: You said he had to be chasing him?
13:   A.    Yes, sir.
14:   Q.    That's right. You did not see him chasing El Diablo.
15:   A.    I couldn't see that well, sir.

Cross examination of Guadalupe Hernandez, by Mr. Barnard (R.

**25**

Vol. II, Page 389):
11:  Q.  And which window would be on your side of that car?
12:      Would it be the driver's side or the passenger side?
13:  A.  The passenger side.
14:  Q.  The passenger side?
15:  A.  Yes, sir.
16:  Q.  Do you know who was driving the gray vehicle?
17:  A.  Not really, no, sir.
18:  Q.  Do you know who was sitting in the passenger side of
19:      that vehicle?
20:  A.  I couldn't see that well.
21:  Q.  Okay. So, you don't know who was in the car.
22:  A.  No, sir.

The other witness that the State presented was Juan Cardenas who saw nothing but the rear of Applicant's car, heading down the street, and who also testified that he did not hear any gun shots as the car was in motion.

Cross examination of Juan Carlos Cardenas, by Mr. Garza (R. Vol. II, Pages 417-418):
21:  Q.  Mr. Cardenas, wouldn't it be a true statement that the only part that you saw of that vehicle would be the rear part of the vehicle?
22:  A.  Yes, sir.
(Page 418)
24:  Q.  Did you hear any shots at that time?
25:  A.  No.
26:  Q.  None?
27:  A.  No.
28:  Q.  Was it dark that day?
29:  A.  Yes, sir, it was dark.

Daniel Garza alleged that the defendants pulled out a gun on him, so he got in his car and drove off fast to avoid them, and that he didn't have a gun to protect himself. However, he also claims that later, after Maria Teran was shot, she advised him that she had a gun in the trunk. So, while the defendants were following him, he stopped off somewhere, pulled out the gun from

19

26

the trunk, loaded it, and proceeded to the police station.

Cross examination of Officer Henry Ethridge, by Mr. Barnard
(R. Vol. II, Page 31):

21:  A.   ....Another officer found a shotgun.
22:  Q.   You did not interrogate any witnesses there at the scene
23:       regarding that or any shooting at the sheriff's office?
24:  A.   I spoke to some witness who advised of a shotgun, but as
25:       far as actually physically locating it, it was located by
1:        another officer.
2:   Q.   Were you able to determine how many times the shotgun
3:        was fired?
4:   A.   Approximately two, three times.  I can't exactly recall.

Applicant stated in his statement to the police that Daniel

Garza pulled out a shot gun on him, how else, would Applicant know

that Daniel Garza had a shotgun that night.  He shot his gun to

protect himself and to scare Daniel Garza, not to kill him or his

friend, Maria.  Anyone reasonable person in Applicant's shoes would

have done the same.

Cross examination by Mr. Garza (R. Vol. II, Page 39-40):

2:   Q.   Are you're also familiar with the range that a riot
3:        shotgun has using double-odd buck?
4:   A.   Effective range?
5:   Q.   Yes.
6:   A.   Approximately, yes, I am.
7:   Q.   It's pretty destructive, isn't it?
8:   A.   Depending on how it's used, yes.
9:   Q.   If it's used, if it's shot at somebody, if somebody
10:       points at you with a shotgun, Officer, are you going to
11:       be concerned for your life?
12:  A.   Yes, I am.
13:  Q.   What would you do in a situation like that?
14:  A.   Take cover.
15:  Q.   Take cover?
16:  A.   If cover was available.  If not, advise him to cease said
17:       hostile motion, and if not, take action accordingly in
18:       returning fire.
19:  Q.   Defend yourself?

20

27

```
20:  A.   Yes. I would be in fear of my life if he was pointing at
21:       me.
22:  Q.   Officer, what destruction would you say a shotgun, a riot
23:       shotgun, let's say, using double-odd buck, let's say, at
24:       a range of four to five feet -is it capable of causing
25:       somebody's death?
1:   A.   Yes, it is if you hit the person.
```

Direct examination of Officer Abraham Delgado, by Mr. Sullivan
(R. Vol. II, Pages 255-256):

```
23:  Q.   Okay. Did you return with Mr. Montoya - I apologize -
24:       back to the police station?
25:  A.   Yes.
1:   Q.   Did he make any statements to you that were not made
2:        pursuant to your questions?
3:   A.   That's correct.
4:   Q.   And what were those statements?
5:   A.   Simply stated that "If this is in reference to the
6:        shooting last night, I'd rather be alive than dead."
```

The officers located Applicant and proceeded to interrogate

him for a shooting without advising him that he was a suspect in a

murder. Applicant told the police that he tried to defend himself,

otherwise, Daniel Garza would have killed him.

Cross examination of Officer Abraham Delgado, by Mr. Barnard
(R. Vol. II, Pages 275-276):

```
20:  Q.   Okay. Did you or any other officer tell Mr. Montoya
21:       that anybody had died in this shooting that we're talking
22:       about after this point?
23:  A.   No, not at this point, no sir.
24:  Q.   He was not aware that the women had died?
25:  A.   he was not -
```

Daniel Garza claimed that he did not own the shotgun, and he

did not know it was in the car. However, he knew exactly where the

bullets were kept, and he knew how to load it and use it.

Cross examination of Officer Roberto Avitia, by Mr. Barnard
(R. Vol. II, Page 51):

```
26:  Q.   Okay. Did you determine whether or not there was any
27:       shotgun involved or any shooting there at the jail or
28:       the sheriff's officer?
```

21

28



```
29:   A.    There was an indication from the officer at the scene
30:         that there was a weapon recovered, and there may have
31:         been a shotgun discharged at the scene there at the
32:         sally port area.
33:   Q.    Did you determine who the shotgun belonged to?
34:   A.    No, sir.
```

Cross examination of Officer Roberto Avitia, by Mr. Garza (R. Vol. II, Page 58):

```
15:   Q.    And it was determined that Mr. Garza, Daniel Mora Garza
            was the one that shot the shotgun; is that correct?
16:   A.    That was the information that the patrol officers were
17:         able to get.
```

Daniel Garza's testimony did not make any sense at all. The shooting occurred one mile from the police station, however, Daniel Garza alleges that he was being followed, he stopped and pulled the shotgun from the car trunk and loaded it, and then continued to the police station. This testimony is hard to believe.

Cross examination of Officer Roberto Avitia, by Mr. Garza (R. Vol. II, Page 62):

```
14:   Q.    How far is the Monkey Lounge from the sheriff's office?
15:   A.    Maybe a mile.
```

This was basically the State's case-in-chief. This is how they proved that the defendants acted together to attempt to kill Daniel Garza, and instead, ended up killing Maria Teran. None of this testimony proves that Applicant shot and killed Maria Teran. And, the testimony certainly doesn't prove that the defendants acted together to achieve this result. Trial counsel should have argued the sufficiency of the evidence since the record clearly showed that the State failed to prove it's charges beyond a reasonable doubt. Not only did the trial attorney fail to argue this during trial, he also failed to argue this point on appeal.

29

This inaction clearly prejudiced Applicant, in that, had this point been raised during trial, Applicant would not have been convicted of murder.

### 2. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE INSERTION OF THE "LAW OF PARTIES" IN THE CHARGE TO THE JURY, WHERE THE STATE HAD NOT PROVIDED ANY EVIDENCE TO SUPPORT SUCH CHARGE.

Appellant challenges the sufficiency of the evidence as a matter of fact to support the conviction that Applicant was a party of the offense.  The burden of proof is on the State to prove each and every element of the offense beyond a reasonable doubt. *Mullaney v. Wilbur*, 95 S.Ct. 1881 (1975); *In re Winship*, 90 S.Ct. 1068 (1970); TEX. PENAL CODE § 2.01 (Vernon 1974).

As to factual sufficiency, a review can be conducted where a challenge is raised to the sufficiency of the evidence to support a defendant's affirmative defense.  The jury's verdict must be reversed for factual insufficiency where the conviction was so against the great weight and preponderance of the evidence that it was manifestly unjust.  *Adelman v. State*, 828 S.W.2d 418 (Tex. Crim. App. 1992, pet. ref'd); *Stone v. State*, 823 S.W.2d 375 (Tex. App. -Austin 1990, pet. ref'd); *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996, pet. granted).

It should also be noted that a criminal conviction should be reversed where the evidence is factually insufficient to support the jury's verdict.  *Meraz v. State*, 785 S.W.2d 146 (Tex. Crim.

30

App. 1990, pet. ref'd).

The courts of appeals are authorized to reverse a judgment on the basis of the facts as well as the law. *See* TEX. CODE CRIM. PROC. ANN art. 44.25 (Vernon 1981); TEX. CONST. art. V, §6(c) amended 1981.

Evidence is sufficient under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense by word or by agreement. *Urtado v. State*, 605 S.W.2d 907 (Tex. Crim. App. 1980). The agreement, however, if any, must be before or contemporaneous with the criminal event. *Id. See also Beier*, 687 S.W.2d at 4.

An actus reus must be shown, in that the evidence must show that at the time of the offense, the parties were acting together, each contributing some part toward execution of the common purpose. *Medellin*, 617 S.W.2d at 231. That is, where the evidence shows that the accused was not the primary actor, but at most, responsible for the actions of another, the State is required under the law of parties to prove or the record must show conduct constituting the offense charged, plus an act done by the accused, with the intent to promote or assist such conduct. *Beier*, 687 S.W.2d at 4 (manager of adult book store responsible for clearing cash register not a party to store clerk's sale to undercover of adult film). *See also, Navarro v. State*, 776 S.W.2d 710 (Tex. App. -Corpus Christi 1989, pet. ref'd) (merely handing gun over to shooter was insufficient to show intent that companion committed

24

**31**

murder). That is, it is well established that mere presence at the scene of an offense alone, without evidence of intentional participation is insufficient to support a conviction. *Acy, supra.* In this regard, it should also be noted that mere presence at the scene of an offense even coupled with flight therefrom are not alone sufficient to support a conviction for an offense under the law of parties. TEX. CODE CRIM. PROC. ANN art. 7.02(a)(2) (Vernon 1974); *Thomas v. State*, 645 S.W.2d 798, 800 (Tex. Crim. App. 1983, pet. ref'd).

While the mere presence alone of an accused at the scene of an offense is, without more, insufficient to support a conviction, it is a circumstance which, when combined with other facts, may suffice to show that the accused was a participant. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987, pet. granted). The court may look to the actions of the accused which show an understanding and common design to do the prohibited act. *Bush v. State*, 506 S.W.2d 603 (Tex. Crim. App. 1974).

Applying the foregoing principles to the facts of the instant case, the totality of the evidence in the record shows as a matter of fact that the Applicant was not a party to the killing of the complainant in this case.

The evidence adduced by the State at trial determining whether the accused was a party to the offense was the testimony of Daniel Mora Garza:

25

32

(R. Vol. V, Page 478):

```
1:   Q.   Once you walked out, what, if anything, happened?
2:   A.   well, the lady –
3:        When you were stepping outside the Monkey Lounge, what
4:        happened?
5:   A.   A lady said (Spanish).  I went straight to her again
6:        and this is what she said.  "It's not him."
22:  Q.   Okay, let me stop you there.  Who was she telling this
23:       to?
24:  A.   To the two people that are here.
25:  Q.   What, if anything, did they then do?
1:   A.   Well, I turned my face around, I looked at them and they
2:        kind of started scattering, and I kept walking a little
3:        farther distance and I heard one of the men, I heard one
4:        of the men say a few words.
5:   Q.   What did he say? And tell us exactly what he said.  If
6:        he said it in Spanish, say it in Spanish and then we'll
7:        have the translator translate it in English.
8:   A.   (Through the interpreter) "Anyway, he's going to get
9:        screwed up."
```

This testimony, alone, is insufficient, as a matter of fact, to support the conviction of the Applicant as a party to the offense.  It is well settled that in determining whether a defendant is a party the court may examine the events occurring before, during, and after the commission of the crime.  *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 106 S.Ct. 1942 (1986); *Beadsley*, 738 S.W.2d at 684; *See also, Moore*, 804 S.W.2d at 166 (silently helping a gunman empty a cash drawer), and *Buitureida, supra* (driving a car past the scene three times before shooting, slowing down the car before shots are fired by the passenger, and speeding away following the shooting).

No where in the record, does the State show any connection between the actions of co-defendant, Hernandez Castillo, and Applicant.  The State offered no evidence to support a jury charge

26

**33**

on the law of parties, however, the law of parties was presented to the jury, and trial counsel failed to object to it. Although Applicant was physically present at the commission of the offense, and attempted to defend himself by shooting towards the man who was pointing a shotgun at him, the State did not prove that Applicant in any way encouraged co-defendant's actions, either by words or other agreement. The fact that both defendants happened to be involved in the shooting, does not mean that they acted together, or that they had a common purpose.

Applicant volunteered a statement to the police indicating that he saw a man pointing a shotgun at him, and his first reaction was to pull out his gun and defend himself. His intentions where not to shoot to kill, but to shoot to scare this man away. Applicant, at that point, wasn't thinking about the co-defendant and had no idea that co-defendant had a gun or that he would use it. It was nothing but a coincidence that both co-defendants reacted the way they did when they noticed the shotgun. There was no plan, agreement, understanding, or common purpose. Whatever intentions co-defendant had in shooting at the car, had nothing to do with Applicant. Applicant had no control over the actions of the co-defendant. However, he does have control over his own actions, and he did the only thing he could do, pull out his gun and defend himself. He had no intentions of killing anyone.

Mr. Barnard, the trial attorney, should have objected to the

**34**

court's charge to the jury, where it gives the law of parties.  The law of parties should not have been in the charge since the State offered no evidence in it's case-in-chief to support it.  Even if Mr. Barnard failed to see this error during trial, he should have raised it as a point of error on appeal.  Any reasonable attorney would have argued this point on appeal.  Since Mr. Barnard did not raise the error during trial or on appeal, Applicant was prejudiced, and thus, did not receive a fair trial.  The law of parties was the key to Applicant being convicted, since he was not the person who shot and killed Maria De Lourdes Teran.  The conviction can only stand if there was a showing that the defendants acted together to achieve a common purpose, but, the State failed to provide any evidence of this, and the jury was still permitted to consider it.  Had this mistake been objected to during trial, Applicant would not have been convicted of murder.

**3. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE JUDGE NOT RECUSING HIMSELF, WHEN THE JUDGE ADVISED DEFENSE COUNSEL THAT HE IS A "COUSIN" TO THE STATE'S KEY WITNESS, DANIEL MORA GARZA, WHO PLAYED A MAJOR ROLE IN THE DEATH OF MARIA DE LOURDES TERAN.**

"No judge shall sit in a case wherein he may be interested or where either of the parties may be connected with him, either by affinity or consanguinity, within such degree as may be prescribed by law." *Madden v. State*, 911 S.W.2d 236, 239 (Tex. App. -Waco 1995, pet. ref'd); TEX. CONST. art. V, §11.

35

The Court of Criminal Appeals has held that the grounds of disqualification stated in the Texas Constitution and the Code of Criminal Procedure are exclusive. *See Elam v. State*, 841 S.W.2d 937, 939 (Tex. App. –Austin 1992, no pet.). These provisions have been held to be mandatory. *Gamez v. State*, 737 S.W.2d 315, 318 (Tex. Crim. App. 1987, pet. ref'd). It is not necessary that an objection be made, nor may the disqualification of a judge be waived, even by consent of the parties. *Id*. This issue may be raised at any time. *Id*.

In the present case, trial counsel, Mr. Barnard, rendered ineffective assistance of counsel by not objecting to the Judge hearing this case, where the State's key witness is the Judge's cousin. Further, Mr. Barnard rendered ineffective assistance during the appellate stage by not raising this error on appeal.

(R. Vol. II, Pages 149-151):
```
22: MR. BARNARD: Yes, Your Honor.  It was made
23: known to me previous by the Court that there was a
24: possibility of a relationship between this Court and one
25: of the State's prime witnesses, Daniel Mora Garza, and
 1: we had a talk in chambers in which you said yes, that
 2: you discovered yesterday that he's something like a third
 3: or fourth cousin.  And my client became very upset about
 4: this, concerned that he wouldn't get a fair trial.
 5:      I have explained to him that the Court only has for
 6: consideration the legal issues, objections and that sort
 7: of thing and would not pass on guilt or innocense nor on
 8: punishment in the event we get that far.  And after I
 9: advised that he does not wish to ask the Court to
    disqualify himself.
12:      THE COURT:
17:                 ....He's a cousin of
18: my dad's, I think, or second cousin of my dad's.  So
19: I've not had contact with this individual in ages.
```

29

36

```
20:        He is not the victim in this case as far as the
21:   indictment that was set out and he is a witness, as I
22:   understand it, and that's about it, and I don't feel
23:   under the circumstances that I am going to recuse myself
24:   or disqualify myself.
```

Applicant feared that he would not get a fair trial since the judge was related to the State's key witness, the person who Applicant claims pulled out a shotgun on him which forced him to defend himself.  Since there are very few witnesses in this case, Mr. Barnard should have realized that the credibility of the defendants and this key witness will determine the outcome of this case.  It will be one person's word over the others'.  Trial counsel's advice to Applicant that the judge's relationship to this key witness will not effect his case was made with poor judgment. Although the jury, in this case, determined whether Applicant is guilty or innocent, and what punishment to assign, the judge still has a very important role. It is the judge that determines what evidence is admissible and when an objection should be sustained or overruled, and so on.  Mr. Barnard informed Applicant that there is nothing to fear, and that the judge will be fair.  In a murder case such as this, where a defendant's life is on the line, no reasonable trial counsel would have allowed this trial to continue, knowing that the judge is related to the State's key witness. Although, the Judge's relationship wasn't with a party, this key witness played a major role in the death of Maria De Lourdes Teran, and it was critical to the defense to make sure that the Judge is

37

not biased. Mr. Barnard's actions prejudiced Applicant's case, and thus, Applicant did not receive a fair trial. Had trial attorney objected to this during trial, the results may have been different.

Furthermore, Mr. Barnard failed to raise this issue on appeal. This is not surprising since, by raising this issue on appeal, Mr. Barnard would only be admitting is ineffective assistance during trial.

### 4. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO ADVISE THE APPLICANT OF THE DANGERS OF A JOINT TRIAL.

*"For each of the defendants to see the face of Justice they must be tried separately." Luna v. United States*, 308 F.2d 140, 155 (5th Cir. 1962).

The conflict of interest resulting from the joint representation of Applicant and his co-defendant by Mr. Bernard and Mr. Garza adversely affected Mr. Bernard's performance in the cross-examination of the State's witnesses and the co-defendant, and thus, Applicant was denied effective assistance of counsel in violation of his 6TH and 14TH Amendment rights under the Constitution of the United States.

The co-defendant had given a confession, which the State indicated that it intended to introduce at trial which made mention of the Applicant. Recognizing that a serious problem under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620 (1968) might arise, the State sought to solve it in advance by presenting to the judge, during the pre-trial hearing, a motion for separate trials. Both

31

**38**

defense attorneys resisted successfully, the motion for severance was denied.    It's not surprising that the attorneys refused separate trials since should either accused testify at trial of the other, the attorney would be ethically precluded from cross-examination, having become privy to information from the testifying client in his capacity as attorney.

From the outset of the trial it was the defense counsel, not the trial court, who was under a duty to investigate and determine any possible conflict in the joint representation of the defendants. The court could only have been aware of the general possibility of conflict of interest that exists whenever there are joint representations.  This possibility, although always real, is not inevitable.

Mr. Bernard never gave Applicant any explanation of the nature and character of such conflict "inherent" in such joint representation, though he knew that the case against Applicant was not as strong as against his co-defendant and that the respective interests of the two defendants were "divergent."  Mr. Bernard violated a professional responsibility by failing to apprise Applicant of the dangers of joint representation and the conflict of interest of which he either knew or should have known.

Since the defense attorneys decided to have a joint trial, each attorney was limited in presenting a defense, especially Applicant's attorney, Mr. Barnard.    This case could have been a

**39**

simply case of self-defense.   A man pulls a shotgun on Applicant and Applicant shoots back to defend himself.   Applicant didn't shoot and kill anyone, nor did he agree or plan to help the co-defendant kill anyone.   Had Applicant been tried separately, the outcome of the case would definitely have been different.   Mr. Barnard would have been able to freely claim and argue self-defense, and a lot of the evidence presented against the co-defendant would have been kept out of the presence of the jury since it could not be connected to Applicant.   No reasonable attorney would have chosen to try an innocent man with a man who could possibly be found guilty of committing the crime.

The evidence presented by the State, at most, showed that the co-defendant's gun shot the bullet that killed Maria De Lourdes Teran, any other testimony was based on assumptions and contradictions.   The Applicant was clearly harmed by being tried with his co-defendant.   There is no reasonable justification for trying the defendants together other than to combine the work on the case, and make the work lighter for both attorneys.   A careful reading of the trial record shows that Mr. Barnard greatly relied on the co-defendant's attorney to try the entire case.   Whatever theory the other defense attorney came up with was okay with Mr. Barnard, he didn't question it.   The plan seems to be that either both defendants will be found guilty or both will be set free. And since the evidence cannot be tied to Applicant, the defense

33

**40**

attorneys assumed that, by trying the defendants together, they would make it more difficult for the State to succeed in obtaining a conviction. Actually, Mr. Barnard offered to help the other defense attorney by allowing him to try his client with Mr. Barnard's, and in return, the other defense attorney would take over the entire defense, supposedly, making it easier on Mr. Barnard.

During its case-in-chief, the State was able to present confessions from both defendants, and then explain to the jury how each confession contradicts the other. This could not have happened had Applicant been tried separately. His co-defendant's confession would not have entered in trial. Furthermore, when the co-defendant testified, Mr. Barnard was limited in his examination since whatever the co-defendant testified to would reflect on the defense of Applicant. Also, Mr. Barnard could not and did not emphasize the point that the ballistics results showed that the co-defendant's gun and not Applicant's actually shot Maria De Lourdes Teran.

The conflict of interest presented by this joint representation clearly harmed Applicant's defense, and thus, resulted in him being convicted for a crime he did not commit. Applicant's defense should not have been compromised.

Where an accused demonstrates that an actual conflict of interest adversely impairs his trial lawyer's performance, the

34

**41**

accused need not demonstrate "actual prejudice" because harm is presumed. *Cuyler v. Sullivan*, 100 S.Ct. 1708, 1718 (1980). Undivided loyalty to one's client required of a criminal defense attorney dooms the performance.   Having been denied effective assistance of counsel during the course of his first trial, Applicant is entitled to be represented at a second one by a criminal defense lawyer who is "[un]fettered or restrained by commitments to others." *Porter v. United States*, 298 F.2d 461, 463 (5th Cir. 1962).

### 5. APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY ONLY ARGUING FRIVOLOUS ISSUES ON APPEAL, WHERE CLEARLY, NON FRIVOLOUS ISSUES EXISTED THAT SHOULD HAVE BEEN RAISED.

Appellate Counsel cannot file a frivolous appeal brief where there are non-frivolous issues.   *Randle v. State*, 760 S.W.2d 30 (Tex. App. -Houston [1st Dist.] 1988, no pet.)   Counsel has a duty to raise an issue that would require reversal of the conviction. *Ex parte Daigle*, 848 S.W.2d 691 (Tex. Crim. App. 1993, no pet.). Applicant must show that had the issues been raised, there is a reasonable probability that the conviction would have been reversed.   Also, the failure to raise the issue on appeal rendered either the conviction or the sentence unreliable.   *Ricalday v. Procunier*, 736 F.2d 203 (5th Cir. 1984); *Goodwin v. Johnson*, 132 F.3d 162 (5th Cir. 1997).

In the present case, Mr. Barnard, trial and appellate counsel,

42

raised just one frivolous issue on appeal. The record indicates numerous errors that occurred at trial and that should have been raised on appeal, however, since Mr. Barnard was also the trial counsel, he could not and did not point to any of he's errors. All of these non-frivolous issues raised in this Habeas Corpus are valid and should have been raised on appeal, however, Mr. Barnard failed to raise them.

### 6. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO DEVELOP A COGENT DEFENSIVE THEORY.

Applicant's counsel, Mr. Barnard, was "riding on the coattails" of the counsel for the other defendant. Mr. Barnard did not develop his own theory of the case. Since it was a joint representation, his theory had to match the co-defendant's attorney's theory, and Mr. Barnard had no idea what that was. There were instances in the record where he seemed to argue self-defense, but then later, he would move away from asserting this defense. He didn't want to assert any claim that could harm or contradict the co-defendant's theory of the case.

From the beginning of the trial, and even during the pre-trial stage, Mr. Barnard seemed to have accepted the State's position that the Applicant committed the murder. *Craig v. State*, 847 S.W.2d 434 (Tex. App. -El Paso 1993, pet. granted). Mr. Barnard did not object to the indictment charging Applicant with murder when Applicant, at most, should have been charged with assault.

36

43

And in the jury charge, the court included the law of parties, when the State failed to present any evidence to prove that the defendants acted jointly. Mr. Barnard again failed to object.

In conclusion, although no one instance in the present case standing alone is sufficient proof of ineffective assistance of counsel, counsel's performance taken as a whole does compel such a holding. Counsel's representation fell below an objective standard of reasonableness. *Strickland*, *supra*. Further, since trial counsel represented the defendant on appeal, it is self-evident that he will not have raised the issue of ineffective assistance of counsel. Thus, Applicant was clearly harmed and prejudiced during trial and on appeal by Mr. Barnard's inadequate representation. Had Applicant been represented by effective and competent counsel, the outcome of his case would have been different.

<u>PRAYER</u>

WHEREFORE, PREMISES, ARGUMENTS AND AUTHORITIES CONSIDERED, applicant respectfully prays this Honorable Court grant this application in its entirety by issuing a Writ of Habeas Corpus and setting an evidentiary hearing on the issues raised herein.

Applicant further prays that upon properly hearing the issues raised, the reviewing Court find favorably for the Applicant, reverse the convictions in Cause Number 90-CR-68-B, dismiss the indictments in said Cause Number and Order the Applicant released from his illegal confinement.

37

**44**

Applicant further prays that in the event the reviewing Court orders a new trial for Applicant, that a reasonable bond be set. IT IS SO PRAYED.

Respectfully submitted,

WALTER J. PINK
2646 SOUTH LOOP WEST
SUITE #195
HOUSTON, TEXAS 77054
Tele:(713) 664-6651
Fax: (713) 664-3242
TBA #: 16016500
Attorney for Applicant for
Post Conviction Proceedings

<u>AFFIDAVIT</u>

STATE OF TEXAS        )
                      )     ss:
COUNTY OF HARRIS      )

Before me, the undersigned authority, on this day personally appeared WALTER J. PINK, who after being duly sworn stated:

"My name is Walter J. Pink. I am over eighteen (18) years of age and I am of sound mind and capable of making this affidavit."

"I am the attorney for the Applicant in the above-entitled and numbered cause. I have read the attached application for writ of habeas corpus and swear that all of the allegations of facts contained in it are true according to my belief."



38

45

*Walter J. Pink*

Walter J. Pink
Affiant

SUBSCRIBED AND SWORN TO BEFORE ME on the _15th_ day of May, 2000.



LESHA R. FRANCIS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 1, 2000

Notary Public in and for
The State of Texas

My commission expires: _7-1-2000_ .

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above-entitled and numbered application for writ of habeas corpus has been served on _15th of May 2000_ by delivery of a true copy to him by certified mail, return receipt requested, by depositing it, postage prepaid, in an official depository under the care and custody of the United States Postal Service on the _15th_ day of May, 2000, enclosed in a wrapper properly addressed as follows:

_Hon. Yolanda de Leon_
_974 E. Harrison St._
_Brownsville, Texas_
_78520_

DATED: May _15th_, 2000.

FILED _8:40_ O'CLOCK _A_ M
AURORA DE LA GARZA DIST. CLERK

MAY 16 2000

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

39

46

Walter J. Pink
Attorney for Applicant

40

47



**Cameron County District Courts**
974 E. Harrison Street
Brownsville, Texas 78520

Civil: (956) 544-0838
Criminal: (956) 544-0839
Child Support: (956) 544-0840
Jury Inquiries: (956) 544-0842
Jury Inquiries: (956) 423-2840
FAX: (956) 544-0841

**Aurora De La Garza**
District Clerk

CAUSE NO. __90-CR-68-B__

| | |
|---|---|
| **THE STATE OF TEXAS** | **IN THE 138TH JUDICIAL** |
| **VS** | **DISTRICT   COURT   OF** |
| **SANTOS MONTOYA** | **CAMERON   COUNTY,   TEXAS** |

**(Writ III) Filed On 05/16/00**

**To The Honorable: Robert Garza:**

Judge presiding in the convicting court in the above entitled
and numbered cause:

I hand you herewith a copy cf the **Applicant's Third
Application for Writ of Habeas Corpus** in the above styled and
numbered filed on **May 16, 2000.**

Issued and given under my hand and seal of office this
**May 18, 2000.**
(Date of issuance)

**Aurora De La Garza, District Clerk**
Cameron County, Texas

By _Jessica Cruz_
Jessica Cruz, Deputy



**Cameron County District Courts**
974 E. Harrison Street
Brownsville, Texas 78520

Aurora De La Garza
District Clerk

Civil: (956) 544-0838
Criminal: (956) 544-0839
Child Support: (956) 544-0840
Jury Inquiries: (956) 544-0842
Jury Inquiries: (956) 423-2840
FAX: (956) 544-0841

**May 18, 2000**

Hon. Yolanda De Leon
Cameron County District Attorney
974 E. Harrison Street
Brownsville, Tx  78520

    In Re:  <u>Third Application for Writ of Habeas Corpus</u>
       —<u>Filed on 05/16/00</u>

        THE STATE OF TEXAS
        VS
        SANTOS MONTOYA

TRIAL CAUSE NO. <u>90-CR-68-B</u>

Dear Ms. De Leon:

Enclosed please find a copy of the **third application** in the
above styled and numbered **Post Conviction Habeas Corpus** case.

Sincerely,

**AURORA DE LA GARZA,** District Clerk

By   _Jessica Cruz_
     Jessica Cruz, Deputy

**THE STATE OF TEXAS** }{
**COUNTY  OF CAMERON** }{

I, **Yolanda De Leon, District Attorney,** Cameron County,
Texas, hereby acknowledge receipt of notice of filing the
application for writ of habeas corpus in the above entitled
and numbered cause, and waive statutory requirement that
such notice be made by certified mail.

Yolanda de Leon

By   _____
     Assistant District Attorney



**Cameron County District Courts**
974 E. Harrison Street
Brownsville, Texas 78520

Civil: (956) 544-0838
Criminal: (956) 544-0839
Child Support: (956) 544-0840
Jury Inquiries: (956) 544-0842
Jury Inquiries: (956) 423-2840
FAX: (956) 544-0841

**Aurora De La Garza**
District Clerk

**May 18, 2000**

**Hon. Walter J. Pink**
**WALTER J. PINK & ASSOCIATES**
**2646 South Loop West, #195**
**Houston, Texas 77054**

RE:    CAUSE NO. 90-CR-0068-B

       THE STATE OF TEXAS
       VS
       SANTOS MONTOYA

       IN RE:   <u>Third Application for Writ of Habeas Corpus</u>
                <u>Filed 05/16/00</u>

Dear Mr. Pink:

This is to acknowledge receipt of the above captioned <u>**THIRD**</u>
<u>**APPLICATION FOR WRIT OF HABEAS CORPUS**</u>.  The state is afforded
fifteen **(15)** days from date they receive notice of filing, in
which it may order a hearing.

If no order has been entered within thirty-five (35) days
from the filing date, the petition will be forwarded to the
Court of Criminal Appeals, for their consideration.

All further correspondence should indicate the above cause
number.

Sincerely,

**AURORA DE LA GARZA, District Clerk**
**Cameron County, Texas**

By  _Jessica Cruz_
     Jessica Cruz, Deputy


CC

File


**50**

Thank you for the opportunity to be of service.

CAUSE NO. 90-CR-0068-B

| STATE OF TEXAS | ][ | IN THE DISTRICT COURT |
| v. | ][ | 138TH JUDICIAL DISTRICT |
| SANTOS MONTOYA, Applicant | ][ | CAMERON COUNTY, TEXAS. |

### ORDER ON APPLICANT'S THIRD
### APPLICATION FOR WRIT OF HABEAS CORPUS

Today, after considering Applicant Santos Montoya's trial file, trial record, Opinion on direct appeal, his first two Applications for writ of *habeas corpus*, and the State's proposed Order on his third, this Court finds and concludes that his third Application should be denied through his failure to comply with **Tex. Code Crim. Proc. 11.07, §4(a)**, which states that, when an applicant files a subsequent application, he shall provide specific facts establishing at least one of two premises.

This Court again finds and concludes that Applicant's third Application fails to prove by a preponderance of the evidence that there is any controverted, previously-unresolved facts material to the legality of his confinement. **Tex. Code Crim. Proc. 11.07 §3(d)**.

The Clerk of this Court is now ORDERED to prepare a Transcript of this Order and transmit the same to the Clerk of the Court of Criminal Appeals as soon as possible.

Signed for entry on June _5 H_, 2000.

HON. ROBERT GARZA,
Judge Presiding

1

FILED
AURORA DE LA GARZA, DIST. CLERK

JUN - 5 2000

DISTRICT COURT, CAMERON COUNTY, TEXAS

51

**06/05/00 COPIES:**

C:    John A. Olson
      A.D.A

Walter J. Pink
Walter J. Pink & Assoc.
2646 S. Loop West, Ste. 195
Houston TX. 77055
Attorney for Applicant
Santos Montoya

e:\90-068b.whc

2

52

CAUSE NO. <u>90-CR-68-B</u>

<u>B I L L   OF   C O S T S</u>

| THE STATE OF TEXAS | THE  DISTRICT  COURT |
| --- | --- |
| VS | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA | 138TH JUDICIAL DISTRI |

| | |
| --- | --- |
| COST OF PREPARATION OF CLERK'S RECORD ON THE WRIT OF HABEAS CORPUS | $  55.00 |
| COST OF PREPARATION: | $  15.00 |
| POSTAGE AND HANDLING: | $   <u>5.18</u> |
| TOTAL COSTS: | $  75.18 |

53

## CERTIFIED BILL OF COSTS

### CAUSE NO. **90-CR-68-B**

THE STATE OF TEXAS

VS

**SANTOS MONTOYA**

IN THE DISTRICT COURT OF

CAMERON  COUNTY,  TEXAS

**138TH** JUDICIAL DISTRICT

I, **AURORA DE LA GARZA,** CLERK OF THE DISTRICT COURTS OF CAMERON COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT ACCOUNT OF THE COSTS ACCURED IN THE ABOVE ENTITLED AND NUMBERED CAUSE.

GIVEN UNDER MY HAND AND SEAL OF OFFICE IN THE CITY OF BROWNSVILLE, CAMERON COUNTY, TEXAS, ON THIS **8TH** DAY  OF **JUNE, 2000.**

<div style="text-align:center">

AURORA DE LA GARZA
CLERK OF THE DISTRICT COURTS OF
CAMERON COUNTY, TEXAS

BY  *Jessica Cruz*

GESSICA CRUZ, DEPUTY
</div>



**54**

## C L E R K ' S   C E R T I F I C A T E

THE STATE OF TEXAS   ) (

COUNTY OF CAMERON   ) (

I, AURORA DE LA GARZA, CLERK OF THE DISTRICT COURTS OF
CAMERON COUNTY, TEXAS, DO HE8EBY CERTIFY THAT THE FOREGOING
PAGES CONTAIN A TRUE AND CORRECT ORIGINAL TRANSCRIPT OF ALL
PROCEEDINGS AS TO THE WRIT OF HABEAS CORPUS IN

CAUSE NO. **90-CR-68-B**

**(WRIT III)**

**T H E   S T A T E   O F   T E X A S**

VS.

**SANTOS MONTOYA**

AS THEY APPEAR ON FILE AND OF RECORD ON THIS OFFICE.

GIVEN UNDER MY HAND AND SEAL OF SAID COURT OF CAMERON
COUNTY, TEXAS, ON **JUNE 8, 2000**.

**AURORA DE LA GARZA, DISTRICT CLERK
CAMERON COUNTY, TEXAS**

BY: _____
JESSICA CRUZ, DEPUTY



55

APPLICANT __SANTOS MONTOYA_____    APPLICATION NO. __24.306(02)__

    APPLICATION FOR ORIGINAL WRIT OF HABEAS CORPUS     _____

    APPLICATION FOR 11.07 WRIT OF HABEAS CORPUS     __XXXXXXXX__

    APPLICATION FOR WRIT OF MANDAMUS     _____

    APPLICATION FOR WRIT OF PROHIBITION     _____

    MOTION FOR LEAVE TO FILE MOTION FOR REHEARING     _____

    MOTION FOR STAY OF EXECUTION     _____

### A C T I O N   T A K E N

APPLICATION DENIED WITHOUT WRITTEN ORDER.

_____
JUDGE                          DATE

APPLICATION (DENIED)(GRANTED) WITH WRITTEN ORDER.

_____
JUDGE                          DATE

APPLICATION DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT (AFTER)(WITHOUT) A HEARING.

_Michael J. McCormick_____ _6-22-94_____
JUDGE                          DATE

MOTION FOR LEAVE TO FILE DENIED WITHOUT WRITTEN ORDER.

_____
JUDGE                          DATE

MOTION TO FILE DENIED WITH WRITTEN ORDER.

_____
JUDGE                          DATE

MOTION FOR LEAVE TO FILE HELD IN ABEYANCE AND THE RESPONDENT IS ORDERED TO FILE AN ANSWER WITHIN _____ DAYS.

_____
JUDGE                          DATE

REMAND FOR EVIDENTIARY HEARING (OR AFFIDAVITS).

_____
JUDGE                          DATE

FILE AND SET FOR SUBMISSION.

_____
JUDGE                          DATE

DIRECT APPEAL PENDING--NO ACTION NECESSARY.  SEE EX PARTE BROWN, 662 S.W.2d 3 (TEX.CR.APP. 1983).

_____
JUDGE                          DATE

DISMISS AS MOOT.

_____
JUDGE                          DATE

OTHER.

_____
JUDGE                          DATE





**Cameron County District Courts**
974 E. Harrison
Brownsville, Texas 78520

**Aurora De La Garza**
District Clerk

Civil: (512) 544-0838
Criminal: (512) 544-0839
Child Support: (512) 544-0840
Jury Inquiries: (512) 544-0842
FAX: (512) 544-0841

<u>MARCH 22, 1994</u>

CERTIFIED MAIL No.
  P <u>862 669 660</u>

HON. THOMAS LOWE, CLERK
COURT OF CRIMINAL APPEALS
P. O. BOX 12308
AUSTIN, TX  78711

       RE: THE STATE OF TEXAS
          VS.
          SANTOS MONTOYA

          C.C.A. NO._____
          CAUSE NO. <u>90-CR-68-B</u>
          FILED ON: 1/19/94 {WRIT NO. II}

DEAR MR. LOWE:

ENCLOSED PLEASE FIND THE ORIGINAL TRANSCRIPT ON THE
POST-CONVICTION WRIT OF HABEAS CORPUS IN THE ABOVE
ENTITLED AND NUMBERED CAUSE.

YOURS VERY TRULY,

AURORA DE LA GARZA, DISTRICT CLERK

BY _____
       AMPARO GARCIA, DEPUTY

cc  HON. JOHN A. OLSON, ASSISTANT DISTRICT ATTORNEY
    MR. SANTOS MONTOYA

**THE STATE OF TEXAS** }{

**COUNTY OF CAMERON** }{

### A F F I D A V I T

    Before me, the undersigned authority, on this day, personally appeared, Amparo L. Garcia, who after by me being duly sworn on oath, deposes and says:

    1) My name is Amparo L. Garcia and I am the Appeals Clerk for the District Clerk's Office, Cameron County, Texas;

    2) That an Application for Writ of Habeas Corpus was filed on January 19, 1994 on Cause No. 90-CR-68-B, Styled The State of Texas vs. Santos Montoya.

    3) That the due date to mail the Transcript on Writ of Habeas Corpus was February 24, 1994.

    4) That I have been working on several civil and criminal appeal records to be mailed to the Court of Appeals and I was not able to complete and have ready for mailing the transcript on this case, by the due date.

    5) That the transcript is ready for mailing today.

FURTHER AFFIANT SAITH NOT.

Amparo L. Garcia,
Deputy District Clerk

    Subscribed and sworn to before me on this 22nd day of March, 1994.

My commission expires:
07/07/94

Notary Public in and for
the State of Texas

COURT OF CRIMINAL APPEALS NO. _____

CAUSE NO. <u>90-CR-68-B</u>
{WRIT NO. II}

* * O R I G I N A L * *

<u>T R A N S C R I P T</u>

VOLUME I

THE STATE OF TEXAS

VS

<u>SANTOS MONTOYA</u>

MAILED TO THE COURT OF CRIMINAL APPEALS ON

<u>MARCH 22, 1994</u>

AURORA DE LA GARZA
CAMERON COUNTY DISTRICT CLERK

BY _____
AMPARO GARCIA, DEPUTY

FILED IN COURT OF CRIMINAL APPEALS, AT AUSTIN, TEXAS

THE _____ DAY OF _____ 1994.

THOMAS LOWE, CLERK OF COURT OF CRIMINAL APPEALS

BY _____ DEPUTY

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 24 1994

Thomas Lowe, Clerk

<u>POST CONVICTION HABEAS CORPUS</u>

<u>CAUSE NO. 90-CR-68-B</u>
(WRIT NO. II)

PETITIONER:      <u>SANTOS MONTOYA</u>
                 TDCJ-ID #544493
                 RT, 2 BIX 4400
                 GATESVILLE, TEXAS 76597

FROM:            AURORA DE LA GARZA, District Clerk
                 974 E. HARRISON
                 BROWNSVILLE, TEXAS 78520

JUDGE:           <u>HON. ROBERT GARZA</u>   138TH  DISTRICT COURT

ATTORNEY FOR PETITIONER:              ATTORNEY FOR STATE:
(PRO-SE)                              HON. LUIS V. SAENZ
                                      STATE BAR NO. <u>17514880</u>
                                      974 E. HARRISON STREET
                                      BROWNSVILLE, TEXAS 78520
                                      <u>PHONE NO. (210) 544-0849</u>

---

<div align="center"><b>INDEX</b></div>

<u>INSTRUMENT</u>                                                      <u>PAGE</u>

APPLICATION FOR WRIT OF HABEAS CORPUS (FILED ON 1/19/94).    <u>1</u>

LETTER FROM CLERK TO JUDGE GARZA (DATED ON 1/21/94) .....    <u>31</u>

LETTER FROM CLERK TO MR. MONTOYA (DATED ON 1/21/94) .....    <u>32</u>

LETTER FROM CLERK TO DISTRICT ATTORNEY'S OFFICE (DATED
     ON 1/21/94) ........................................    <u>33</u>

STATE'S RESPONSE TO DEFENDANT'S SECOND APPLICATION FOR
     WRIT OF HABEAS CORPUS (FILED ON 1/28/94) ..........     <u>35</u>

ORDER ON DEFENDANT'S SECOND POST CONVICTION WRIT OF
     HABEAS CORPUS (SIGNED ON 1/31/94) ...................   <u>38</u>

CRIMINAL DOCKET SHEETS ..................................     <u>39</u>

CLERK'S CERTIFICATE .....................................     <u>45</u>

IN THE

138th JUDICIAL DISTRICT COURT OF

CAMERON COUNTY, TEXAS

| | | |
|---|---|---|
| SANTOS MONTOYA | § | |
|     Prtitioner | § | |
| | § | |
| -VS- | § | CAUSE NO: 90-CR-68-B |
| | § | |
| THE STATE OF TEXAS and | § | |
| JUDGE ROBERT GARZA | § | |
|     Respondant | § | |

**APPLICATION FOR WRIT OF HABEAS CORPUS**

**TO THE HON.JUDGE OF SAID COURT:**

Now comes SANTOS MONTOYA, applicant in the above styled and
numbered cause, pro se, and presents this application for
Writ of Habeas Corpus pursuant to the **Texas Code of Criminal
Procedure, Article 11.05** and **11.07 (Vernon 1977 and 1991
supplement)**, including **Section 2 (a)(b)(1)(d)** thru **Section 5,**
requiring that the District Clerk forward this application
along with transcripts, records, findings of the trial court
and any responses from the State, upon the 35th day upon
receipt of this application to the Court of Criminal Appeals.
Applicant is entitled to immediate notice of all findings,
responses, etc, and is entitled to file a supplemental
response pursuant to **Article 11.07, Section 5 V.A.C.C.P.** In
support thereof, applicant would show this Honorable court
the following:

**CONFINEMENT AND RESTRAINT**

Applicant is being illegally confined and restrained of
his liberty by James A. Collins, Director of the Texas
Department of Criminal Justice Institutional Division at

**1**

(2)

Hughes Unit, Rt.2, Box #4400/Gatesville,Texas 76597; pursuant to a judgment of conviction rendered by the 138th Judicial District Court of Cameron County, Texas in cause no# 90-CR-68-B for the offense of murder. As defined by the **Texas Penal Code § 19.02** upon an indictment which fails to meet the constitutional requisite of **Article 5, Section 13, Texas Constitution,** thus depriving the court of subject matter jurisdiction to convict for lack of a valid indictment.

The judgment of conviction was registered against applicant in direct violation of the **5th** and **14th Amendments of the United States Constitution** as well as **Art. 1, Section 19** of the **Texas Constitution.**

".....Scope of the judgment and sentence are on file with the District Clerk for the 138th Judicial District Court of Cameron County, Texas in cause no# 90-CR6-8-B.

Applicant would further urge, that he is not an attorney with any proper legal training, Therefore, this application for the writ of habeas corpus should be liberally construed. **Ham-v-North Carolina, 471 F.2d 406.**

### STATEMENT OF FACTS

On or about January 24, 1990 an indictment was filed with the clerk of court charging applicant with the offense of murder.

On or about January 29, 1990 applicant retained Glen A. Barnard to represent him on this matter.

Applicant was tried before a jury on March 19th thru 26, 1990, at which time he was found guilty of the offense on March 26, 1990, and assessed a punishment of 85 years on March 26, 1990.

April 17, 1990 Applicant filed "Notice of Appeal" and on June 6, 1991, the appeal was affirmed.

### GROUNDS FOR RELIEF

2

(3)

## POINT OF ERROR ONE

Applicant is illegally confined and restrained of his liberty by the Texas Department of Criminal Justice-Institutional Division, pursuant to a judgment of conviction by the District Court which lacked lawful jurisdiction of the subject matter to convict upon an indictment which fails to meet the requisites of **Article 1 § 10**, and **Article 5 § 13, of the Texas Constitution,** as well failed to meet the statutory prerequisites of **Article 20.19, 20.21, 20.22, 21.02(2), and 27.03(1) V.A.C.C.P.,** thus violating the **Due Process Clause of the Fourteenth Amendment of the United States Constitution,** as well as, in violation of the **Due Course of Law, under Article 1 § 19** of the **Texas Constitution.**

The District Court is deprived of subject matter jurisdiction to convict on an indictment whose terms were written by a District Attorney from notes and memory of what transpired at the Grand Jury Hearing Session, yet never <u>resubmitted</u> to the entire Grand Jury Session for final approval. Such a document is not a grand jury indictment, but a District Attorney's information.

A conviction is absolutely void when the indictment fails to show the prerequisite 9-Grand Jurors, concur with the indictment; 9-Grand Jurors were in attendance at the presentment, and the record is absolutely silent as to presentment to a judge in open court as mandated by statue.

The court cannot obtain subject matter jurisdiction upon the mere filing of an instrument alleged to be an indictment with the clerk of court; for the clerk is a ministerial officer and possesses no authority to render decisions or questions on jurisdiction, that is the sole prerogative of the presiding judge of the court.

When the record of a conviction shows no more than a filing of a document entitled an "Indictment" with the clerk of court, and the record is absolutely void of showing a presentment of an indictment was made to the judge in open

**3**

(4)

court; fails to show the requisite number of grand jurors were in attendance at such presentment, fails to show the indictment was <u>resubmitted</u> to the grand jury as a whole for final approval, and lacks the minimum requisite (9) signatures upon the indictment if approved by less than the whole grand jury, the District Court is deprived of subject matter jurisdiction to convict upon a felony for a lack of a valid indictment.

Such conviction must be set-aside as being constitutionally void, for it is based upon an information, <u>not</u> a grand jury indictment.

## ARGUMENT AND AUTHORITIES

Applicant contends that his conviction in cause number **90-CR-68-B**, out of the <u>138th</u> **JUDICIAL DISTRICT COURT of CAMERON COUNTY, TEXAS,** is absolutely **null and void** because the trial court lawful subject matter to convict upon an indictment which fails to meet the requisites of **Article 1 § 10 and Article 5 § 13, of the Texas Constitution,** as well as failing to meet the prerequisite set forth in **Article 20.19, 20,21, 20.22 and 27.03 (1), of the V.A.C.C.P.**

Because "... a legal indictment duly presented by a legal grand jury is an indispensable prerequisite to prosecution. It is jurisdictional, and without one, the court is powerless to act beyond dismissing the case..." <u>Ex Parte Cannon</u>, 546 S.W.2d 266 (1976); <u>Reese-v-State</u>, 151 S.W.2d 828 (1941); <u>Saragosa-v-State</u>, 46 S.W.2d 190 (1898); <u>Rainey-v-State</u>, 19 Tex. App. (1885); <u>Lott-v-State</u>, 18 Cr. 627 (1885). Failure of the state to meet any requisite for a valid indictment deprives the court of its subject matter jurisdiction and renders any conviction on such document in violation of the **Due Process Clause of the Fourteenth Amendment of the United States Constitution,** and in violation of the **Due Course of Law** prescribed by **Article 1 § 19 of the Texas Constitution, inter-a`lia.**

**4**

(5)

Applicant's challenge to the court's jurisdiction to convict upon a defective indictment is authorized by **Article 27.09 (2) V.A.C.C.P.**, which provides; "An exception to an indictment may be taken for want of any requisites prescribed by **Articles 21.02, and 21.21 V.A.C.C.P.**"

Applicant's challenge is further authorized by **Article 27.03** which provides; "In addition to any other grounds authorized by law, a motion to set aside an indictment may be based upon the following:... That it appears by the record of the court that the indictment was not found by at least 9-grand jurors..."

Applicant will show this Honorable Court, that not only does the minutes of the court [Docket Entries] hereto attached as Exhibit A, prove the dictates of **Article 27.03 (1) V.A.C.C.P.** are completely lacking in this cause, minutes are absolutely void of any proof that the document entitled, an "Indictment", hereto attached as Exhibit B, is the product of the grand jury, or had been presented to a judge in open court, with the requisite 9-grand jurors in attendance as required by **Article 20.21 V.A.C.C.P.**

All the minutes of applicant's case actually reflect is the ministerial act of filing an unverified document entitled an "Indictment" with the clerk of the District Court. Failure of the record to show compliance with **Article 20.21 V.A.C.C.P.** is, applicant contends, a fatal error that requires dismissal of applicant's conviction because the document thus filed has not been resubmitted to, or approved by the requisite 9-grand jurors required by law.

Such a document constitutes no more than an information which deprives the court of subject matter jurisdiction to convict for a felony, absent a valid written waiver of indictment as is required by **Article 1.141 V.A.C.C.P.**

While the court's in Texas have not specifically addressed whether the process for finding and presenting indictments require resubmission of an indictment to the grand jury, as a whole for approval; or whether failure of

**5**

(6)

the record to show compliance with **Article 20.21 V.A.C.C.P.** is a <u>fatal error</u>, applicant will show the court compliance with **Article 20.21 V.A.C.C.P.** and <u>resubmission</u> of an indictment found under the satutory procedures used in Texas is <u>mandatory</u> if the constitutional command "... <u>no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury</u>..." in **Article 1 § 10 of the Texas Constitution,** and that "...<u>no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury</u>..." in **Amendment V, of the United States Constitution** are to have any meaning.

By definition, "An indictment is the written statement of a grand jury accusing a person therein named, of some act or omission by which law, is declared to be an offense", **Article 21.01 V.A.C.C.P.,**cited with approval in **Snowden-v-State,** 784 S.W.2d 559 (1990). The indictment is, therefore, "... the sworn declaration of the grand jury..." **Calvin-v-State,** 25 Tex. 789, 794 (1860), "...express[ed] in writing... by affirmative finding, there is sufficient cause to believe that person committed each and every element of an offense..." **Bradfield-v-State,** 600 S.W.2d 288 (1980).

Whether the document filed in this cause constitutes a sworn declaration of a grand jury, or, as applicant contends, only an <u>unverified information</u> by a District Attorney declaring what a grand jury might declare if submitted to, and approved by a grand jury, becomes quite clear after examination of **Article 20.19** through **20.22 V.A.C.C.P.**

Procedurally, "After all testimony which is accessible to the grand jury shall have been given... <u>the vote shall be taken as to the presentment of an indictment, and if 9-members concur... the foreman shall make a memorandum of the same with such details as will enable the Attorney who represents the state to write the indictment</u>..." **Article 20.19 V.A.C.C.P.**

(7)

After the attorney representing the state [District Attorney] has written the formal indictment, and the foreman reviews and signs the same officially, **Article 20.20 V.A.C.C.P.;** the Legislature requires: "When the indictment is ready to be presented, the grand jury shall go in a body into open court, and through their foreman, deliver the indictment to a judge. At least 9-members of the grand jury must be present on such occasion." **Article 20.21 V.A.C.C.P.** (1965); and "The fact of a presentment in open court shall be entered upon the minutes of the court..." **Article 20.22 V.A.C.C.P.**

Because "... **Article 21.01 V.A.C.C.P.** and **Article 1 § 10** of the **Texas Constitution** requires that the indictment be based upon the finding of the grand jury... **Jenecka-v-State, 739 S.W.2d 813 (1987),** and the procedures for finding of indictments in Texas clearly show the District Attorney is charged with writing the indictment, that being done with the aid of notes (memorandum of foreman) and personal memory of what transpired at the grand jury session, the document thus written has been found by a grand jury, but by the prosecutor operating under the grand jury's bare instructions.

Applicant would make note here it is not necessary that the foreman provide the District Attorney's a memorandum, that "... failure of the foreman to make a memorandum is of little consequence... it is for the benefit of the prosecuting attorney, and grand juries are not required to set down all of the testimony, or any part thereof, upon which the bill is found..." **Jacob-v-State, 35 Tex. Cr. 410, 34 S.W.2d 110 (1896); Carpenter-v-State, 477 S.W.2d 22, Cf. Black-v-State, 735 S.W.2d 897-99,** and cases cited therein. Therefore, it is more than a mere possibility an indictment may be written purely upon personal memory of the District Attorney, with no input from the grand jury whatsoever!!!

Applicant would further note, even though the foreman is required to sign the indictment officially, his/her signature cannot transform the District Attorney's work product into a sworn verdict of the grand jury, as the Court of Criminal

7

(8)

Appeals has declared, the signature of the foreman "...is not essential to the validity of the indictment..." **Ex Parte Landers**, 366 S.W. 567 (1963); **Ex Parte King**, 240 S.W.2d 777 (1951); **Parkinson-v-State**, 220 S.W. 774 (1920); **Searcy-v-State**, 232 S.W.2d 319. In these cases the Court of Criminal Appeals declared that failure of an indictment to have the signature of the foreman on it when presented can be cured at a later date-via-direction of the court, thus it presents no error.

Because the signature of the foreman is a meaningless formality without substance, and the terms of an indictment may be based purely upon personal memory of a prosecutor, the document filed in applicant's case does not meet the definition of an indictment prescribed in **Article 21.01 V.A.C.C.P.** It is, therefore, nothing but an *information* and <u>must be resubmitted</u> to the grand jury for final approval. See **Gaither-v-United States**, 413 F.2d 1061 (D.C. Cir. 1969), discussing an identical practice and procedure of a prosecutor writing an indictment upon notes and memory, and only the foreman viewing and approving the indictment as is done in Texas under **Article 20.19** through **20.22 V.A.C.C.P.**

The Gaither court found "... <u>the signature of the foreman in itself convert the indictment, admittedly not seen by the full grand jury, into one properly found by 1 12-jurors</u>...; and concluded the grand jury, as a body, must pass upon the <u>actual terms of the indictment</u>. This conclusion was based upon the Constitutional Principles set forth in **Ex Parte Bain**, 121 U.S. 1, 7 S. Ct. 781 (1887); **Stirone-v-United States**, 360 U.S. 212, 80 S.Ct. 270 (1960), and **Russell-v-United States**, 369 U.S. 749, 82 S.Ct. 1033 (1962), that it is <u>the right of the accused to be tried on an indictment which has in each material particular been approved by a grand jury</u>, Id at page 1071; and required "... a flat rule requiring dismissal of indictments not found by 12-grand jurors... appropriate in the case of indictment returned after the date of this decision..." Id at page 1074,

8

(9)

for the procedure utilized was in violation of the **5th and 14th Amendments of the United States Constitution.**

The fact such a procedure of allowing a prosecutor to write the terms of an indictment with minimal input from a grand jury would produce only an <u>information</u> requiring <u>resubmission</u> to a grand jury for final approval was clearly recognized by the Texas Legislature mandating the grand jury, as a body composed of no less than 9-members, go into open court and present the indictment to a judge in **Article 20.21 V.A.C.C.P.**; and that fact be entered upon the minutes of the court in **Article 20.22 V.A.C.C.P.**

As the minutes of Applicant's case clearly reflect in Exhibit A, there is no evidence whatsoever of an indictment being presented in open court to a judge. The record merely reflects a filing of a document entitled an "<u>indictment</u>" with the clerk of court, without evidence that a single grand juror was present, let alone the requisite 9-jurors required by statue. <u>This is a fatal error</u>!!!

Every text writer from Chitty and Blackstone down to Bishop and Joyce are all in agreement as to the manner in which indictments should be found. They all agree that, when the grand jury has acted upon the bills submitted to them, they come publicly into open court, their names are called, and the foreman hands the indictments to a clerk.

Citing **Thompson and Meriam on Juries, § 696** "... in his treatise on criminal law, Mr. Chitty states that, when the endorsement "a True Bill" is made upon the bill, it becomes a part of the indictment and renders it a complete accusation against the prisoner. <u>This must be understood with the qualification that the record further shows the indictment to have been publicly returned in court as required by law</u>. This recital is positively essential to establish the identity of the indictment found by the grand jury with that which appears in the record, and upon which the defendant is arraigned. <u>The omission to make a proper entry of the return of the indictment cannot be cured by the production of a</u>

**9**

(10)

  paper purporting to be the indictment duly endorsed and
signed by the foreman of the grand jury, nor will the defect
be cured by the defendant pleading upon the merits or by a
verdict of guilty..."

    As the courts in **Renigar-v-United States**, 172 F.2d 646
(1909), "... any other rule would put it in the power of an
individual who happened to be foreman of the grand jury to
gratify personal or other malice by presenting in the form of
an indictment for an infamous offense a person innocent of
all crime, and subjecting him to the annoyance, expense, and
infamy attended upon such accusation. It is enough to say
that such a thing is improbable; that it is through 655.

    Because the Supreme Court in Texas has declared "...
each of the pronouncements by the United States Supreme Court
are as true of the Texas Grand Juries as they are of Federal
Grand Juries..." **Whittington-v-State**, 680 S.W.2d 505 (1984),
and the United States Supreme Court has constantly maintained
to render an indictment valid, it must in some manner appear
affirmatively from the record that it was returned or
presented as a True Bill by a grand jury in open court,
**United States-v-Glasser**, CCA, 111, 116 F.2d 690, certiorari
granted, **Glasser-v-United States**, 61 S. Ct. 835, 313 U.S.
551, 85 L. Ed. 1515, reversed on other grounds, 62 S. Ct.
475, 313 U.S. 60 , 86 L. Ed. 680, certiorari granted
**Kretske-v-U.S.**, 61 S. Ct. 835, 313 U.S. 60, 86 L. Ed. 680
certiorari granted **Roth-v-U.S.**, 61 S. Ct. 457, 315 U.S. 60,
86 L. Ed. 680, failure of the record to affirm a proper
presentment was made is not a question of irregularity, but
one of substantive law based upon the direct terms of the
constitutional guarantee that no man shall be held to answer
for an infamous offense except upon an indictment by a grand
jury. If a conviction has been made on a charge the jury
never made, this is a fatal error, see **Cole-v-State of
Arkansas**, 333 U.S. 196, 68 S. Ct. 514, 92 L. Ed. 644,
**Dejonge-v-State**, 299 U.S. 353, 57 S. Ct. 255, 81 L. Ed. 278.

    The prime reason for the grand jury making the ultimate

10

(11)

determination what to charge is to eliminate the possibility of a defendant being "...convicted on the basis of facts not found, and perhaps not even presented to, the grand jury which indicted him...Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney...To allow such destroys the restriction which the constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exist; **Russell-v-United States**, 369 U.S. 749, 82 S. Ct. 1033, at 1051 (1962), citing **Ex Parte Bain**, 121 U.S. 1, 7 S. Ct. 781 (1887) with approval.

The Court of Criminal Appeals has recognized this maxim by declaring "... **Gorman-v-State**, 634 S.W.2d 681 (1982), and declaring "... a presentment occurs when 9-members of a grand jury concur on a true bill and deliver the indictment to a judge..." **Ex Parte Watts**, 742 S.W.2d 745 (1987).

Because it "... is the duty of every court [judge] to inquire for the purpose of ascertaining if it has jurisdiction over the subject matter and the person..." **Hall-v-Wilbarger City**, 37 S.W.2d 1041 (1931), and the prosecutor has written the indictment, it is mandatory that the provisions of **Article 20.21 V.A.C.C.P.** are followed and the indictment be resubmitted to the grand jury for final approval by the judge to whom presentation was made.

Failure to do so renders the document, thus filed, an Information which deprives the court of the lawful subject matter jurisdiction on a felony unless there is written waiver of indictment on file in accord with **Article 1.141 V.A.C.C.P.**, and no such waiver exists in applicant's case.

This holds true even though an indictment has been filed with the clerk of court, for a clerk, being 'a ministerial officer, has no judicial authority beyond "Keeper of Records" and cannot determine matters of jurisdiction. See **Article 5 § 20** of the **Texas Constitution**, and **Article 2.21 V.A.C.C.P.** Even had the clerk the authority to determine jurisdiction,

(12)

that would not allow the mandates of **Article 20.21 V.A.C.C.P.** to be ignored as it has been in applicant's case.

Applicant would further show this Honorable Court even had the document filed in this case been properly presented in open court in accord with **Article 20.21 V.A.C.C.P.**, and even had a clerk of court the power to determine questions of jurisdiction so a filing of an indictment might constitute a presentment, the document in this case is <u>still not a valid grand jury indictment</u>, because it lacks the requisite minimum 9-grand juror signatures of the grand jury on it to constitute a sworn verdict of that body as required by **Article 5 § 13** of the **Texas Constitution**.

While the court's in Texas have not specifically considered whether section 13 requires no less than 9-signatures upon an indictment, applicant contends this is mandatory if an indictment is to be "... the sworn declaration of the grand jury..." expressed in **Calvin-v-State**, 25 **Tex.** 789, 794 (1860) and constitute a legal verdict of that body.

Article 5 § 13 of the State Constitution provides:
Grand and Petit Juries in the District Court shall be of 12-men: But 9-members of a grand jury shall be a quorum to transact business and pass bills. In trials of Civil cases, and in trials of Criminal cases below the grade of felony in the District Courts, 9-members of the grand jury, concurring, may render a verdict, but when the verdict shall be rendered by less than the whole number it shall be signed by every member of the jury concurring in it. When pending the trial of any case, one or more jurors not exceeding 3, may die or be disable from sitting. The remainder of the jury shall have the power to render the verdict; provided, that the legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict.
As amended March 1, 1955.

12

(13)

When reading **Article 5 § 13** in the common language and understanding prescribed by **Article 3.01 V.A.C.C.P.**,the following facts are beyond dispute:

1). Grand and Petit juries are composed of no more, nor less than 12-men;

2). No less than 9-members of the grand jury are required to transact business and pass upon bills (indictment);

3). Less than 12 jurors can render a verdict, but all those concurring must sign the verdict, and;

4). The legislature is authorized to change or modify the rule authorizing less than the whole number of the jury to render a verdict.

Because the constitution provides both Grand and Petit juries can render a verdict by no less than 9-members, there must be a minimum 9-signatures on an indictment to validate it, otherwise the document is not the sworn verdict of the grand jury required by law.

This premise is based upon two important factors;

1). The statutory process by which indictments are found in Texas clearly show the indictment is written exclusively by a District Attorney, not the grand jury, See **Article 20.20 V.A.C.C.P.**

2). Case law in Texas has declared the signature of the grand jury foreman is <u>unessential</u> to the validity of an indictment, see <u>**Ex Parte Landers**</u>, 366 S.W.2d 567 (1963).

Because the signature of the foreman in Texas has no probative value, there is <u>no presumption</u> the requisite number of grand jurors approved of an indictment as is normally found in other jurisdictions in the United States.

That is why the legislature in Texas mandates an indictment must be presented in open court with no less than 9-grand jurors in attendance in **Article 20.21 V.A.C.C.P.**,and why legislature authorizes the setting aside of indictment when "... <u>it appears by the record of the court the indictment was not found by at least 9-grand jurors</u>..." In

(14)

## Article 27.03 (1).

Because the indictment filed in applicant's case has only the signature of the foreman on it, and the record contains no judicial decree by a judge declaring that he/she has found 12-grand jurors concurred with the terms of the indictment written by the District Attorney, there is no proof the document on file in this case was approved by the requisite quorum required by **Article 5 § 13.** That is a _fatal error_ which leaves "... the District Court powerless to act beyond dismissing the case..." **Ex Parte Cannon, 546 S.W.2d 266 (1976)** for lack of a legal indictment.

Applicant would further note, even though **Article 5 § 12** of the State Constitution provides "... the presentment of an indictment or information to a court invests the court with jurisdiction of the case..." This provision does not eliminate the need for compliance with **Article 5 § 13** of the State Constitution, or **Article 20.21 V.A.C.C.P.** because "... the right to indictment by grand jury...has not been abolished; nor of course, has the statutory requisites of an indictment or information. See **Article 1 § 10, Tex. Const., Article 21.02** and **21.21 V.A.C.C.P.** and generally **Chapter 21 V.A.C.C.P.,** See **Studer-v-State,** 799 S.W.2d 263 (1990) at **note 12, page 272.**

Where the minutes of the court in applicant's case is absolutely void of showing compliance with **Article 20.21 V.A.C.C.P.,** and contains no judicial decree establishing not less than 12-jurors concurred with the indictment, and the indictment in Exhibit B contains only the single signature of one grand juror, the indictment in applicant's case is not the verdict of a grand jury, but an _information_ by a prosecutor which, absent a valid written waiver of indictment as required by **Article 1.141 V.A.C.C.P.,** renders applicant's trial and conviction upon such a document in the District Court _absolutely void_.

**POINT OF ERROR TWO**

**14**

(15)

Applicant is illegally confined and restrained of his liberty upon a conviction which was obtained through the Ineffective Assistance of Counsel, who allowed a court lacking lawful subject matter jurisdiction to convict - in direct violation of the **6th** and **14th Amendments** of the **United States Constitution,** and **Article 1 § 19** of the **Texas Constitution, inter-a'lia.**

Failure of counsel to investigate a case, to ascertain whether the fundamental prerequisites of jurisdiction of the court to proceed upon a felony matter have been established - constitutes such gross negligence as to render the conviction in violation of the **6th** and **14th Amendments** of the **United States Constitution.**

Any conviction or sentence allowed by counsel, be it retained or court appointed, by a court that lacked lawful subject matter jurisdiction to proceed upon a felony matter, without objection, constitute less than nominal representation and renders the criminal process so fundamentally defective, no fair trial was possible, nor secured by a powerless to act.

### ARGUMENT AND AUTHORITIES

The **6th Amendment** of the **United States Constitution** guarantees every accused the right to effective assistance of counsel during the course of a criminal proceeding taken against him. This guarantee is well articulated in the **Texas Constitution; Article 1 § 10,** and codified in **Article 1.05 V.A.C.C.P.**

For the purpose of an ineffective assistance claim, there is no distinction between retained or court appointed counsel, **Cuyler-v-Sullivan, 100 S.Ct. 1078 (1980).** It has been held by the **United States Supreme Court** that for an accused to prevail on an ineffective assistance of counsel claim, the accused must demonstrate that counsel's acts or omissions failed to meet the prefailing professional norms expected of competent counsel, **Strickland-v-Washington, 104**



(16)

S. Ct. 2052 at 2066 (1980). Counsel's performance is evaluated for reasonableness at the time of the alleged error[s] and not in hindsight. Id.

The accused must demonstrate that he was prejudiced by counsel's deficient performance, Id at 2067. "Prejudice" is demonstrated when a reasonable probability exists that the outcome of the proceeding may have been different, Id. at 2068. A reasonable probability has been defined as a probability sufficient to undermine confidence in the outcome of the proceeding, **Ex Parte Guzman, 730 S.W.2d 724, 733 (Tex. Cr. App. 1987),** favorably citing Strickland at 2068. If the conduct, of counsel, constitutes sound trial strategy, then the same conduct does not constitute ineffective assistance of counsel.

Since it is the duty of counsel to be familiar with the law and procedures of the state in which he/she practices, and to know how those rules and procedures are applied in any given case, **Engle-v-Isaac, 102 S. Ct. 1558 (1982); Wainwright-v-Sykes, 97 S. Ct. 2497 (1977); Fielding-v-State, 719 S.W.2d 361, 367 (Tex. App. Dallas 1986),** it is totally inexcusable for any attorney practicing criminal law in Texas not to know a valid indictment is required to invoke the court's jurisdiction, or know the statutory and constitutional provisions related to a valid grand jury indictment, or to check the record for compliance with those requirements.

For defense counsel to have completely ignored the lack of showing in the record of a proper presentment of an indictment in open court with no less than 9-grand jurors in attendance as mandated by **Article 20.21 V.A.C.C.P.,** constitutes such gross negligence as to render counsel's performance far below the norms of effective assistance of counsel under any standard applied.

That defense counsel would allow a trial or conviction for felony in a court lacking lawful jurisdiction of the subject matter for want of a valid indictment, constitutes a **prima facie showing** of prejudice sufficient to meet all the requirements under the <u>Strickland test</u> where "... if the trial court was without jurisdiction for any reason, the judgement rendered by it is void..." **State-v-Olsen,** 360

**16**

(17)

S.W.2d 398, Cf. **Ex Parte Cannon**, 546 S.W.2d 266 (1976).

Whenever the actions of counsel operate to deprive the trial of fundamental fairness, as it has in applicant's case, the **14th Amendment Due process Clause** has been violated, See **Fitzgerald-v-Estelle**, 505 F.2d 1334, 1338 (5th Cir. 1985). A judgment of conviction or sentence, or both, obtained in violation of Due Process of Law is void for want of jurisdiction for the court to enter such judgment, **Ex Parte Truong**, 770 S.W.2d 810 (1989), citing **Ex Parte Young**, 418 S.W.2d 824, 826 (1967), see also **Fay-v-Noia**, 732 U.S. 391 (1963), and must be reversed as a matter of law.

Where **Article 20.21 V.A.C.C.P.** requires presentment of an indictment to a judge in open court with no less than 9-grand jurors in attendance, and **Article 27.03 (1) V.A.C.C.P.** requires proof of record no less than 9-grand jurors concurred with an indictment, and **Article 5 § 13** of the **Texas Constitution** mandates no less than 9-grand jurors are a quorum to transact business and bills, and the record of conviction is completely void of the requisite number of signatures to validate the indictment; applicant's right to Due Process and Due Course of law under both State and Federal Constitutions have been violated due to ineffective assistance of counsel, to insure applicant was not deprived of his liberty by a court that lacked jurisdiction. Where the record of the case clearly indicates, at the onset of prosecution there was no lawful grand jury indictment, only an Information by a prosecutor, applicant's conviction must be reversed for lack of a valid indictment.

---

**Note:**

Case arguments are based upon convictions prior to 1979, but equally apply to those after that period, where fundamental constitutional requisite of **Article 5 § 13** have been ignored.

17



### POINT OF ERROR THREE

Applicant is illegally confined and restrained of his liberty by the Texas Department of Criminal Justice-Institution Division, pursuant to a judgment of conviction which was obtained through Insufficient Evidence to support judgment in direct violation of the **6th** and **14th Amendments** of the **United States Constitution,** and **Article 44.25 V.A.C.C.P.**

Applicant contends evidence is insufficient to support judgment in that state failed to establish Corpus delicti of murder. State introduced 17 witnesses in its case in chief, none of which testified that applicant's gun was the actual cause of death. Apart from accomplice confession, there was no evidence to corroborate applicant committed an act of murder. **Article 44.25 V.A.C.C.P.** It is well established that extrajudicial confession alone is insufficient to sustain a conviction. **Brown-v-State,** 576 S.W.2d 36 **(Tex. Cr. App. 1978).** Confession must be corroborated by evidence crime has been committed, i.e., corpus delicti must be proven. To establish corpus delicti of murder, state must show that applicant intentionally and knowingly committed an act of murder.

The evidence in cause no **# 90-CR-68-B** was insufficient to support conviction of murder **V.T.C.A. Penal Code Section 19.02.** The court failed to rebut reasonable hypothesis that the death of <u>Maria DeLourdes Teran</u> was caused by a .22 caliber handgun, and it is evident that defendant Montoya had a .38 caliber handgun.

State must meet its burden of proof in circumstantial evidence case by logically excluding all reasonable hypothesis other than appellant's guilt before conviction may be sustained.

When reviewing guilty verdict under outstanding reasonable hypothesis theory, conviction based on circumstantial evidence cannot be sustained if circumstances do not exclude every other reasonable hypothesis except that

(19)

of guilt of accused; proof amounting to only strong suspicion or speculation is insufficient. See: **Turro-v-State**, 837 S.W.2d 232 (Tex. App. Ft. Worth 1992); **King-v-State**, 638 S.W.2d 903, 904 (Tex. Crim. App. [Panel Op.] 1982) and **Cooper-v-State**, 842 S.W.2d 414 (Tex. App. - Beaumont 1992).

## ARGUMENT AND AUTHORITIES

Applicant contends that his conviction in cause number **90-CR-68-B**, alleged that defendant Montoya committed an act of murder in which it's impossible for Montoya and Co-defendant to have committed the same murder. The indictment is defective, because the indictment states: "Defendant did intentionally, knowingly committed an act clearly dangerous to human life that caused the <u>death</u> of Maria DeLourdes Teran, said act being:" "<u>Shooting a firearm in the direction of Maria DeLourdes Teran</u>", shooting a firearm in the direction of Maria DeLourdes Teran does not support a conviction of murder. There is no question a murder occurred. However, there is no evidence apart from accomplice's confession that a murder did occur, but there is no testimony as to the defendant's gun being the murder weapon, nor did state attempt to negate possibility that murder resulted from some other weapon oppose to his gun. See: **Vol. 6, p. 668, lines 18-25; p. 671, line 9-10; lines 21-25 and p. 672, line 1-2** where the District Attorney Mr. Sullivan indicated to the jury, that the .22 caliber handgun did in fact hit and killed <u>Maria DeLourdes Teran</u>. In the instant case, there was no showing at trial beyond the confession itself that there had been a murder. When there is no corpus delicti, a confession cannot stand. **Smith-v-State**, 172 Tex. Cr. R. 407, 361 S.W.2d 390.

**19**

(20)

### POINT OF ERROR FOUR

Applicant is illegally confined and restrained of his liberty by the Texas Department of Criminal Justice-Institutional Division, pursuant to a judgment of conviction by the District Court which violated the applicant's **six** and **fourteenth Amendments** when applicant was denied a fair and partial trial where trial judge refused to recuse himself after defense requested recusal of trial court. Judge denied request, and according to **Vernon's Ann. Tex. Rules Civ. Procedure, Rules 18a, Section C; Rules 186, Section (2)(F).**

The only order trial court has authority to enter after refusing to recuse itself, is an order of referral to presiding judge of administrative district.**V.T.C.A. Government Code, Section 74.059;** See <u>**Crawford-v-State**</u>, 807 S.W.2d 597 (**Tex. App. Dallas** 1991); <u>**State Ex Rel. Millsap-v-Lozano**</u>, 692 S.W.2d 470 (Tex. Cr. App. 1985), also applicable to the **Texas Constitution Article 5, Section 11** provides that "no judge shall sit in a case wherein he may be interested or where either of the parties may be connected with him, either by affinity or consanguinity, within such degree as may be prescribed by law, or when he shall have been counsel in the case." <u>**Lyon-v-State**</u>, 764 S.W. 1.

**The doctrine of affinity grew out of the canonical maxim that marriage makes husband and wife one. The husband has the same relation by affinity, to his wife's blood relatives as she has to them by consanguinity and vice versa.** <u>**State-v-Hooper**</u>, 140 Kan. 481, 37 P. 2d 52.

### ARGUMENT AND AUTHORITIES

Applicant contends that the trial court denied him a fair

**20**

(21)

and partial trial where trial judge refused to recuse himself,
because he (Judge Robert Garza) was the cousin of Daniel Garza
whom the applicant was accused of shoting at in the process of
Maria De Lourdes Teran getting hit and subsequently; died.

Applicant contends the District Court violated his **six**
and **fourteenth Amendments** according to **Vernon's Ann. Tex. Rules
Civ. Procedure, Rules 18a, Section C; Rules 186, Section (2) (F)**.
Which is also applicable to the **Texas Constitution Article 5, Sec-
tion** 11 provides that "no judge shall sit in a case wherein he
may be interested or where either of the parties may be connect-
ed with him, either by affinity or consanguinity, within such
degree as may be prescribed by law, or when he shall have been
counsel in the case." **Lyon-v-State**, 764 S.W. 1.

(22)

## POINT OF ERROR FIVE

Applicant is illegally confined and restrained of his liberty by the Texas Department of Criminal Justice-Institutional Division, pursuant to a judgment of conviction which was obtained through an impossible date which violated the applicant's **six** and **fourteenth Amendments** when applicant was denied a fair and partial trial where indictment alleging that accused committed offense "On or about the 8th day of November, A.D. 19 89," an impossible date, is fundamentally defective and did not confer jurisdiction on the trial court. **Tex. Cr. App., 629 S.W.2d 761.**

Over the last twenty-five years the track of authority for the proposition that to be sufficient an indictment "must give day, month and year of the commission of the offense" has led back to 1 **Branch's Annotated Penal Code (2nd Ed.) Section 452.**

An indictment alleging an impossible day or a day subsequent to the indictment is defective in **Shoefercater-v-State, 5 Tex. App. 207 (Ct. App. 1878); Ex Parte McFarland, 632 S.W.2d 621.**

The date on or about which the offense was alleged to have been committed being subsequent to the date the defendant was arrested which renders the complaint fatally defective. **Thomas-v-State, 474 S.W.2d 236 (Tex. Cr. App. 1971); Hall-v-State, 373 S.W.2d 252 (Tex. Cr. App. 1963); Mitchell-v-State, 170 Tex. Cr. R. 255, 340 S.W.2d 301 (1960); Davis-v-State, 503 S.W.2d 241 (Tex. Cr. App. 1974); Bradshaw-v-State, 156 Tex. Crim. 444, 252 S.W. 563 (App. 1922).**

## ARGUMENT AND AUTHORITIES

Applicant contends impossible date is insufficient to support judgment in that the trial court failed to have jurisdiction due to a defective indictment. The indictment being null, and void for want of a valid predicate complaint. **Shackelford-v-State, 516 S.W.2d 180 (Tex. Cr. App. 1974);**

22

(23)

Articles 15.04, 15.05 and 21.22, V.A.C.C.P.; Aguilar-v-State, 810 S.W.2d 230, at 231-232 (Tex. App.-El Paso 1991).

Attached as Exhibit C is a calculated time sheet from T.D.C.J.-Institutional-Division confirming the applicant's date of arrest which was on the 7th day of November, 1989. Which support the applicant's allegation of the impossible date, that makes the indictment fundamentally defective and did not confer jurisdiction on the trial court. Tex. Cr. App., 629 S.W.2d 761.

**PRAYER**

Wherefore, applicant prays this Honorable Court, after expiration of time within which the attorney representing the State may file his answer to conduct an evidentiary hearing, make findings of fact, and there after direct the clerk to transmit the record thus developed to the Court of Criminal Appeals as required by **Article 11.07 (d) V.A.C.C.P.,** for further action by that court, granting the relief to which applicant is entitled.

So moved and prayed that this Writ of Habeas Corpus be granted.

Respectfully submitted,

_Santos Montoya_
Santos Montoya

**VERIFICATION**

I, <u>Santos Montoya</u>, TDCJ-ID NO#<u>544493</u>, being presently incarcerated in the <u>Alfred D. Hughes</u> Unit of the TDCJ-ID in <u>Coryell</u> County, Texas, declare under penalty of perjury that I am the applicant in the above and foregoing Petition, I have read said petition and the factual allegations of the same are true and correct.

Executed on this the _14_ day of _January_ , 1994.

_Santos Montoya_
Applicant

24

## DECLARATION OF INABILITY TO PAY COST

Now respectfully comes <u>Santos Montoya</u>, TDCJ-ID <u>#544493</u>, and declares that I am unable to pay the court cost in this Writ of Habeas Corpus and request leave of the court to proceed in forma pauperis in this accompanying Writ of Habeas Corpus and would show the court the following:

(1). I am presently incarcerated in the <u>Alfred D. Hughes</u> Unit of the TDCJ-ID where I am not permitted to earn or handle money.

(2). I have no source of income or spousal income.

(3). I currently have <u>$7.00</u> credited to me in the Inmate Trust Fund.

(4). During my incarceration in the TDCJ-ID I have received approximately <u>$40.00</u> per month as gifts from relatives and friends.

(5). I neither own nor have an interest in any realty, stocks, bonds or bank accounts and I receive no interest or dividend income from any source.

(6). I have <u>no</u> dependants.

(7). I have total debts of approximately <u>$0.00</u>.

(8). I owe <u>$0.00</u> as restitution.

(9). My monthly expenses are approximately <u>$34.00</u>.

I, <u>Santos Montoya</u>, TDCJ-ID <u>#544493</u>, being presently incarcerated in the <u>Alfred D. Hughes</u> Unit of the TDCJ-ID, in <u>Coryell</u> County, verify and declare under penalty of perjury that the foregoing statements are true and correct. Executed on this the _14_ day of _January_, 1994.

**Applicant**

25

**"EXHIBIT A"**

# CRIMINAL DOCKET ON APPEAL

Case No. ____
DEF IC#: __14770__

| | | | |
|---|---|---|---|
| NAMES OF PARTIES | ATTORNEYS | OFFENSE | DATE OF FILING |
| THE STATE OF TEXAS<br>VS.<br><br>SANTOS MONTOYA<br><br>DOB: 03/31/61 | DISTRICT ATTORNEY, CAMERON COUNTY<br>MURDER<br><br>Hon. Glen A. Barnard (a) | 2 | Month 01 / Day 24 / Year 90 |

| Date of Orders | | | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| Month | Day | Year | | |
| JANUARY | 24 | 1990 | TRANSFERRED FROM THE 197TH DISTRICT COURT, DARRELL HESTER    /OE | 01/24/90 ORDER TRANSFERRING CAUSE |
| Jan. | 29 | 1990 | Bond set at $75,000.00 c/s.  RGarza/ch | 1/29/90  Precept Issued |
| Jan. | 29 | 1990 | Set for Arraignment on February 7, 1990 at 8:30 A.M.  RGarza/ch | 1/29/90  NOTICE OF ARRAIGNMENT |
| Jan. | 2 | 90 | Hon. Glen A. Barnard appointed to represent Defendant.  RGarza/ch | Served: 1/30/40 Filed: 8/1/40 |
| | | | State announced ready. Defendant waived formality of arraign-<br>ment and entered a plea of not guilty. Case set for trial on<br>February 26, 1990; with announcements on February 16, 1990 at<br>9:00 a.m. Rgarza/cap | 1/29/90  ORDER APPOINTING ATTORNEY<br>2/8/90-WAIVER OF ARRAIGNMENT<br>3/19/90-State's Motion to Amend Indictment<br>3/20/90-Application for Attachment<br>of Witness<br>3/22/90-Application for Attachment<br>of Witness<br>3/23/90-JURY Separation<br>3/19/90-JURY Chosen<br>3/19/90-Application for Jury to Assess<br>Punishment |

PAGE

# IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURORS, for the County of Cameron, State aforesaid, duly organized as such at the JANUARY

Term, A. D. 19 90, of the 197TH Judicial District Court, in and for

said County, upon their oaths in said Court, present that    SANTOS MONTOYA
AND JOSE HERNANDEZ CASTILLO

hereinafter called Defendants,

on or about the            8th            day of       November            A. D One Thousand Nine

Hundred and     Eighty-nine            and anterior to the presentment of this indictment, in the County of

Cameron and State of Texas, did then and there unlawfully  attempt to commit a felony, namely MURDER

and in the course of and in furtherance of the attempt to commit said felony, the

Defendant did intentionally, knowingly, and recklessly commit an act clearly

dangerous to human life that caused the death of MARIA DE LOURDES TERAN, said act

being:  shooting a firearm in the direction of MARIA DE LOURDES TERAN,

**"EXHIBIT B"**

against the peace and dignity of the State.

_____
Foreman of the Grand Jury

90-CR-68-B          27

THE STATE OF TEXAS }
COUNTY OF CAMERON }

I, AURORA DE LA GARZA, Clerk of the District Courts of Cameron County, Texas, do hereby certify that the within and fore-

going is a true and correct copy of the Original Bill of Indictment, filed in said Court on _____

_____ A. D. 19___ in Cause No._____ styled the State of Texas vs.

_____

_____

Given under my hand and seal of said court, at office in Brownsville, Texas, this ............ _____ day

of _____ A. D. 19_____

AURORA DE LA GARZA , Clerk

By_____ Deputy

---

No. 9C-CC-65-B

THE STATE OF TEXAS

vs.

SANTOS MONTOYA AND
JOSE HERNANDEZ CASTILLO

# INDICTMENT

OFFENSE:

FELONY MURDER

A TRUE BILL:

_Benjamin Eurest, Jr._
Foreman of Grand Jury

Benjamin Eurest, Jr.
Criminal County Attorney

Filed on. JAN 2 4 1990

AURORA DE LA GARZA, CLERK OF
DISTRICT COURTS OF CAMERON
COUNTY TEXAS
By_____
Ofelia Elizondo
Deputy

Amount of Bail $ 25,000.

NAMES OF WITNESSES

JOE MONTOYA 14770
CASTILLO 44191

28

"EXHIBIT C"

UNIT            T.D.C.J.-INSTITUTIONAL DIVISION        06/03/93-208

NAME: MONTOYA,SANTOS                    TDC NO: 544493    UNIT: AH

*PRJ-REL-DATE:          11 07 2074    MAX-EXP-DATE:        11 07 2074
*INMATE STATUS:         S4 W          MAX TERM:            85 00 00
FLAT TIME CREDITED:     3 06 26       CALC BEGIN DATE:     11 07 89
 GOOD TIME CREDITED:    3 01 27       TDC RECEIVE DATE:    04 17 90
 BONUS TIME CREDITED:   0 00 00       GOOD TIME LOST:              0
 WORK TIME CREDITED:    1 09 07       WORK TIME LOST:              0
*TOTAL TIME CREDITED:   8 05 30
*STATUS EFFECT DATE:    05 11 93      JAIL GOOD TIME RECEIVED: YES

STAT CHG: S4/05  11 93██████ ██████████              00000

ste Papel es para que sepan que yo estava en la Carcel desde
l dia 7 de Noviembre de 1989.    ( 7085 )

PAROLE DATA: SUBMITTED FOR BOARD REVIEW
*TIME CALCULATIONS DO NOT INCLUDE ABSENCES FOR CURRENT MONTH

IT COPY      T.D.C.J.-INSTITUTIONAL DIVISION

ITOYA,SANTOS                    TDC:544493 SID:03206175

J-REL-DATE:        11 07 2074      MAX-EXP-DATE:      11 07 2074
IATE STATUS:       S3 W           MAX TERM:          85 00 00
IT  TIME CREDITED:    4 01 27      CALC BEGIN DATE:   11 07 1989
ID  TIME CREDITED:    3 08 28      TDC RECEIVE DATE:  04 17 1990
IUS TIME CREDITED:    0 00 00      GOOD TIME LOST:           0
:K  TIME CREDITED:    2 00 21      WORK TIME LOST:           0
AL  TIME CREDITED:    9 11 16
ITUS EFFECT  DATE: 05 15 1991      JAIL GOOD TIME RECEIVED: YES

 CHG: S3/05 15 91

IE CALCULATIONS DO NOT INCLUDE ABSENCES FOR CURRENT MONTH
LE DATA: SUBMITTED FOR BOARD REVIEW
GE TO: STATUS/

30



**Cameron County District Courts**
974 E Harrison
Brownsville, Texas 78520

Aurora De La Garza
District Clerk

Civil (512) 544-0838
Criminal (512) 544-0839
Child Support (512) 544-0840
Jury Inquiries (512) 544-0842
FAX (512) 544-0841

CAUSE NO. 90-CR-68-B
(WRIT NO. II)

THE STATE OF TEXAS                    IN THE 138TH DISTRICT COURT
VS
SANTOS MONTOYA                        OF CAMERON COUNTY, TEXAS

TO THE HONORABLE: ROBERT GARZA

JUDGE PRESIDING IN THE CONVICTING COURT IN THE ABOVE ENTITLED
AND NUMBERED CAUSES:

    I HAND YOU HEREWITH A COPY OF THE POST-CONVICTION HABEAS

CORPUS    PROCEEDING FILED BY   SANTOS MONTOYA   DEFENDANT

IN THE ABOVE STYLED AND NUMBERED CASE, ON JANUARY 19, 1994.

    ISSUED AND GIVEN UNDER MY HAND AND SEAL OF OFFICE THIS

 JANUARY 21, 1994
(Date of issuance)

                        AURORA DE LA GARZA, DISTRICT CLERK
                        CAMERON COUNTY, TEXAS

                   By _____
                        AMPARO GARCIA, DEPUTY

**31**



**Cameron County District Courts**
974 E Harrison
Brownsville, Texas 78520

Aurora De La Garza
District Clerk

Civil (512) 544-0838
Criminal (512) 544-0839
Child Support (512) 544-0840
Jury Inquiries (512) 544-0842
FAX (512) 544-0841

**JANUARY 21, 1994**

MR. SANTOS MONTOYA
TDCJ-ID# 544493
HUGHES UNIT
RT. 2, BOX 4400
GATESVILLE, TEXAS 76597

RE:   CAUSE NO: **90-CR-68-B**   WRIT NO. II

      **THE STATE OF TEXAS**
      **VS**
      **SANTOS MONTOYA**

    IN RE:   **APPLICATION FOR POST CONVICTION WRIT OF**
             **HABEAS CORPUS   FILED ON 1/19/94**

DEAR MR. MONTOYA:

THIS IS TO ACKNOWLEDGE RECEIPT OF THE ABOVE CAPTIONED POST-
CONVICTION PETITION FOR WRIT OF HABEAS CORPUS.  THE STATE
IS AFFORDED FIFTEEN (15) DAYS IN WHICH IT MAY ORDER A HEARING.
IF NO ORDER HAS BEEN ENTERED WITHIN THIRTY-FIVE (35) DAYS
FROM THE FILING DATE, THE PETITION WILL BE FORWARDED TO THE
COURT OF CRIMINAL APPEALS, FOR THEIR CONSIDERATION.

ALL FURTHER CORRESPONDENCE SHOULD INDICATE THE ABOVE CAUSE
NUMBER.

SINCERELY,

AURORA DE LA GARZA, DISTRICT CLERK

BY _____
    AMPARO GARCIA, DEPUTY

CC JUDGE OF THE ABOVE NAMED COURT
   DISTRICT ATTORNEY



**Cameron County District Courts**
974 E Harrison
Brownsville, Texas 78520

**Aurora De La Garza**
District Clerk

Civil: (512) 544-0838
Criminal: (512) 544-0839
Child Support: (512) 544-0840
Jury Inquiries: (512) 544-0842
FAX: (512) 544-0841

**JANUARY 21, 1994**

**HON. LUIS V. SAENZ**
CAMERON COUNTY DISTRICT ATTORNEY
974 E. HARRISON
BROWNSVILLE, TX  78520

RE:  CAUSE NO. **90-CR-68-B**
         **{WRIT NO. II}   FILED ON: 1/19/94**

         **THE STATE OF TEXAS**
         **VS**
         **SANTOS MONTOYA**

DEAR MR. SAENZ:

ENCLOSED PLEASE FIND COPY OF THE **PETITION** IN THE ABOVE
STYLED AND NUMBERED **POST CONVICTION HABEAS CORPUS** CASE.

SINCERELY,

AURORA DE LA GARZA, DISTRICT CLERK

By _____
     AMPARO GARCIA, DEPUTY


THE STATE OF TEXAS }{
COUNTY  OF CAMERON }{

I, **LUIS V. SAENZ**, DISTRICT ATTORNEY, CAMERON COUNTY,
TEXAS, HEREBY ACKNOWLEDGE RECEIPT OF NOTICE OF FILING THE
APPLICATION FOR WRIT OF HABEAS CORPUS IN THE ABOVE
ENTITLED AND NUMBERED CAUSE, AND WAIVE STATUTORY REQUIREMENT
THAT SUCH NOTICE BE MADE BY CERTIFIED MAIL.

LUIS V. SAENZ

By _____
     ASSISTANT DISTRICT ATTORNEY



# CAMERON COUNTY DISTRICT ATTORNEY

CAMERON COUNTY COURTHOUSE
974 E. HARRISON STREET  -  BROWNSVILLE, TEXAS 78520

LUIS V. SAENZ
Cameron County
District Attorney

28 January 1994

HON. ROBERT GARZA
Judge Presiding
138th District Court
Cameron County Courthouse

RE: Cause No. 90-CR-0068-B
    State V. Santos Montoya
    State's Response, etc., to
    Second Application

Attached you will find an original Response, with proposed Findings of Facts and Conclusion of Law, which we present for filing in the above-referenced cause of action.  I believe that the proposed Findings are accurate, but I invite a strict review to confirm that they agree with your recollection of the events before, during, and after the trial.

By copy of this letter, we are apprising the Petitioner of this filing.  Thanking you for your time and attention, I remain

Yours Truly,

JOHN A. OLSON
Assistant County
(Criminal District) Attorney

XC:   File
      SANTOS MONTOYA
      TDC # 544493
      Hughes Unit
      Rt. 2, Box 4400
      Gatesville TX. 76597

Attachment

**34**

FILED __:__ O'CLOCK ___ M
AURORA DE LA GARZA, DIST. CLERK

**JAN 2 8 1994**

DISTRICT COURT, CAMERON COUNTY, TEXAS
by _____ DEPUTY

CAUSE NO. 90-CR-0068-B

EX PARTE:                    )(        IN THE DISTRICT

                             )(        197TH JUDICIAL DISTRICT

SANTOS MONTOYA               )(        CAMERON COUNTY, TEXAS

STATE'S RESPONSE TO PETITIONER'S SECOND
PETITION FOR WRIT OF HABEAS CORPUS AND
PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now STATE OF TEXAS, by its County (Criminal District) Attorney, LUIS V. SAENZ, and presents for filing its response to SANTOS MONTOYA'S second Petition for writ of habeas corpus, with proposed Findings of Fact and Conclusions of Law.

I

State of Texas generally denies each allegation of illegal confinement in Montoya's Petition.

II

State of Texas proposes the following Findings of Fact and Conclusions of Law for the Court's review.

FINDINGS OF FACT

1. Montoya and Jose Hernandez Castillo were indicted for the offense of Murder in the above-referenced cause number.

2. Montoya's trial counsel, GLENN A. BARNARD, has practiced criminal defense in Cameron County courts for over a decade, including this Court, and this Court has no independent basis upon which to find that he has not shown himself to be a competent defense practicner during that time.

3. Montoya's allegation of ineffective assistance of BARNARD'S

1

counsel is too inspecific to warrant a such a finding.   More particularly, the allegation that BARNARD allowed Montoya to be tried by this Court when it did not have jurisdiction to conduct his trial "for any reason" is unsupported by the record.

4. Montoya's allegation of evidence insufficiency is merely argumentative, and without merit.  Furthermore, that claim was not raised on direct appeal, **Montoya V. State**, 811 S.W.2d 671 (Tex. App.--Corpus Christi 1991, no pet.), and the Court of Criminal Appeals has held that this claim may not be the subject of a collateral review. **Ex Parte Smith**, 571 S.W.2d 22 (Tex. Crim. App. 1978)

5. Montoya's allegation of evidence insufficiency was raised in his first Petition, which was denied without written order on 01-20-1993.

6. Montoya's fourth allegation that this Court trial judge erred by failing to recuse himself is also argumentative, and with-out merit.  The claim was also not raised on direct appeal, and ignores the fact that Montoya did not file a motion to recuse, and his trial-on-the-merits was before a jury.

7. Montoya's fifth allegation that his conviction was the product of a trial on a fundamentally-defective indictment is with-out merit. See **TEX. CODE CRIM. PROC.**, Articles 21.02 and 21.16 The claim was also not raised on direct appeal, and ignores the fact that Montoya did not file a motion to dismiss, as allowed by Art. 28.01, Sec. 1(4), Id.

2

**36**

CONCLUSION OF LAW

1. Montoya's second Petition for writ of habeas corpus fails to raise any controverted, previously unresolved fact material to the legality of his confinement, and, therefore, is DENIED without a hearing.

WHEREFORE, PREMISES CONSIDERED, State of Texas prays the Court will deny SANTOS MONTOYA'S second Petition for writ of habeas corpus.

RESPECTFULLY SUBMITTED BY:

LUIS V. SAENZ
County (Criminal
District) Attorney

JOHN A. OLSON
Assistant County
(Criminal District) Attorney
974 East Harrison Street
Brownsville, Texas 78520
(210) 544-0849/544-0869 FAX
Texas Bar No. 15274750
Board Certified, Criminal Law
Tex. Board of Legal Specialization

CERTIFICATE OF SERVICE

I certify a copy of the foregoing State's Response was mailed to SANTOS MONTOYA on January 28, 1994.

JOHN A. OLSON

3

37

CAUSE NO. 90-CR-68-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS. | : | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA | ) | 138TH JUDICIAL DISTRICT |

### ORDER ON DEFENDANT'S SECOND POST CONVICTION
### WRIT OF HABEAS CORPUS

The Court having received and reviewed Defendant's Second Post Conviction Writ of Habeas Corpus and the State's Response to Petitioner's Second Petition for Writ of Habeas Corpus and Proposed Findings of Fact and Conclusion of Law, the Court adopts same.

IT IS THEREFORE ORDERED that the State's Proposed Findings of Fact and Conclusion of Law are hereby adopted by this Court.

The Clerk of the Court is therefore ordered to forward such application, order and State's Response to the Court of Criminal Appeals for their consideration.

SIGNED FOR ENTRY: January 31, 1994.

_____
ROBERT GARZA
Judge Presiding

FILED _____ O'CLOCK ___ M
AURORA DE LA GARZA, DIST CLERK

JAN 3 1 1994

DISTRICT COURT, CAMERON COUNTY, TEXAS
BY _____ DEPUTY

38

# CRIMINAL DOCKET

Case No. 7i-CR-68-B

ID #

| | NAMES OF PARTIES | ATTORNEYS | OFFENSE | DATE OF FILING |
|---|---|---|---|---|
| | THE STATE OF TEXAS VS. | DISTRICT ATTORNEY, CAMERON COUNTY | | Month | Day | Year |

Page 2

Sotes Montoya

DOB:

**DEF. ADJ.**
DATE OF FINAL DISPO.
PLEA: P/G - RG JURY
P/NG - JURY
P/IIG - NO JURY
DISPOSITION:
TGC
PROB.
DISM.
YEARS TGC PROB.
WAVER OF SPEEDY TRIAL
RESTITUTION
FINE
COURT COSTS
ACQUITTAL
JAIL
NISD.
YEARS

| Date of Orders | ORDERS OF COURT | PAPERS FILED |
|---|---|---|
| Month | Day | Year | | |
| 3 | 23 | 90 | | |
| 3 | 26 | 90 | | |

No. 90–CR–68–B

The State of Texas   vs.   SANTOS MONTOYA

| Date of Orders | | | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| Month | Day | Year | | |
| 3 | 27 | 90 | *[handwritten court orders]* | 3/26/90–COURT'S CHARGE TO THE JURY |
| | | | | 3/26/90–VERDICT |
| | | | | 3/26/90–CHARGE OF THE COURT ON PUNISHMENT |
| | | | | 3/26/90–VERDICT |
| | | | | 4–17–90 Notice of Appeal |
| | | | | 4–17–90 Affidavit of Indigency |
| | | | | 4–17–90 Designation of Record on Appeal |

Judgment of Conviction signed for entry. RGARZA/rhg.

_____ This sentence to run concurrent with
sentence imposed in Cause NO. 89–CR–91?, in this same Court. RGARZA/rhg.

JUDGMENT OF CONVICTION
AND SENTENCE

VOL. CR-113 PAGE 35–40

DATE 3/27/90

40

# CRIMINAL DOCKET

Case No. 90-CR-0000068-E

DEF ID#: 14770

| | | Month | Day | Year |
|---|---|---|---|---|
| DATE OF FILING | | 01 | 24 | 90 |

OFFENSE 2

**NAMES OF PARTIES**

THE STATE OF TEXAS
VS.
SANTOS MONTOYA

DOB: 03/31/61

**ATTORNEYS**

DISTRICT ATTORNEY, CAMERON COUNTY MURDER

Hon. Glen A. Barnard (a)

MAY 1990

| Date of Orders | | | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| Month | Day | Year | | |
| JANUARY | 24 | 1990 | TRANSFERRED FROM THE 197TH DISTRICT COURT, DARRELL HESTER /OE | 01/24/90 ORDER TRANSFERRING CAUSE |
| Jan. | 29 | 1990 | Bond set at $75,000.00 c/s. RGarza/ch Set for Arraignment on February 26, 1990, with announcements on February 7, 1990 at 8:30 A.M. RGarza/ch 9:00 a.m. Rgarza/cap | 1/29/90 ORDER APPOINTING ATTORNEY |
| Jan. | 29 | 1990 | Hon. Glen A. Barnard appointed to represent Defendant. RGarza/ch | 1/29/90 NOTICE OF ARRAIGNMENT |
| | | | | Served: 1/30/90 Filed: 8/11/90 |
| | | | | 1/29/90 Precept Issued |
| Jan. | 2 | 90 | State announced ready. Defendant waived formality of arraign-ment and entered a plea of not guilty. Case set for trial on February 16, 1990 at | 2/8/90-WAIVER OF ARRAIGNMENT 3/19/90-State's Motion to Amend Indictment 3/20/90-Application for Attachment of Witness |
| Jan. | 7 | | | 3/22/90-Application for Attachment of Witness |

No. 90-CR-68-B

The State of Texas    vs.    SANTOS MONTOYA

| Date of Orders | | | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| Month | Day | Year | | |
| 3 | 19 | 90 | *[handwritten]* Facts agreed to on verd to purco *[illegible]* Cuvidenil & Fabistmuit & steel print by present. by facts. by comples, filed. Wam- by prev filed W3 Bon *[illegible]* at 5:00 PM by | 3/20/90-ORDER<br>3/20/90-(1) Witness Attachment<br>SERVED:                    FILED: |
| 3 | 20 | 90 | *[handwritten]* Facts agreed to on verd to purco Cud-consd at 10:00am filed at 10:00 am by if. by returned at 1:00 pm on 3/21/90 by | 3/22/90-ORDER<br>SERVED:                    FILED: |
| 3 | 21 | 50 | *[handwritten]* facts agr to on verd to purco Cud-cons at 1:00 pm - + returned at 5:0 pm - until 9:30 am on 3/22/90 by | 3/22/90 (1) Witness Attachment –<br>SERVED:                    FILED: |
| 3 | 22 | 90 | *[handwritten]* facts agree armed to purco cud- return at 10:00 am + returned at 5:00 pm - by returned until 9:30 am on 3/23/90 by | |

42

# CRIMINAL DOCKET    Case No. 90-CR-68-B

| Number of Case | NAMES OF PARTIES | ATTORNEYS | | OFFENSE: | DATE OF FILING | | |
|---|---|---|---|---|---|---|---|
| | | State | Deft. | | Month | Day | Year |
| | STATE OF TEXAS | | | MURDER | 1 | 24 | 90 |
| | VS. | | | Indictment or Information and Complaint | | | |
| | SANTOS MONTOYA | HON. GLEN A. BARNARD (A) ON APPEAL | | | | | |

| FEE BOOK | | DATE OF ORDERS | | | ORDERS OF COURT | Minute Book | | PROCESS |
|---|---|---|---|---|---|---|---|---|
| Vol. | Page | Mo. | Day | Year | | Vol. | Page | |
| | | 5 | 10 | 90 | Hon. Glen Barnard is hereby appointed to represent him on the appeal as per order signed for entry. Hon. ROMAN/bas | | | 5-10-90 ORDER APPOINTING ATTORNEY 5-17-90 Transcript mailed to the Court of Appeals |
| | | 7 | 31 | 91 | MANDATE (Judgment was AFFIRMED on 6/6/91) | | | |

VOL. 139   PAGE 500

STATE OF TEXAS VS. NO.

| Date of Orders | | | ORDERS OF COURT | Minute Book | | PROCESS |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Vol. | Page | |
| 12 | 2 | 92 | ORDER on Application for Writ of Habeas Corpus is hereby Denied as per order signed for entry. RGarza/ad | | | 11/30/92 APPLICATION FOR WRIT OF CORPUS |
| | | | | | | 12/2/92 ORDER ON APPLICATION FOR WRIT OF HABEAS COR |
| | | | 1/20/93 APPLICATION FOR WRIT OF HABEAS CORPUS DENIED WITH OUT ORDER | | | 12/15/92 TRANSCRIPT MAILED TO COURT OF CRIMINAL APPE |

44

## C L E R K ' S   C E R T I F I C A T E

THE STATE OF TEXAS    }{

COUNTY  OF CAMERON    }{

    I, **AURORA DE LA GARZA,** CLERK OF THE DISTRICT COURTS OF CAMERON COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING PAGES CONTAIN A TRUE AND CORRECT TRANSCRIPT OF ALL PROCEEDINGS AS TO THE **WRIT OF HABEAS CORPUS** IN

CAUSE NO. **90-CR-68-B**
**(WRIT NO. II)**

**T H E   S T A T E   O F   T E X A S**

VS

**SANTOS MONTOYA**

AS THEY APPEAR ON FILE AND OF RECORD IN THIS OFFICE.

    **GIVEN UNDER MY HAND AND SEAL OF SAID COURTS** OF CAMERON COUNTY, TEXAS, ON **MARCH 22, 1994** .

                AURORA DE LA GARZA, DISTRICT CLERK
                CAMERON COUNTY, TEXAS

             BY _____
                  AMPARO GARCIA, DEPUTY



**45**



APPLICANT SANTOS MONTOYA                    APPLICATION NO. 24,306-01

APPLICATION FOR ORIGINAL WRIT OF HABEAS CORPUS        _____

**APPLICATION FOR 11.07 WRIT OF HABEAS CORPUS**      __XXXXX__

APPLICATION FOR WRIT OF MANDAMUS                     _____

APPLICATION FOR WRIT OF PROHIBITION                  _____

MOTION FOR LEAVE TO FILE MOTION FOR REHEARING        _____

MOTION FOR STAY OF EXECUTION                         _____

### A C T I O N   T A K E N

APPLICATION DENIED WITHOUT WRITTEN ORDER.

_Charles F. Baird_                              1-20-93
JUDGE                                          DATE

APPLICATION (DENIED)(GRANTED) WITH WRITTEN ORDER.

_____        _____
JUDGE                                          DATE

APPLICATION DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT (AFTER)(WITHOUT) A HEARING.

_____        _____
JUDGE                                          DATE

MOTION FOR LEAVE TO FILE DENIED WITHOUT WRITTEN ORDER.

_____        _____
JUDGE                                          DATE

MOTION TO FILE DENIED WITH WRITTEN ORDER.

_____        _____
JUDGE                                          DATE

MOTION FOR LEAVE TO FILE HELD IN ABEYANCE AND THE RESPONDENT IS ORDERED TO FILE AN ANSWER WITHIN _____ DAYS.

_____        _____
JUDGE                                          DATE

REMAND FOR EVIDENTIARY HEARING (OR AFFIDAVITS).

_____        _____
JUDGE                                          DATE

FILE AND SET FOR SUBMISSION.

_____        _____
JUDGE                                          DATE

DIRECT APPEAL PENDING--NO ACTION NECESSARY.  SEE EX PARTE BROWN, 662 S.W.2d 3 (TEX.CR.APP. 1983).

_____        _____
JUDGE                                          DATE

DISMISS AS MOOT.

_____        _____
JUDGE                                          DATE

OTHER.

_____        _____







**Cameron County District Courts**
974 E. Harrison—P.O. Box 3570
Brownsville, Texas 78523-3570
Area Code 512-544-0838

**Aurora De La Garza**
District Clerk

jury inquires: 544-0842
child support: 544-0840

RECEIVED

DEC 1 8 1992

TEXAS COURT OF
CRIMINAL APPEALS

DATE **December 15, 1992**

CERTIFIED MAIL No.
**P 433 754 306**

$24,306$

Hon. Thomas Lowe, Clerk
Court of Criminal Appeals
P. O. Box 12308
Austin, TX   78711

CCA NO. _____

CAUSE NO. **90-CR-68-B**
FILED ON: 11/30/92        {WRIT NO. I}

**THE STATE OF TEXAS**

**VS**

**SANTOS MONTOYA**

Dear Mr. Lowe:

Enclosed please find the transcript on the Post-Conviction
Writ of Habeas Corpus in the above entitled and numbered
cause.

Yours very truly,

AURORA DE LA GARZA, District Clerk

By _____
**AMPARO DIAZ, DEPUTY**

cc   Hon. Luis V. Saenz, DA
     Hon. John A. Olson, Assistant DA
     Mr.  Santos Montoya

Thank you for the opportunity to be of service to you.

COURT OF CRIMINAL APPEALS <u>NO.</u>

CAUSE NO. <u>90-CR-68-B</u>

# T R A N S C R I P T
{WRIT NO. I}

## VOLUME I

### THE STATE OF TEXAS

**VS**

<u>SANTOS MONTOYA</u>

**\* \* O R I G I N A L \* \***

MAILED TO THE COURT OF CRIMINAL APPEALS ON

<u>DECEMBER 15, 1992</u>

AURORA DE LA GARZA
CAMERON COUNTY DISTRICT CLERK

BY _____
AMPARO DIAZ, DEPUTY

FILED IN COURT OF CRIMINAL APPEALS, AT AUSTIN, TEXAS

THE _____ DAY OF _____ 1992.

THOMAS LOWE, CLERK OF COURT OF CRIMINAL APPEALS

BY _____ DEPUTY

POST CONVICTION HABEAS CORPUS

COURT OF CRIMINAL APPEALS NO. _____

CAUSE NO. 90-CR-68-B
(WRIT NO. I)

PETITIONER:   SANTOS MONTOYA
              TDCJ-ID #544493
              ALFREDO D. HUGHES UNIT
              RT. 2 BOX 4400
              GATESVILLE, TEXAS 76597

FROM:         AURORA DE LA GARZA, District Clerk
              974 E. HARRISON
              BROWNSVILLE, TEXAS 78520

JUDGE:        HON. ROBERT GARZA   138TH  DISTRICT COURT

ATTORNEY FOR PETITIONER:              ATTORNEY FOR STATE:
(PRO-SE)                              HON. LUIS V. SAENZ
                                      STATE BAR NO. 17514880
                                      974 E. HARRISON STREET
                                      BROWNSVILLE, TEXAS 78520
                                      PHONE NO. (512) 544-0849

---

INDEX

INSTRUMENT                                                      PAGE

APPLICATION FOR WRIT OF HABEAS CORPUS FOR 90-CR-68-B
   (FILED ON 11/30/92) ....................................    1

LETTER FROM CLERK TO JUDGE GARZA NOTIFYING HIM OF FIRST
   APPLICATION FOR WRIT OF HABEAS CORPUS DATED 12/1/92 ...   36

LETTER FROM CLERK TO MR. MONTOYA ACKNOWLEDGE RECEIPT OF
   THE APPLICATION FOR WRIT OF HABEAS CORPUS DATED 12/1/92.  37

LETTER FROM CLERK TO DISTRICT ATTORNEY'S OFFICE NOTIFYING
   OF APPLICATION FOR WRIT OF HABEAS CORPUS DATED AND
   DELIVERED ON 12/1/92 ...............................     38

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS (SIGNED
   ON 12/2/92) .........................................    39

INDICTMENT (FILED ON 1/24/90) ...........................    40

WAIVER OF ARRAIGNMENT (SIGNED ON 2/8/90) ................    42

JURY CHOSEN (FILED ON 3/19/90) ..........................    43

JURY NOTES DATED 3/26/90 ................................    55

COURT'S CHARGE TO THE JURY (SIGNED ON 3/26/90) ..........    65

FORMS OF VERDICT (SIGNED ON 3/26/90) ....................    77

**INDEX CONT. PAGE 2**

**INSTRUMENT**                                                                    **PAGE**

CHARGE OF THE COURT ON PUNISHMENT (SIGNED ON 3/26/90) ..   __81

FORMS OF VERDICT (SIGNED ON 3/26/90) ...................   __86

JUDGMENT ON JURY OF GUILTY PUNISHMENT FIXED BY JURY — NO
    PROBATION GRANTED (SIGNED ON 3/27/90) ...............   __89

JUDGMENT AND OPINION FROM COURT OF APPEALS (FILED ON
    6/10/91) ..............................................   __95

MANDATE FROM COURT OF APPEALS (FILED ON 7/31/91) .......   _101

CRIMINAL DOCKET SHEETS ................................   _103

CLERK'S CERTIFICATE ...................................   _108

November 24,1992

MRS. AURORA DE LA GARZA
DISTRICT CLERK
CAMERON COUNTY, TEXAS

RE: EX PARTE SANTOS MONTOYA, CAUSE NO. 90-CR-68-B

Dear Mrs. Garza:

Enclosed are the original and one copy of my Application
For Writ Of Habeas Corpus in the above-styled cause number. Please
file and bring to the attention of the 138th Judicial District
Court of said County. Forward a copy of the Application to the
District Attorney's office as provided in the Texas Code of Criminal
Procedure, Art. 11.07.

Your assistance in this matter is highly appreciated.

SINCERELY
SANTOS MONTOYA
T.D.C.J.#544493
ALFRED D. HUGHES UNIT
ROUTE 2, BOX 4400
GATESVILLE, TEXAS 76597

c.c. File

( COVER LETTER )

1

Texas

Court of Criminal Appeals

at Austin Texas

Cause no. 90-CR-68-B

FILED FOR COURT

1992 NOV 30 PM 3: 45

AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON CO., TEX

| Ex Parte | § | In the 138th Judicial |
|----------|---|------------------------|
| Santos Montoya | § | District court of |
| TDCJ#544493 | § | Cameron County, Texas |
| | § | |

## Application for Writ of Habeas Corpus

TO THE HONORABLE JUDGES OF SAID COURT:

Comes now, Santos Montoya, pro-se applicant, in the above styled and numbered cause, and respectfully presents this application for writ of habeas corpus, pursuant Tex. Code Crim. Pro. Ann. Art. 11.07(Vernon 1989). In support of applicant would show the following;

I.

## Confinement and Restraint

Applicant is unlawfully confined and restrained of his liberty by the respondent James A. Collins, acting in his official capacity as director of the Texas Department of Criminal Justice - Institutional Division, at the Alfred D.Hughes unit of TDCJ located in Coryell County, Texas. pursuant to a judgment of conviction in Cause no. 90-CR-68-B, In the 138th Judicial District Court of Cameron County, Texas, for the offense of Murder, punishment was assessed by the same jury at 85 years confinement in TDCJ.

A copy of the judgment and sentence are attached hereto as required by Tex. Code Crim. Pro. Ann. Art. 11.14(2)(Vernon 1965)(see exhibit A) the originals are available to this court through the files of the clerk

page 1

2

II.

**Grounds for Relief**

Applicant contends that he was denied Due Process of Law, in violation of his rights protected by the Due Process clauses of the Fourteenth Amendment to the United States Constitutions, because there is no evidence to support applicants conviction for Murder, by his own conduct as authorized by the application paragraph of the courts charge.

III.

**FACTS OF THE CASE**

Applicant and his codefendant Jose Hernandez Castillo were indicted and tried by a jury under cause no. 90-CR-68-B for the offense of Murder, the indictment alleged both applicant and Castillo, as primary actors.(see exhibit B).

IV.

**FACTS IN SUPPORT**

In the instant case, the Statement of facts reflect the following:

**Mr. Ponce for the state**

Q. Please state your name and how you're employed?

A. My name is Eric Park, I'm employed as a police officer with the city of Brownsville( S.F. VOL. III, P.298, L. 8-10)

Q. What are your duties?

A. I'm a detective in the criminal investigation division.(S.F. VOL. III. P. 298, L. 14-15)

Q. Sir, I'm going to ask you if you had any involvement in the case that Brownsville PD investigated on a Santos Montoya and Jose Hernandez Castillo?

A. Only inasmuch as I attended the autopsy on the deceased and retrieved the bullet that the pathologist removed from body.

Q. And the deceased being Maria De Loudes Teran?

A. Yes (S.F. VOL.IV, P.299, L.6-13).

page 2

3

**Continued**

Q. Who performed this autopsy?

A. Dr. Devenport.(S.F. VOL.IV, P.300, L.11-13).

Q. Now, specifically did you receive anything as a result of this autopsy?

A. I recovered the bullet that the pathologist removed from the body(S.F. VOL.IV, P.300, L.15-20).

Q. From the body of Maria De Lourdes Teran?

A. Yes., (S.F. VOL.IV, P.300, L.24-25).

Q. Sir, I'm going to hand you what we have marked as State's Exhibit 19[B] I'm going to ask you to take a look at State's Exhibit 19[B] and ask if you can identify it?

A. Yes, this is the bullet that the pathologist removed from the body.

Q. And you saw him, you specifically saw him remove it?

A. I did. (S.F. VOL.IV, P.301, L.5-12).

Q. How is it that you know that this is in fact the same bullet that you recovered that day of the autopsy?

A. While they're hard to read, those are my initials on the bottom. I scratched them in with the tip of my penknife.(S.F. VOL.IV, P.301, L.16-19).

**Mr. Sullivan, for the State**

Q. Sir, would you state your name for the record?

A. Ronald D. Richardson

Q. And, Mr, Richardson, what is your occupation?

A. I'm the supervisor of the firearm section in the scientific crime laboratory of the Texas Department of Public Safety at Austin.(S.F. VOL.IV, P.303-304, L.22-25 + 1-2).

Q. Sir, did you receive some weapons and bullets in regards to a murder case involving a Santos Montoya and a Jose Hernandez Castillo?

A. Yes, Sir., (S.F. VOL.IV, P.306, L.8-11).

page. 3

4

**CONTINUED**

Q. Now, Sir, I'm going to ask you if on or about November 8th of 1989, you
have had occasion there in Harlingen to conduct an autopsy to determine
the cause of death of a Maria De Lourdes Teran?

A. Yes.,(s.f. vol. v, p. 395, 1. 11-15).

Q. And could you just tell us the result of that autopsy were?

A. She suffered a -- or she died of a gunshot wound to the right side of
the neck.,(s.f. vol. v, p. 396, 1. 3-6).

Q. When you removed this bullet, did you turn it over to anybody?

A. Yes, I turned it over to Eric Park, of the Brownsville Police Department.,(s.f.
vol. v, p. 399, 1. 17-20).

Q. Is this gunshot the reason this woman is now dead?

A. Yes.,(s.f. vol. v, p. 401, 1. 17-20).


**Mr. Garza, for the defense**

Q. State you name for the record, please?

A. Jose Hernandez Castillo.,(s.f. vol. vi, p. 624, 1. 18-19).

Q. Now, Mr. Castillo, I'm going to ask you certain questions pertaining
to November 8th 1989, Do you remember going to the Monkey Lounge on 14th.
street on November 8th. 1989?

A. I was going down 14th, when I saw this friend of mine, Montoya, he was
coming from that place and since I didn't have any place to stay and they
weren't giving me any permission or consent to stay where I had been staying,
so I thought about him to see if he would give me permission to stay in
his house.(s.f. vol. vi, p. 626, 1. 12-21).

Q. Can you, Mr. Castillo, again indicate to the jury where you were standing
when you first fired the first shot?

A. Here like this in the back area.,(s.f. vol. vi, p. 642, 1. 1-3).

Q. And when you first shot the first shot, what did Mr. Garza, what did
he do next?

A. He pull the car in reverse.(s.f. vol. vi, p. 643, 1. 1-3).

Q. When the car reversed back, did you shoot at the car at that point?

A. Yes, Sir.,(s.f. vol. vi, p. 644, 1. 5-7).

Q. Did Mr. Montoya, at any point pull out his gun?

A. Yes, Sir.,

**CONTINUED**

Q. Officer, let me show you what has previously been marked and identified
as state's exhibit No. 20(B), state's exhibit no. 19(B), which were together
at one time and they've been taken apart for the jury to review them, state's
exhibits nos. 19(A), and 20(A). officer, did you receive these weapons and
these two spent bullets in regards to the case?
A. Yes, I did., (s.f. vol. iv, p.306, 1.15-23).
Q. Let me begin with state's exhibit no. 20(A), and state's exhibit no.
20(B), were you able to reach any conclusion in regards to the .38 and the
spent round, that spent round which was 22(B)?
A. Yes, Sir., (s.f. vol. iv, p.307, 1.9-13).
Q. state's exhibit 20, I apologize 20(B) and 20(A)?
A. Okay, that projective was fired from this gun.(s.f. vol. iv, p.307, 1.18-
19).
Q. State's exhibit no. 19(A), and state's exhibit 19(B), and could I ask
you, were you able to make any conclusion in regards to that fired bullet
and that gun?
A. Conclusion, Yes,
Q. And what was your conclusion?
A. Well, the conclusion was essentially inconclusive as to whether or not
this projectile, the .22 projectile had been fired from this weapon, state's
exhibit no. 19(A)., (s.f. vol. iv, p.308-309, 1. 20-25 + 1-3).
Q. Officer, let me ask you, if this the type of bullet that is fired from
this weapon, though?
A. It's a .22 caliber projectile and this is a .22 caliber weapon, Yes.,
(s.f. vol. iv, p.309, 1.21-24).

**Mr. Ponce, for the state**

Q. Would you please state your name and how you are employed?
A. My name is Dewitt S. Devenport and I work as a pathologist at Valley
Baptist Medical Center in Harlingen.(s.f. vol. v, p.394, 1.8-12).

page. 4

5

<u>**CONTINUED**</u>

**Mr. Sullivan, for the state cross examin. of Castillo.**

Q. Let me hand you what's been marked as state's exhibit no. 19(A), Sir,

can you identify state's exhibit no. 19(A)?

A. Yes, Sir.

Q. And what is State's Exhibit 19(A)?

A. It's a .22

Q. Is that your .22 that you used that night?

A. Yes, Sir.,(S.F. VOL. VI, P. 668, L. 18-25).

Q. Okay, do you remember giving the police officer a statement in this matter?

A. That is correct.

Q. And isn't it true that you stated to them that "when I saw that man was

going to shoot Montoya, I pulled out my .22 caliber handgun and I shot once

at the car"?

A. I don't know, I don't think the secretary or who wrote that down, put

it down right.

Q. But this is your signature, isn't it, at the end of this statement?

A. That's my signature.(S.F. VOL. VI, P. 669-670, L. 16-25 + 1).


                                    The court: all right,

gentlemen, the court has prepared a charge, and I'll hear from the state

first of all in this regard.

        Mr. Sullivan: no objections to the charge, your honor.

                                    The court: I'll hear

from the defendant Montoya.

        Mr. Barnard: we have no objections to the charge and no requested inclusions.

                                    The court: from the

defendant Castillo?

        Mr. Barnard: no objections, your honor.,(S.F. VOL. VI, P. 701-702,

L. 16-25 + 1).


                            page. 6

<u>**JURY VERDICT**</u>

Presiding Juror: "We, the jury find defendant, Santos Montoya, "Guilty" of the offense of murder as charged in the indictment."

Presiding Juror: "We, the jury find the defendant, Jose Hernandez Castillo, "Guilty" of the offense of murder as charged in the indictment."(S.F. VOL. VI, P. 747, L. 6-12).

**V.**

<u>**ARGUMENT and AUTHORITIES**</u>

Applicant asserts that, if he's guilty at all, he's only guilty as a party, and in view of the fact, that the court's charge authorized that applicant be convicted only for his own conduct, there is no evidence to support applicant conviction for murder, moreover; the court's charge application paragraph tracked the language of the indictment and made no reference to the abstract definition on the theory of the parties therein.(SEE EXHIBIT B) and PARAGRAPH 4, OF(EXHIBIT C) ATTACHED HERETO.

<u>**THE INDICTMENT reads as follows**</u>

" Did then and there unlawfully attempt to commit a felony, namely Murder and in the course of and in furtherance of the attempt to commit said felony, the said defendant did intentionally, knowingly, and recklessly commit an act clearly dangerous to human life that caused the death of Maria De Loures Teran, said act being: shooting a firearm in the direction of Maria De Lourdes Teran."

**NOTE:**The words," **AND RECKLESSLY.**"was omitted. see(S.F. VOL. IV, P. 2, L. 20-21)(see exhibit B)

page. 7

8

### THE COURT"S CHARGE as follows

" Now, if you find from the evidence beyond a reasonable doubt that
on or about the 8th. day of November, 1989, in Cameron County, Texas, the
defendant, Santos Montoya, Did then and there unlawfully attempt to commit
a felony, namely Murder and in course of and in furtherance of the attempt
to commit said felony, the defendant did intentionally or knowingly commit
an act clearly dangerous to human life that caused the death of Maria De
Lourdes Teran, said act being: shooting a firearm in the direction of Maria
De Lourdes Teran, then you will find the defendant, Santos Montoya, guilty
of the offense of Murder as charge in the indictment."

Unless you so find beyond a reasonable doubt, or if you have a reasonable
doubt, or if you have a reasonable doubt thereof, you will acquit the defendant,
Santos Montoya, of Murder.(see exhibit C).

The Court of Appeals, in Harris V. State, 833 S.W. 2d 535 at 536 (TEX.
APP. 1992) wrote. " We measure the sufficient of the evidence against the
jury charge." Jones V. State, 815 S.W. 2d 667, 668 (TEX. CR. APP. 1991)
when determining whether the evidence is sufficient to support the conviction,
We view the evidence in the light most favorable to the verdict, We determine
whether any rational trier of facts could have found the essential elements
of the crime beyond a reasonable doubt. Marroquin V. State, 746 S.W. 2d
747, 750 (TEX. CR. APP. 1988). The standard is the same for both direct
and circumstantial evidence, The court considers whether the evidence supports
a reasonable hypothesis other than the defendant's guilt. Belyeu V. State,
791 S.W. 2d 66, 68 (TEX. CR. APP. 1989). CERT. DENIED 111 S.ct. 1337, L.
Ed 2d 269 (1991) However, " where there is no reference to the law of the
parties in the charge, the evidence must exclude every reasonable hypothesis
other then guilt of the appellant by his own conduct." Walker V. State,
823 S.W. 2d 247, 249 (TEX. CR. APP. 1991):see Jones V. State, 815 S.W. 2d
667 (TEX. CR. APP. 1991); Garrett V. State, 749 S.W. 2d 784, 802-03 (TEX.
CR. APP. 1983).

Whereas, the evidence in the case at bar clearly shows that the death
of the deceased was caused by a .22 caliber bullet, and that applicant was
shooting a chrome .38 caliber handgun, Mr. Garza, counsel for Castillo,
offered into evidence Castillo's statement for the jury's benefit, which
exculpate applicant by his own conduct.

**9**

Mr. Garza: your honor, at this time under the optional completeness rule I'd like to offer the rest of the statement .

The court: go ahead.(S.F. VOL. IV, P. 231, L. 8-11).

Mr. Garza: in all fairness, I would offer the whole statement for the jury's benefit. " My name is Jose Hernandez Castillo. I am 34 years of age. my date of birth is March 22, 1954. I am from Matamoros, Tamaulipas. (S.F. VOL. IV, P. 231, L. 15-19).

" On Tuesday, November 7, 1989 at about 11 p.m. I went to the Monkey Lounge, this acquaintance of mine whom I know only as Montoya, was just getting there, Montoya was with a woman, but I do not know who she is." as we walked in, a tall man in his forties was walking out. (S.F. VOL. IV. P. 231-232, L. 21-25 +1).

" When I saw that the man was going to shoot Montoya, I pulled out my .22 caliber handgun (black in color) from my crotch area, I shot once at the car, the guy took off and I shot again at the back window when the man took off." Montoya also had a gun with him, he had a .38 chrome (cromiada) gun." Montoya shot twice in the air, he did not shoot at the car. (S.F. VOL. IV, P. 232, L. 12-19).

Applicant further asserts that the State's closing arguments in reference of paragraph 8, of the Court's Charge, which defines the theory of the parties, can not withstand the fact that the Court's Charge application paragraph did not authorize THE JURY TO CONSIDER said theory in determining their verdict.(see S.F. VOL. VI, P. 708, L. 4-25).

See:**Walker**,supra, at 249, " The jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." Article 36.13 V.A.C.C.P., therefore, in every case tried to a jury, before the argument begins the court shall " Deliver to the Jury... a written charge distinctly setting forth the law applicable to the case." Article 36.14 V.A.C.C.P.

Also in **Walker**, supra, at 248, this court citing **Jones**, therein, said;
" We held that in order for the jury to be authorized to convict one as
a party, the law of the parties must be included in the application paragraph
of the charge." **Jones** 815 S.W. 2d at 669. since the law of the parties was
not included in the application paragraph in this cause, we must determine
whether the evidence is sufficient to find appellant guilty by his own conduct.

In, **Walker** and **Jones**, supra, and likewise, in the case at bar neither
the state nor the defense objected to the court's charge, see **Jones** at 668,
foot note (1) one.,

Also in **Jones** S.W. 2d at 670, it is said; " This rational is founded
upon the notion that a charge which contain an abstract paragraph on a theory
of law, but does not apply the law to the facts, deprives the defendant
of a fair and impartial trial." **Harris V. State**, 522 S.W. 2d 199, 202 (TEX.
CR. APP. 1975) citing **Fennell V. State**, 424 S.W. 2d 631 (TEX. CR. APP. 1968)
this type of error " In the court's charge goes to the very basis of the
case, so that the charge fails to state and apply the law under which the
accused is prosecuted" **Harris**, 522 S.W. 2d at 202 and case cited therein.

See: **Biggins V. State**, 824 S.W. 2d 179 (TEX. CR. APP. 1992): **Garrett
V. State**, 749 S.W. 2d 784, 802-03 (TEX. CR. APP. 1983): **McCuin V. State**,
505 S.W. 2d 827 (TEX. CR. APP. 1974): **Oliver V. State**, 268 S.W. 2d 467,
469 (1954): **Jackson V. Virginia**, 443 U.S. 307, 319 n.12, 99 S.ct. 2781 n.12,
61 L. ed 560 (1979) In re Winship, 397 U.S. 358, 364, 90 S.ct 1068, 1073,
25 L. ed 368 (1970): **Thompson V. City of Louisville**, 362 U.S. 199, 80 S.ct.
624, 4 L.ed 2d 654 (1960): **Burks V. U.S.**, 437 U.S. 1, 18, 98 S.ct. 2141,
57 L.ed 1 (1978): **Greene V. Massey**, 437 U.S. 19, 24, 98 S.ct. 2141, 57 L.ed
19 (1978).

page. 10

**11**

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Applicant prays that upon this honorable
Court of Criminal Appeals determination that this foregoing application
for a Writ of Habeas Corpus is meritorious, an order of a judgment of Acquittal
be entered.

It is so prayed.....

<div align="right">

Respectfully Submitted

Santos Montoya
TDCJ# 544493
Pro-se applicant
Alfred D. Hughes unit
Rt 2, Box 4400
Gatesville, Texas 76597

</div>

## VERIFICATION

I, Santos Montoya, being presently incarcerated at the Alfred D. Hughes
unit of the Texas Department of Criminal Justice - Institutional Division,
in Coryell County, Texas. Declare under the penalty of perjury that I am
the applicant in the foregoing application for Writ of Habeas Corpus, I
has read said application, and the factual allegations therein are true
and correct.

executed on this the _24_ , day of _November_, 19,_92_

Pro-se applicant

page. 11

12



EXHIBIT. (A)

CAUSE NO. 90-CR-68-B

THE STATE OF TEXAS      )     IN THE DISTRICT COURT OF

VS      :     CAMERON COUNTY, TEXAS

SANTOS MONTOYA      )     138TH JUDICIAL DISTRICT

<u>JUDGMENT OF CONVICTION AND SENTENCE</u>

BE IT REMEMBERED that on the 19th day of March, 1990, this cause was called to trial and the State appeared by her Assistant Criminal District Attorney, and the Defendant, Santos Montoya, appeared in person, his counsel by appointment, the Hon. Glen A. Barnard also being present, and the Defendant, having been duly arraigned, pleaded Not Guilty and both parties announced ready for trial; thereupon a jury of good and lawful persons, to wit: Patricia P. McGuffey and eleven others, was duly selected, empaneled and sworn according to the law and charged by the Court on separation; whereupon said cause was recessed until March 20, 1990.

THEREAFTER, on March 20, 1990, the indictment was read to the jury and the Defendant entered his plea of Not Guilty thereto whereupon the State introduced evidence through March 23, 1990, and rested. Defendant introduced evidence whereupon State offered rebuttal evidence. All parties closed, whereupon the charge was prepared and submitted to all counsel.

THEREAFTER, the Court charged the jury as to the law applicable to said cause and argument of counsel for the State and the Defendant was duly heard and concluded, and the jury retired in charge of the proper officer to consider their verdict, and continued their deliberations through March 26, 1990, and afterward was brought into open court by the proper officer, the Defendant and his counsel being present, and in due form of law returned into open court the following verdict, which was received by the Court and is here now entered upon the Minutes of the Court, to wit:

"We, the Jury find the Defendant, Santos Montoya,
"GUILTY" of the offense of Murder as charged in the
Indictment.

/s/ Patricia P. McGuffey
Presiding Juror

If you have found the Defendant, Santos Montoya, Guilty, and only in that event, answer the Question; otherwise, do not answer the Question.

### QUESTION

Do you find from the evidence beyond a reasonable doubt that the Defendant, Santos Montoya, used a deadly weapon, to wit, a firearm, during the com- mission of the offense for which you have found him guilty?

You will answer "YES" or "NO".

We, the Jury answer: _____Yes_____"

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the Defendant, Santos Montoya, is guilty of the offense of Murder as found by the jury, and that said offense was committed on November 8, 1989.

THEREUPON, the Defendant, having previously elected in writing to have his punishment assessed by the same jury, the same jury was duly empaneled to assess said Defendant's punish- ment in said cause, and the evidence submitted for the State and for the Defendant was duly heard, and at the conclusion of such evidence, the Court charged the jury with additional instructions as to the law applicable to punishment of said cause and argu- ments of State and Defendant were duly heard and concluded and the jury retired in charge of the proper officer to consider their verdict as to Defendant's punishment, and thereafter returned into open court, accompanied by the proper officer, the Defendant and his counsel being present, and in due form of law, the following verdict, which was received by the Court is here now entered upon the Minutes of the Court, to wit:

76

15

"We, the Jury, having found the Defendant, Santos Montoya guilty of the offense of Murder, as charged in the indictment, assess his punishment at confinement in the Texas Department of Criminal Justice - Institutional Division for ____85____ years (being not less than five (5) years nor more than ninety-nine (99) years, or Life, and assess a fine of $__none___. (Answer in dollars and cents, not exceeding $10,000.00 or "None".)

/s/ Patricia P. McGuffey
Presiding Juror"

IT IS, THEREFORE, CONSIDERED AND ADJUDGED BY THE COURT that the Defendant, Santos Montoya, is guilty of the offense of Murder as found by the Jury, and that he be punished, as found by the Jury, that is by confinement in the Texas Department of Criminal Justice - Institutional Division for a period of eighty-five (85) years and that the State of Texas do have and recover of and from said Defendant all costs in this prosecution, for which execution may issue, and the Court having found that the Defendant, Santos Montoya, used a deadly weapon during the commission of this offense and that the deadly weapon used by the Defendant was a firearm, this affirmative finding is made a part of the Judgment of the Court in accordance with the provisions of Article 42.12 Sec. 3f (a) () Code of Criminal Procedure of the State of Texas.

And thereupon, the Defendant, Santos Montoya, was asked by the Court whether he had anything to say why said sentence should not be pronounced against him, and he answered nothing in bar thereof. Whereupon, the Court proceeded, in the presence of the said Defendant, Santos Montoya, to pronounce sentence against him as follows:

It is the order of the Court that the Defendant, Santos Montoya, who has been adjudged to be guilty of Murder and whose punishment has been assessed by the Jury at confinement in the Texas Department of Criminal Justice - Institutional Division for a term of eighty-five (85) years, be delivered by the Sheriff of Cameron County, Texas, immediately to the Director of Corrections of the Texas Department of Criminal Justice - Institutional Division, or other person legally authorized to receive such convicts, and the said Santos Montoya shall be confined in said Texas

77

"We, the Jury, having found the Defendant, Santos
Montoya guilty of the offense of Murder, as charged in
the indictment, assess his punishment at confinement in
the Texas Department of Criminal Justice - Institutional
Division for ____85____ years (being not less than five
(5) years nor more than ninety-nine (99) years, or Life,
and assess a fine of $__none__.  (Answer in dollars
and cents, not exceeding $10,000.00 or "None".)

/s/ Patricia P. McGuffey
Presiding Juror"

IT IS, THEREFORE, CONSIDERED AND ADJUDGED BY THE COURT that

the Defendant, Santos Montoya, is guilty of the offense of Murder

as found by the Jury, and that he be punished, as found by the

Jury, that is by confinement in the Texas Department of Criminal

Justice - Institutional Division for a period of eighty-five (85)

years  and that the State of Texas do have and recover of and

from said Defendant all costs in this prosecution, for which exe-

cution may issue, and the Court having found that the Defendant,

Santos Montoya, used a deadly weapon during the commission of

this offense and that the deadly weapon used by the Defendant was

a firearm, this affirmative finding is made a part of the

Judgment of the Court in accordance with the provisions of

Article 42.12 Sec. 3f (a) () Code of Criminal Procedure of the

State of Texas.

And thereupon, the Defendant, Santos Montoya, was asked by

the Court whether he had anything to say why said sentence should

not be pronounced against him, and he answered nothing in bar

thereof.  Whereupon, the Court proceeded, in the presence of the

said Defendant, Santos Montoya, to pronounce sentence against him

as follows:

It is the order of the Court that the Defendant, Santos

Montoya, who has been adjudged to be guilty of Murder and whose

punishment has been assessed by the Jury at confinement in the

Texas Department of Criminal Justice - Institutional Division for

a term of eighty-five (85) years, be delivered by the Sheriff of

Cameron County, Texas, immediately to the Director of Corrections

of the Texas Department of Criminal Justice - Institutional

Division, or other person legally authorized to receive such con-

victs, and the said Santos Montoya shall be confined in said Texas

78

-17

3/26
3.03

What is the difference between a sentence of 99 years and a sentence of life?

Edward P. McLaughlin
3-26-90
3:01 p.m.

LADIES AND GENTLEMEN OF THE JURY:

Please take a recess at this time for 15 minutes for coffee and to stretch your legs.  Please give the Bailiff the exhibits and charge and  he will return them to you when you return to the jury room.  Please do not discuss this case with anyone, even your fellow jurors, while you are in recess.

3-26-80

5:00 pm

_____
JUDGE PRESIDING

59

LADIES AND GENTLEMEN:

    They are two (2) separate possiblities.

_____
JUDGE PRESIDING

TIME:

DATE:    3/26/90

60

Would you please clarify 99 years or life? Are
these 2 separate possibilities or is 99 years
or life one sentence?

Patricia P. McGuffey

3-26-90

2:35 p.m.

LADIES AND GENTLEMEN OF THE JURY:

Do not concern yourselves with this matter.

3-26-90
2:50 P.—

JUDGE PRESIDING

approved

Nel P. Garza Jr

62

If a fence is assessed, when is it paid, how, and to
whom?

Patricia P McGuffey

5-25-90

5.52 p.m.

**63**

May we please see Exhibit #35?

Patricia P. McBuffey

2:07
3/26

Granted
3/26/90

**64**

CAUSE NO. 90-CR-68-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA and JOSE HERNANDEZ CASTILLO | ) | 138TH JUDICIAL DISTRICT |

<u>COURT'S CHARGE TO THE JURY</u>

LADIES AND GENTLEMEN OF THE JURY:

The defendants, Santos Montoya and Jose Hernandez Castillo, stand charged by indictment with the offense of murder, alleged to have been committed in Cameron County, Texas on or about the 8th day of November, 1989. The Defendants have pleaded not guilty.

In order that you may understand the nature of the offense charged, it is necessary for the court to give you certain definitions and instructions relating to the law of murder.

1.

Our law provides that a person commits murder if he commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

**65**

2.

A person commits an offense if he intentionally or knowingly causes the death of an individual.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the cirsumstances exist.  A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

3.

A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or con- currently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed or a different person or property was inj- hured, harmed, or otherwise affected.

**66**

4.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of November, 1989, in Cameron County, Texas, the defendant, Santos Montoya, did then and there unlawfully attempt to commit a felony, namely Murder and in the course of and in furtherance of the attempt to commit said felony, the Defendant did intentionally or knowingly commit an act clearly dangerous to human life that caused the death of Maria De Lourdes Teran, said act being: shooting a firearm in the direction of Maria De Lourdes Teran, then you will find the defendant, Santos Montoya, guilty of the offense of Murder as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant, Santos Montoya, of murder.

5.

Now, if you find from the evidence beyond a reasonable doubt tht on or about the 8th day of November, 1989, in Cameron County, Texas, the defendant, Jose Hernandez Castillo, did then and there unlawfully attempt to commit a felony, namely Murder and in the course of and in furtherance of the attempt to commit said felony, the Defendant did intentionally or knowingly commit an act clearly dangerous to human life that caused the death of Maria De Lourdes Teran, said act being: shooting a firearm in the direction of Maria De Lourdes Teran, then you will find the defendant, Jose Hernandez Castillo, guilty of the offense of Murder as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant, Jose Hernandez Castillo, of murder.

**68**

6.

In this case the Defendant Montoya has asserted that he acted in self defense.  Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he resonably believes that such force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force, and if a reasonable person in Defendant's situation would not have retreated.

7.

The Defendant Castillo has asserted that he used deadly force in defense of the defendant Montoya.  You are instructed that under our law a person is justified in using deadly force against another to protect a third person if, under the circumstances as he reasonably believes them to be, such person would be justified in using force and deadly force to protect himself against the unlawful force or deadly force of another which he reasonably believes to be threatening the third person he seeks to protect, provided he also reasonably believes that his intervention is immediately necessary to protect the third person.

**69**

By the term "deadly force" is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

By the term "reasonable belief", as used herein, is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant.

8.

All persons are parties to an offense who are guilty of acting together in the commission of an offense.  A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

In this connection, however, the mere presence of a party at or near the scene of the commission of the offense does not make him a party to the offense.  Likewise, mere knowledge that an offense is about to be committed by others will not make him a party to the offense, nor will his knowledge that the offense is being committed by others, or has been committed by others, nor will his failure to give alarm, his silence or inaction, make him a party to the offense.

70

9.

Our law provides that a Defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a Defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the Defendant, Santos Montoya, has elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the Defendant, Santos Montoya.

10.

A "deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury.

If, under the instructions given you herein, you find the Defendant, Santos Montoya, guilty of the offense of Murder, and so state by your verdict, you will then next answer the Question:

### QUESTION

Do you find from the evidence beyond a reasonable doubt that the Defendant, Santos Montoya, used a deadly weapon, to wit, a firearm, during the commission of the offense for which you have found him guilty?

You will answer "YES" or "NO".

71

11.

A "deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury.

If, under the instructions given you herein, you find the Defendant, Jose Hernandez Castillo, guilty of the offense of Murder, and so state by your verdict, you will then next answer the Question:

<u>QUESTION</u>

Do you find from the evidence beyond a reasonable doubt that the Defendant, Jose Hernandez Castillo, used a deadly weapon, to wit, a firearm, during the commission of the offense for which you have found him guilty?

You will answer "YES" or "NO".

79

A grand jury indictment is merely the means under our law by which a defendant is brought to trial in a felony prosecution. It is not evidence of guilt and you should not consider it in passing on the question of guilt of the defendant. The fact that the defendant has been arrested, confined, and indicted for, or otherwise charged with the offense for which he is on trial gives rise to no inference of guilt at his trial.

The burden of proof in all criminal cases rests upon the State throughout the trial, and never shifts to the defendant. All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. If you have a reasonable doubt as to any element of the offense after considering all the evidence before you and these instructions, you will acquit the defendant.

You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby.

In order to return a verdict, each juror must agree thereto, but jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment.

Each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with his or her fellow jurors.

**73**

In the course of deliberations, a juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced it is erroneous.  However, no juror should surrender his or her conviction as to the weight or effect of the evidence solely because of the opinion of their fellow jurors, or for the mere purpose of returning a verdict.

From time to time throughout the trial the Court has been called upon to pass on the question of whether or not certain offered evidence might properly be admitted.  You are not to be concerned with the reasons for such rulings and are not to draw any inferences from them.  Whether offered evidence is admissible is purely a question of law.  In admitting evidence to which an objection is made, the Court does not determine what weight should be given such evidence; nor does it pass on the credibility of the witness.  As to any offer of evidence that has been rejected by the Court, you, of course, must not consider the same; as to any question to which an objection was sustained, you must not conjecture as to what the answer might have been or as to the reason for the objection.

You are instructed that you are not to allow yourselves to be influenced in any degree whatsoever by what you may think or sur-mise the opinion of the Court to be.  The Court has no right by any word or any act to indicate any opinion respecting any matter of fact involved in this case, nor the guilt or innocence of the Defendant.  The Court has not intended to express any such

opinion, and if you have observed anything which you have or may interpret as the Court's opinion upon any matter of fact in this case or of the guilt or innocence of the Defendant, you must wholly disregard it.

You are instructed that the statements of counsel made during the course of the trial or during the argument, if not supported by evidence, or statements of law made by counsel, if not in harmony with the law as stated to you by the Court in these instructions, are to be wholly disregarded.

After you retire to the jury room, you should first select one of your members as your Presiding Juror. It is the Presiding Juror's duty to preside at your deliberations, vote with you, and, when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto, and signing the same as Presiding Juror.

During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence. You must not discuss nor consider punishment during your deliberations. You are to concern yourselves solely with the question of guilt or innocence without any regard whatsoever to the possible punishment for the offense charged.

75

After you have retired, no one has any authority to communicate with you except the officer who has you in charge. Do not attempt to talk to the officer, or anyone else concerning any question you may have; instead address your inquiry to the Court in writing. Any such writing must be signed by the Presiding Juror.

After you have reached a unanimous verdict, the Presiding Juror will certify thereto by filling in the appropriate form attached to this charge and signing his or her name as Presiding Juror. The Presiding Juror will then notify the officer who has you in charge that you have reached a verdict. Afterwards you will then be brought into open court.

FILED: March 23 , 1990.

3:40 P.M. —

_____
Judge Presiding

FILED _____ O'CLOCK ___ M
AURORA DE LA GARZA, DIST. CLERK

26 1990

76

CAUSE NO. 90-CR-68-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CANERON COUNTY, TEXAS |
| SANTOS MONTOYA and JOSE HERNANDEZ CASTILLO | ) | 138TH JUDICIAL DISTRICT |

<u>FORMS OF VERDICT</u>

We, the Jury find the Defendant, Santos Montoya, "NOT GUILTY" of the offense of Murder as charged in the Indictment.

_____
Presiding Juror

We, the Jury find the Defendant, Santos Montoya, "GUILTY" of the offense of Murder as charged in the Indictment.

_____
Presiding Juror

MAR 2 6 1990

77

* * * * *

    We, the Jury find the Defendant, Jose Hernandez Castillo,
"NOT GUILTY" of the offense of Murder as charged in the
Indictment.

                                    _____
                                    Presiding Juror


    We, the Jury find the Defendant, Jose Hernandez Castillo,
"GUILTY" of the offense of Murder as charged in the Indictment.

                                    _____
                                    Presiding Juror

* * * * *

If you have found the Defendant, Santos Montoya, Guilty, and only in that event, answer the Question; otherwise, do not answer the Question.

<u>QUESTION</u>

Do you find from the evidence beyond a reasonable doubt that the Defendant, Santos Montoya, used a deadly weapon, to wit, a firearm, during the commission of the offense for which you have found him guilty?

You will answer "YES" or "NO".

We, the Jury answer: ___Yes_____

79

\* \* \* \* \*

If you have found the Defendant, Jose Hernandez Castillo, Guilty, and only in that event, answer the Question; otherwise, do not answer the Question.

#### QUESTION

Do you find from the evidence beyond a reasonable doubt that the Defendant, Jose Hernandez Castillo, used a deadly weapon, to wit, a firearm, during the commission of the offense for which you have found him guilty?

You will answer "YES" or "NO".

We, the Jury answer: ___*yes*_____

80

CAUSE NO. 90-CR-68-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA and | | |
| JOSE HERNANDEZ CASTILLO | ) | 138TH JUDICIAL DISTRICT |

### CHARGE OF THE COURT ON PUNISHMENT

LADIES AND GENTLEMEN OF THE JURY:

By your verdict returned in this case you have found the Defendants, Santos Montoya and Jose Hernandez Castillo, guilty of the offense as charged in the indictment, to wit, Murder, which was alleged to have been committed on or about the 8th day of November, 1989, in Cameron County, Texas. It is necessary now that the jury assess and fix punishment for this offense.

You are instructed that the *offense of Murder* is a felony of the First Degree, and that the punishment for a First Degree Felony is confinement in the state penitentiary for a period of not less than five (5) years nor more than ninety-nine (99) years, or Life, and the jury in its discretion, may, if it chooses, assess a fine in any amount not to exceed $10,000.00, in addition to confinement, in the penitentiary. Therefore, you will assess the punishment, upon said finding of guilt, at any term of years not less than five (5) years or more than ninety-nine (99) years, or Life, and in addition, if you choose to assess a fine it must not exceed $10,000.00.

81

You are further instructed that in fixing the defendants' punishment, which you will show in your verdict, you may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case and the law as submitted to you in this charge.

Under the law applicable in this case, either defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which either defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if either defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or 15 years, whichever is less, without consideration of any good conduct time he may earn. If either defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

82

It cannot accurately be predicted how the parole law and good conduct time might be applied to either defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time.  However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by these particular defendants.  You are not to consider the manner in which the parole law may be applied to these particular defendants.

In this case the defendant, JOSE HERNANDEZ CASTILLO, has filed, before trial, his sworn motion in which he prays that in the event he is convicted he be granted probation.

The defendant, JOSE HERNANDEZ CASTILLO, has filed a motion for probation herein, alleging that he has never before been convicted of a felony in this State or any other State.  Our statute provides that where the Jury finds a defendant guilty and the punishment assessed by the Jury shall not exceed ten years' imprisonment in the Texas Department of Criminal Justice - Institutional Division of the State of Texas, and the Jury shall find in their verdict that the defendant has never before been convicted of a felony in this or any other state, the Jury may recommend that the defendant be granted probation.

83

that fact cannot be taken as a circumstance against him.  In this case, the Defendants have elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the either Defendant.

No one has any authority to communicate with you except the officer who has you in charge.  During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you.  You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.  After you have reached a unanimous verdict, the Presiding Juror will certify thereto by using the appropriate form attached to this charge and signing the same as Presiding Juror.

Following the arguments of counsel, you will retire to deliberate your verdict.

SIGNED FOR ENTRY: March 26th, 1990.

1:45 P.M —

ROBERT GARZA
Judge Presiding

85

"Probation" shall mean the release of a convicted defendant by a Court under conditions imposed by the Court for a specified period during which the imposition of sentence is suspended.

Probation shall be granted by the Court if the Jury recommends it in their verdict.

A defendant who has been placed on probation and who subsequently violates his conditions of probation shall be brought before the court, and the court, after a hearing without a jury may either continue or revoke probation, and if the probation is revoked, the court shall proceed to dispose of the case as if there had been no probation.

Now, having found the defendant, JOSE HERNANDEZ CASTILLO, guilty, and if the punishment assessed by you is not more than ten years confinement in the Texas Department of Criminal Justice - Institutional Division, and if you further find that he has never been convicted of a felony in this State or in any other State, you may in your discretion recommend that the defendant be given probation. If you desire the defendant to be placed on probation, let your verdict show that you find that the defendant has never been convicted of a felony in this State or in any other State and further show that you recommend probation.

If you do not desire to recommend probation, you will not mention the matter of probation at all in your verdict.

Our law provides that a Defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a Defendant, and in the event he elects not to testify,

84

CAUSE NO. 90-CR-68-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA and<br>JOSE HERNANDEZ CASTILLO | ) | 138TH JUDICIAL DISTRICT |

## FORMS OF VERDICT

We, the Jury, having found the Defendant, Santos Montoya guilty of the offense of Murder, as charged in the indictment, assess his punishment at confinement in the Texas Department of Criminal Justice - Institutional Division for _____ 85 _____ years (being not less than five (5) years nor more than ninety-nine (99) years, or Life), and assess a fine of $ __ none __ . (Answer in dollars and cents, not exceeding $10,000.00 or "None".)

_Patricia P. Mc Guffey_
Presiding Juror

FILED 2:00 O'CLOCK P M
AURORA DE LA GARZA, DIST. CLERK

MAR 26 1990

BY

86

* * * * *

We, the Jury, having found the Defendant, Jose Hernandez Castillo, guilty of the offense of Murder, as charged in the indictment, assess his punishment at confinement in the Texas Department of Criminal Justice – Institutional Division for _____85_____ years (being not less than five (5) years nor more than ninety-nine (99) years, or Life), and assess a fine of $__none_____.  (Answer in dollars and cents, not exceeding $10,000.00 or "None".)

_____
Presiding Juror

MAR 2 8 1990

87

* * * * *

We, the Jury, having found the Defendant, Jose Hernandez Castillo, guilty of the offense of Murder, as charged in the indictment, assess his punishment at confinement in the Texas Department of Criminal Justice - Institutional Division for _____ years (not less than five (5) years or more than ten (10) years.  We find that he has not heretofore been convicted of a felony in this or any other state, and recommend that the imposition of sentence be suspended and that he be placed on probation for a term of _____ years (not less than five (5) years or more than ten (10) years.  We additionally assess a fine of $_____ (Answer in Dollars and Cents, not exceeding $10,000.00 or "None".)

_____
Presiding Juror

* * * * *

Please answer the following only
if you have assessed probation
and a fine.

We, the Jury, <u>do</u> recommend that the fine assessed be payable during the probationary term.

_____
Presiding Juror

88

CAUSE NO. 90-CR-68-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 138TH DISTRICT COURT |
| VS. | )( | OF |
| SANTOS MONTOYA | )( | CAMERON COUNTY, TEXAS |

### JUDGMENT ON JURY VERDICT OF GUILTY
### PUNISHMENT FIXED BY JURY - NO PROBATION GRANTED

Judge Presiding:Hon. Robert Garza    Date of Judgment: March 27,1990

Attorney
for State:  Oscar Ponce

Attorney
for Defendant: Glen A. Barnard

Offense Convicted of:  Murder

Degree:  First Degree Felony

Date Offense
Committed:  November 8, 1989

Charging
Instrument: Indictment

Plea:      Not Guilty

Jury Verdict:  Guilty                    Foreman: Patricia P. McGuffey

Plea to Enhancement
Paragraph(s)   n/a

Enhancement
Paragraph(s):    n/a

Findings on Use
of Deadly Weapon:   True

Punishment assessed by:  Jury

Date Sentence Imposed: 3/26/90        Costs: $106.50

Punishment and Place
of Confinement: (85) yrs. TDCJ-ID    Date to Commence: 3/26/90

Time Credited:  (139) days

Total amount of
Restitution/Reparation: n/a

Concurrent Unless        Concurrent with sentence in 89-CR- 911-B,
Otherwise Specified:   in this same Court

VOL 115 PAGE 35

89

CAUSE NO. 90-CR-68-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA | ) | 138TH JUDICIAL DISTRICT |

## JUDGMENT OF CONVICTION AND SENTENCE

BE IT REMEMBERED that on the 19th day of March, 1990, this cause was called to trial and the State appeared by her Assistant Criminal District Attorney, and the Defendant, Santos Montoya, appeared in person, his counsel by appointment, the Hon. Glen A. Barnard also being present, and the Defendant, having been duly arraigned, pleaded Not Guilty and both parties announced ready for trial; thereupon a jury of good and lawful persons, to wit: Patricia P. McGuffey and eleven others, was duly selected, empaneled and sworn according to the law and charged by the Court on separation; whereupon said cause was recessed until March 20, 1990.

THEREAFTER, on March 20, 1990, the indictment was read to the jury and the Defendant entered his plea of Not Guilty thereto whereupon the State introduced evidence through March 23, 1990, and rested. Defendant introduced evidence whereupon State offered rebuttal evidence. All parties closed, whereupon the charge was prepared and submitted to all counsel.

THEREAFTER, the Court charged the jury as to the law applicable to said cause and argument of counsel for the State and the Defendant was duly heard and concluded, and the jury retired in charge of the proper officer to consider their verdict, and continued their deliberations through March 26, 1990, and afterward was brought into open court by the proper officer, the Defendant and his counsel being present, and in due form of law returned into open court the following verdict, which was received by the Court and is here now entered upon the Minutes of the Court, to wit:



"We, the Jury find the Defendant, Santos Montoya,
"GUILTY" of the offense of Murder as charged in the
Indictment.

/s/ Patricia P. McGuffey
Presiding Juror

If you have found the Defendant, Santos Montoya, Guilty, and
only in that event, answer the Question; otherwise, do not answer
the Question.

<div align="center">QUESTION</div>

Do you find from the evidence beyond a reasonable
doubt that the Defendant, Santos Montoya, used
a deadly weapon, to wit, a firearm, during the com-
mission of the offense for which you have found him
guilty?

You will answer "YES" or "NO".

We, the Jury answer: _____Yes_____"

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court
that the Defendant, Santos Montoya, is guilty of the offense of
Murder as found by the jury, and that said offense was committed
on November 8, 1989.

THEREUPON, the Defendant, having previously elected in
writing to have his punishment assessed by the same jury, the
same jury was duly empaneled to assess said Defendant's punish-
ment in said cause, and the evidence submitted for the State and
for the Defendant was duly heard, and at the conclusion of such
evidence, the Court charged the jury with additional instructions
as to the law applicable to punishment of said cause and argu-
ments of State and Defendant were duly heard and concluded and
the jury retired in charge of the proper officer to consider
their verdict as to Defendant's punishment, and thereafter
returned into open court, accompanied by the proper officer, the
Defendant and his counsel being present, and in due form of law,
the following verdict, which was received by the Court is here
now entered upon the Minutes of the Court, to wit:

"We, the Jury, having found the Defendant, Santos Montoya guilty of the offense of Murder, as charged in the indictment, assess his punishment at confinement in the Texas Department of Criminal Justice - Institutional Division for _____85_____ years (being not less than five (5) years nor more than ninety-nine (99) years, or Life, and assess a fine of $__none____. (Answer in dollars and cents, not exceeding $10,000.00 or "None".)

/s/ Patricia P. McGuffey
Presiding Juror"

IT IS, THEREFORE, CONSIDERED AND ADJUDGED BY THE COURT that the Defendant, Santos Montoya, is guilty of the offense of Murder as found by the Jury, and that he be punished, as found by the Jury, that is by confinement in the Texas Department of Criminal Justice - Institutional Division for a period of eighty-five (85) years  and that the State of Texas do have and recover of and from said Defendant all costs in this prosecution, for which execution may issue, and the Court having found that the Defendant, Santos Montoya, used a deadly weapon during the commission of this offense and that the deadly weapon used by the Defendant was a firearm, this affirmative finding is made a part of the Judgment of the Court in accordance with the provisions of Article 42.12 Sec. 3f (a) () Code of Criminal Procedure of the State of Texas.

And thereupon, the Defendant, Santos Montoya, was asked by the Court whether he had anything to say why said sentence should not be pronounced against him, and he answered nothing in bar thereof.  Whereupon, the Court proceeded, in the presence of the said Defendant, Santos Montoya, to pronounce sentence against him as follows:

It is the order of the Court that the Defendant, Santos Montoya, who has been adjudged to be guilty of Murder and whose punishment has been assessed by the Jury at confinement in the Texas Department of Criminal Justice - Institutional Division for a term of eighty-five (85) years, be delivered by the Sheriff of Cameron County, Texas, immediately to the Director of Corrections of the Texas Department of Criminal Justice - Institutional Division, or other person legally authorized to receive such convicts, and the said Santos Montoya shall be confined in said Texas

Department of Criminal Justice - Institutional Division for a term of eighty-five (85) years, in accordance with the provisions of the law governing the penitentiaries and the Texas Department of Criminal Justice - Institutional Division; it is further ordered by the Court that the Defendant be credited on this sentence with one hundred thirty-nine (139) days, on account of the time spent in jail in said cause since his arrest and confinement until sentence was pronounced by the Court.  And the said Santos Montoya is hereby remanded to jail until said Sheriff can obey the directions of this sentence.

IT IS FURTHER ORDERED by the Court that defendant's left or right index finger be fingerprinted, and that said fingerprint be marked as Exhibit "A" and is made a part hereof for all purposes.

IT IS ALSO FURTHER ORDERED by the Court that this sentence run concurrent with that imposed in Cause No. 89-CR-911-B, in this same Court.

SIGNED FOR ENTRY:  March 27, 1990

_____
ROBERT GARZA
Judge Presiding

CAUSE NO. __90-CR-68-B__

THE STATE OF TEXAS                    )    IN THE DISTRICT COURT OF

VS                                    :    CAMERON COUNTY, TEXAS

SANTOS MONTOYA                        )    __138th__    JUDICIAL DISTRICT
I.D.14770

## FINGERPRINT OF DEFENDANT'S INDEX FINGER

The following is the fingerprint of the left or right index
finger of:

__Santos Montoya_____, Defendant in this cause,

convicted of a felony in this Court.



(Defendant's initials)

Taken on this __27th__ day of _____March_____, 19 __90__ by:

_____
(Signature)

Court Bailiff
Title of Person Authorized to
Take Fingerprints

Judgment signed for entry herein the __27th__ day of __March__,
19 __90__.

E X H I B I T   "A"

| CHIEF JUSTICE | | CLERK |
|---|---|---|
| PAUL W. NYE | **Court of Appeals** | CATHY WILBORN |
| | **Thirteenth Supreme Judicial District** | DEPUTY CLERK |
| JUSTICES | | MARY JANE DUARTE |
| NOAH KENNEDY | TENTH FLOOR | |
| ROBERT J. SEERDEN | NUECES COUNTY COURTHOUSE | TELEPHONE: 512-888-0416 |
| J BONNER DORSEY | CORPUS CHRISTI, TEXAS 78401 | |
| GILBERTO HINOJOSA | | FAX: 512-888-0794 |

June 6, 1991

TO ALL ATTORNEYS OF RECORD:

                          RE:  Cause No. 13-90-165-CR
                               Tr.Ct.No. 90-CR-68-B
                               Santos Montoya
                               v.
                               The State of Texas

Dear Attorneys:

    The judgment of the trial court in the above-referenced cause
was this date AFFIRMED by this Court.

    Copies of the opinion and judgment are enclosed.

                          Very truly yours,

                          *Cathy Wilborn*

                          Cathy Wilborn, Clerk

CW:tr
cc:  Hon. Glen A. Barnard
     Hon. Ben Euresti, Jr.
     Hon. Luis V. Saenz
     Hon. Noe D. Garza, Jr.
     The 138th District Court
     Hon. Aurora De La Garza, District Clerk

95

**COURT OF APPEALS**

**Thirteenth Judicial District**

**Corpus Christi, Texas**

Below is the JUDGMENT in the numbered cause set out herein to be Filed and Entered in the Minutes of the Court of Appeals, Thirteenth Judicial District of Texas, at Corpus Christi, as of the <u>6th day of June, 1991.</u> If this Judgment does not conform to the opinion handed down by the Court in this cause, any party may file a Motion for Correction of Judgment with the Clerk of this Court.

CAUSE NO.  13-90-165-CR          (Tr.Ct.No. 90-CR-68-B)

SANTOS MONTOYA,                                        Appellant,

v.

THE STATE OF TEXAS,                                    Appellee,

on      appeal    to this Court from    Cameron      County, Texas.

\* \* \* \* \* \* \* \*

<u>J U D G M E N T</u>

On appeal from the 138th District Court of Cameron County, Texas, from a judgment signed March 27, 1990. Opinion by Justice Gilberto Hinojosa. Opinion ordered published. Tex. R. App. P. 90.

THIS CAUSE was submitted to the Court on April 11, 1991, on the record and briefs. These having been examined and fully considered, it is the opinion of the Court that there was no error in the judgment of the court below, and said judgment is hereby AFFIRMED against appellant, Santos Montoya.

Costs of the appeal are adjudged against the appellant, Santos Montoya, although he is exempt from payment due to his affidavit of inability to pay costs. It is further ordered that this decision be certified below for observance.

\* \* \* \* \* \* \*
CATHY WILBORN, CLERK

FILED 4:40 O'CLOCK ___
AURORA DE LA GARZA, DIST. CLERK

JUN I 0 1991

**96**

NUMBER 13-90-165-CR

COURT OF APPEALS

THIRTEENTH JUDICIAL DISTRICT OF TEXAS

CORPUS CHRISTI

\* \* \* \* \* \* \*

SANTOS MONTOYA,                                           Appellant,

v.

THE STATE OF TEXAS,                                       Appellee.

\* \* \* \* \* \* \*

On appeal from the 138th District Court of Cameron County, Texas.

\* \* \* \* \* \* \*

Before Gilberto Hinojosa, Robert J. Seerden
and J. Bonner Dorsey, J. J.

\* \* \* \* \* \* \*

O P I N I O N

A jury found appellant, Santos Montoya, guilty of murder. See TEX. PENAL CODE ANN. § 19.02 (a) (Vernon 1990). His punishment was assessed by the jury at confinement for eighty-five years in the Texas Department of Criminal Justice, Institutional Division. He appeals by one point of error. We affirm.

Appellant does not speak English. A qualified translator was appointed by the trial court. See TEX. CODE CRIM. PROC. ANN. art. 38.30 (Vernon 1990). During trial, several witnesses were called who testified in English. This testimony was translated into Spanish. A medical emergency arose during the proceedings and the translator left. The trial court, noting that the bailiff spoke Spanish, appointed the bailiff as interpreter. Appellant did not object. The bailiff then interpreted the proceedings until the

1

97

interpreter returned.    During this period four police officers testified for the State.

By appellant's sole point of error, he complains that the trial court erred in appointing the bailiff as an interpreter without determining whether he was qualified, and that this error infringed his right to confrontation.  The issue presented here is whether the trial court erred in appointing the bailiff as an interpreter without establishing on the record his qualifications.

After a motion for appointment of an interpreter, and a showing that the defendant does not speak English, an interpreter must be provided to interpret the proceedings.  TEX. CODE CRIM. PROC. ANN. art. 38.30 (Vernon 1990); see also Garcia v. State, 210 S.W.2d 574, 579-80 (Tex. Crim. App. 1948).  Any person may appear to act as an interpreter under the same rules as provided for witnesses.  The only requirement is that the person interpreting possess adequate interpreting skills, especially in the use of slang.  This article protects the defendant's right to confrontation under the state and federal constitutions.  Baltierra v. State, 586 S.W.2d 553, 558 (Tex. Crim. App. 1979); Diaz v. State, 491 S.W.2d 166, 168 (Tex. Crim. App. 1973); Cantu v. State, 716 S.W.2d 688, 689 (Tex. App.--Corpus Christi 1986, no pet.).

Under the rules regarding testimony by witnesses, and in particular, whether a witness is competent to testify, an objection is required to preserve error in the admission of testimony.  See Carr v. State, 475 S.W.2d 755, 757 (Tex. Crim. App.), cert. denied, 93 S.Ct. 919 (1972); Hatchell v. State, 679 S.W.2d 614, 615 (Tex.

App.--Beaumont 1984, no pet.). Thus, appellant waived his right to complain of this alleged error because he did not object to the use of the bailiff as an interpreter. Solis v. State, 647 S.W.2d 95, 98-99 (Tex. App.--San Antonio 1983, no pet.).

In addition, we note that competency is a question for the court, and a ruling on this subject will be reversed only for an abuse of discretion. Minor v. State, 659 S.W.2d 161, 163 (Tex. App.--Fort Worth 1983, no pet.)(translator). There is no evidence that the bailiff was not competent to act as an interpreter.[1] The trial court was not under a duty to interrogate the interpreter to determine his qualifications; rather, if there was a question concerning his qualifications, appellant should have objected and made a record. Appellant has not directed this court to any part of the record where alleged errors in translation occurred which prevented him from confronting the witnesses. See Frescas v. State, 636 S.W.2d 516, 518 (Tex. App.--El Paso 1982, no pet.) (appellant did not establish harm where he failed to show misunderstanding or inability to confront a witness). Thus, even if there were error in the record, it would be harmless. TEX. R. APP. P. 81(b)(2).

We overrule appellant's sole point of error. Appellant's conviction is AFFIRMED.

                                    GILBERTO HINOJOSA,
                                    Justice

_____

[1] The trial court believed that the bailiff was an adequate interpreter because he said so.

3

**99.**

Opinion ordered published.
Tex. R. App. P. 90.
Opinion delivered and filed this
the 6th day of June, 1991.

<div align="center">

**CHIEF JUSTICE**
PAUL W. NYE

**JUSTICES**
NOAH KENNEDY
ROBERT J SEERDEN
J. BONNER DORSEY
GILBERTO HINOJOSA

# Court of Appeals

## Thirteenth Supreme Judicial District

TENTH FLOOR
NUECES COUNTY COURTHOUSE
CORPUS CHRISTI. TEXAS 78401

**CLERK**
CATHY WILBORN

**DEPUTY CLERK**
MARY JANE DUARTE

TELEPHONE: 512-888-0416

FAX: 512-888-0794

</div>

July 29, 1991

Aurora De La Garza
District Clerk
P.O. Box 3570
Brownsville, Texas 78523-3570

RE: Case No. 13-90-00165-CR
    Trial Court No. 90-CR-68-B

Style: Montoya, Santos
    v. Texas, The State of

Dear Ms. De La Garza:

The judgment of the trial court was AFFIRMED by this Court on June 6, 1991. The mandate is enclosed.

Costs of the appeal were adjudged against appellant, Santos Montoya, although he is exempt from payment due to his affidavit of inability to pay costs.

Respectfully submitted,

CATHY WILBORN, CLERK

By _Mary Jane Duarte_
                        Deputy

CW:mcf
cc: Glen A. Barnard
    Luis V. Saenz
    S. O. Woods

<div align="right">

**101**

</div>

TO THE COUNTY 138TH DISTRICT COURT OF CAMERON COUNTY, GREETINGS:

Before our Court of Appeals for the Thirteenth Supreme Judicial District of Texas, on the 6th day of June, 1991, the cause upon appeal to revise or reverse your judgment between

SANTOS MONTOYA,                                          Appellant,

                              V.

THE STATE OF TEXAS,                                      Appellee,

Case No. 13-90-165-CR and
Tr.Ct.No. 90-CR-68-B

was determined; and therein our said Court made its order in these words:

MINUTES    On appeal from the 138th District Court of Cameron
VOL.PAGE   County, Texas, from a judgment signed March 27, 1990.
6 - 219    Opinion by Justice Gilberto Hinojosa. Opinion ordered
           published.  Tex. R. App. P. 90.

           THIS CAUSE was submitted to the Court on April 11, 1991,
           on the record and briefs.  These having been examined and
           fully considered, it is the opinion of the Court that
           there was no error in the judgment of the court below,
           and said judgment is hereby AFFIRMED against appellant,
           Santos Montoya.

           Costs of the appeal are adjudged against appellant,
           Santos Montoya, although he is exempt from payment due to
           his affidavit of inability to pay costs.  It is further
           ordered that this decision be certified below for
           observance.

                         * * * * * * * *

    WHEREFORE, WE COMMAND YOU to observe the order of our said Court of Appeals for the Thirteenth Supreme Judicial District of Texas, in this behalf, and in all things have it duly recognized, obeyed and executed.

    WITNESS, the Hon. Paul W. Nye, Chief Justice of our Court of Appeals, with the seal thereof affixed, at the City of Corpus Christi, Texas, this the 29th day of July, 1991.

                              Cathy Wilborn, Clerk

                              By: _Mary Jane Duarte_

FILED 3:35 O'CLOCK P M
AURORA DE LA GARZA, DIST. CLERK
JUL 3 1 1991

                              VOL. 139  PAGE 499      102

# CRIMINAL DOCKET

**ON APPEAL**

Case No. _____
DEF ID#: 14770

| | NAMES OF PARTIES | ATTORNEYS | OFFENSE | | DATE OF FILING | |
|---|---|---|---|---|---|---|
| | | | 2 | Month | Day | Year |

THE STATE OF TEXAS
VS.

SANTOS MONTOYA

DOB: 03/31/61

DISTRICT ATTORNEY, CAMERON COUNTY

Hon. Glen A. Barnard (a)

MURDER

01 | 24 | 90

REPORTED
MAY 1990

| Date of Orders | | | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| Month | Day | Year | | |
| JANUARY | 24 | 1990 | TRANSFERRED FROM THE 197TH DISTRICT COURT, DARRELL HESTER /DE | 01/24/90 ORDER TRANSFERRING CAUSE |
| Jan. | 29 | 1990 | Bond set at $75,000.00 c/s. Rgarza/ch | 1/29/90 NOTICE OF ARRAIGNMENT |
| Jan. | 29 | 1990 | Set for Arraignment on February 7, 1990 at 8:30 A.M. RGarza/ch | 1/29/90 Precept issued |
| Jan. | 29 | 1990 | Hon. Glen A. Barnard appointed to represent Defendant. RGarza/ch | Served: 130LWfiled: 2/1/90 |
| | 2 | 90 | State announced ready. Defendant waived formality of arraign- ment and entered a plea of not guilty. Case set for trial on February 26, 1990; with announcements on February 16, 1990 at 9:00 a.m. Rgarza/cap | 2/8/90-WAIVER OF ARRAIGNMENT |
| | 7 | 90 | | 3/19/90-State's Motion to Amend Indictment |
| | | | | 3/20/90-Application for Attachment of Witness |
| | | | | 3/22/90-Application for Attachment of Witness |
| | | | | 3/19/90-Jury Separation |
| | | | | 3/19/90-Jury Chosen |
| | | | | 3/19/90-Application For Jury to Assess Punishment |

No.  90-CR-68-B

The State of Texas   vs.   SANTOS MINJOYA

| Date of Orders | | | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| Month | Day | Year | | |
| 3 | 19 | 90 | *[handwritten] facts agreed to on trial to proceed. Counsel & defendant present... current & facts... defendant... to proceed... at 5:00 PM* | 3/20/90-ORDER<br>SERVED:<br>3/20/90- (1) Witness Attachment<br>FILED: |
| 3 | 20 | 90 | *[handwritten] Both agreed to continue to proceed evidence at 10:30 am recessed at 10:00 on 3/21... the panel set 1:00 pm on 3/21/90* | 3/22/90-ORDER<br>SERVED:<br>3/22/90 (1) Witness Attachment<br>FILED: |
| 3 | 21 | 90 | *[handwritten] facts agreed on trial to proceed evidence at 1:00 pm... recessed at 5:00 pm until 9:30 am on 3/22/90 to* | |
| 3 | 22 | 90 | *[handwritten] facts agreed to continue to proceed evidence at 10:00 am to recessed at 5:00 pm. The panel set 9:30 am on 3/23/90* | |

104

# CRIMINAL DOCKET

Case No. 92-CR-685
ID #

| NAMES OF PARTIES | ATTORNEYS | | OFFENSE | DATE OF FILING | | |
|---|---|---|---|---|---|---|
| | | | | Month | Day | Year |

THE STATE OF TEXAS
VS.

Carlos Montoya

DISTRICT ATTORNEY, CAMERON COUNTY

**DEF. ADJ.**
ADJ OF FINAL DISPO.
LBR - P/G - RO JURY
PROS - NO JURY
DISPOSITION:
PROB.
DISM.
ACQUITTAL
YEARS
FINE
RESTITUTION
JAIL
YEARS TDC. PROB.
COURT COSTS
MISD.
WAIVER OF SPEEDY TRIAL
DOB:

**ORDERS OF COURT**

| Date of Orders | | | ORDERS OF COURT |
|---|---|---|---|
| Month | Day | Year | |

3-23-90  Parties appeared + announced ready. Either
Reconvened Ct. 9:30 am — State rests at 10:12 am.
Def. rests to proceed no evidence. Def. Counsel presented
evidence. Def. Counsel rests at 2:32 pm. State
& Defense submitted + close at 2:37 pm. Ct. had
jury close at 9:37. Charge prepared + given to
Court + ruled on. Charge read to jury. Atty's
arg's recessed. Summation given. Jury was
deliberating at 4:37 pm — returned at 5:40 pm.

3-20-90  Parties appeared + ann. ready. Jury was
deliberating at 9:30 am. Verdict reached at 10:33 am

**PAPERS FILED**

NOT OR   1/8   PAGE   43

105

No. 90-CR-68-B The State of Texas vs. SANTOS MONTOYA

~~ON APPEAL~~

106

| Date of Orders: Month | Day | Year | ORDERS OF COURT | PAPERS FILED |
|---|---|---|---|---|
| | | | Verdict of guilty entered against the defendant Montoya — Punishment phase to begin at 1:00 P.m. Affirmative finding entered of ... Parties agreed & are ready to proceed on Punishment. State rested, Both sides rested and evidence closed. Charge prepared, objections read & ruled on. Summation given. Jury deliberating at 2:00 P.m. Verdict reached. Verdict entered. Defendant formally assessed the punishment and remanded. Punishment assessed at 85 years. Def. remanded to Sheriff & held w/o Bond. This sentence to run concurrent with sentence imposed in Cause NO. 89-CR-911-B, in this same Court. RGARZA/rhg. | 3/26/90-COURT'S CHARGE TO THE JURY<br>3/26/90-VERDICT<br>3/26/90-CHARGE OF THE COURT ON PUNISHMENT<br>3/26/90-VERDICT<br>4-17-90 Notice of Appeal<br>4-17-90 Affidavit of Indigency<br>4-17-90 Designation of Record on Appeal |
| 3 | 27 | 90 | Judgment of Conviction signed for entry. RGARZA/rhg. | |
| | | | JUDGMENT OF CONVICTION AND SENTENCE<br>VOL. CR-118 PAGE 35-40<br>DATE 3/27/90 | |

# CRIMINAL DOCKET   Case No. 90-CR-68-B

ON APPEAL

| Number of Case | NAMES OF PARTIES | ATTORNEYS | OFFENSE: | DATE OF FILING Month | Day | Year |
|---|---|---|---|---|---|---|
| | STATE OF TEXAS | State | MURDER | 1 | 24 | 90 |
| | vs. | | Indictment or Information and Complaint | | | |
| | SANTOS MONTOYA | | | | | |
| FEE BOOK | | HON. GLEN A. BARNARD (A) ON APPEAL | | | | |
| Vol.        Page | | Deft. | | | | |

| DATE OF ORDERS Mo. | Day | Year | ORDERS OF COURT | Minute Book Vol. | Page | PROCESS |
|---|---|---|---|---|---|---|
| 5 | 10 | 90 | Hon. Glen Barnard is hereby appointed to represent him on the appeal as per order signed for entry. Hon. RANTA/bas | | | 5-10-90 ORDER APPOINTING ATTORNEY |
| 7 | 31 | 91 | MANDATE (Judgment was AFFIRMED on 6/6/91) | | | 5-17-90 Transcript mailed to the Court of Appeals |

VOL. 139   PAGE 500

107

## CLERK'S CERTIFICATE

THE STATE OF TEXAS    }{

COUNTY OF CAMERON    }{

I, **AURORA DE LA GARZA**, Clerk of the District Courts of Cameron County, Texas, do hereby certify that the foregoing pages contain a true and correct transcript of all proceedings as to the **Writ of Habeas Corpus** in

CAUSE NO. **90-CR-68-B**
**(WRIT NO. I)**

### THE STATE OF TEXAS

#### VS

#### **SANTOS MONTOYA**

as they appear on file and of record in this office.

GIVEN UNDER MY HAND AND SEAL OF SAID COURTS of Cameron County, Texas, on **December 15, 1992** .

AURORA DE LA GARZA, District Clerk
Cameron County, Texas

By _____
AMPARO DIAZ, DEPUTY

**108**

Department of Criminal Justice - Institutional Division for a term of eighty-five (85) years, in accordance with the provisions of the law governing the penitentiaries and the Texas Department of Criminal Justice - Institutional Division; it is further ordered by the Court that the Defendant be credited on this sentence with one hundred thirty-nine (139) days, on account of the time spent in jail in said cause since his arrest and confinement until sentence was pronounced by the Court. And the said Santos Montoya is hereby remanded to jail until said Sheriff can obey the directions of this sentence.

IT IS FURTHER ORDERED by the Court that defendant's left or right index finger be fingerprinted, and that said fingerprint be marked as Exhibit "A" and is made a part hereof for all purposes.

IT IS ALSO FURTHER ORDERED by the Court that this sentence run concurrent with that imposed in Cause No. 89-CR-911-B, in this same Court.

SIGNED FOR ENTRY:  March 27, 1990.

_____
ROBERT GARZA
Judge Presiding

79

VOL ___ PAGE ___

18

$E_X HIBIT.$ (B)

19.02(a)(1)  FELO  4URDER

DOB:  MONTOYA 03/31/61, Ch____LO 03/22/54                Form 18

# IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURORS, for the County of Cameron, State aforesaid, duly organized as such at the   JANUARY

Term, A.D. 19 90 , of the     197TH  Judicial District Court                              in and for

said County, upon their oaths in said Court, present that     SANTOS MONTOYA
                                                              AND JOSE HERNANDEZ CASTILLO

hereinafter called Defendants,

on or about the           8th          day of     November              A. D One Thousand Nine

Hundred and        Eighty-nine        and anterior to the presentment of this indictment, in the County of

Cameron and State of Texas, did then and there unlawfully  attempt to commit a felony, namely MURDER

and in the course of and in furtherance of the attempt to commit said felony, the

Defendant did intentionally, knowingly, and recklessly commit an act clearly

dangerous to human life that caused the death of MARIA DE LOURDES TERAN, said act

being:  shooting a firearm in the direction of MARIA DE LOURDES TERAN,

against the peace and dignity of the State.

_____
Foreman of the Grand Jury

اهرار  3

90-CR-68-B

20.

THE STATE OF TEXAS
COUNTY OF CAMERON

I, AURORA DE LA GARZA, Clerk of the District Courts of Cameron County, Texas, do hereby certify that the within and fore-

going is a true and correct copy of the Original Bill of Indictment, filed in said Court on_____

_____A. D. 19_____ in Cause No._____, styled the State of Texas vs

_____

_____

Given under my hand and seal of said court, at office in Brownsville, Texas, this _____ day

of _____A. D. 19_____

AURORA DE LA GARZA , Clerk

By_____Deputy

---

THE STATE OF TEXAS

No. 90-CR-685-B

SANTOS KONTOYA AND
JOSE HERNANDEZ CASTILLO

I N D I C T M E N T

OFFENSE:
FELONY MURDER

Benjamin Euresti, Jr.
Criminal County Attorney

A TRUE BILL

_____
Foreman of Grand Jury

Filed on _____
JAN 2 4 1990

AURORA DE LA GARZA, CLERK OF
DISTRICT COURTS OF CAMERON
COUNTY

By_____ Deputy

Amount of Bail $_____

NAMES OF WITNESSES

IMA KONTOYA 14770
CASTILLO 14191

EXHIBIT (C)

CAUSE NO. 90-CR-68-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA and JOSE HERNANDEZ CASTILLO | ) | 138TH JUDICIAL DISTRICT |

<u>COURT'S CHARGE TO THE JURY</u>

LADIES AND GENTLEMEN OF THE JURY:

The defendants, Santos Montoya and Jose Hernandez Castillo, stand charged by indictment with the offense of murder, alleged to have been committed in Cameron County, Texas on or about the 8th day of November, 1989.  The Defendants have pleaded not guilty.

In order that you may understand the nature of the offense charged, it is necessary for the court to give you certain definitions and instructions relating to the law of murder.

1.

Our law provides that a person commits murder if he commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

2.

A person commits an offense if he intentionally or knowingly causes the death of an individual.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the cirsumstances exist. A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

3.

A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or con-currently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed or a different person or property was inj-hured, harmed, or otherwise affected.

4.

Now, if you find from the evidence beyond a reasonable doubt
that on or about the 8th day of November, 1989, in Cameron County,
Texas, the defendant, Santos Montoya, did then and there
unlawfully attempt to commit a felony, namely Murder and in the
course of and in furtherance of the attempt to commit said
felony, the Defendant did intentionally or knowingly commit an
act clearly dangerous to human life that caused the death of
Maria De Lourdes Teran, said act being: shooting a firearm in the
direction of Maria De Lourdes Teran, then you will find the defen-
dant, Santos Montoya, guilty of the offense of Murder as charged
in the indictment.

Unless you so find beyond a reasonable doubt, or if you have
a reasonable doubt, or if you have a reasonable doubt thereof,
you will acquit the defendant, Santos Montoya, of murder.

5.

Now, if you find from the evidence beyond a reasonable doubt
tht on or about the 8th day of November, 1989, in Cameron County,
Texas, the defendant, Jose Hernandez Castillo, did then and there
unlawfully attempt to commit a felony, namely Murder and in the
course of and in furtherance of the attempt to commit said
felony, the Defendant did intentionally or knowingly commit an
act clearly dangerous to human life that caused the death of
Maria De Lourdes Teran, said act being: shooting a firearm in the
direction of Maria De Lourdes Teran, then you will find the defen-
dant, Jose Hernandez Castillo, guilty of the offense of Murder as
charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have
a reasonable doubt, or if you have a reasonable doubt thereof,
you will acquit the defendant, Jose Hernandez Castillo, of murder.

6.

In this case the Defendant Montoya has asserted that he acted in self defense.  Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he resonably believes that such force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force, and if a reasonable person in Defendant's situation would not have retreated.

7.

The Defendant Castillo has asserted that he used deadly force in defense of the defendant Montoya.  You are instructed that under our law a person is justified in using deadly force against another to protect a third person if, under the circumstances as he reasonably believes them to be, such person would be justified in using force and deadly force to protect himself against the unlawful force or deadly force of another which he reasonably believes to be threatening the third person he seeks to protect, provided he also reasonably believes that his intervention is immediately necessary to protect the third person.

By the term "deadly force" is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

By the term "reasonable belief", as used herein, is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant.

8.

All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

In this connection, however, the mere presence of a party at or near the scene of the commission of the offense does not make him a party to the offense. Likewise, mere knowledge that an offense is about to be committed by others will not make him a party to the offense, nor will his knowledge that the offense is being committed by others, or has been committed by others, nor will his failure to give alarm, his silence or inaction, make him a party to the offense.

9.

Our law provides that a Defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a Defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the Defendant, Santos Montoya, has elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the Defendant, Santos Montoya.

10.

A "deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury.

If, under the instructions given you herein, you find the Defendant, Santos Montoya, guilty of the offense of Murder, and so state by your verdict, you will then next answer the Question:

<u>QUESTION</u>

Do you find from the evidence beyond a reasonable doubt that the Defendant, Santos Montoya, used a deadly weapon, to wit, a firearm, during the commission of the offense for which you have found him guilty?

You will answer "YES" or "NO".

56

29

11.

A "deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury.

If, under the instructions given you herein, you find the Defendant, Jose Hernandez Castillo, guilty of the offense of Murder, and so state by your verdict, you will theh next answer the Question:

<u>QUESTION</u>

Do you find from the evidence beyond a reasonable doubt that the Defendant, Jose Hernandez Castillo, used a deadly weapon, to wit, a firearm, during the commission of the offense for which you have found him guilty?

You will answer "YES" or "NO".

57

30

A grand jury indictment is merely the means under our law by which a defendant is brought to trial in a felony prosecution. It is not evidence of guilt and you should not consider it in passing on the question of guilt of the defendant. The fact that the defendant has been arrested, confined, and indicted for, or otherwise charged with the offense for which he is on trial gives rise to no inference of guilt at his trial.

The burden of proof in all criminal cases rests upon the State throughout the trial, and never shifts to the defendant. All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. If you have a reasonable doubt as to any element of the offense after considering all the evidence before you and these instructions, you will acquit the defendant.

You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby.

In order to return a verdict, each juror must agree thereto, but jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment.

Each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with his or her fellow jurors.

58

**31**

In the course of deliberations, a juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced it is erroneous.  However, no juror should surrender his or her conviction as to the weight or effect of the evidence solely because of the opinion of their fellow jurors, or for the mere purpose of returning a verdict.

From time to time throughout the trial the Court has been called upon to pass on the question of whether or not certain offered evidence might properly be admitted.  You are not to be concerned with the reasons for such rulings and are not to draw any inferences from them.  Whether offered evidence is admissible is purely a question of law.  In admitting evidence to which an objection is made, the Court does not determine what weight should be given such evidence; nor does it pass on the credibility of the witness.  As to any offer of evidence that has been rejected by the Court, you, of course, must not consider the same; as to any question to which an objection was sustained, you must not conjecture as to what the answer might have been or as to the reason for the objection.

You are instructed that you are not to allow yourselves to be influenced in any degree whatsoever by what you may think or surmise the opinion of the Court to be.  The Court has no right by any word or any act to indicate any opinion respecting any matter of fact involved in this case, nor the guilt or innocence of the Defendant.  The Court has not intended to express any such

59

39

opinion, and if you have observed anything which you have or may interpret as the Court's opinion upon any matter of fact in this case or of the guilt or innocence of the Defendant, you must wholly disregard it.

You are instructed that the statements of counsel made during the course of the trial or during the argument, if not supported by evidence, or statements of law made by counsel, if not in harmony with the law as stated to you by the Court in these instructions, are to be wholly disregarded.

After you retire to the jury room, you should first select one of your members as your Presiding Juror. It is the Presiding Juror's duty to preside at your deliberations, vote with you, and, when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto, and signing the same as Presiding Juror.

During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence. You must not discuss nor consider punishment during your deliberations. You are to concern yourselves solely with the question of guilt or innocence without any regard whatsoever to the possible punishment for the offense charged.

After you have retired, no one has any authority to communicate with you except the officer who has you in charge.  Do not attempt to talk to the officer, or anyone else concerning any question you may have; instead address your inquiry to the Court in writing.  Any such writing must be signed by the Presiding Juror.

After you have reached a unanimous verdict, the Presiding Juror will certify thereto by filling in the appropriate form attached to this charge and signing his or her name as Presiding Juror.  The Presiding Juror will then notify the officer who has you in charge that you have reached a verdict.  Afterwards you will then be brought into open court.

FILED: March 23 , 1990.

3:40 P.M —

_____
Judge Presiding

FILED _____ O'CLOCK ____ M
AURORA DE LA GARZA, DIST. CLERK

MAR 26 1990

_____ DEPUTY

61

34

CAUSE NO. 90-CR-68-B

THE STATE OF TEXAS                    )    IN THE DISTRICT COURT OF

VS                                    :    CANERON COUNTY, TEXAS

SANTOS MONTOYA and
JOSE HERNANDEZ CASTILLO               )    138TH JUDICIAL DISTRICT


FORMS OF VERDICT

We, the Jury find the Defendant, Santos Montoya, "NOT GUILTY"
of the offense of Murder as charged in the Indictment.

_____
Presiding Juror




We, the Jury find the Defendant, Santos Montoya, "GUILTY" of
the offense of Murder as charged in the Indictment.

_____
Presiding Juror

FILED _____
AURORA DE LA GARZA, DIST. CLERK

MAR 26 1990

DISTRICT COURT _____
BY _____

62

35



**Cameron County District Courts**
974 E Harrison—P O Box 3570
Brownsville, Texas 78523-3570
Area Code 512-544-0838

**Aurora De La Garza**
District Clerk

jury inquires 544-0842
child support 544-0840

CAUSE NO. 90-CR-68-B
(WRIT NO. I)

THE STATE OF TEXAS                    IN THE 138TH DISTRICT COURT
VS
SANTOS MONTOYA                        OF CAMERON COUNTY, TEXAS

TO THE HONORABLE ROBERT GARZA :

Judge Presiding in the convicting Court in the above entitled
and numbered causes:

     I hand you herewith a copy of the Post-Conviction Habeas

Corpus  proceeding filed by  SANTOS MONTOYA   Defendant

in the above styled and numbered case, on NOVEMBER 30, 1992

     ISSUED AND GIVEN UNDER MY HAND AND SEAL OF OFFICE this

DECEMBER 1, 1992
(Date of issuance)

                         AURORA DE LA GARZA, District Clerk
                              Cameron County, Texas

                    By _____
                         AMPARO DIAZ, DEPUTY



**Cameron County District Courts**
974 E. Harrison—P.O. Box 3570
Brownsville, Texas 78523-3570
Area Code 512-544-0638

Aurora De La Garza
District Clerk

jury inquires 544-0842
child support 544-0840

**December 1, 1992**

Mr. Santos Montoya
TDCJ-ID # 544493
Alfredo D. Hughes Unit
Rt 2 Box 4400
Gatesville, Texas 76597

RE: Cause No. <u>90-CR-68-B</u>                    (WRIT NO. I)

<u>THE STATE OF TEXAS</u>
VS
<u>SANTOS MONTOYA</u>

In Re: <u>Application For Post-Conviction Writ of</u>
<u>Habeas Corpus    Filed on 11/30/92</u>

Dear Mr. Montoya:

This is to acknowledge receipt of the above captioned post-conviction petition for writ of habeas corpus. The State is afforded fifteen (15) days in which it may order a hearing. If no order has been entered within thirty-five (35) days from the filing date, the petition will be forwarded to the Court of Criminal Appeals, for their consideration.

All further correspondence should indicate the above cause number.

Sincerely,

AURORA DE LA GARZA, District Clerk

By _____
        ANYARO DIAZ, DEPUTY

cc Judge of the above named Court
   District Attorney

**37**

Thank you for the opportunity to be of service to you.



**Cameron County District Courts**
974 E. Harrison—P.O. Box 3570
Brownsville, Texas 78523-3570
Area Code 512-544-0838

jury inquires 544-0842
child support 544-0840

**Aurora De La Garza**
District Clerk

December 1, 1992

Hon. Luis V. Saenz
Cameron County District Attorney
974 E. Harrison
Brownsville, TX  78520

RE:   CAUSE NO. 90-CR-68-B
           (Writ No. I)   FILED ON: 11/30/92

      THE STATE OF TEXAS
      VS
      SANTOS MONTOYA

Dear Mr. Saenz:

Enclosed please find copy of the Petition in the above
styled and numbered Post Conviction Habeas Corpus case.

Sincerely,

AURORA DE LA GARZA, District Clerk

By _____
      AMPARO DIAZ, DEPUTY

THE STATE OF TEXAS )(
COUNTY  OF CAMERON )(

I, Luis V. Saenz, District Attorney, Cameron County,
Texas, hereby acknowledge receipt of Notice of filing the
application for writ of habeas corpus in the above
entitled and numbered cause, and waive statutory requirement
that such notice be made by certified mail.

LUIS V. SAENZ
By _____
    Assistant District Attorney

38

CAUSE NO. 90-CR-68-B

| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA | ) | 138TH JUDICIAL DISTRICT |

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

Defendant in the above cause filed his application for writ of habeas corpus on November 30, 1992. The State has now signified that it does not wish to file an answer and has waived its fifteen (15) days to answer the petition.

This Court, as the convicting Court, finds that there are no controverted, previously unresolved facts which are material to the legality of petitioner's confinement. The Clerk of the Court is therefore ordered to forward such application to the Texas Court of Criminal Appeals for their consideration.

SIGNED FOR ENTRY: December 2, 1992.

_____
ROBERT GARZA
Judge Presiding

FILED _____ O'CLOCK ___ M
AURORA DE LA GARZA, DIST. CLERK
DEC 2 1992
DEC - 2
BY _____ Maria Ochoa

12/3/92
COPIES TO:
DA'S OFFICE
MR. SANTOS MONTOYA

39

DOB: MONTOYA 01/21/61   CASTILLO 03/22/54   Form #8

# IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURORS, for the County of Cameron, State aforesaid, duly organized as such at the   JANUARY

Term, A. D. 19  90 , of the   197TH Judicial District Court   in and for

said County, upon their oaths in said Court, present that   SANTOS MONTOYA
AND JOSE HERNANDEZ CASTILLO

hereinafter called Defendants,

on or about the   8th   .day of   November   A. D One Thousand Nine

Hundred and   Eighty-nine   and anterior to the presentment of this indictment, in the County of

Cameron and State of Texas, did then and there unlawfully  attempt to commit a felony, namely MURDER

and in the course of and in furtherance of the attempt to commit said felony, the

Defendant did intentionally, knowingly, and recklessly commit an act clearly

dangerous to human life that caused the death of MARIA DE LOURDES TERAN, said act

being:  shooting a firearm in the direction of MARIA DE LOURDES TERAN,

against the peace and dignity of the State.

Foreman of the Grand Jury

90-CR-68-B

40

**THE STATE OF TEXAS**
COUNTY OF CAMERON

I, AURORA DE LA GARZA, Clerk of the District Courts of Cameron County, Texas, do hereby certify that the within and fore-going is a true and correct copy of the Original Bill of Indictment, filed in said Court on_____

_____A. D. 19____ in Cause No._____, styled the State of Texas vs.

_____

_____

_____

Given under my hand and seal of said court, at office in Brownsville, Texas, this_____day

of_____A. D. 19____.

AURORA DE LA GARZA                    , Clerk

By_____Deputy

---

No. 90-CR-608-B

**THE STATE OF TEXAS**

vs.

JOSE HERNANDEZ CASTILLO

SANTOS MONTOYA AND

**I N D I C T M E N T**

OFFENSE:

FELONY MURDER

Benjamin Euresti, Jr.
Criminal County Attorney

A TRUE BILL:

_____
Foreman of Grand Jury

Filed on JAN 2 4 1990

_____ 19

AURORA DE LA GARZA, CLERK OF
DISTRICT COURTS OF CAMERON
COUNTY, TEXAS

By_____Deputy

Amount of Bail $_____

**NAMES OF WITNESSES**

TOM MONTOYA 14770

CASTILLO 44191

41

CAUSE NO.  90-CR-68-B

| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
|---|---|---|
| VS | : | CAMERON COUNTY, TEXAS |
| SANTOS MONTOYA | ) | 138TH JUDICIAL DISTRICT |

### WAIVER OF ARRAIGNMENT

DATE:  February 7, 1990

Comes now _____ Santos Montoya _____ the defendant in
the above entitled and numbered cause together with his attorney by
appointment, Hon. _____ Glen A. Barnard _____ and in writing
in open court appears for all purposes of arraignment, announces
ready for arraignment; and hereby:

1. Acknowledges that Defendant has been duly served with a copy
   of the indictment at least two entire days prior to the pre-
   sent day; and

2. Waives the two days time allowed him by law after the ser-
   vice of a copy of the indictment herein; and

3. Waives a reading of the indictment herein; and

4. Makes no suggestion that Defendant is not indicted in his
   true name; and

5. In person, in open court, answers that he is Not Guilty and
   asks that his plea of Not Guilty be here now entered of
   record; and

6. With consent and approval of the Court waives all other for-
   malities and requirements of arraignment.

_____
Attorney for Defendant

_____ Santos Montoya _____
Defendant

The Defendant, together with his attorney, having appeared in
open Court, and the name of the Defendant as stated in the indictment
herein having been distinctly called, and the above announcement and
waiver having been made by Defendant, the same is hereby granted the
approval and consent of the Court:

Defendant's arraignment and plea of Not Guilty is here now
entered of record upon the Minutes of the Court and the cause is here
now set for trial on ____ February 26, 1990 ____, with announcements on
____ February 16, 1990 ____, at 9:00 A. M.

SIGNED FOR ENTRY: February 7, 1990.

_____
Judge Presiding

FEB  8 1990

IN THE DISTRICT COURT OF CAMERON COUNTY, TEXAS

138th JUDICIAL DISTRICT

STATE OF TEXAS

Vs.

CAUSE NUMBER
90-CR-44-B
90-CR-68-B

JOSE HERNANDEZ CASTILLO
SANTOS MONTOYA
OFFENSE:  U/C/W/L Premises  (Murder)
CAT.#    14    &    2

## J U R Y   C H O S E N

| | |
|---|---|
| 1. # 416 HERMINIO ANDRES TORRES | 7. # 555 PATRICIA MCGUFFEY |
| 2. # 687 GLORIA BENAVIDES | 8. # 563 MANUEL VILLARREAL |
| 3. # 449 NELDA ANNA MEDINA | 9. # 538 JED SCOTT HAMBY |
| 4. # 648 NARCISO JUAREZ | 10. # 68 CARMEN R. ORTIZ |
| 5. # 666 ARNOLDO GUERRERO | 11. # 388 MARIA REZA |
| 6. # 438 NANCY I GRACIA | 12. # 616 ANA MARIA SANCHEZ |

## A L T E R N A T E S

| | |
|---|---|
| 1. # 179 DEBORAH ANN BETZ | 3. # |
| 2. # 263 RICARDO HERNANDEZ | 4. # |

JUDGE PRESIDING:  HON.  ROBERT GARZA

COURT REPORTER:  GARY ALEXANDER

DATE TRIAL BEGINS:  3/19/90 at 1:30 P.M.

FILED: 12-39 P
FILED
MAR 1 9 1990
DISTRICT C
BY

DAYS JURORS REPORTED:
3 19 90
3 20 90

ATTORNEY FOR STATE ( PLAINTIFF ):
    HON. OSCAR PONCE
    HON. SCOTT SULLIVAN

ATTORNEY FOR DEFENDANT:
    HON. GLEN BARNARD
    HON. NOE D. GARZA, JR.

**43**

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                    PAGE  1

CAUSE # : **90-CR-6B-B**

**TX** vs **Santos Montoya + Jose Hernandez Castillo**

P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTRI
DATE:    MARCH 19, 1990
TIME:    9:30 A.M.

| SEQ. # | JUROR # | JUROR NAME |
|--------|---------|------------|
| 1 | 389 | ~~JUAN QUIROZ~~ X |
| 2 | 393 | ~~DESIDERIO NAJERA~~ |
| 3 | 111 | ROY CAVAZOS |
| 4 | 416 | HERMINIO ANDRES TORRES |
| 5 | 365 | ~~IGNACIA PAZ~~ ? |
| 6 | 687 | GLORIA BENAVIDES |
| 7 | 229 | ~~DELIA RODRIGUEZ~~ |
| 8 | 457 | REYNALDO E CAVAZOS |
| 9 | 128 | ~~MRS GLENCIE CLARK~~ ? |
| 10 | 449 | NELDA ANNA MEDINA |
| 11 | 150 | ~~MARTHA FUENTES~~ |
| 12 | 617 | WILLIAM T MCNUTT |
| 13 | 400 | ~~CLIFFORD LEO FRALICK~~ ? X |
| 14 | 646 | ~~OFELIA L PAREDES~~ ? X |
| 15 | 533 | ~~OSCAR DELAROSA~~ |
| 16 | 648 | NARCISO JUAREZ |
| 17 | 666 | ARNOLDO GUERRERO |
| 18 | 593 | FIDELIA GUILLEN |
| 19 | 438 | NANCY I GRACIA |
| 20 | 555 | PATRICIA MCGUFFEY |
| 21 | 450 | ~~ARNOLDO GARZA~~ ? |
| 22 | 583 | MANUEL VILLARREAL |
| 23 | 380 | MARY VELASQUEZ |
| 24 | 648 | ~~GENOVEVA~~ |



**44**

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                    PAGE   2

CAUSE # : _____

_____VS_____
P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTRI
DATE:      MARCH 19, 1990
TIME:      9:30 A.M.

| SEQ. # | JUROR # | JUROR NAME |
|--------|---------|------------|
| 25 | 538 | JED SCOTT HAMBY (?) |
| 26 | 230 | AURELIA RESENDEZ |
| 27 | 137 | RICHARD BUCHEN |
| 28 | 551 | VERNON MCNABB |
| 29 | 85 | EMMA GARCIA |
| 30 | 216 | JAMES EUBANKS |
| 31 | 116 | ROBERT RUIZ |
| 32 | 488 | JOSEPH JOHN TUCKER |
| 33 | 361 | ESPERANZA ORTEGA |
| 34 | 68 | CARMEN R ORTIZ |
| 35 | 99 | NAOMI F NATIONS |
| 36 | 388 | MARIA REZA |
| 37 | 301 | DELMA HERRERA |
| 38 | 616 | ANA MARIA SANCHEZ |
| 39 | 458 | GERALD RAYMOND RUSTAD |
| 40 | 517 | REYNALDO G GARCIA |
| 41 | 348 | SHIRLEY L LEIFHEIT |
| 42 | 610 | GUADALUPE S GARCIA |
| 43 | 239 | LOUISE HAYS |
| 44 | 302 | CATALINA GONZALES |
| 45 | 334 | LUCIO MACIAS |
| 46 | 602 | ROWENA G SONMORE |
| 47 | 333 | RENE MODESTO MORENO |
| 48 | 179 | DEBORAH ANN BETZ |

45

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                PAGE  3

CAUSE # : _____

_____VS_____
P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTI
DATE:     MARCH 19, 1990
TIME:     9:30 A.M.

| SEQ. # | JUROR # | JUROR NAME |
|--------|---------|------------|
| 49 | 83 | JOSE LUIS MARTINEZ |
| 50 | 263 | RICARDO HERNANDEZ |
| 51 | 3 | SANTIAGO J AGUILAR JR |
| 52 | 71 | DANIEL GARZA |
| 53 | 424 | MARIA DEL JESUS SAN MIGUEL |
| 54 | 366 | SUSAN M LITTLE |
| 55 | 24 | ESTHER MARY MARTINEZ |

**46**

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                          PAGE   1

CAUSE # : _____

_____VS_____

P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTRI
DATE:     MARCH 19, 1990
TIME:     9:30 A.M.


SEQ. #     JUROR #     JUROR NAME

  1         389        JUAN QUIROZ
  2         393        DESIDERIO NAJERA          Cause
  3         111        ROY CAVAZOS
  4         416        HERMINIO ANDRES TORRES    ①
  5         365        IGNACIA PAZ
  6         687        GLORIA BENAVIDES          ②
  7         229        BELIA RODRIGUEZ           Cause
  8         457        REYNALDO E CAVAZOS
  9         128        MRS GLENCIE CLARK
 10         449        NELDA ANNA MEDINA         ③
 11         150        MARTHA FUENTES            Cause
 12         617        WILLIAM T MCNUTT
 13         400        CLIFFORD LEO FRALICK
 14         646        OFELIA L PAREDES          Cause
 15         539        OSCAR DELAROSA
 16         648        NARCISO JUAREZ            ④
 17         666        ARNOLDO GUERRERO          ⑤
 18         593        FIDELIA GUILLEN
 19         438        NANCY I GRACIA            ⑥
 20         555        PATRICIA MCGUFFEY         ⑦
 21         450        ARNOLDO GARZA
 22         583        MANUEL VILLARREAL         ⑧
 23         380        MARY VELASQUEZ
 24         548        GENOVEVA MEDINA

47

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                           PAGE   3

CAUSE # : _____

_____VS_____
P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTRICT
DATE:     MARCH 19, 1990
TIME:     9:30 A.M.

| SEQ. # | JUROR # | JUROR NAME |
|--------|---------|------------|
| 49 | 83 | JOSE LUIS MARTINEZ |
| 50 | 263 | RICARDO HERNANDEZ ⑦ |
| 51 | 3 | SANTIAGO J AGUILAR JR |
| 52 | 71 | DANIEL GARZA |
| 53 | 424 | MARIA DEL JESUS SAN MIGUEL |
| 54 | 366 | SUSAN M LITTLE |
| 55 | 24 | ESTHER MARY MARTINEZ |

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                    PAGE   3

CAUSE # : _____

_____VS_____

P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTRIC'
DATE:      MARCH 19, 1990
TIME:      9:30 A.M.

| SEQ. # | JUROR # | JUROR NAME |
|--------|---------|------------|
| 49 | 83 | JOSE LUIS MARTINEZ |
| 50 | 263 | RICARDO HERNANDEZ |
| 51 | 3 | SANTIAGO J AGUILAR JR |
| 52 | 71 | DANIEL GARZA |
| 53 | 424 | MARIA DEL JESUS SAN MIGUEL |
| 54 | 366 | SUSAN M LITTLE |
| 55 | 24 | ESTHER MARY MARTINEZ |

**49**

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                     PAGE  2

CAUSE # : _____

_____VS_____
P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURT  HON. ROBERT GARZA, 138TH DISTRICT
DATE:     MARCH 19, 1990
TIME:     9:30 A.M.

| SEQ. # | JUROR # | JUROR NAME |
|--------|---------|------------|
| 25 | 538 | JED SCOTT HAMBY |
| 26 | 230 | AURELIA RESENDEZ |
| 27 | 137 | RICHARD BUCHEN |
| 28 | 551 | VERNON MCNABB |
| 29 | 85 | EMMA GARCIA |
| 30 | 216 | JAMES EUBANKS |
| 31 | 116 | ROBERT RUIZ |
| 32 | 488 | JOSEPH JOHN TUCKER |
| 33 | 361 | ESPERANZA ORTEGA |
| 34 | 68 | CARMEN R ORTIZ |
| 35 | 99 | NAOMI F NATIONS |
| 36 | 388 | MARIA REZA |
| 37 | 301 | DELMA HERRERA |
| 38 | 616 | ANA MARIA SANCHEZ |
| 39 | 458 | GERALD RAYMOND RUSTAD |
| 40 | 517 | REYNALDO G GARCIA |
| 41 | 348 | SHIRLEY L LEIFHEIT |
| 42 | 610 | GUADALUPE S GARCIA |
| 43 | 239 | LOUISE HAYS |
| 44 | 302 | CATALINA GONZALES |
| 45 | 334 | LUCIO MACIAS |
| 46 | 602 | ROWENA G SONMORE |
| 47 | 333 | RENE MODESTO MORENO |

50

```
                    CAMERON COUNTY
                    DISTRICT CLERK
                    JURY LIST                PAGE  1
```

```
N : _____
```

```
_____VS_____
GE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTRICT
    MARCH 19, 1990
    9:30 A.M.
```

| #   | JUROR # | JUROR NAME              |
|-----|---------|------------------------|
|     | 389     | JUAN QUIROZ            |
|     | 393     | ~~DESIDERIO NAJERA~~   |
|     | 111     | ROY CAVAZOS            |
|     | 416     | HERMINIO ANDRES TORRES |
|     | 365     | IGNACIA PAZ            |
| 6   | 687     | GLORIA BENAVIDES       |
| 7   | 229     | ~~DELIA RODRIGUEZ~~    |
| 8   | 457     | REYNALDO E CAVAZOS     |
| 9   | 128     | MRS GLENCIE CLARK      |
| 0   | 449     | NELDA ANNA MEDINA      |
| 11  | 150     | ~~MARTHA FUENTES~~     |
| 12  | 617     | WILLIAM T MCNUTT       |
| 13  | 400     | CLIFFORD LEO FRALICK   |
| 14  | 646     | ~~OFELIA L PAREDES~~   |
| 15  | 539     | OSCAR DELAROSA         |
| 16  | 648     | NARCISO JUAREZ         |
| 17  | 666     | ARNOLDO GUERRERO       |
| 18  | 593     | FIDELIA GUILLEN        |
| 19  | 438     | NANCY I GRACIA         |
| 20  | 555     | PATRICIA MCGUFFEY      |
| 21  | 450     | ARNOLDO GARZA          |
| 22  | 583     | MANUEL VILLARREAL      |
| 23  | 380     | MARY VELASQUEZ         |
| 24  | 548     | GENOVEVA MEDINA        |

**51**

```
                              CAMERON COUNTY
                              DISTRICT CLERK
                              JURY LIST                    PAGE   3

CAUSE # : _____

                _____VS_____
P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTRICT
DATE:     MARCH 19, 1990
TIME:     9:30 A.M.


SEQ. #    JUROR #    JUROR NAME

  49        83       JOSE LUIS MARTINEZ                    Glen Q

  50       263       RICARDO HERNANDEZ

  51         3       SANTIAGO J AGUILAR JR

  52        71       DANIEL GARZA

  53       424       MARIA DEL JESUS SAN MIGUEL

  54       366       SUSAN M LITTLE

  55        24       ESTHER MARY MARTINEZ
```

52

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                    PAGE   2

CAUSE # : _____

_____VS_____
P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA, 138TH DISTRICT
DATE:    MARCH 19, 1990
TIME:    9:30 A.M.

SEQ. #      JUROR #      JUROR NAME

25        538        JED SCOTT HAMBY
26        230        AURELIA RESENDEZ              Cause
27        137        RICHARD BUCHEN               Noe Q
28        551        VERNON MCNABB               Noe 2
29         85        EMMA GARCIA
30        216        JAMES EUBANKS               Noe 3
31        116        ROBERT RUIZ
32        488        JOSEPH JOHN TUCKER          Noe 4
33        361        ESPERANZA ORTEGA
34         68        CARMEN R ORTIZ
35         99        NAOMI F NATIONS            Noe 5
36        388        MARIA REZA
37        301        DELMA HERRERA
38        616        ANA MARIA SANCHEZ
39        158        GERALD RAYMOND RUSTAD       Cause
40        517        REYNALDO G GARCIA
41        310        SHIRLEY L LEIFHEIT         Noe 6
42        610        GUADALUPE S GARCIA
43        239        LOUISE HAYS                Noe 7
44        302        CATALINA GONZALES          Cause
45        334        LUCIO MACIAS
46        602        ROWENA G SONMORE           Cause
47        333        RENE MODESTO MORENO
48        179        DEBORAH ANN BETZ

53

CAMERON COUNTY
DISTRICT CLERK
JURY LIST                    PAGE   1

CAUSE # : _____

_____VS_____

P. JUDGE: HON. ROBERT GARZA, 138TH DISTRICT COURTHON. ROBERT GARZA / 138TH DISTRICT
DATE:      MARCH 19, 1990
TIME:      9:30 A.M.

SEQ. #    JUROR #     JUROR NAME

  1        389        JUAN QUIROZ

  2        393        DESIDERIO NAJERA           Cause

  3        111        ROY CAVAZOS                 Ø

  4        416        HERMINIO ANDRES TORRES

  5        365        IGNACIA PAZ                 (2)

  6        687        GLORIA BENAVIDES

  7        229        BELIA RODRIGUEZ            Cause

  8        457        REYNALDO E CAVAZOS         (2)

  9        128        MRS GLENCIE CLARK

 10        449        NELDA ANNA MEDINA

 11        150        MARTHA FUENTES             Cause

 12        617        WILLIAM T MCNUTT           (4)

 13        400        CLIFFORD LEO FRALICK

 14        640        OFELIA L PAREDES           Cause

 15        539        OSCAR DELAROSA

 16        648        NARCISO JUAREZ

 17        666        ARNOLDO GUERRERO

 18        593        FIDELIA GUILLEN            (5)

 19        438        NANCY I GRACIA

 20        555        PATRICIA MCGUFFEY

 21        450        ARNOLDO GARZA

 22        583        MANUEL VILLARREAL

 23        380        MARY VELASQUEZ             Ø

 24        548        GENOVEVA MEDINA

54

Filed
10:45
3/26/90

We have reached a verdict.

Patricia P. McGuffey
3-26-90
10:45 a.m.

We have reached a ~~unanimos~~ unanimous Verdict
on punishment.

Patricia P. McGuffey

3-26-90

3:45 p.m.

LADIES AND GENTLMEN OF THE JURY:

Do not concern yourselves with this matter.

_____
JUDGE PRESIDING

TIME: 3:15 Pm

DATE: 3.26-90

*approved*

57

Exhibit #1

KELSEY

STATE BAR OF TEXAS MAR 28 2002
GRIEVANCE FORM

STATE BAR OF TEXAS
HOUSTON REGIONAL OFFICE

**PART A: INFORMATION ABOUT YOU - PLEASE KEEP CURRENT**

It is **necessary** in order to timely process your grievance that all information
be **typed** or **printed legibly**. IF BLANKS ARE LEFT ON THIS FORM OR ALL QUESTIONS
ARE NOT ANSWERED THE PROCESSING OF YOUR GRIEVANCE MAY BE DELAYED.

1. NAME: ___Montoya_____Santos_____
        LAST          FIRST      MIDDLE    MAIDEN

2. MAILING ADDRESS: ___Ellis Unit_____

   CITY: Huntsville, STATE: TX__ ZIP: 77343___ PHONE: (___)_____

3. EMPLOYER: (none) Offender incarcerated_____

4. WORK ADDRESS: _____

   WORK PHONE: (___)_____

5. MAY WE CONTACT YOU AT YOUR EMPLOYMENT? YES_____ NO_____

6. DRIVERS LICENSE #_____ DATE OF BIRTH 3-31-61__

7. NAME, ADDRESS AND PHONE NUMBER of person not in your
   household who can always reach you. NAME:_____

   ADDRESS:_____ PHONE:(___)_____

8. Are you represented by an attorney now? If so, please
   provide:
   NAME:_____No_____

   ADDRESS:_____ PHONE:(___)_____

9. How did you hear about the grievance process: (Check One)

   _____ Attorney in Complaint    _____ 1-800#    _____ Another Attorney
   _____ Brochure in Courthouse   _____ Phone Book   X  Other

10. Have you contacted the Client-Attorney Assistance Program?
    YES_____ NO _x___

11. Do you understand and write in the English language? Y / N
    If no, what is your primary language?_____Yes/English_____
    Who helped you prepare this form?_____
    Will they be available to translate future correspondence
    during this process? ___Yes ___No

12. **Please let us know as soon as possible if you have a special
    need or disability that will require a reasonable
    accommodation, and let us know what accommodation you are
    requesting.**

IF ANY OF THE ABOVE INFORMATION SHOULD CHANGE IT IS NECESSARY THAT YOU
ADVISE THE STATE BAR OF TEXAS IN WRITING IMMEDIATELY. PLEASE DO NOT WRITE
ON THE BACK OF ANY PAGES OF THIS COMPLAINT FORM. USE ADDITIONAL PAPER IF
NECESSARY. **PLEASE WRITE ON ONE SIDE ONLY.**

REV 1/1/01

## PART B: INFORMATION ABOUT ATTORNEY

**COMPLAINTS ARE NOT ACCEPTED AGAINST LAW FIRMS AND MUST SPECIFICALLY NAME THE ATTORNEY AGAINST WHOM YOU ARE COMPLAINING. A SEPARATE GRIEVANCE FORM MUST BE COMPLETED FOR EACH ATTORNEY AGAINST WHOM YOU ARE COMPLAINING.**

1.  ATTORNEY NAME: __Walter J. Pink__

2.  ADDRESS: __2646 South Loop, West #195__

    CITY: __Houston__        STATE: __TX__    ZIP: __77054__

    OFFICE PHONE: ( 713) __664-6651__    HOME PHONE: (    ) _____

3.  Date attorney hired or appointed?: __12-31-96__

4.  What did you hire the attorney to do?: __28 U.S.C.S. 2254__

    _____.

5.  What was your fee arrangement with the attorney?: _____

    __See attached_____.

    (Include copies of checks and/or receipts.)

6.  Did you sign a Contract of Employment or Power of Attorney?

    Yes _x_  No____  If yes, include <u>copies</u> with your grievance.

    See letters attached

7.  Did the attorney or someone on his behalf contact you to see if he or she could represent you?  YES ____x____    NO _____

    **IF YOU ANSWERED YES TO QUESTION 7 PLEASE ANSWER THE FOLLOWING THREE QUESTIONS:**

    a.    Did you request the attorney to contact you? YES _x_ NO__

    b.    How was the contact made? PHONE__   IN-PERSON_x_ MAIL _x_

    c.    Was the contact made by the attorney _x_ or another person _x_?

8.  Where did the activity you are complaining about occur?:

    County: __Harris__        City: __Houston__

REV 1/1/01

**IF BLANKS ARE LEFT ON THIS FORM OR ALL QUESTIONS ARE NOT ANSWERED THE PROCESSING OF YOUR GRIEVANCE MAY BE DELAYED.**

**PLEASE BE ADVISED THAT RULE 2.15 OF THE TEXAS DISCIPLINARY RULES OF PROCEDURE REQUIRE THAT ALL INFORMATION COMING TO THE ATTENTION OF THE INVESTIGATORY PANEL CAN BE MADE PUBLIC IF ANY SANCTION IS ISSUED OTHER THAN A PRIVATE REPRIMAND.**

---

### PART C: INFORMATION ABOUT YOUR GRIEVANCE

---

Explain in detail why you think this attorney has done something improper or has failed to do something which should have been done. Include the names, addresses, and telephone numbers of all persons who know something about your grievance. Attach copies of all court papers, canceled checks or receipts showing the payment of attorney's fees, and other documents relevant to your grievance. Attach additional sheets of paper if necessary. **(DO NOT SEND ORIGINALS, UNLESS REQUESTED.)**

**ALSO, PLEASE BE ADVISED THAT A COPY OF YOUR GRIEVANCE MAY BE FORWARDED TO THE ATTORNEY NAMED IN YOUR GRIEVANCE.**

MR. Pink was retained by my family and I to do a federal post conviction under a section 28 U.S.C.2254 sometime during the late part of 1996. Numerous of reasons were give as to why the writ was not done. Such excuses ranged from having to do an indepth research, illness, federal court docket call of cases with priorities, lossing the trial transcript, to lossing the research paralegal,etc.   I sent Mr. Pink my only copy of the trial transcripts to replace the ones he lost and that wasn't good enough because he required a certified copy and needed an additional five thousand dollars for a new set, the money was made available to him, although the fault of losing the trial transcript was his,or his office. Mr. Pink deceived us from the beginning because he never informed us about being time-barred nor filed before becoming time barred. The new evidence he was looking for the trail transcripts to raise on the federal writ, there is no such thing as NEW EVIDENCE obtainable through the records! In addition, he

REV 1/1/01

alleged that what was raised in state court could not be presented on federal habeas corpus, thus, the need to find new evidence on the transcript, a bold face lie because issues presented on a state writ and on pdr can be presented for habeas review in federal court.

I have made every effort to get Mr. Pink to at least

return the trial transcript so I can file a 2254 writ on my own, yet he still refuses to do so.

Mr. Pink beat us out of our money, trial transcript and

allowed us to become time barred.

## PART D: ATTORNEY-CLIENT PRIVILEGE WAIVER

I hereby expressly waive any attorney-client privilege as to the attorney, the subject of this grievance, and authorize such attorney to reveal any information in the professional relationship to the State Bar of Texas.

I also understand this confidential process extends civil immunity to all communications between myself and the State Bar Staff and Grievance Committee. I understand this immunity does not extend to communications I may have with anyone else.

DATE OF SIGNING: _March 18, 2002_

SIGNATURE _Santos Montoyo_ #544493

RETURN FORM TO: State Bar of Texas
Office of the Chief Disciplinary Counsel
Houston Regional Office
1111 Fannin, Suite 1370
Houston, TX 77002

REV 1/1/01

H0040212920   Santos Montoya #544493 - Walter J Pink



FILED

By:_____

MAY 2 9 2002

Board of Disciplinary Appeals
appointed by the
Supreme Court of Texas

THE BOARD OF DISCIPLINARY APPEALS
APPOINTED BY THE
SUPREME COURT OF TEXAS

## YOU MAY APPEAL THE STATE BAR
## SCREENING DECISION ON THIS GRIEVANCE

- **Mail or fax this form within 30 days to:**

  **Board of Disciplinary Appeals**
  **P.O. Box 12426**
  **Austin, Texas 78711**
  **512-475-1578**
  **FAX NO: 512-475-0802**

- **Sign this form below.**
- **Do not send any additional information to the Board.**
- **We will obtain a copy of the complaint from the State Bar of Texas.**
- **You will usually receive a decision from the Board in 3 to 4 weeks.**

  *Thank you for participating in this process.*

---

I wish to appeal the screening decision for the above matter to the Board of Disciplinary Appeals.

Date: 5 - 23 - 02

_____
(Signature)

Walter J. Pink
_____
(Printed Name)

Check one:      Complainant _____
                Respondent _____ ✓

CF7-40.PRI

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
0162292972

June 11, 2002

Santos Montoya #544493
Ellis Unit
Huntsville, Texas  77343

Re:    H0040212920   Santos Montoya #544493 - Walter J Pink

Dear Mr. Montoya:

The above-referenced case has been set for an investigatory hearing at 1:40 pm on September 23, 2002 at 1111 Fannin, Suite 1370, Houston, Texas.

This is an invitation to appear at the hearing.  Please note that the inability or failure to appear does not abate the proceeding.  If you intend on presenting testimony to the investigatory panel, please plan to be present.

If there is any additional information regarding this Complaint, please furnish it **immediately**. The investigatory panel may receive such evidence as the panel in its discretion finds appropriate for purposes of determining Just Cause.  Failure to provide any additional information to the panel will not automatically warrant a continuance or reconsideration of this matter.

Enclosed are the names of the District Grievance Committee members to which your case has been assigned.  The panel members assigned are indicated on the list. Pursuant to Rule 2.07, one or more replacement members may be appointed to this panel; therefore, you should consider the entire list for purposes of disqualification.  If you wish to seek to disqualify a member, please do so in writing within ten (10) days of receipt of this notice.  Your request should list specific grounds for seeking the disqualification.  Pursuant to the Rule 2.06, a panel member is disqualified if a district court judge would, under similar circumstances, be disqualified.[1]

**1111 Fannin, Suite 1370, Houston, Texas 77002, (713) 759-6931, (713) 752-2158 (FAX)**

Pursuant to Rule 2.15 of the Texas Rules of Disciplinary Procedure, all information brought to the attention of the investigatory panel must remain confidential and may not be disclosed to any person or entity (except the Chief Disciplinary Counsel) unless disclosure is ordered by the Court. It is not a breach of confidentiality to consult with an attorney or to interview witnesses.

In addition, members of the District Grievance Committees, members of the Commission for Lawyer Discipline, members of the Board of Disciplinary Appeals, officers and directors of the State Bar, counsel, and staff are immune from suit for any conduct in the course of their official duties.

Be advised that this hearing may be videotaped or transcribed by a certified court reporter.

Sincerely,

Jack Cooper
Senior Investigator
Office of the Chief Disciplinary Counsel
State Bar of Texas
pdg
Enclosures:    **List of Specific Panel Assigned**
**List of All Other Panel Members**

[1] Texas Rules of Civil Procedure
Rule 18b. Grounds for Disqualification and Recusal of Judges

    (1) Disqualification. Judges shall disqualify themselves in all proceedings in which:
    (a)    they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter; or
    (b)    they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy; or
    (c)    either of the parties may be related to them by affinity or consanguinity within the third degree.

CF3-1A.PRI

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

June 13, 2002

Santos Montoya #544493
Ellis Unit
Huntsville, Texas  77343

RE:    H0040212920  Santos Montoya #544493 - Walter J Pink

Dear Mr. Montoya:

The Respondent attorney against whom you filed the above-referenced Complaint has appealed the classification decision to the Board of Disciplinary Appeals.  The Board of Disciplinary Appeals will advise you of its decision and any further action.

Sincerely,

Jeannette M. Duer
Assistant Disciplinary Counsel
Office of the Chief Disciplinary Counsel
State Bar of Texas
pdg
CF7-3.FRI

**1111 Fannin, Suite 1370, Houston, Texas 77002, (713) 759-6931, (713) 752-2158 (FAX)**

CHAIRMAN
   GAINES WEST

VICE CHAIRMAN
   STANLEY M. SERWATKA

MEMBERS
   S. JACK BALAGIA, JR.
   FAYE M. BRACEY
   JOSEPHINE V. DYE
   ROBERT FLOWERS
   JAMES S. FROST
   WILLIAM D. GREENHILL
   KATHY J. OWEN
   BILL TURNER
   KAREN L. WATKINS
   J. MICHAEL WATSON



EXECUTIVE DIRECTOR/GENERAL COUNSEL
   CHRISTINE E. MCKEEMAN

DEPUTY DIRECTOR/COUNSEL
   GAYLE RILEY VICKERS

# THE BOARD OF DISCIPLINARY APPEALS
## APPOINTED BY THE SUPREME COURT OF TEXAS

POST OFFICE BOX 12426        AUSTIN, TEXAS 78711

TEL: (512) 475-1578

FAX: (512) 475-0802

June 27, 2002

Walter J. Pink
2646 S. Loop West, Ste. #195
Houston, TX 77054-2640

RE:    Disposition of Appeal Notice
       Santos Montoya v. Walter J. Pink
       H0040212920; BODA Case No. 26149

Dear Mr. Pink:

The Supreme Court of Texas Board of Disciplinary Appeals met on June 26, 2002, to consider the appeal of Santos Montoya v. Walter J. Pink, H0040212920. After reviewing the original complaint filed by Santos Montoya, the Board affirms the decision of the State Bar Chief Disciplinary Counsel and denies the Respondent's appeal.

The complaint will continue to be processed in accordance with the Texas Rules of Disciplinary Procedure. Each party will be notified of each step as the process continues. If you have any questions concerning the grievance committee hearing, you should contact the Chief Disciplinary Counsel office handling your complaint.

Very truly yours,

Christine E. McKeeman
Executive Director/General Counsel

CEM/bb

cc:    Santos Montoya

       Jeanette Duer
       1111 Fannin, Suite 1370
       Houston, TX 77002

Santos Montoya
TDCJ/ID# 544493
Ellis Unit
Huntsville,Texas 77343

July 16, 2002



The Board of Disciplinary Appeals
P.O.Box 12426, Capitol Station
Austin,Texas 78711-2487

In Re: Santos Montoya v. Walter J. Pink
       H0040212920; BODA Case No. 26149

     Please find enclosed a copy of a certified letter number
Z-252-574-092 sent to Mr. Pink regarding the federal writ of
habeas  corpus  he was to file and also stating that the
$15,000.00 had been paid in full as of July 1999.

     Please make the letter as an additional exhibit to the
complaint filed against Mr. Pink.  In addition, the letter
also shows three other witnesses, i.e. Veronica and Ricardo
Montoya and Gloria Montoya who were present during the
promise made by Mr. Pink to file by mid October of 1999. As
of this date, the federal writ has not been filed.

     All we are asking for is that the $15,000.00 and the
trial transcript from the Court Reporter Notes to be
returned to us so I may continue with my case.
Thank you.
Sincerely,


Santos Montoya
P.S. If this is sent to the wrong office please forward the
same to the correct office.

CHAIRMAN
  GAINES WEST

VICE CHAIRMAN
  STANLEY M. SERWATKA

MEMBERS
  S. JACK BALAGIA, JR.
  FAYE M. BRACEY
  JOSEPHINE V. DYE
  ROBERT FLOWERS
  JAMES S. FROST
  WILLIAM D. GREENHILL
  KATHY J. OWEN
  BILL TURNER
  KAREN L. WATKINS
  J. MICHAEL WATSON

EXECUTIVE DIRECTOR/GENERAL COUNSEL
  CHRISTINE E. MCKEEMAN

DEPUTY DIRECTOR/COUNSEL
  GAYLE RILEY VICKERS



# THE BOARD OF DISCIPLINARY APPEALS
## APPOINTED BY THE SUPREME COURT OF TEXAS

POST OFFICE BOX 12426    AUSTIN, TEXAS 78711

TEL: (512) 475-1578

FAX: (512) 475-0802

July 23, 2002

Santos Montoya
#544493, Ellis Unit
Huntsville, TX 77343

RE:    H0040212920; Santos Montoya v. Walter J. Pink; BODA #26149

Dear Mr. Montoya:

We have received your additional information for the above referenced matter. According to the *Texas Rules of Disciplinary Procedure*, we cannot accept or consider any additional information.  It must be sent to the Houston Chief Disciplinary Counsel Office.

We are forward you information to Houston at the address shown below.  If you have any further questions or additional information they should be sent directly to Houston.

Sincerely,

Christine E. McKeeman
Executive Director/General Counsel

CEM/bb

cc w/ enclosures:  Chief Disciplinary Counsel's Office
State Bar of Texas
1111 Fannin, Ste. 1370
Houston, TX 77002

# STATE BAR OF TEXAS



Office of the Chief Disciplinary Counsel
Client Security Fund

October 1, 2002                                PERSONAL AND CONFIDENTIAL

Mr. Santos Montoya
# 544493
Ellis Unit
Huntsville, TX 77343

Re:    Client Security Fund # 192/10/02
         Attorney: Walter J. Pink

Dear Mr. Montoya:

Your application for relief to the Client Security Fund, as referenced above, has been received. As soon as an investigation and determination by the Client Security Fund Committee is complete, you will be advised as to the decision of that Committee.

The processing of your application may take some time to reach a final disposition as it is necessary to resolve any related and pending grievance matter before the Client Security Fund Committee will consider the application. Please keep us informed of your current address and phone number.

**If you have not already done so, please provide us with a copy of the grievance you filed against this attorney plus any proof of loss, i.e. copies of payment, if checks, both front and back, receipts, etc.**

Please indicate the above-referenced Client Security Fund number on any correspondence to our office and address all mail to: Client Security Fund, ATTN: Ray Bravenec, Investigator, State Bar of Texas, P.O. Box 12487, Capitol Station, Austin, Texas 78711-2487.

Sincerely,

*Ray Bravenec*

Ray Bravenec
Investigator

Esta carta la recibí ahora viernes en la mañana pues me a andado siguiendo porque traí fecha del Oct. 2, 2002. Mi hermana ya mando las copias de los recibos, cheques y cartas que tenía del abogado junt con la carta notarizada que le mandamos. Pero copia del Gricavance no tengo y aquí te mando la carta junto con esta otra que tenía antes ~~con~~ ~~con~~ con el barrendero. ~~con~~ Sabes apenas llegue el martes en la mañana.

10-08-02

C/O: Mr. Ray Bravenac, Investigator
Office of the Chief Disciplinary Counsel
Client Security Fund
P. O. Box 12487
Capitol Station
Austin, Texas 78711

    RE: Client Security Fund #192/10/02 – Attorney Walter J. Pink
       H0040212920; Santos Montoya v. Walter J, Pink #26149

Dear Mr. Bravenac,

    Please be advised that I have moved from the Ellis Unit. I now reside at the below listed address. If there has been a decision by the State Bar please forward any decision to me.

    I hope that all the necessary documents have been received by your office concerning this investigation and resolution of this dispute.

    If this office needs any other document to verify my claim, please contact me and let me know. I will from time to time let you know that I reside here until further change.

    Thank you for your time and assistance into this matter.

                              Respectfully Submitted,

                                 544493
                        MR. SANTOS MONTOYA--CLIENT
                           April 27, 2003

### CERTIFICATE OF SERVICE

    I, hereby certify that a true and correct copy of this letter has been forwarded to:

Client Security Fund
ATTN. Ray Bravenac, Investigator
State Bar of Texas
P. O. Box 12487
Capitol Station
Austin, Texas 78711

by placing in the United States Mail on the 27th day of April, 2003.

                                 544493
                        MR. SANTOS MONTOYA
                        TDCJ-ID #544493
                        EASTHAM UNIT
                        P. O. BOX 16  /  FM 230
                        LOVELADY, TEXAS 75851

CC:

# STATE BAR OF TEXAS



Office of the Chief Disciplinary Counsel

May 5, 2003

Santos Montoya
TDCJ-ID#544493
Eastham Unit
P.O. Box 16 / FM230
Lovelady, TX  75851

Re:  Client Security Fund #192/10/02
     Attorney:  Walter J. Pink

Dear Mr. Montoya:

Your letter postmarked April 30, 2003 advising of your change of
address was received.

The Client Security Fund Committee reviewed your application
favorably at their meeting on April 2, 2003.  After May 31, 2003,
the end of the fiscal year of the State Bar of Texas, the
Committee will know how much money is available to pay approved
applications for relief.  You will receive a document to sign
before a notary and return to us.

Please send your social security number and instructions for
depositing funds into your inmate trust account.  No funds can be
paid without the social security number.

Sincerely,

Ray Bravenec, Investigator
Office of the Chief Disciplinary Counsel


*This is my social security number 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*

# STATE BAR OF TEXAS



Office of the Chief Disciplinary Counsel
    Client Security Fund

June 30, 2003

Santos Montoya
TDCJ # 544493, Eastham Unit
P.O. Box 16 / FM 230
Lovelady, TX  75851

Re: Client Security Fund Application # 192/10/02

Dear Mr. Montoya:

The Client Security Fund Committee has recently completed their review of your application for relief.  The Committee has approved a payment to you in the amount of $ 2,815.00.

Before a check can be issued to you in that amount, it will be necessary for you to execute, and return to this office, the enclosed "Assignment of Applicant Rights and Subrogation Agreement."  Upon receipt of the executed agreement, your check will be mailed to you.

Additionally, please fill out and return the form, along with the Assignment, which indicates whether or not you have received any restitution to date.

While payments from the Fund are a matter of grace, rather than right, the State Bar of Texas regrets that you have had difficulty with a Texas attorney.  Please contact us if you have any questions about the Fund procedures or the enclosed Assignment.

Sincerely,

Dawn Miller
Chief Disciplinary Counsel

/enclosure

P.O. BOX 12487, CAPITOL STATION, AUSTIN, TEXAS 78711-2487, 512/453-5535; FAX: 512/453-6667

11



# STATE BAR OF TEXAS



Office of the Chief Disciplinary Counsel
Client Security Fund

July 22, 2003                    CMRRR # 7003 0500 0004 8791 6239

Santos Montoya
TDCJ # 544493, Eastham Unit
P.O. Box 16 / FM 230
Lovelady, TX 75851

Re:    Client Security Fund Application # 192/10/02

Dear Mr. Montoya:

Thank you for your prompt response in returning your subrogation agreement. The State Bar of Texas is pleased to be able to give you the enclosed check for $2,815.00.

Please be advised that if your client security payment is Six Hundred ($600.00) Dollars or higher, you will receive a 1099-Miscellaneous form this year for these monies. Based on IRS rules and their definition of 1099 Miscellaneous Income, we are required to report this money to the IRS in box 3 of the 1099 Misc. and send the form to you. If you have any questions about this and the treatment of these monies, please discuss it with your tax professional.

Again, we hope that this will be of some help to you.

Sincerely,

Dawn Miller
Chief Disciplinary Counsel

/enclosure

P.O. BOX 12487, CAPITOL STATION, AUSTIN, TEXAS 78711-2487, 512/453-5535; FAX: 512/453-6667

12

## ASSIGNMENT OF APPLICANT RIGHTS AND SUBROGATION AGREEMENT

I, Santos Montoya, agree that upon receipt of $2,815.00 from the State Bar of Texas Client's

Security Fund, in conjunction with my application for relief #192/10/02, to abide by the following

terms and conditions:

a.   That the State Bar of Texas shall have the right to recover from any liable person or firm an amount equal that paid by the Fund to the Applicant and should recovery be made from Walter J. Pink, the first monies recovered will belong to the State Bar of Texas until they have recovered the $2,815.00 from the Fund.  Santos Montoya will be entitled to all amounts received in excess of $2,815.00.

     Applicant hereby assigns and conveys to the State Bar of Texas such right of recovery as well as the right to pursue in the name of Applicant any claim or suit against any firm or person who the State Bar of Texas may consider liable.

b.   That Applicant shall cooperate fully with the State Bar of Texas in any attempt by the State Bar of Texas to recover from any firm, person, or organization who the State Bar of Texas may in its discretion deem liable for repayment to Applicant and/or the Fund.

     Cooperation as above used shall mean among other things, the giving of sworn testimony, orally or in writing, at such times and places as the State Bar may request.

c.   That Applicant shall execute any instruments which the State Bar of Texas may in its discretion deem necessary to enable it to pursue any claim, demand, or suit against any liable person or firm.

d.   That Applicant shall do nothing to hamper, destroy, or diminish any recovery by State Bar of Texas against any liable firm, person, or organization.

EXECUTED ON _07-03-03_    at _P.O.Box 16 Lovelady, Texas 75851_

_____ #544493
Applicant

SWORN TO AND SUBSCRIBED BEFORE ME on the _3rd_ day of _July_, 2003.

_____
Notary Public in and for the
State of Texas

_6-10-2004_                _Reagan Duncan_
My Commission Expires        Printed Name of Notary



REAGAN DUNCAN
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 06-10-2004

<u>MEMORANDUM</u>

TO:        Chief Disciplinary Counsel's Office
           State Bar of Texas

FROM:      Santos Montoya

RE:        Client Security Fund Application # 192/10/02

DATE:      _____*July 3, 2003*_____

**PLEASE MARK ONE:**

*( )   Please be advised that I have received the following restitution from attorney Walter J. Pink

regarding my application to the Client Security Fund:

Amount: $_____     date: _____

Amount: $_____     date: _____

*(✓)   Please be advised that I have **not** received any restitution from attorney Walter J. Pink

regarding my application to the Client Security Fund.

___*July 3, 2003*___              *Santos Montoya* #544493
DATE                              SIGNATURE

**REQUIRED:  SOCIAL SECURITY NO.** _454- 25- 2816_

*NOTE:*    *RESTITUTION MEANS RECOVERY OF FUNDS FROM ANY SOURCE
           INCLUDING THE ATTORNEY, HIS HEIRS AND ASSIGNS, BONDING AND
           INSURANCE COMPANIES, OR ANY OTHER 3RD PARTY SOURCE.*

October 21, 2003

To: Board of Disciplinary Appeals
    P.O. Box 12426, Capitol Station
    Austin, Texas · 78711-2487

From: Santos Montoya
     TDCJ-CID No. 544493
     Eastham Unit; P.O. Box 16
     Lovelady, Texas  75851-0016

Re: H0040212920

BODA Case No. 26149

Dear Board Members:

    This is a letter of inquiry as to the status of the above case. Is this
Board going to file for the remainder of money owed me against the Firm, or
Estate of Mr. Walter Pink to recover my loses? I would like to be kept up to
date on what avenues are being pursued; because before the two (2) year
statute of limitations is passed, I will have to file myself in court, unless
you plan on doing this on my behalf, as our agreement indicates.

                    Respectfully,

                    Santos Montoya

P.S. Also, please send me a copy of the first letter I wrote, and the
grievance that I filed. I may need these items to show that the time
limitations should be tolled from the filing date until resolution in 2003. I
wrote the firm Mr. Pink was with requesting my legal material, but they have
not replied.



CHAIRMAN
S. JACK BALAGIA, JR.

VICE CHAIRMAN
JAMES S. FROST

MEMBERS
PAUL D. CLOTE
YOLANDA DE LEÓN
ROBERT FLOWERS
JOSE I. GONZALEZ-FALLA
WILLIAM D. GREENHILL
CLEMENT H. OSIMETHA
KATHY J. OWEN
THOMAS E. PITTS
CAROL E. PRATER
KAREN L. WATKINS

EXECUTIVE DIRECTOR & GENERAL COUNSEL
CHRISTINE E. MCKEEMAN

DEPUTY DIRECTOR/COUNSEL
GAYLE RILEY VICKERS

# THE BOARD OF DISCIPLINARY APPEALS
### APPOINTED BY THE SUPREME COURT OF TEXAS

November 6, 2003

Santos Montoya
TDCJ-CID No. 544493
Eastham Unit
P.O. Box 16
Lovelady, Texas 75851-0016

> RE:     Correspondence Received October 26, 2003
>         BODA Appeal No. 26149

Dear Mr. Montoya:

It appears from your letter to the Board that you are attempting to recover money from Mr. Pink's Estate and/or from the firm with whom Mr. Pink was employed. The Board of Disciplinary Appeals only reviews appeals from grievance screening decisions in this type of matter. According to our records, the Board denied Mr. Pink's appeal in June 2002. After that point, any further action on the case was handled by the State Bar Chief Disciplinary Counsel's office. Therefore, you should address your questions to the Houston office of the State Bar. You may also inquire whether you qualify for assistance from the State Bar's Client Security Fund. That fund has a toll-free telephone number at 877-953-5535, ext. 106.

Ir is not clear from your letter what you expect the Board or the State Bar to do, but neither the State Bar nor the Board can assist you with a private civil matter.

We have enclosed a copy of your complaint as sent to us by the Chief Disciplinary Counsel's office. The CDC may have additional file material.

Sincerely,

Christine E. McKeeman
Executive Director & General Counsel

Enclosure

POST OFFICE BOX 12426    AUSTIN, TEXAS 78711    TEL: (512) 475-1578    FAX: (512) 475-0802    WWW.TXBODA.ORG

October 21, 2003

To: State Bar of Texas
    1111 Fannin, Suite 1370
    Houston, Texas  77002

From: Santos Montoya
      TDCJ-CID No. 544493
      Eastham Unit; P.O. Box 16
      Lovelady, Texas  75851-0016

Re: H0040212920

BODA Case No. 26149

Dear State Bar:

In reference to the above, I was successful in my grievance against the late attorney Mr. Walter J. Pink. Due to the actions of Mr. Pink I must now show extraordinary circumstances beyond my control to have my 2254 accepted by the federal courts because of the time limitations which have long passed.

I believe my first letter to you along with the grievance I filed would help me overcome the tolling provisions. For this reason would you please send me a copy of my first letter to you along with a copy of my grievance.

Thank you for your time and assistance in this matter.

Respectfully,

Santos Montoya #544493

Oct. 22, 2003

cc:file

# STATE BAR OF TEXAS



**Office of the Chief Disciplinary Counsel**

November 24, 2004

VIA: Regular Mail

Santos Montoya#544493
P.O. Box 16
Lovelady, Texas 75851-0016

Re:  H0040212920  Santos Montoya – Walter Pink

Dear Mr. Montoya:

Thank you for your letter of November 17, 2003. A review of our records here in Houston reveal that the above captioned complaint that you filed against Mr. Pink was not pursued to it's conclusion due to Mr. Pink's untimely death.

I am enclosing a Client-Security Fund Application for you to review and to investigate the eligibility requirements.

Sincerely,

Joe F. Rabago Sr.
Senior Investigator
Office of the Chief Disciplinary Counsel
State Bar of Texas

Enclosure:  (1)
JFR

**1111 Fannin, Suite 1370, Houston, Texas 77002, (713)759-6931**

Exhibit #3

# Walter J. Pink & Assoc., Inc.

2646 South Loop West, #195 ● Houston, Texas 77054 ● (713) 664-6651 ● Fax (713) 664-3242

March 3, 1997

Santos Montoya
#544493
A.H. Hughes Unit
Rt. 2, Box 4400
Gatesville, Texas 76597

Re: Federal Writ of Habeas Corpus

Dear Mr. Montoya:

I hope this letter finds you well. I am Mr. Pink's appellate paralegal and I will be assisting Mr. Pink with the research and preparation of your federal application for writ of habeas corpus *if* after reading all the documentation that you have provided us we can find any meritorious issues. We have just scratched the surface of the statement of facts so it is too soon to tell if there is any grounds on which to overturn your conviction. I have worked with Mr. Pink for the last four (4) plus years and we have had a number of convictions reversed and if there is any meritorious claim in your documentation, we will do our best to get the relief that is due you, but there are no guarantees, in law, as you should know by now. However, Mr. Pink will provide you with competent representation.

Mr. Pink asked me to notify you that the fee for preparing and filing a federal application for writ of habeas corpus is **fifteen thousand dollars ($15,000)**. A payment plan was not discussed but one can be arranged through Mr. Pink upon your response to this letter. Again, we will have to finish reading the statement of facts and the other documents in order to let you know if there exists any meritorious grounds on which to overturn your conviction.

In regards to the two (2) questions you wanted answered in your letter dated November 2, 1996, Mr. Pink will answer those and I will provide you with an answer in the next letter.

Mr. Pink would appreciate a response to this letter as soon as you are able

Santos Montoya
Page 2
March 3, 1997

to get one to him. If you have any questions or need more information regarding your case, please include them in that response or anytime you wish to write. Thank you for considering us to handle your post conviction litigation.

Sincerely,

Philip Auster
Paralegal

cc: file

*Walter J. Pink & Associates, Inc.*
*Walter J. Pink*
*Attorney at Law*
*2646 South Loop West, Suite #195*
*Houston, Texas 77054*
*(713) 664-6651 or -6652*
*FAX: (713) 664-3242*

**May 7, 1997**

**Mr. Santos Montoya #544493**
**TDCJ-ID # 544493**
**Rt. 2, Box 440**
**A.H. Unit**
**Gatesville, Texas 76597**

Re: Response to your letter dated April 19, 1997

Dear Mr. Montoya:

I received your letter(s) dated April 19, 1997 and September 1, 1995(?) . The issues you brought out will be considered with great consideration . If, for some reason I feel that any one of them are without merit or cannot be considered for habeas review, I will bring them to your attention and explain the reason why.   I am relieved that you understand the time it will take to adequately review your file and research the issues we decide to raise.

In addition to responding to your recent letter of April 19th, I would like to mention that my paralegal and I are still in the reading of the record and note taking in preparation of you r application for writ of habeas corpus.  I know you wish I did not have any other clients so that I could spend more time on your case but unfortunately, that is not the case.

Thank you for your time in bringing those issues to my attention and all other input you have had or will have in the future.

I pray that you are in good health.  I hope the next communication with you I

will have something more definite in regards to your habeas corpus.  IN the meantime, take care and may God be with you!

Sincerely yours,

*Walter J. Pink*

Walter J. Pink
Attorney at Law
WJP/pja


cc: file



# Walter J. Pink & Assoc., Inc.

2646 South Loop West, #195 ● Houston, Texas 77054 ● (713) 664-6651 ● Fax: (713) 664-3242

June 27, 1997

Santos Montoya
#544493
A.H. Hughes Unit
Rt. 2, Box 4400
Gatesville, Texas 76597

Re:  Federal Writ of Habeas Corpus

Dear Mr. Montoya:

I hope this letter finds you in good health.  I just wanted to touch base with you and let you know that you are not forgotten.  I would also like to advise you that at this time, an estimated finish date on your application for writ of habeas corpus is going to be the end of December 1997.  It could be sooner or it could be a few months longer.

I know I told you that I would submit the answers to your 2 questions in the next letter and unfortunately I am not in a position to view your file at this time so that I might accomplish that task, so please allow me to postpone the answers to those questions until I am in a position to see your file.

I will attempt to send you a more detailed letter within ten (10) days regarding your case; today I just wanted to let you know we haven't forgotten you...everyone likes hearing their name at mail call.

Santos Montoya
Page 2
June 27, 1997


In the meantime, take care and write if you have any questions.

Sincerely,

Philip Auster
Paralegal

cc: file

# WALTER J. PINK & ASSOC., INC.

████████████████████████

2646 South Loop West #1950 Houston, Texas 77054 (713)664-6651 Fax:(713)664-3242

January 08, 1998

**Mr. Santos Montoya**
**TDCJ-ID No. 544493**
**A.H. Hughes Unit**
**Rt. 2, Box 4400**
**Gatesville, Texas 76597**

RE:  Federal Writ of Habeas Corpus

Dear Mr. Montoya:

It is our hope that all is going well with you at this time.

We apologize for not writing to you much sooner; this office has been extremely busy resetting cases on the calendar because of Attorney Pink's eye sight.

This office had spoken to your family and explained in detailed the problems Mr. Pink was having with his sight.

We had hoped to finish your application for Writ of Habeas Corpus by the end of December 1997.  However, Attorney Pink has been instructed to cease all work over the period of the next three months by his physician.  Mr. Pink anticipates that with the assistance of his physician that he will need a least three months to regain his vision.

Attorney Pink's eye sight is improving and hopefully he will be ready to proceed in April with the application for Writ of Habeas Corpus.  We certainly thank you and appreciate you for your patience.

Could you please ask the question again that you previously asked about your case?

In the meanwhile take care of yourself and I look forward to receiving your next letter.

Sincerely,

Mrs. Betty M. Pink
Office Manager for
Walter J. Pink & Assoc.
Attorneys at Law

BMP/lfl

# WALTER J. PINK
**ATTORNEY AT LAW**
## WALTER J. PINK & ASSOCIATES
2646 SOUTH LOOP WEST, #195
HOUSTON, TEXAS 77054
713/664-6651    713/664-3242 FAX

May 5, 1999

Mr. Santos Montoya #544493
W.J. ESTELLE UNIT
Huntsville, Texas 77340

Dear Mr. Montoya:

I hope that by the time you receive this letter you will
be doing well as can be expected.

First, we do sincerely apologize for the delay in
responding to your letter Mr. Montoya. There have been
several issues responsible for the delay in writing to you.
Please allow me to explain them. Attorney Pink was placed
on bedrest for about a month to get some rest because he has
been in trial back to back for weeks. Since Attorney Pink
was off for a month this backed his scheduled up more. In
the middle of trying to relieve his schedule of the cases,
Attorney Pink was ordered to Federal Court for trial which
supersedes any and all other courts. Certainly this is not
a song and dance this is what really happened to Attorney
Pink's schedule.

As to the Writ of Habeas Corpus, Mr. Pink has been
involved in several cases and appeals. And I stated before
his scheduled was placed on hold because of the Federal
Courts ordering him to trial on more than one case.
Secondly, the research person that Attorney Pink depends on
heavily to search out all the laws and cases that will
coincide perfectly with your case has been out suffering
from a severe illness. Mr. Pink's research person will be
returning to work in July/August to help begin not only on
your Writ but other briefs and writs that Attorney Pink
needs to be addressed.

Mr. Montoya, the details and procedures to your Writ is somewhat different because you have file two writs previously and Attorney Pink has to approach your case a little different than usual because the issues in which he raises now, **must** be totally new evidence. In other words, Attorney Pink cannot repeat any issues from the prior writs. If you have any questions or any information that you have researched on your own and would like for Mr. Pink to look at pertaining to your writ, by all means please send it to him.

**The research team on your case has to go line by line, paragraph by paragraph, page by page to discover the new evidence if Mr. Pink needs to go to the Federal Writ of Habeas Corpus and Mr. Pink will decide with you after the research team gives him all of the research information. (Note: One member of the research team is going to Brownsville, Texas to pick up your transcript and statement of facts so Mr. Pink can have facts as recorded in the Court). The documents that you sent to Mr. Pink is good but we have to have to the original statement of facts as stated above. As you know it will take 5-6 hours to drive there and return with the same amount of time to return to Houston.**

As soon as the team member returns from Brownsville with the transcript and statement of facts, this office will write to you again along with a copy of the statement of facts.

Mr. Montoya, thank you for your patience and please continue to write to your Attorney; Mr. Pink will respond as soon as possible.

Sincerely,

Mrs. Betty Pink
Linda F. Leach
Assistants to
Walter J. Pink
Attorney at Law

# Walter J. Pink & Associates
**Attorneys At Law**
2646 South Loop West, Suite 195
Houston, Texas 77026
Bus. 713 664-6651

9 December, 1999

Mr. Santos Montoya #544493
Ellis 1 Unit
Huntsville, TX 77343

Dear M. Montoya,

I hope this letter find you in the best of health.
This is an update on the status of your case. At this present time your case is in the process stage, meaning Attorney Pink has to take one page at a time to find new issues to address.

Since your case consist of several volumes, the process is very lengthy and very detailed. Yes, I agree very strongly with you on Attorney Pink being the best attorney you can hire. Since you are aware of this, I hope you know that Attorney Pink have numerous cases that he is handling at this present time and has to give your case a lot of research because it is very important to him also.

We will keep in touch with you on the status of your case, in a timely manner.

May God Bless You

Linda Leech
Secretary



*From our family
to yours may you have a
Merry Christmas
and
a Happy New Year!*

**Walter J. Pink & Associates**
Attorneys At Law
2646 South Loop West, Suite 195
Houston, Texas 77026
Bus. 713 664-6651

# WALTER J. PINK & ASSOC., INC.

2646 South Loop West #1950 Houston, Texas 77054 O (713) 664-6651 O Fax: (713) 664-3242

January 7, 2000

Mr. Santos Montoya
#544493
Ellis 1 Unit
Huntsville, Texas 77343

Dear Mr. Montoya:

We pray that this letter finds you in good health and spirits.

Attorney Pink certainly appreciates the kind words in which you stated in you letter and he also appreciates your patience and understanding regarding your case.

Mr. Pink is more than glad to help you by sending your sister the letter in which you enclosed in your letter to my office.

Also, Attorney Pink is trying to free up some time in his busy schedule so that he can visit with you. When he does come, he will make sure that he arrives enough time in advance so that he can speak with the Warden concerning your work place and medical problems.

Thank you for speaking with your family and asking them to be patient with Mr. Pink. Please write to Mr. Pink at any time regarding any issues or concerns.

In the meanwhile, please take care of yourself.

Sincerely,

Linda Leach
Secretary to
Walter J. Pink
Attorney at Law

WJP/lfl
cc: File

# W A L T E R   J .   P I N K

ATTORNEY AT LAW
**WALTER J. PINK & ASSOCIATES**

2646 South Loop West, Suite #195
Houston, Texas 77054
713-664-6651   713-664-3242 FAX

February 10, 2000

Mr. Santos Montoya
TDC#544493
Ellis Unit
Huntsville, Texas 77343

RE:   Response to Ms. Gloria Montoya's Letters received on January 26, 2000
Copy of Letter to Warden Tim Morgan

Dear Mr. Montoya:

We pray that this letter finds you in good health and spirits.

Enclosed you will find a copy of the response to Ms. Gloria's Montoya's Letters and a copy of the letter written to Warden Tim Morgan from Attorney Pink.

If there are any questions or concerns regarding this matter, please feel free to contact this office at any time.

Sincerely,

Linda Leach
Secretary to
Walter J. Pink
Attorney at Law

WJP/lfl
cc:   Enclosure (2)
File

# WALTER J. PINK

ATTORNEY AT LAW

**WALTER J. PINK & ASSOCIATES**

2646 South Loop West, #195
Houston, Texas 77054
713-664-6651    713-664-3242 FAX

January 31, 2000

Mrs. Rufina Montoya
c/o Ms. Gloria Montoya
Houston, Texas

RE: Response to Ms. Montoyas Letters Received on January 26, 2000
    and Santos Montoya's Letter received on January 26, 2000

Dear Ms. Montoya:

May the blessings and rewards of Allah be upon you and your love ones. I thank you for your letter and for your understanding of my court schedule.

Since Santos has already done a previous Writ of Habeas Corpus, I have my research team looking for possible Federal solutions after the State remedies have been exhausted; so, as we research for State Constitutional and Statutory violations, I have asked them to look for corresponding issues on the Federal level. This research is being done in depth because there cannot be any kind of repetition in this Writ. It must be all new issues raised.

I cannot explain how stressful trial work is, particularly, when you literally have a man's very life on your priorities' list(i.e. Capital murder).

In regards to the payment plan in which I extended to you, my office has my specific instructions that all brief and Writs must be paid in full. Your family and I had a meeting and discussed the payment plan procedure thoroughly and in detail which was the amount for the Writ of Habeas Corpus must be paid in full prior to any work is to begin on the file. If the amount

is not paid in full, then a down payment is required.  Once the down payment is made, then payment arrangements will be made for the balance of the total amount.  When the total amount is paid in full via the payment arrangements, then and only then, will the work process begin on the Writ of Habeas Corpus.  The final payment on your file was in the latter part of 1999.

Sometimes I feel I should not do any appellate work because the families desire quick results, but the Appeals Court do not render quick opinions because of the case load in which they have.

I also realize that no person wants to spend the rest of their life in prison and that each person's case is very important to the client and their family.

As I was writing this letter to you, I received a letter from Santos to please come and see him quickly because he was having problems with the Warden regarding his work assignment and medical condition.  Since Santos letter had a such a tone of urgency, I stopped my Court schedule to make an emergency visit to see him.  My staff informed you that I was going to see Santos in the beginning of the week of January 31, 2000.  Santos also informed me in his letter to ask you for his "free world medical records" so I could review them and have an understanding of his medical condition.  The arrangements were made for February 2, 2000, 1:30 p.m. and my staff was informed to bill you later for the visit since you expressed that your family did not have the fees at that time.  The cost for the emergency visit is $1000.00.

Since my research team is doing extensive work in detail, we are looking at the end of March to have the Writ of Habeas Corpus completed and ready to file.

Again thank you for your patience and understanding in this matter.

Respectfully,

Walter J. Pink
Attorney at Law

WJP/lfl

cc:    File

      Enclosure (copy of Santos Montya Letter)
      Santos Montoya

# WALTER J. PINK & ASSOC., INC.

2646 South Loop West #195○Houston, Texas 77054○(713)664-6651○Fax:(713)664-3242

September 18, 1997

Mr. Santos Montoya
TDCJ-ID No. 544493
A.H. Hughes Unit
Rt. 2, Box 4400
Gatesville, Texas 76597

Re:  **Update on federal writ of habeas corpus**

Dear Mr. Montoya:

I hope this letter finds you well and in good health. I just wanted to touch base with you to let you know we have not forgotten you, however, there is nothing to report to you on your case except that we are still looking at the end of this year or the start of next year before we can file the application for writ of habeas corpus. As explained previously, we have to make sure everything is in place before we file, as this is one of your last shots of overturning your conviction.

Do you have any more material/documents on your case that we do not have? If so, please forward us a copy of it. Do you have any input or suggestions/issues that you wish us to investigate that you have not mentioned? If so, now is a good time to think of anything you may feel is relevant so that we can carefully consider it so that everything will be considered before we get ready to prepare the final draft of your writ.

In the meantime, please feel free to write us at the letterhead address.

Sincerely yours,

Philip Auster
Paralegal with
Walter J. Pink, Attorney at Law

WJP/pa
file

Exhibit #

From          to
12-13-96 - 9-10-99



# WALTER J. PINK & ASSOCIATES

Attorneys at Law
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

To:   MS. GLORY MONTONYA

This document serves a a receipt for payment of two-thousands dollars ($2000.00 cash ) for Mr. SANTOS   MONTOYA legal fees for his account.

I understand this document and its meaning.

_Gloria Montoya_

Mr. SANTOS   MONTOYA CLIENT
MISS. GLORY MONTONYA- SISTER

3 70 - 97

Date

Witness

*Direcion del Abogado de Santos*

# WALTER J. PINK & ASSOCIATES

**Attorneys at Law**
**2646 South Loop West, Ste. #195**
~~(713) 664-6651~~ FAX (713) 664-9242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

MAY 3 ,, 1997

To:   MRS. MONTOYA

This document serves a receipt for payment of FOUR-Hundred  ($400.00) cash for Mr. SANTOS  MONTAYA for legal fees.

I understand this document and its meaning.

MR. SANTOS MONTOYA
Client

5 - 3 - 97
Date

Witness

# WALTER J. PINK & ASSOCIATES

Attorneys at Law
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

x:   MS. GLORY MONTONYA

This document serves a a receipt for payment of ~~$~~ $400.00 hundred a
dollars
4·00.00 (cash) for Mr. SANTOS   MONTOYA legal fees for his account.

I understand this document and its meaning.

_Gloria Montoya_
Mr. SANTOS   MONTOYA CLIENT
MISS. GLORY MONTONYA- SISTER

_6 – 11 – 1997_
Date

_Betty Jr. Pink_
Witness

# WALTER J. PINK & ASSOCIATES

**Attorneys at Law**
**2646 South Loop West, Ste. #195**
**(713) 664-6651 FAX (713) 664-3242**
**Houston, Texas 7705**

## RECEIPT FOR PAYMENT ON ACCOUNT

:    MS. GLORY MONTONYA

This document serves a a receipt for payment of $400.00 *hundreds* dollars
( 400.00 cash ) for Mr. SANTOS  MONTOYA legal fees for his account.

I understand this document and its meaning.

_____              _____7-11-97_____

Mr. SANTOS  MONTOYA CLIENT                                    Date
MISS. GLORY MONTONYA- SISTER


_____
Witness

# WALTER J. PINK & ASSOCIATES

Attorneys at Law
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

Mrs.MONTOYA

This document serves a receipt for payment of FOUR HUNDREDS dollars ($400.00) check / cash for legal fees for SANTOS MONTOYA

I understand this document and its meaning.

MrS. MONTOYA
MOTHER

BETTY  PINK
Witness

08-05-97
Date

# WALTER J. PINK & ASSOCIATES

**Attorneys at Law**
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

Ms. GLORY MONTOYA :

    This document serves a receipt for payment of  four -hundred dollars  ($ 400.00 ) check / <u>cash</u> for LEGAL FEES  for SANTOS   MONTOYA .

    I understand this document and its meaning.


*Gloria Montoya*
Ms. GLORY  MONTOYA

<u>Linda F. Leach</u>


_____
Witness


<u>09-12-97</u>_____
Date

# WALTER J. PINK & ASSOCIATES

Attorneys at Law
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

Ms. GLORY MONTOYA :

This document serves a receipt for payment of  four -hundred
dollars  ($ 400.00 ) check / __cash__ for LEGAL FEES  for SANTOS   MONTOYA .

I understand this document and its meaning.

_Gloria Montoya_
Ms. GLORY  MONTOYA

Linda F. Leach

Witness

08-12-97
Date

# WALTER J. PINK & ASSOCIATES

**Attorneys at Law**
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

MS. GLORIA  MONTOYA

    This document serves a receipt for payment of four hundred dollars ($400.00) **cash/check** for LEGAL FEES for SANTOS MONTOYA

I understand this document and its meaning.


_Gloria Montoya_
MISS GLORIA MONTOYA


BETTY M. PINK
Witness


11-8-97
Date

# WALTER J. PINK & ASSOCIATES

Attorneys at Law
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

MS. GLORIA MONTOYA

This document serves a receipt for payment of four hundred dollars ($400.00) cash/check for LEGAL FEES for SANTOS MONTOYA

I understand this document and its meaning.

MISS GLORIA MONTOYA

BETTY M. PINK
Witness

12-8-97
Date

# WALTER J. PINK & ASSOCIATES

**Attorneys at Law**
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

# RECEIPT FOR PAYMENT

MRS. MONTOYA:

This document serves a receipt for payment of four  hundred dollars ($400.00) <u>cash/check</u> for legal  fees for SANTOS MONTOYA.

I understand this document and its meaning.

_Rufina C Montoya_
_____
MRS SANTOS MONTOYA


<u>BETTY M.PINK</u>_____
Witness


<u>01-08-98</u>_____
DATE

# WALTER J. PINK & ASSOCIATES

Attorneys at Law
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT

MRS. MONTOYA:

This document serves a receipt for payment of four hundred dollars ($400.00) <u>cash/check</u> for legal fees for SANTOS MONTOYA.

I understand this document and its meaning.

_Rufina C Montoya_
MRS SANTOS MONTOYA

BETTY M.PINK
Witness

02-08-98
DATE

~~Feb. 6. 98.~~
March

Received from Mr. Montoya

Four hundred ———————— Dollars

$400.00  Check # 974

Atty. Fees.

Bernard Punb

# WALTER J. PINK & ASSOCIATES

Attorneys at Law
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

To:   MS.GLORY MONTONYA

This document serves a a receipt for payment of *four hundred* dollars ($400.00 cash ) for Mr. SANTOS   MONTOYA legal fees for his  account.

I understand this document and its meaning.

_____          4-24-1998
Mr. SANTOS   MONTOYA CLIENT              _____
MISS.GLORY MONTONYA- SISTER                        Date

_____
Witness

# WALTER J. PINK & ASSOCIATES

**Attorneys at Law**
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

To:   MS.GLORY MONTONYA

This document serves a a receipt for payment of *four hundred* dollars ($400.00 cash) for Mr. SANTOS   MONTOYA legal fees for his account.

I understand this document and its meaning.

_____          _____
Mr. SANTOS   MONTOYA CLIENT          5-24-98
MISS.GLORY MONTONYA- SISTER                              Date

_____
Witness

# WALTER J. PINK & ASSOCIATES

**Attorneys at Law**
2646 South Loop West, Ste. #195
(713) 664-6651 FAX (713) 664-3242
Houston, Texas 7705

## RECEIPT FOR PAYMENT ON ACCOUNT

To:    MS.GLORY MONTONYA

This document serves a a receipt for payment of $400.00 dollars ($400.00 cash ) for Mr. SANTOS  MONTOYA legal fees for his account.

I understand this document and its meaning.

_Glory Montoya_                         8-17-98
Mr. SANTOS  MONTOYA CLIENT                    Date
MISS.GLORY MONTONYA- SISTER


_Betty m Ruik_
Witness

# WALTER J. PINK & ASSOCIATES

**Attorneys at Law**
**2646 South Loop West, Ste. #195**
**(713) 664-6651 FAX (713) 664-3242**
**Houston, Texas 7705**

## RECEIPT FOR PAYMENT ON ACCOUNT

To:    MS.GLORY MONTONYA

This document serves a a receipt for payment of $400.00 dollars ($400.00 cash) for Mr. SANTOS   MONTOYA legal fees for his account.

I understand this document and its meaning.

_Gloria C. Montoya_                       _9-17-98_
Mr. SANTOS   MONTOYA CLIENT                        Date
MISS.GLORY MONTONYA- SISTER

_Betty M. Pink_
Witness









Aqui estan unas copias de cheques que yo le mande al abogado sobre tu caso. Estos son lo unico que yo tengo de prueba. En caso estan los meses.

los encuentre ahora que me estaba morindo egero te piran de algo. tu firma de ellos esta atras

Mova C. Montoya

**Check 2004**

DELIA FLORES
GLORIA MONTOYA
P.O. BOX 1842 · PH. 281-585-3415
Alvin, TX 77511

88-2066/1131

Pay to the Order of _Willie_    $400.00

_Four Hundred_ Dollars

FIRST NATIONAL BANK OF ALVIN
ALVIN, TX 77012

For _Christmas Present_    Gloria Montoya

**Check 1336**

Delia Flores
Gloria Montoya
P.O. Box 1842
Alvin, TX    341-585-3415

88-2065/1131

DATE 10-27-98    $450.00

_Four hundred fifty_ & 00/100    DOLLARS

FIRST NATIONAL BANK OF ALVIN
ALVIN, TEXAS 77512
P.O. BOX 606

For _Sactos Montoya det myt_    Gloria Montoya

PAID

**Check 1272**

Delia Flores
Gloria Montoya
P.O. Box 1842
Alvin, TX    341-585-3415

88-2065/1131

DATE 9-7-98    $800.00

_Eight hundred_ & 00/100    DOLLARS

FIRST NATIONAL BANK OF ALVIN
ALVIN, TEXAS 77512
P.O. BOX 606

PAID







Exhibit J

Santos Montoya
TDCJ/ID # 544493
Ellis Unit
Huntsville, Texas 77343

June 21, 2001

Mr. Walter J. Pink
Attorney at Law
2646 South Loop West, ste.195
Houston, Texas  77026

In Re: Trial Transcripts in
       Cause Number 90-CR-0068-B

Dear Mr. Pink,
    On May 2000 you filed with the court a post conviction
writ of habeas corpus in state court.  Prior to filing the
writ my family loan you my copy of the trial transcripts
because the original copy which we purchased was lost by
your paralegal.  In addition, we gave you additional funds
to purchase another trial transcript from the court
reporter's notes.

    I would like to obtain a copy of all the records which
you might still have on file, but most important the trial
transcript which we loan  to you to complete the habeas
corpus writ.

    In addition, if you would please send me a copy of the
contract we made it will be greatly appreciated.  I will
attempt to re-open my case, and in the event that I should
have  to file under an ineffective assistance of counsel
claim, please keep this letter as a reference that I nor my
family nor anyone else will seek any form of damages from
you or your office as a result of an ineffective assistance
of counsel claim.  My interest is my freedom and justice
not in hurting others nor their love ones.  I hope you will
understand my desire for freedom and justice.
Sincerely,


Santos Montoya

cc: file

January 10, 2000


Mr. Walter Pink
2646 S. Loop 195-12
Houston, TX 77054

RE: Writ of Habeas Corpus for Santos Montoya

Mr. Pink,

Per my conversation with Mrs. Pink on Wednesday, January 5th, I have requested a letter from your office stating a date of when you will be filing the Writ of Habeas Corpus for Santos Montoya. According to Mrs. Pink, you are unable to furnish this letter and I do not understand why. A justifiable reason was not given and therefore I would like to request this letter from you by January 18, 2000. I believe this will be sufficient time for you or your wife to review your calendar.

During the past four years, we have maintained contact with your office so that we would provide you monies in return for your legal services. A contract was created between yourself and Mrs. Rufina Montoya (my mother). I believe the contract stated that you were to file a Writ of Habeas Corpus for her son, Santos Montoya, my brother. The Writ of Habeas Corpus was to be filed once your contract amount was completed by Mrs. Montoya.

As of July 1999, the full amount of $15,000 was paid to your office. A meeting was arranged in which you were to discuss the status of my brother's case. In that meeting, you informed my niece, nephew (Veronica and Ricardo Montoya) and myself that you would be able to file my Mid October of 1999. It is now the beginning of January, 2000 and you have still not filed and have yet to give us a set date.

I believe this contract has been postponed long enough. I understand you are extremely busy with other cases. I hope you understand my urgency in seeing this matter resolved both for my mother's sake and my brother's safety. If you have read the documents pertaining to this case, you will understand that he has been unlawfully misjudged.

Presently, the situation in the Huntsville facility is troublesome and we are presently working on having those matters resolved. The reason for this letter is to request a date, via hard copy letter, of when you will be filing the Writ of Habeas Corpus. I do not wish to rush you being that I would like for you to do the best job you can, but again, I do have an urgency in seeing this matter resolved as soon as possible.

If you do not believe that you will be able to file the Writ of Habeas Corpus by the end of February 2000, please let us know, via letter, by the end of January 2000 along with a refund in the amount of $15,000 as this was the amount agreed and paid to you per the contract. We understand the other monies paid to you for travel purposes will not be reimbursed. The reason for my requesting a date is because I do have another attorney awaiting a response from us on whether his services will be needed to file-you will understand the need for a refund as soon as possible.

Your patience during these last few years has been appreciated since we were unable to pay the full amount at the beginning of the contract. I believe you are aware of my mother's financial situation so we appreciate the opportunity to pay you monthly.

If you would like to discuss this further, please do not hesitate to contact me at your earliest convenience. I would still like to receive the requested document from you by the designated dates.

Regards,

Gloria Montoya
(on behalf of Mrs. Rufina Montoya)
Work No: 281/228-7470
Cell No: 713/385-3115

Cc: Santos Montoya

Certified Mail  Z-252-574-092

011000/vm

March 29, 2001

Mr. Walter Pink
2646 S. Loop 195-12
Houston, TX 77054

RE: Writ of Habeas Corpus Documentation for Santos Montoya

Mr. Pink,

During the last few months, we have tried and tried, unsuccessfully, to attain documentation regarding the Writ of Habeas Corpus filed for Santos Montoya. When it was filed, where it was filed, the information contained within, etc.? At this time, I would like to once again request a copy of any and all paperwork filed on behalf of Santos Montoya.

Let me remind you that back when the details were being worked out regarding payment, you told us that you would refund us our money if you did not get Santos Montoya out. You also told us that you would file through the federal courts if you didn't succeed through the state courts. I don't even know where you filed. I don't feel that I have been completely kept up to date with regards to this case. After three years, you barely decide to look into this case late last year and NOTHING was accomplished. It's like throwing $15,000 (plus miscellaneous expense) away. I am here to continue my mother's goal (may she rest in peace), and that is to try and get my brother out of prison. He was UNJUSTLY accused.

If we do not receive this documentation by the end of May 2001, I will have no other choice than to look at other options with regards to attaining this information. I am very unhappy with the type of service provided to us.

If you would like to discuss this further, please do not hesitate to contact me at your earliest convenience.

Regards,


Gloria Montoya
(on behalf of the deceased Mrs. Rufina Montoya)
Work No: 281/228-7470
Cell No: 713/385-3115

Cc: Santos Montoya

Certified Mail

October 21, 2003

To: Walter J. Pink & Associates
    2646 South Loop West, #195
    Houston, Texas 77054
    Certified Letter No.
    7002 2030 0001 9849 9114

From: Santos Montoya
      TDCJ-CID No. 544493
      Eastham Unit; P.O. Box 16
      Lovelady, Texas  75851-0016

Re: Legal Records

Dear Associates:

I was very sorry to hear about the sudden death of Mr. Walter J. Pink; unfortunately his passing away has left some unfinished business concerning the case Mr. Pink was hired to represent me on.

I am now without a trial transcript because I lent my copy to Mr. Pink so that he could use it while filing his legal motions on my behalf. I also have a receipt here that shows Mr. Pink was paid fifteen hundred dollars ($1,500.00) to obtain my records from the trial court clerk, but the clerk's letter to me states that Mr. Pink or anyone else with the firm never requested the trial transcript. Mr. Pink told me that his paralegal had lost those records; regardless of what may have happened I need my trial transcript along with all the paperwork I mailed to Mr. Pink for him to use. I must now overcome the burden of showing the federal courts why my 2254 is being filed out of time. If I do not receive my complete trial transcript from this firm, within thirty (30) days, I will file a complaint in civil court for damages, and lawyer misconduct.

Respectfully, # 544493

Santos Montoya

Oct. 22, 2003

cc:file

*Esta Es La Copia De Una Carta Que Me Mando A la Corte.*

*Exhibit #6*

June 1, 2003

Cameron County District Clerk's Office
Ms. Aurora De La Garza, District Clerk
974 E. Harrison
Brownsville, Texas 78520

      RE: Request for Copy of Writ of Habeas Corpus
          Cause No. 90-CR-68-B

Dear Ms. De La Garza,

    My name is Santos Montoya, TDCJ-ID #544493, currently confined
in the Eastham Unit in Houston County, Texas. In 1990, I was con-
victed in the 138th District Court of Cameron County, Texas for the
offense of murder. 11-07

    In 1993 or 1994, I filed a second writ of habeas corpus with
this office stemming from this conviction. There were (5) five
errors litigated in this habeas. I don't have any records of the
precise date that I filed this habeas corpus, except the informa-
tion that I have given you.

    I need to purchase from your office records copies of this
habeas writ and the State's response to that habeas. Please do not
mistake it with the first habeas, because that writ only had one
error litigated. The writ I am requesting contains five errors.

    My neice went to your office recently and purchased the wrong
records, and it is understandable. So without further ado, could
you please make photo-copies of the second habeas with five errors
litigated in it and I will send a family member with a copy of this
letter requesting the same, that way there will not be another mis-
take in identifying the requested records.

    Thank you for your assistance and cooperation into this matter.

                        Respectfully Submitted,

                        06-01-03
                        MR. SANTOS MONTOYA
                        TDCJ-ID #544493
                        EASTHAM UNIT
                        P. O. BOX 16
                        LOVELADY, TEXAS 75851

Cameron County District Clerk's Office
Ms. Aurora De La Garza, Clerk
974 East Harrison Street
Brownsville, Texas 78520

RE: Request for Records; Cause No: *90-CR-0068-B*

Dear Ms. De La Garza,

My name is Santos Montoya, TDCJ-ID #544493, currently confined at the Eastham Unit in Houston County, Texas. Recently I had requested for specific copies of records. I sent a family relative to pick up what I had requested, but the records are not complete. You gave me the copies of the writ of habeas corpus that I filed. I had also requested the Respondent's (State's) Original Answer that was filed in response to my habeas corpus claims. Respondent's Original Answer is usually filed within 15 days of the filing of a 11.07 writ.

So once again, I am requesting access to the Respondent's Original Answer to my habeas filed on or about the month of *JANUARY 19*, 199*7*.

A family member will go pick up the records as last time, and will accompany a copy of this letter showing verification that it is me requesting the record in the above numbered cause. Thank you.

Respectfully Submitted,

MR. SANTOS MONTOYA #544493

## CERTIFICATE OF SERVICE

I, Santos Montoya hereby verify that a true and correct copy of the above foregoing letter has been mailed to the Cameron County District Clerk's Office, Ms. Aurora De La Garza, Clerk, 974 East Harrison Street, Brownsville, Texas 78520.

Signed and entered this the *25* day of June, 2003.

MR. SANTOS MONTOYA #544493
EASTHAM UNIT
P. O. BOX 16
LOVELADY, TEXAS 75851

*P.S.: NEED COPY OF INDICTMENT IN SAID CAUSE ALSO.*

Santos Montoya
#544493
P.O. Box 16
Lovelady, Tx 75851

August 14, 2003

re: cause no. 90-CR-68L

Aurora De La Garza
District Clerk, Cameron County
974 E. Harrison Street
Brownsville, Tx 78520

Dear Clerk:

I have written you in the past requesting information from you concerning the above case. Even though it is a part of your everyday duties as district clerk to furnish defendants with requested documents to further the appeals process, you have not done this. Before filing a Habeas Corpus against you for failing to perform your duty as district clerk, I am requesting the following one again.

I would like to know what it will cost me to acquire a copy of this courts answer to a Habeas Corpus file stamped Jan. 19, 1994; and if this court filed an answer to a Habeas Corpus mailed to this court on May 15, 2000 by attorney Walter J. Pink, I would also like to know the cost for a copy of that answer. #24, 306-03  Denied 8-16-2000

If your office has a record of any original answers filed in reference to any Habeas Corpus petition filed on behalf of Santos Montoya excluding Habeas petition titled (Fourth Petition), please furnish me the price for these copies.

Respectfully,
Santos Montoya #544493
08-14-03

CC: File