# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### -BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

JUL 2 7 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk D. Almada

|  |  |  |
|---|---|---|
| SANTOS MONTOYA, | § | |
|     Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-03-229 |
| DOUG DRETKE, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISIONS, | § | |
|     Respondent. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court is a Petition for Writ of Habeas Corpus (Docket No. 1) filed by pro se petitioner, Santos Montoya ("Montoya"), on December 15, 2003, pursuant to 28 U.S.C. § 2254. Respondent, Doug Dretke ("Director") filed a Motion for Summary Judgment (Docket No. 6) on June 21, 2004. For the reasons stated below, it is recommended that the Director's motion be denied.

### I. Procedural Background

Montoya was convicted of murder in Criminal Cause No. 90-CR-68-B, styled *The State of Texas v. Santos Montoya*, in the 138th District Court, Cameron County, Brownsville, Texas, on March 26, 1990. Montoya was sentenced to eighty-five years imprisonment. Montoya appealed the conviction and on June 6, 1992, the Thirteenth District Court of Appeals affirmed the judgment of the trial court.[1] Montoya did not file a petition for discretionary review.

Montoya filed four state writ applications. The first was on November 30, 1992 (denied

---

[1]*Montoya v. State*, 811 S.W.2d 671 (Tex. App. - Corpus Christi, 1991, no pet.) (No. 13-90-165-CR)

without written order on January 20, 1993).[2]  The second was filed on January 19, 1994 (denied

without written order on June 22, 1994).[3] The third was filed on May 16, 2000 (dismissed as

successive on August 16, 2000).[4] The fourth and final state writ was filed on May 15, 2001

(denied without written order on September 19, 2001).[5]  Montoya filed the instant petition on

December 15, 2003.

## II.  Claims of the Parties

The Director argues that Montoya's petition is time barred under the provisions of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because he failed to file his

petition within the grace period, as his conviction became final prior to the enactment of

AEDPA.  The Director contends that the limitations period should not be equitably tolled

because Montoya's attorney's failure to file his petition constituted mere error or neglect.

Montoya argues that his attorney, Walter Pink ("Pink"), actively misled Montoya by

telling him that a petition would be filed.  Montoya contends that he diligently contacted Pink

throughout his incarceration inquiring into the status of his petition.

## III. Analysis

### A.  Limitations Period Under AEDPA

AEDPA provides a one year period for filing federal habeas petitions by persons in

custody pursuant to judgment of a state court.  28 U.S.C. § 2244(d) sets forth four different

---

[2]*Ex parte Montoya*, No. 24,306-01.

[3]*Ex parte Montoya*, No. 24,306-02.

[4]*Ex part Montoya*, No. 24,306-03.

[5]*Ex parte Montoya*, No. 24,306-04.

scenarios which start the running of the limitations period.

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In this case, Montoya's conviction was affirmed on appeal on June 6, 1991. Because Montoya did not file a petition for discretionary review, Montoya's conviction became final on July 6, 1991, on the expiration of the thirty days in which time he could have sought review from the Texas Court of Criminal Appeals. TEX. R. APP. PROC. 68.2. Therefore, Montoya's conviction became final prior to the enactment of AEDPA. In cases such as this, the petitioner is afforded a reasonable time to file his petition. The Fifth Circuit has held that a petitioner has a one year grace period within which to file a petition. The grace period runs one year from AEDPA's enactment date and terminates on April 24, 1997. *States v. Flores*, 135 F.3d 1000, 1005 (5th Cir. 1998). Montoya did not file the instant petition until December 15, 2003, well

3

beyond the grace period.

Subsection (2) of § 2244(d) contains a tolling provision which is applicable to the one year grace period. *Field v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998).  Montoya filed four state writ applications which were pending during the years of 1992 -1994 and 2000-2001, therefore there was no tolling of the statute during the grace period.

### B.  Equitable Tolling

### 1. Rare and Exceptional Circumstances

The one-year period of limitations in § 2244(d)(1) is not a jurisdictional bar and can be equitably tolled. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998).  The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.  *Id*. at 810.  However, equitable tolling is permitted only in rare and exceptional circumstances.  *Id*. at 811.

To apply the doctrine of equitable tolling, we look to the facts and circumstances of each case.  *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999).  The Fifth Circuit has held equitable tolling to be unwarranted in several cases.  *See Fisher v. Johnson*, 174 F.3d 710  (5th Cir.1999) (petitioner did not receive notice of AEDPA's statute of limitations until 43 days after effective date and spent 17 days confined in unit for psychiatric evaluation); *Coleman v. Johnson*, 184 F.3d 398 (5th Cir.1999)(seven-week gap between date he submitted state habeas petition to prison officials and date petition was stamped as filed); *Felder v. Johnson*, 204 F.3d 168 (5th Cir. 2000)(incarceration prior to AEDPA, pro se status, innocent of crime, and inadequate prison library).

4

### 2. Attorney Error or Neglect

The Fifth Circuit has also declined to extend equitable tolling in cases where the acts or omissions of petitioner's attorney caused the petition to be filed out of time. Mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified. *Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002)(alleged failure counsel to receive notice of denial of petitioner's in forma pauperis (IFP) motion filed with his petition, which left petition unfiled due to nonpayment of $5 filing fee, did not constitute extraordinary circumstances). *See Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002)(counsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [petitioner's] habeas petition).

However, an attorney's intentional deceit could warrant equitable tolling, but only if the petitioner shows that he reasonably relied on his attorney's deceptive misrepresentations. *United States v. Wynn*, 292 F.3d 226, 230-31 (5th Cir. 2002)(attorney told petitioner that he had filed his habeas petition, when in actuality he had not, and petitioner investigated with the court). There must be an affirmative, but incorrect, representation on which the petitioner relies to his detriment. *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). Equitable tolling applies principally where the plaintiff is actively misled or is prevented in some extraordinary way from asserting his rights. *Coleman*, 184 F.3d at 402 (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir.1996)).

### 3. Diligent Pursuit of Petition

In any event, the doctrine of equitable tolling is not applied where a petitioner has failed to pursue habeas relief diligently. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

### 4. Specific Facts Regarding Montoya's Failure to Timely File

Montoya hired Pink in 1996 to file a habeas petition on his behalf. The record is not clear

as to when the contract between the parties was entered into. Through a long series of letters

exchanged between Montoya and Pink, Pink repeatedly reassured Montoya that he was actively

working on Montoya's petition and that it would be filed.

> Letter of March 3, 1997, from Phillip Auster, Paralegal for Pink:
> "We have just scratched the surface of the statement of facts so it is too soon to tell if
> there is any grounds on which to overturn your conviction." "Mr. Pink asked me to notify
> you that the fee for preparing and filing a federal application for writ of habeas corpus is
> fifteen thousand dollars ($15,000)." "Again, we will have to finish reading the statement
> of facts and the other documents in order to let you know if there exists any meritorious
> grounds on which to overturn your conviction."

> Letter of May 7, 1997, from Pink:
> "I am relieved that you understand the time it will take to adequately review your file and
> research the issues we decide to raise. In addition to responding to your recent letter of
> April 19th, I would like to mention that my paralegal and I are still in the reading of the
> record and note taking in preparation of your application for writ of habeas corpus. I
> hope the next communication with you I have will have something more definite in
> regards to your habeas corpus."

> Letter of June 27, 1997, from Phillip Auster, paralegal for Pink:
> "I just wanted to touch base with you and let you know that you are not forgotten. I
> would like to advise you that at this time, an estimated finish date on your application for
> writ of habeas corpus is going to be the end of December 1997. It could be sooner or a
> few months longer." "I know I told you that I would submit the answers to your 2
> questions in the next letter and unfortunately I am not in a position to view your file at
> this time so that I might accomplish that task, so please allow me to postpone the answers
> to those questions until I am in a position to see your file."

> Letter of September 18, 1997, from Phillip Auster, Paralegal to Pink:
> "I just wanted to touch base with you to let you know we have not forgotten you,
> however, there is nothing to report to you on your case except that we are still looking at
> the end of this year or the start of next year before we can file the application for writ of
> habeas corpus."

> Letter of January 8, 1998, from Mrs. Betty Pink, Office Manager:
> "This office had spoken to your family and explained in detailed the problems Mr. Pink

6

was having with his sight." "We had hoped to finish your application for Writ of Habeas Corpus by the end of December 1997. However, Attorney Pink has been instructed to cease all work over the period of the next three months by his physician. Attorney Pink's eye sight is improving and hopefully he will be ready to proceed in April with the application for Writ of Habeas Corpus."

Letter of May 5, 1999, from Linda F. Leach, Assistant to Pink:
"First, we do sincerely apologize for the delay in responding to you letter Mr. Montoya. Attorney Pink was placed on bed rest for about a month to get some rest because he has been in trial back to back for weeks." "In the middle of trying to relieve his schedule of the cases, Attorney Pink was ordered to Federal Court for trial which supercedes any and all other courts. Certainly this is not a song and dance this is what really happened to Attorney Pink's schedule." "As to the Writ of Habeas Corpus, Mr. Pink has been involved in several cases and appeals." "Secondly, the research person that Attorney Pink depends on heavily to search out all the laws and cases that will coincide perfectly with your case has been out suffering from a severe illness. Mr. Pink's research person will be returning to work in July/August to help begin not only on your writ but other briefs and writs that Attorney Pink needs to be addressed. Mr. Montoya, the details and procedures to your Writ is somewhat different because you have file two writs previously and Attorney Pink has to approach your case a little different than usual because the issues in which he raises now, must be totally new evidence." "One member of the research team is going to Brownsville, Texas to pick up your transcript and statement of facts so Mr. Pink can have facts recorded in the court. The documents you sent to Mr. Pink is good but we have to have to the original statement of facts as stated above."

Letter of December 9, 1999, from Linda Leach, Assistant to Pink:
"At this present time your case is in the process stage, meaning Attorney Pink has to take one page at a time to find new issues to address. Since your case consist of several volumes, the process is very lengthy and very detailed."

Letter of January 7, 2000, from Linda Leach, Assistant to Pink:
"Mr. Pink is more than glad to help you by sending your sister the letter in which you enclosed in your letter to my office." "Also, Attorney Pink is trying to free up some time in his busy schedule so that he can visit with you. When he does come, he will make sure that he arrives enough time in advance so that he can speak with the Warden concerning your work place and medical problems. Thank you for speaking your family and asking them to be patient with Mr. Pink."

Letter of January 10, 2000, from Gloria Montoya to Pink:
"I believe the contract stated that you were to file a Writ of Habeas Corpus for her son, Santos Montoya, my brother. The Writ of Habeas Corpus was to be filed once your contract amount was completed by Mrs. Montoya." "As of July 1999, the full amount of $15,000 was paid your office."

Letter of January 21, 2000, from Pink to Mrs. Rufina Montoya:
"Since Santos has already done a previous Writ of Habeas Corpus, I have my research team looking for possible Federal solutions after the State remedies have been exhausted; so, as we research for State Constitutional and Statutory violations, I have asked them to look for corresponding issues on the Federal level. This research is being done in depth because there cannot be any kind of repetition in this writ." "It must be all new issues raised. I cannot explain how stressful trial work is, particularly , when you literally have a man's very life on your priorities' list (i.e. Capitol Murder)." "In regards to the payment plan I extended to you, my office has by specific instruction that all briefs and writs must be paid in full. Your family and I had a meeting and discussed the payment plan procedure thoroughly and in detail which was the amount for the Writ of Habeas Corpus must be paid in full prior to any work is to begin on the file. The final payment on your file was in the latter part of 1999."

Letter of February 10, 2000, from Linda Leach, Assistant to Pink:
"Enclosed you will find a copy of the response to Ms. Gloria Montoya's Letters and a copy of the letter written to Warden Tim Morgan from Attorney Pink."

From the record, it appears that a partial down payment was made to Pink on December 13, 1996, in the amount of $3,000.00 for research to begin on Montoya's petition. The contract between the parties is not a part of the record. However, Gloria Montoya's letter of January 10, 2000, seems to indicate that Montoya knew that Pink would not actually file the petition until the entire amount of the fee had been paid. However, Pink failed to inform Montoya that the time frame within which the petition had to be filed was coming to end. The first of several installment payments was made on March 10, 1997, and a second payment was made on May 3, 1997.

Therefore, as of May 1997, Montoya was aware that Pink would not be filing his petition. At that point in time, AEDPA's grace period had expired. All statements and correspondence made by Pink after that point constituted affirmative misstatements to Montoya. Pink continued to promise that upon full payment, a petition would be filed. However, this was impossible as

8

the petition had already become time barred.

Gloria Montoya's letter of January 10, 2000, indicates that the entire amount had been paid in full as of July 1999.  That is the point in time when Montoya should have reasonably expected his petition to be filed.  Montoya and his family made inquiry after inquiry and Pink continued to relay false information.

On March 28, 2002, Montoya filed a grievance with the Texas State Bar.  The record is unclear, but it seems there was an unfavorable finding with regard to Pink's professional conduct, which Pink appealed.  The State Bar of Texas Chief Disciplinary Counsel denied Pink's appeal and affirmed the preliminary classification decision on June 26, 2002.  On July 16, 2002, Montoya requested that the Board of Disciplinary Appeals (BODA) provide the trial transcript to Montoya so that he would be able to file his petition, as Pink refused to provide his file and the trial transcript Montoya had twice paid for.  It appears that Montoya misunderstood the role of BODA.

Sometime during the grievance procedure, Mr. Pink passed away.  The grievance procedure was not completed and Montoya then filed an application with the Client Security Fund, Office of the Chief Disciplinary Counsel of the State Bar of Texas.  Montoya received $2,815.00 from the fund on June 30, 2003.

The last communication in the record was from Montoya to BODA on October 21, 2003.  Montoya states that he will file his own habeas petition and that he is requesting all pertinent documents with respect to the grievance so that they may be included with his petition in order to equitably toll the limitations period.

9

### 5. Facts and Circumstances Warrant Equitable Tolling

Montoya was grossly mislead by Pink beginning in May of 1997. Pink was no longer able to file Montoya's habeas petition, but continued to intentionally string him along for at least four years, while continuing to collect fees. Pink's statements were not just error or neglect, but affirmative misstatements about a filing that legally could never occur. Montoya and his family diligently communicated with Pink and requested further information as to why a filing had not been made. Montoya relied on Pink's repeated guarantees that his petition would be filed.

Montoya made repeated requests for his file and trial transcript so that he could draft his own petition. Pink never complied. At the conclusion of the grievance procedure towards the latter part of 2003, it appears that Montoya realized he was not going to receive his trial transcripts from BODA or any other entity of the state bar. Subsequently, Montoya prepared and filed a thirty page petition along with exhibits on December 15, 2003. Montoya exercised diligence in pursuing his habeas petition, first through his attorney and then on his own. The facts and circumstances of this case warrant equitable tolling of the limitations period.

IT IS therefore RECOMMENDED that the Director's Motion for Summary Judgment (Docket No. 6) be DENIED.

DONE at Brownsville, Texas, this 26th day of July, 2004.


John Wm. Black
United States Magistrate Judge

10