13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
Fil...

AUG 1 8 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| SANTOS MONTOYA, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-03-229 |
| | § | |
| DOUG DRETKE, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| Respondent. | § | |

**RESPONDENT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION WITH BRIEF IN SUPPORT**

This is a habeas corpus case brought by a Texas state prisoner, Santos Montoya ("Montoya"), and the court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254. In his Report and Recommendation ("R&R"), entered July 27, 2004, the Magistrate Judge recommended that Montoya's case warranted equitable tolling of the limitations period, thus denying Respondent's Motion for Summary Judgment. R&R at 1, 10 [Docket Entry #10]. The Director received the R&R by electronic e-mail on July 27, 2004. Thereafter, this court granted the Director's motion to extend time up to and including Wednesday, August 18, 2004 for filing objections. [Docket Entry #12]. The Director's Objections thereto, are being placed in express overnight mail to the court on Tuesday, August 17, 2004; therefore, these Objections are timely filed.

**OBJECTIONS**

The Director generally objects to the Magistrate Judge's R&R where the court allows for equitable tolling for Montoya. R&R at 1, 8-10. The Director specifically objects to the R&R where the magistrate judge rejected the Director's statute of limitations and equitable tolling arguments pertaining to petitioner's federal writ:

> Montoya hired Pink in 1996 to file a habeas petition on his behalf. The record
> is not clear as to when the contract between the parties was entered into.

Through a long series of letters exchanged between Montoya and Pink, Pink repeatedly reassured Montoya that he was actively working on Montoya's petition and that it would be file.

* * *

From the record, it appears that a partial down payment was made to Pink on December 13, 1996, in the amount of $3,000.00 for research to begin on Montoya's petition. The contract between the parties is not a part of the record. However, Gloria Montoya's letter of January 10, 2000, seems to indicate that Montoya knew that Pink would not actually file the petition until the entire amount of the fee had been paid. However, Pink failed to inform Montoya that the time frame within which the petition had to be filed was coming to end. The first of several installment payments was made on March 10, 1997, and a second payment was made on May 3, 1997.

Therefore, as of May 1997, Montoya was aware that Pink would not be filing his petition. At that point in time, AEDPA's grace period had expired. All statements and correspondence made by Pink after that point constituted affirmative misstatements to Montoya. Pink continued to promise that upon full payment, a petition would be filed. However, this was impossible as the petition had already become time barred.

Gloria Montoya's letter of January 10, 2000, indicates that the entire amount had been paid in full as of July 1999. That is the point in time when Montoya should have reasonably expected his petition to be filed. Montoya and his family made inquiry after inquiry and Pink continued to relay false information.

* * *

Montoya was grossly mislead by Pink beginning in May of 1997. Pink was no longer able to file Montoya's habeas petition, but continued to intentionally string him along for at least four years, while continuing to collect fees. Pink's statements were not just error or neglect, but affirmative misstatements about a filing that legally could never occur. Montoya and his family diligently communicated with Pink and requested further information as to why a filing had not been made. Montoya relied on Pink's repeated guarantees that his petition would be filed.

Montoya made repeated requests for his file and trial transcript so that he could draft his own petition. Pink never complied. At the conclusion of the grievance procedure towards the latter part of 2003, it appears that Montoya realized he was not going to receive his trial transcripts from BODA or any other entity of the state bar. Subsequently, Montoya prepared and filed a thirty page petition along with exhibits on December 15, 2003. Montoya exercised diligence in pursuing his habeas petition, first through his attorney

2

and then on his own. The facts and circumstances of this case warrant equitable tolling of the limitations period.

IT IS therefore RECOMMENDED that the Director's Motion for Summary Judgment (Docket No. 6) be DENIED.

R&R at 6-10.

Any claims for equitable tolling should be denied. The burden is on the petitioner–here Montoya–to show rare, exceptional and/or extraordinary circumstances beyond his control that made it impossible for him to timely file a § 2254 petition. *See United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000) (statute can be tolled in "rare and exceptional" circumstances). The Fifth Circuit has held that " 'equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." ' *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999), *cert. denied*, 529 U.S. 1057 (2000) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir.1996)). A " 'garden variety claim of excusable neglect" ' does not support equitable tolling. *Id.* Ignorance of the law and lack of legal assistance, even for an incarcerated prisoner, generally do not warrant equitable tolling. *See Molo v. Johnson*, 207 F.3d 773, 775-76 (5th Cir.2000).

Montoya argues that he should be afforded equitable tolling credit for the period he allegedly relied upon counsel's assurances that he would take further action on Montoya's behalf. *See* Pet. Motion, at 1-4. Montoya asserts he hired Walter J. Pink in 1996 to file a federal habeas petition on his behalf–nearly five years after his conviction became final. *Id.* at 1. After assurances from counsel that the petition would be filed "at the end of 1997,"[1] it was not until March 28, 2002 that Montoya in fact filed a grievance with the Texas State

---

[1] Given that the one year grace period began to run April 24, 1996 and ended April 24, 1997, filing Montoya's petition at the end of 1997 would have still deemed it untimely as he had no state writ pending during that one year period to toll the federal filing deadline.

Bar against Mr. Pink. *Id.* at 2.[2]  However, Montoya cannot show that counsel's inaction justifies equitable tolling. The Fifth Circuit has expressly noted: "[I]f there were ever any doubt that an attorney's error or neglect does not warrant equitable tolling, our recent decision in *Cousin v. Lensing*, 310 F.3d 843 (5th Cir.2002) erased it: '[M]ere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified." ' *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir.2002), *cert. denied*, 123 S. Ct. 2630 (2003); *see also Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir.2002) (counsel's erroneous interpretation of the limitations statute cannot by itself excuse the failure to file a petition within the one-year limitations period.).

Contrary to the Report and Recommendation, the Director asserts that Mr. Pink did not provide affirmative misstatements about filing his federal petition because, upon careful review of Montoya's federal petition and his attached exhibits, Pink was also hired to file Montoya's state writ application, not just his federal petition. *See Ex parte Montoya*, No. 24,306-03, at 1-46. On September 18, 1997, Pink's office contacted Montoya regarding an "Update on federal writ of habeas corpus" which stated, in part, "that we are still looking at the end of this year or the start of next year before we can file the *application* for writ of habeas corpus." *See* Exhibit A. Later, on January 31, 2000, Pink stated that:

> Since Santos [Montoya] has already done a previous Writ of Habeas Corpus, I have my research team looking for possible Federal solutions *after the State remedies have been exhausted*; so, as we research for State Constitutional and Statutory violations, I have asked them to look for corresponding issues on the Federal level.

*See* Exhibit B (emphasis added). Gloria Montoya acknowledged this in a letter dated March 29, 2001, stating that "You [Pink] also told us that you would file through the federal courts *if you didn't succeed through the state courts*." Exhibit C. Further, in several other letters, Pink refers to filing an "*application* for writ of habeas corpus." *See* Letters dated June 27,

---

[2]  Mr. Pink has since passed away. *See* Pet. Memo. at State Bar letter dated November 24, 2004.

1997 and January 8, 1998 from Pink. On May 16, 2000, Montoya, through counsel, filed a third state writ. *Ex parte Montoya*, No. 24,306-03, at 1. Since there is no time limit for filing a state writ of habeas corpus, Pink's letters should not be considered affirmative misstatements. In fact, in each letter written to Montoya, Pink admits that he has been unable to file a writ of habeas corpus for various reasons–there was no "false information" provided to Montoya. Unlike the petitioner in *Wynn*, there was no "intentional deceit" by Pink.[3] At no time did Pink assert that he had filed a writ of habeas corpus when in fact he had not. Moreover, Montoya knew at the onset that Pink would only file a writ (either state or federal) when payment was paid in full.[4]

Montoya and the Magistrate Judge argue that petitioner relied on the assistance of retained counsel to his detriment. R&R at 10. Here, the record included no evidence of any intentional deception by counsel about the statute of limitations, but rather, only evidence that counsel committed a basic and unprofessional error. *See United States v. Riggs*, 314 F.3d at 799-800. Other circuit decisions have also rejected similar arguments. *See e.g., Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("a petitioner's reliance on the unreasonable and incorrect advice of his or her attorney is not a ground for equitable tolling.") (citing *Jurado v. Burt*, 337 F.3d 638, 644-45 (6th Cir. 2003)); *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000) ("a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstances beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding"); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Any miscalculation or misinterpretation by Steed's attorney in interpreting the plain language of the statute does not constitute an extraordinary

---

[3]  *United States v. Wynn*, 292 F.3d 226, 230-31 (5th Cir. 2002) (attorney told petitioner that he had filed his habeas petition, when in actuality he had not, and petitioner investigated with the court). *See* R&R at 5.

[4]  According to the Director's calculations, as of September 1999, Montoya paid a total of $14,600.00.

circumstance sufficient to warrant equitable tolling"). Nor is equitable tolling available because a *pro se* prisoner's misunderstanding of the law. *Fisher v. Johnson* 174 F.3d 710, 714 (5th Cir. 1999) ("ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing").

Here, Montoya's conviction was affirmed on appeal on June 6, 1991. *Montoya v. State*, 811 S.W.2d 671; *see Ex parte Montoya,* No. 24,306-01, at 97-100. Montoya did not file a petition for discretionary review. R&R at 1. Accordingly, the one-year limitation period for filing a federal petition began no later than July 6, 1991. *See* TEX. R. APP. PROC. 68.2.

In this case, the one year grace period began to run with the passage of the AEDPA on April 24, 1996, and it closed on April 24, 1997. *Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998) (FED. R. CIV. P. 6(a) applies to the computation of the limitations period). Montoya did not file a state writ application challenging the instant conviction during the one year grace period; thus, there was no tolling of the statute. At the very latest, Montoya's federal petition was due on or before April 24, 1997. Thus, when Montoya filed his petition on December 10, 2003,[5] he exceeded the Fifth Circuit's "reasonable period" by 2,421 days, and his claims are clearly time-barred.

## CONCLUSION

For the above reasons, the Director respectfully requests that this court reject the magistrate judge's findings and conclusions granting equitable tolling and dismiss Montoya's petition with prejudice as time-barred.

---

[5] The Fifth Circuit held in *Spotville* that for purposes of determining the applicability of the AEDPA, a prisoner's *pro se* federal writ petition is deemed filed when the inmate delivers the papers to prison authorities for mailing. *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Therefore, Montoya's petition could not have been "filed" sooner than December 10, 2003, the date he executed his federal petition. *See* Fed. Writ Pet. at 9.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
   for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division


*Lead Counsel

GRETCHEN B. MERENDA*
Assistant Attorney General
State Bar No. 24010233
Southern District Admission No. 25065

P. O. Box 12548, Capitol Station
Austin, Texas   78711
(512) 936-1400
Facsimile No. (512) 936-1280

ATTORNEYS FOR RESPONDENT

7

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading

has been served by placing same in the United States mail, postage prepaid, on this 17th day

of August, 2004 addressed to:

Santos Montoya
TDCJ-CID No. 544493
Eastham Unit
P.O. Box 16
Lovelady, Texas 75851

GRETCHEN B. MERENDA
Assistant Attorney General

# EXHIBIT   A

## WALTER J. PINK & ASSOC., INC.

2646 South Loop West #195◦Houston, Texas 77054◦(713)664-6651◦Fax:(713)664-3242

September 18, 1997

Mr. Santos Montoya
TDCJ-ID No. 544493
A.H. Hughes Unit
Rt. 2, Box 4400
Gatesville, Texas 76597

Re:  **Update on federal writ of habeas corpus**

Dear Mr. Montoya:

I hope this letter finds you well and in good health.  I just wanted to touch base with you to let you know we have not forgotten you, however, there is nothing to report to you on your case except that we are still looking at the end of this year or the start of next year before we can file the application for writ of habeas corpus.  As explained previously, we have to make sure everything is in place before we file, as this is one of your last shots of overturning your conviction.

Do you have any more material/documents on your case that we do not have?  If so, please forward us a copy of it.  Do you have any input or suggestions/issues that you wish us to investigate that you have not mentioned?  If so, now is a good time to think of anything you may feel is relevant so that we can carefully consider it so that everything will be considered before we get ready to prepare the final draft of your writ.

In the meantime, please feel free to write us at the letterhead address.

Sincerely yours,

Philip Auster
Paralegal with
Walter J. Pink, Attorney at Law

WJP/pa
file

# EXHIBIT   B

# WALTER J. PINK

ATTORNEY AT LAW
**WALTER J. PINK & ASSOCIATES**
2646 South Loop West, #195
Houston, Texas 77054
713-664-6651    713-664-3242 FAX

January 31, 2000

Mrs. Rufina Montoya
c/o Ms. Gloria Montoya
Houston, Texas

RE: Response to Ms. Montoyas Letters Received on **January 26, 2000**
and Santos Montoya's Letter received on **January 26, 2000**

Dear Ms. Montoya:

May the blessings and rewards of Allah be upon you and your love ones.  I thank you for your letter and for your understanding of my court schedule.

Since Santos has already done a previous Writ of Habeas Corpus, I have my research team looking for possible Federal solutions after the State remedies have been exhausted; so, as we research for State Constitutional and Statutory violations, I have asked them to look for corresponding issues on the Federal level.  This research is being done in depth because there cannot be any kind of repetition in this Writ.  It must be all new issues raised.

I cannot explain how stressful trial work is, particularly, when you literally have a man's very life on your priorities' list(i.e. Capital murder).

In regards to the payment plan in which I extended to you, my office has my specific instructions that all brief and Writs must be paid in full.  Your family and I had a meeting and discussed the payment plan procedure thoroughly and in detail which was the amount for the Writ of Habeas Corpus must be paid in full prior to any work is to begin on the file.  If the amount

is not paid in full, then a down payment is required. Once the down payment is made, then payment arrangements will be made for the balance of the total amount. When the total amount is paid in full via the payment arrangements, then and only then, will the work process begin on the Writ of Habeas Corpus. The final payment on your file was in the latter part of 1999.

Sometimes I feel I should not do any appellate work because the families desire quick results, but the Appeals Court do not render quick opinions because of the case load in which they have.

I also realize that no person wants to spend the rest of their life in prison and that each person's case is very important to the client and their family.

As I was writing this letter to you, I received a letter from Santos to please come and see him quickly because he was having problems with the Warden regarding his work assignment and medical condition. Since Santos letter had a such a tone of urgency, I stopped my Court schedule to make an emergency visit to see him. My staff informed you that I was going to see Santos in the beginning of the week of January 31, 2000. Santos also informed me in his letter to ask you for his "free world medical records" so I could review them and have an understanding of his medical condition. The arrangements were made for February 2, 2000, 1:30 p.m. and my staff was informed to bill you later for the visit since you expressed that your family did not have the fees at that time. The cost for the emergency visit is $1000.00.

Since my research team is doing extensive work in detail, we are looking at the end of March to have the Writ of Habeas Corpus completed and ready to file.

Again thank you for your patience and understanding in this matter.

Respectfully,

Walter J. Pink
Attorney at Law

WJP/lfl

cc:  File

     Enclosure (copy of Santos Montya Letter)
     Santos Montoya

# EXHIBIT   C

March 29, 2001


Mr. Walter Pink
2646 S. Loop 195-12
Houston, TX  77054

RE:  Writ of Habeas Corpus Documentation for Santos Montoya

Mr. Pink,

During the last few months, we have tried and tried, unsuccessfully, to attain documentation
regarding the Writ of Habeas Corpus filed for Santos Montoya.  When it was filed, where it was
filed, the information contained within, etc.? At this time, I would like to once again request a
copy of any and all paperwork filed on behalf of Santos Montoya.

Let me remind you that back when the details were being worked out regarding payment, you
told us that you would refund us our money if you did not get Santos Montoya out.  You also
told us that you would file through the federal courts if you didn't succeed through the state
courts.  I don't even know where you filed.  I don't feel that I have been completely kept up to
date with regards to this case.  After three years, you barely decide to look into this case late last
year and NOTHING was accomplished.  It's like throwing $15,000 (plus miscellaneous expense)
away.  I am here to continue my mother's goal (may she rest in peace), and that is to try and get
my brother out of prison.  He was UNJUSTLY accused.

If we do not receive this documentation by the end of May  2001, I will have no other choice
than to look at other options with regards to attaining this information.  I am very unhappy with
the type of service provided to us.

If you would like to discuss this further, please do not hesitate to contact me at your earliest
convenience.

Regards,



Gloria Montoya
(on behalf of the deceased Mrs. Rufina Montoya)
Work No: 281/228-7470
Cell No: 713/385-3115

Cc:  Santos Montoya

Certified Mail