United States District Court
Southern District of Texas
ENTERED

NOV 0 4 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# —BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| SANTOS MONTOYA,<br>Petitioner, | § § § § | |
| VS. | § | CIVIL ACTION NO. B-03-229 |
| | § § | |
| DOUG DRETKE, DIRECTOR,<br>TEXAS DEPARTMENT OF CRIMINAL<br>JUSTICE, CORRECTIONAL<br>INSTITUTIONS DIVISION,<br>Respondents. | § § § § § § | |

## MEMORANDUM OPINION AND ORDER

On July 27, 2004, Magistrate Judge John Wm. Black filed a Report and Recommendation (Docket No. 10) in which he advised the Court to deny Respondents' Motion for Summary Judgment (Docket No. 6) because equitable tolling is warranted in this case. Respondents filed their objections on August 18, 2004. *Docket No. 13.* Having considered *de novo* the issues raised by Respondents' objections, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation, **OVERRULES** Respondents' objections, and **DENIES** Respondents' Motion for Summary Judgment. Petitioner Santos Montoya's motion for habeas relief under 28 U.S.C. § 2254 is hereby referred back to Magistrate Judge Black for a review of its merits.

### I.    BACKGROUND

Santos Montoya was convicted of murder on March 26, 1990, and sentenced to eighty-five years imprisonment. He appealed. The Thirteenth District Court of Appeals affirmed the trial court's judgment on June 6, 1991. His conviction became final on July 6, 1991.[1] Four state writ applications were filed on Montoya's behalf: one in 1993, two in 1994, and one in 2000. All were either denied or dismissed. The federal petition at issue was filed on December 15, 2003

---

[1] Montoya did not file a petition for discretionary review from the Texas Court of Criminal Appeals within the 30-day time period. TEX. R. APP. PROC. 68.2.

(Docket No. 1), over six years after the statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") had run out.[2]

Montoya asks that this court afford him equitable tolling for the period he relied upon his appellate attorney's repeated assurances that further action would be taken on his behalf. *Docket No. 1*. Respondents argue that Montoya's claims are time-barred and that equitable tolling is not warranted because (1) Montoya's failure to timely file a habeas petition can be attributed to mere attorney error or neglect and (2) Montoya did not diligently pursue habeas relief. *Docket No. 7*.

## II. DISCUSSION

Montoya hired Walter Pink, a licensed Texas attorney, in 1996 to pursue both federal and state habeas relief on his behalf. *Docket No. 13*, p.4. A long series of letters exchanged between Montoya, Montoya's family, and Pink reveal a pattern of misrepresentations that Montoya relied on to his detriment. *Docket No. 1*. The letters told Montoya and his family that Pink was actively working on Montoya's federal petition and that it would be timely filed; however, Pink never filed a federal habeas petition on Montoya's behalf.[3] Moreover, because many of the misrepresentations were made after the deadline for filing a § 2254 petition had passed, Pink allowed Montoya and his family to believe that he would file a petition that was in reality legally time-barred.

AEDPA's one-year grace period can be equitably tolled only in rare and exceptional

---

[2] Under AEDPA, a person in custody pursuant to a judgment of a state court has a one-year period to file a federal habeas petition. 28 U.S.C. § 2244(d). Persons whose convictions became final prior to the enactment of AEDPA were given a one-year period from the date the statute was enacted–between April 24, 1996 and April 24, 1997–to file a petition. *United States v. Flores*, 135 F.3d 1000, 1005 (5th Cir. 1998). AEDPA's statute of limitations applies to both § 2254 and § 2255 petitions. *Flanagan v. Johnson*, 154 F.3d 196, n.2 (5th Cir. 1998).

[3] Respondents' assert that "[s]ince there is no time limit for filing a state writ of habeas corpus, Pink's letters should not be considered affirmative misstatements." *Docket No. 13*, at p.5. Respondents would have the court construe the letters as referring to habeas relief in general. If the court did so, Respondents might have a viable argument that Pink's reassurances that he was pursuing state habeas relief do not constitute affirmative misstatements. Such a construction would be disingenuous. Four of Pink's letters, dated March 3, 1997, June 27, 1997, September 18, 1997, and January 8, 1998, are specifically captioned "Re: Federal Writ of Habeas Corpus." Moreover, a letter dated May 5, 1999, states that Pink was waiting on his research team's review of Montoya's case before working on the federal petition. Yet another letter to Montoya's family dated January 31, 2000, refers to the investigation of "possible Federal solutions after the State remedies have been exhausted."

circumstances. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). A petitioner's ignorance or mistake is insufficient to warrant equitable tolling." *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002)(citing *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)); *see also Fisher*, 174 F.3d at 714 (stating, "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing"). Moreover, an attorney's professional error, although meriting professional discipline, does not justify equitable tolling. *Riggs v. United States*, 314 F.3d 796, 800 (5th Cir. 2002); *see also Molo v. Johnson*, 207 F.3d 773, 775–76 (5th Cir. 2000)(holding that although a petitioner has a right to effective assistance of counsel, an alleged violation of that right does not toll AEDPA's statute of limitations); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002)(stating that "counsel's erroneous interpretation of the statute of limitations" is not enough to justify tolling); *Cousin*, 310 F.3d at 849 (holding that "mere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified"). Equitable tolling will be denied if the petitioner fails to diligently pursue his rights. *Coleman*, 184 F.3d at 402; *see also Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Tolling, however, is available if a petitioner was misled by the actions of the court. *United States v. Patterson*, 211 F.3d 927, 932 (5th Cir. 2000)(holding that sufficiently rare and exceptional circumstances existed where a district court's actions allowed petitioner to believe mistakenly that he would be able to file a timely petition); *see also Coleman*, 184 F.3d at 402 (citing *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)("Equitable tolling applies principally where the plaintiff is actively misled by defendant...")). Equitable tolling may also be available if counsel intentionally deceives the petitioner, and the petitioner reasonably relied on counsel's deceptive misrepresentations. *United States v. Wynn*, 292 F.3d 226, 230–31 (5th Cir. 2002).

Walter Pink knowingly and intentionally misled Santos Montoya and his family both before and after the deadline for filing.[4] The letters exchanged between Montoya, Montoya's

---

[4] Ultimately, the record is silent as to whether Pink knew about AEDPA's statute of limitations. The court assumes, however, that Pink knew about the deadline because the record is replete with representations that he was experienced regarding federal habeas petitions. Moreover, there is no indication that he simply made a mistake or misinterpreted applicable law. Instead, Pink's pattern of deception strongly suggests that he continued to collect money from the Montoya family knowing that federal relief was time-barred.

family, and Pink clearly show that Pink repeatedly reassured the Montoya's that a petition would be filed. These letters date back to March 3, 1997. Pinks letters to Montoya indicate a pattern of lies or, at best, misrepresentations. Even after the deadline passed, Pink fraudulently allowed Montoya and his family to believe that federal habeas relief continued to be a viable option. Pink's conduct goes well beyond mere negligence or accidental misstatement; it was deceitful, dishonest, and represented the worst the Bar has to offer.

Furthermore, Pink continued to collect money not only for his retainer, but also for other allegedly unforeseen expenses. For example, he charged Montoya's family $1,000 for an emergency visit to Montoya in prison. *Docket No. 1* (letter dated January 31, 2000). He also charged them an extra $1,500 for a second trial transcript after his paralegal allegedly lost the first transcript.[5] *Id.* Once the retainer was paid in full, Pink, perhaps knowing that his misrepresentations would reveal themselves, kept postponing the date the federal petition would be filed. He never followed through on any promise to the Montoyas, and he eventually died.

Montoya not only relied on Pink's deceptive misrepresentations, but he also attempted to diligently pursue his rights. He and his family repeatedly made inquiries into the status of his petition and relied on Pink's assurances that one would be filed. They believed that they had retained the best attorney to act on Montoya's behalf. *Id.* (letter dated December 9, 1999). Once it became clear that Pink would not take action on Montoya's behalf, Montoya made requests for his file and trial transcripts so that he could draft and file a petition himself. *Id.* (letter dated June 21, 2001). He never received them. He also filed a grievance against Pink with the State Bar of Texas. *Id.* Although Pink died before the grievance procedure could be completed, Montoya's treatment at the hands of Pink was so egregious that he received $2,815.00 from the State Bar of Texas' Client Security Fund. *Id.*

## III.   CONCLUSION

Montoya was intentionally deceived by his attorney and he reasonably relied on his attorney's deceptive misrepresentations. Equitable tolling is warranted in this case. Therefore,

---

[5]The record is unclear whether another transcript was ever really needed or procured. Petitioner's Response to Respondents' Motion for Summary Judgment (Docket No. 9) indicates that another transcript was never obtained from the Brownsville District Clerk's office.

Respondents' Motion for Summary Judgment is hereby **DENIED** and their objections to the Magistrate Judge's Report and Recommendation are hereby **OVERRULED**. The Report and Recommendation is hereby adopted and the matter is referred back to Magistrate Judge Black for a review of its merits.

Signed in Brownsville, Texas, this 4th day of November, 2004.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE